# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**FILED**

Apr 15 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COVER SHEET

**Instructions:** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

**CASE NAME:**  

**CASE NUMBER:  3:21-cr-00155 JD**

USA v.  CARLOS E. KEPKE            CR

| | | | |
|---|---|---|---|
| **Is This Case Under Seal?** | Yes | No ✓ | |
| **Total Number of Defendants:** | 1 ✓ | 2-7 | 8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes | No ✓ | |
| **Venue (Per Crim. L.R. 18-1):** | SF ✓ | OAK | SJ |
| **Is this a potential high-cost case?** | Yes | No ✓ | |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes | No ✓ | |
| **Is this a RICO Act gang case?** | Yes | No ✓ | |

**Assigned AUSA (Lead Attorney):**  MICHAEL G. PITMAN, AUSA    **Date Submitted:**  4-15-21

**Comments:**

RESET FORM      SAVE PDF

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

---

### UNITED STATES OF AMERICA,

### V.

### CARLOS E. KEPKE

### DEFENDANT(S).

---

# INDICTMENT

18 U.S.C. § 371 – Conspiracy to Defraud the United States;
26 U.S.C. § 7206(2) – Aiding and Assisting the Filing of a Materially False Income Tax Return

---

A true bill.

/s/ Foreperson of the Grand Jury
_____
                          Foreman

Filed in open court this __15th__ day of

__April, 2021__.

_____ Ada Means
                          Clerk

Bail, $ __Summons__

Hon. Jacqueline Scott Corley

FILED

Apr 15 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

> **FILED**
>
> Apr 15 2021
>
> SUSAN Y. SOONG
> CLERK, U.S. DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  3:21-cr-00155 JD |
| Plaintiff, | VIOLATIONS:  18 U.S.C. § 371 – Conspiracy to Defraud the United States; 26 U.S.C. § 7206(2) – Aiding and Assisting in the Preparation of a Materially False Income Tax Return |
| v. | |
| CARLOS E. KEPKE, | |
| Defendant. | SAN FRANCISCO VENUE |

**I N D I C T M E N T**

The Grand Jury charges:

**Introduction**

At all times relevant to this Indictment:

1.      Defendant CARLOS E. KEPKE was a United States citizen working and residing in Houston, Texas.

2.      KEPKE was employed as an attorney specializing in creating and maintaining foreign trusts and companies for his clients.  Beginning in or about 1999, through December 31, 2014, Robert F. Smith was one of KEPKE's clients.  Smith was a United States citizen residing at various times in California, Switzerland, and Texas.

INDICTMENT                                  1

3.     From in or about 2000 to the date of this Indictment, Smith was the Chairman and Chief Executive Officer of Vista Equity Partners ("Vista"), a private equity firm which conducted business in the Northern District of California.

4.     Vista formed private equity fund partnerships that purchased companies for the purpose of increasing their value and selling them for a profit.

5.     Private equity funds raise money to invest from investors which are usually designated as general partners or limited partners.  Limited partners commit in advance to provide pre-determined amounts of investment capital when the fund "calls" capital to make an investment.  Limited partners generally do not participate in the management of the fund or the formation of investment strategy.

6.     General partners generally manage the fund and make investment decisions.  General partners are normally paid a fee for their managerial services in the form of a percentage of invested capital.  General partners can also be compensated in the form of "carried interest."  Carried interest often consists of a percentage of the fund's net profits.  In the United States, carried interest is taxable to recipients as capital gains income under Title 26, United States Code, Sections 1223 & 1061.

7.     Vista's first fund was Vista Equity Fund II, L.P. ("VEF II"), a private equity fund partnership formed by Smith, and others, in the Cayman Islands in or about March 2000.  VEF II was initially called "Emerging Technologies Investment Fund, L.P.," but its name was changed to VEF II shortly after it was formed.

8.     Smith received an 8 percent general partnership interest in VEF II, which had three general partners: Combs Young, LLC; Partner 2; and Flash Holdings, LLC ("Flash Holdings").  Smith held half of his 8 percent interest through Combs Young, LLC, his single-member LLC.  Smith held the other half of his 8 percent interest through Flash Holdings.  Flash Holdings was a Nevisian limited liability company created by KEPKE for Smith on or about March 9, 2000.  Flash Holdings had no employees, no offices, and never provided any service to Vista or any Vista fund.  Flash Holdings had no business purpose other than holding assets for the benefit of Smith, and its primary initial asset was a 4 percent general partnership interest in VEF II.

9.     Excelsior Trust was a Belizean entity formed by KEPKE for Smith on or about March 29, 2000 to be the owner of Flash Holdings.  Excelsior Trust had no employees, no offices, and never

provided any service to Vista or any Vista fund.  Excelsior Trust had no business purpose other than holding assets for the benefit of Smith.  KEPKE and Smith caused an individual with the initials of HW to be designated as the creator, or "Settlor," of Excelsior Trust.  HW was a citizen and resident of the United Kingdom, and the elderly uncle of Smith's spouse at the time.  Smith was designated as the "Trust Protector" of the Excelsior Trust, which gave him the power to appoint and remove the Trustee. The Beneficiaries of Excelsior Trust were Smith, members of Smith's family, and unnamed charities.

10.     The initial Trustee of Excelsior Trust was Cititrust, International, Inc. ("Cititrust"), a Belizean corporation.  Cititrust was eventually replaced as the Trustee of Excelsior Trust by another Belizean entity, Orion Corporate & Trust Services, Ltd ("Orion").  Both Cititrust and Orion were in the business of acting as an institutional, non-custodial, trustees for trusts formed in Belize by third parties.

11.     The Managing Director of Flash Holdings was Serco Management, Ltd ("Serco").  Serco is a subsidiary of ATU General Trust (BVI), Ltd. ("ATU"), both of which were companies in the British Virgin Islands ("BVI") that provided trust management services.

12.     As a general partner of VEF II, Flash Holdings received distributions, including carried interest, during the calendar years 2010, 2011, 2012, 2013, and 2014.  The distributions to Flash Holdings were transferred to bank accounts in Switzerland and the BVI, and were not timely reported to the United States Department of the Treasury, Internal Revenue Service ("IRS"), as income on any United States income tax return.

COUNT ONE:          (18 U.S.C. § 371 – Conspiracy – 1999-2015)

13.     The allegations set forth in paragraphs 1 through 12 of this Indictment are re-alleged and incorporated as if set forth fully herein.

14.     From on or about December 1, 1999, to on or about October 20, 2015, in the Northern District of California and elsewhere, the defendant,

CARLOS E. KEPKE,

did unlawfully, voluntarily, and willfully conspire and agree with Smith, and others known and unknown to the Grand Jury, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: namely,

individual federal income taxes due and owing by Smith for the tax years 2005 through and including 2014.

### Object of the Conspiracy

15.     It was the object of the conspiracy for KEPKE and Smith to conceal a portion of Smith's income from the IRS, thus evading the statutory assessment of the appropriate tax due and owing on this income.  This was accomplished using offshore entities including Excelsior Trust and Flash Holdings, which were created and managed with KEPKE's direction and assistance to hold assets including a portion of Smith's investments in Vista funds, and to create the appearance that income generated by those investments, which was deposited into foreign bank accounts held in the name of Flash Holdings, but for the benefit of Smith, was not taxable to Smith, when in reality, as KEPKE knew, Smith actually earned this income, and retained full dominion and control over it.

### Manner & Means

The manner and means by which the scheme was sought to be accomplished included, among others, the following:

16.     It was part of the conspiracy that in or about 1999, KEPKE was retained and paid by Smith to create and manage offshore entities to conceal from the IRS income Smith earned as a result of his investments in Vista funds through Flash Holdings.

17.     It was further part of the conspiracy that in or about 1999, KEPKE was retained and paid by Smith to create Excelsior Trust in Belize and Flash Holdings in Nevis.  The purposes of forming these entities included: Concealing the fact that Smith held investments in Vista funds through Flash Holdings; creating and maintaining a false paper trail indicating that HW was the true Settlor of Excelsior Trust; creating and maintaining a false paper trail indicating that Flash Holdings and Excelsior Trust were independently managed by Cititrust, Orion, Serco, and other offshore service providers rather than by Smith, directly or through KEPKE; and opening offshore bank accounts in the name of, or for the benefit of, Flash Holdings, into which Smith could deposit income and assets he wished to conceal from the IRS – all for the purpose of evading the payment of income taxes.

18.     It was further part of the conspiracy that half of Smith's 8 percent general partnership interest in VEF II was assigned to Flash Holdings.

INDICTMENT                                    4

19.     It was further part of the conspiracy that KEPKE directed Smith to designate, and assisted Smith in designating, an elderly, foreign relative who would never live in the United States to act as Settlor of Excelsior Trust.  KEPKE and Smith caused an individual with the initials of HW to fill that role.  In reality, HW had nothing more than a nominal role in the formation, management, or maintenance of Excelsior Trust, and Smith was the true creator of Excelsior Trust.

20.     It was further part of the conspiracy that KEPKE directed Smith to hire and pay, and assisted Smith in hiring and paying, Cititrust and Orion to serve as nominal Trustees of Excelsior Trust. In reality, Smith was the beneficial owner of Excelsior Trust and he retained complete dominion and control over Excelsior Trust and all of its assets, either directly or through KEPKE.  Neither Cititrust nor Orion independently managed or controlled assets held in the names of Excelsior Trust or Flash Holdings.  Instead, Cititrust and Orion at all times took direction from Smith, either directly or through KEPKE, with respect to assets held in the names of Excelsior Trust or Flash Holdings.

21.     It was further part of the conspiracy that KEPKE directed Smith to hire and pay, and assisted Smith in hiring and paying, Serco to serve as the nominal Managing Director of Flash Holdings. In reality, Smith was the beneficial owner of Flash Holdings and he retained complete dominion and control over Flash Holdings and all of its assets, either directly or through KEPKE.  Serco did not independently manage or control assets held in the names of Excelsior Trust or Flash Holdings.  Instead, Serco at all times took direction from Smith, either directly or through KEPKE, with respect to assets held in the names of Excelsior Trust or Flash Holdings.

22.     It was further part of the conspiracy that on or about November 19, 2004, KEPKE directed Smith to open, and assisted Smith in opening, a bank account at a bank in the BVI, account ***920, in the name of "Flash Holdings LLC" ("the BVI Account"), for the purpose of concealing from the IRS income earned by Smith.  The signatories on this account were individuals employed by Serco who, at all times took direction from Smith, either directly or through KEPKE, with respect to the BVI Account.  Smith was the beneficial owner of the BVI Account.

23.     It was further part of the conspiracy that on or about February 14, 2007, Smith opened, and caused to be opened, a bank account at Banque Bonhôte in Neuchâtel, Switzerland, account ***808, in the name of "[VEF II] FBO Flash Holdings, LLC" ("the Banque Bonhôte Account") for the purpose

1  of concealing from the IRS income earned by Smith.  Smith had sole signatory authority over, and was

2  the beneficial owner of, the Banque Bonhôte Account.

3      24.    It was further part of the conspiracy that, over time, Flash Holdings became a partner or

4  member of many Vista funds in addition to VEF II.  As a partner and member of Vista funds, Flash

5  Holdings received distributions, including carried interest, during the calendar years 2010, 2011, 2012,

6  2013, and 2014.  The distributions to Flash Holdings were transferred from Vista to the BVI Account

7  and the Banque Bonhôte Account.  From in or about 2005, through and including 2014, the amount of

8  carried interest and capital gain income distributed by Vista to these bank accounts was approximately

9  $225,000,000.  In reality, these funds represented income earned by Smith, but this income was not

10  timely reported on any United States income tax return.

11      25.    It was further part of the conspiracy that KEPKE directed Smith to use, and assisted

12  Smith in using, assets held in the names of Excelsior Trust and Flash Holdings for his own personal

13  benefit, including to purchase and improve a home in Sonoma, California, a ranch complex in Gilpin

14  County, Colorado, and several properties in Megève France.

15      26.    It was further part of the conspiracy that Smith retained a professional income tax return

16  preparation firm in the Northern District of California which prepared his 2012, 2013, and 2014 United

17  States Individual Income Tax Returns, Forms 1040.  Based on KEPKE's advice, Smith did not disclose

18  to his income tax return preparers his true ownership and control of assets held in the names of Excelsior

19  Trust and Flash Holdings, or the income distributed by Vista to the BVI Account and the Banque

20  Bonhôte Account.

21      27.    It was further part of the conspiracy that from in or about 2007 through and including

22  2015, Smith paid KEPKE approximately $1,000,000 to compensate KEPKE for creating, managing, and

23  maintaining Excelsior Trust, Flash Holdings, and other related services and expenses.

24      28.    It was further part of the conspiracy that, beginning no later than 2009, KEPKE charged

25  Smith an annual fee to purge, or "Securitize," his file related to Smith, Excelsior Trust, and Flash

26  Holdings by destroying records.

27

28

### Overt Acts

In furtherance of the scheme, and to effect the objects thereof, the following overt acts were committed within the Northern District of California, and elsewhere:

29.    On or about December 8, 1999, KEPKE sent Cititrust a draft Trust Indenture which he had drafted to be used to establish a trust in Belize for the benefit of Smith and his family, for which Smith would pay Cititrust $30,000.

30.    On or about March 6, 2000, KEPKE informed Cititrust that HW was to be the Settlor of Smith's trust, which was to be named Excelsior Trust, and instructed Cititrust to finalize the Trust Indenture, and forward three copies to Smith at his personal residence in California for execution.

31.    On or about March 9, 2000, KEPKE, and others, caused Flash Holdings to be incorporated in Nevis, and caused Serco to be designated as the Managing Director of Flash Holdings.

32.    On or about March 10, 2000, KEPKE instructed Cititrust that Smith would send Cititrust a check for $30,000 in payment of its fees for the creation of Excelsior Trust, and that $15,000 of this fee was to be wired to an account KEPKE maintained in the name of "Garfield Investments."

33.    On or about March 13, 2000, KEPKE directed Smith to send $7,500 worth of money orders to Cititrust as the initial corpus of Excelsior Trust.

34.    On or about March 29, 2000, KEPKE directed and caused the Excelsior Trust Indenture to be executed.

35.    On or about March 30, 2000, the Partnership Agreement for VEF II (initially called "Emerging Technologies Investment Fund, L.P.,") was executed listing "Flash Holdings, LLC," as a general partner in the fund with a 4 percent general partnership interest.

36.    On or about April 8, 2000, as directed by KEPKE, Smith sent a $30,000 personal check, drawn on his account at Citibank in New York to Cititrust as payment for the creation of Excelsior Trust in Belize.

37.    On or about January 16, 2003, KEPKE requested and received from Cititrust eleven (11) unsigned and unexecuted bearer shares for Flash Holdings.

38.    On or about November 19, 2004, KEPKE advised and assisted Smith in opening, and causing to be opened, the BVI Account.

39.     On or about February 14, 2007, Smith opened, and caused to be opened, the Banque Bonhôte Account.

40.     On or about February 10, 2009, KEPKE directed and caused the shares of Flash Holdings to be changed from bearer shares to registered shares.

41.     On or about May 7, 2009, KEPKE forwarded to Cititrust a document entitled "Written Resolution of the Sole Member" of Flash Holdings changing the title of Serco from "Managing Director" of Flash Holdings to "Sole Manager" of Flash Holdings, and instructed Cititrust to sign and execute the document "on behalf of Excelsior Trust as the Sole Member" of Flash Holdings.

42.     On or about November 25, 2009, KEPKE advised and assisted Smith in notifying Cititrust in writing that he was terminating their position as Trustee of Excelsior Trust, and that Orion had been designated the successor Trustee.

43.     From in or about November 2010 through and including January 2011, KEPKE advised and assisted Smith in forming Flash Property Holding, LLC, in Nevis, White Mulberry SARL in Luxembourg, and SCI Thisbe and SCI Pyramus in France, for the purpose of holding title to two ski condominiums and a commercial building in Mègeve, France ("Mègeve Properties").

44.     In or about December 2010, Smith transferred approximately €5.3 million from the Banque Bonhôte Account to a third party as payment for the purchase of the Mègeve Properties.

45.     On or about May 2, 2012, KEPKE falsely informed a third party that Smith was not a beneficial owner of Flash Holdings.

46.     From in or about 2005 through and including 2014, as advised by KEPKE, Smith directed personnel and employees at Vista to distribute approximately $225,000,000 in capital gains and carried interest income to Flash Holdings, including the following:

| Approximate Date | Approximate Amount | Distribution From | Distribution To |
|---|---|---|---|
| December 24, 2010 | $2,023,788 | VEF II | Banque Bonhôte account ***808-1 |
| December 14, 2011 | $1,482,875 | Vista Equity Partners III, LLC | Banque Bonhôte account ***808-1 |
| December 23, 2011 | $1,975,279 | VEF II | Banque Bonhôte account ***808-1 |
| March 2, 2012 | $2,009,710 | VEF II | Banque Bonhôte account ***808-1 |
| August 24, 2012 | $4,000,000 | Vista Equity Partners Fund III, GP, LLC | The BVI Account |
| August 24, 2012 | $8,861,414 | Vista Equity Partners Fund III, GP, LLC | Banque Bonhôte account ***808-1 |
| November 20, 2012 | $7,664,553 | Vista Equity Partners Fund III, GP, LLC | Banque Bonhôte account ***808-1 |
| December 24, 2012 | $8,615,133 | Vista Equity Partners Fund III, GP, LLC | Banque Bonhôte account ***808-1 |
| November 7, 2013 | $16,734,975 | Vista Equity Partners Fund III, GP, LLC | Banque Bonhôte account ***808-1 |
| November 22, 2013 | $2,123,427 | VEF II | Banque Bonhôte account ***808-1 |
| November 22, 2013 | $237,149 | VEF II | Banque Bonhôte account ***808-1 |
| November 18, 2014 | $7,060,603 | Vista Equity Partners Fund III, GP, LLC | Banque Bonhôte account ***808-1 |

47.     From in or about 2007 through and including 2015, Smith directed and caused approximately $1,000,000 to be transferred to KEPKE's bank account at Amegy Bank of Texas in Houston, Texas, in payment of KEPKE's fees and expenses, including the following:

| Approximate Date | Approximate Amount | Distribution From | Distribution To |
|---|---|---|---|
| July 13, 2012 | $75,000 | Banque Bonhôte account ***808-1 | Amegy Bank |
| March 19, 2013 | $20,000 | Banque Bonhôte account ***808-1 | Amegy Bank |
| May 23, 2013 | $40,000 | Banque Bonhôte account ***808-1 | Amegy Bank |
| September 23, 2013 | $70,000 | Domestic Bank Account | Amegy Bank |
| November 8, 2013 | $57,000 | Domestic Bank Account | Amegy Bank |

INDICTMENT                                9

| January 7, 2014 | $75,000 | Domestic Bank Account | Amegy Bank |
|---|---|---|---|
| January 22, 2014 | $57,000 | Domestic Bank Account | Amegy Bank |
| July 31, 2014 | $71,000 | Domestic Bank Account | Amegy Bank |
| February 20, 2015 | $84,000 | Domestic Bank Account | Amegy Bank |

48.     On or about October 16, 2013, in the Northern District of California, Smith directed and caused to be prepared and filed with the IRS a joint U.S. Individual Income Tax Return, Form 1040, for the tax year 2012, which he knew to be false, to wit: Based on KEPKE's advice, Smith failed to accurately report and pay income tax on capital gains and carried interest income distributed and deposited into foreign bank accounts held in the name of, or for the benefit of, Flash Holdings.

49.     On or about October 17, 2014, in the Northern District of California, Smith directed and caused to be prepared and filed with the IRS a joint U.S. Individual Income Tax Return, Form 1040, for the tax year 2013, which he knew to be false, to wit: Based on KEPKE's advice, Smith failed to accurately report and pay income tax on capital gains and carried interest income distributed and deposited into foreign bank accounts held in the name of, or for the benefit of, Flash Holdings.

50.     On or about October 20, 2015, in the Northern District of California, Smith directed and caused to be prepared and filed with the IRS a joint U.S. Individual Income Tax Return, Form 1040, for the tax year 2014, which he knew to be false, to wit: Based on KEPKE's advice, Smith failed to accurately report and pay income tax on capital gains and carried interest income distributed and deposited into foreign bank accounts held in the name of, or for the benefit of, Flash Holdings.

All in violation of Title 18, United States Code, Section 371.

COUNTS TWO TO FOUR:   (26 U.S.C. § 7206(2) – AIDING AND ASSISTING IN THE
                                         PREPARATION OF MATERIALLY FALSE TAX RETURNS)

51.     The United States re-alleges the facts set forth in paragraphs 1 through 12 and 16 through 50 as if fully set forth herein.

52.     From on or about December 1, 1999, through on or about October 20, 2015, in the Northern District of California and elsewhere, the defendant,

CARLOS E. KEPKE,

willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of United States Individual Income Tax Returns, Form 1040, for the taxpayer and calendar years set forth below, which were false and fraudulent as to a material matter. The tax returns failed to report income distributed and deposited into foreign bank accounts held in the name of Flash Holdings, for the benefit of the taxpayer, as part of a foreign trust structure created by KEPKE, devised to conceal the taxpayer's true ownership and control over said income.

| Count | Approximate Filing Date | Taxpayer | Year | False Item |
|-------|------------------------|----------|------|-----------|
| **Two** | October 16, 2013 | Smith | 2012 | Line 13, Capital Gains or Losses |
| **Three** | October 17, 2014 | Smith | 2013 | Line 13, Capital Gains or Losses |
| **Four** | October 20, 2015 | Smith | 2014 | Line 13, Capital Gains or Losses |

All in violation of Title 26, United States Code, Section 7206(2); Title 18, United States Code, Section 2; and *Pinkerton v. United States*, 328 U.S. 640 (1946) (coconspirator liability).


DATED:  April 15, 2021                          A TRUE BILL

                                                 /s/
                                                FOREPERSON

STEPHANIE M. HINDS
Acting United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorney


Approved as to Form

s/ Corey J. Smith
COREY J. SMITH
Senior Litigation Counsel
Tax Division, U.S. Department of Justice

INDICTMENT                          11

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

### OFFENSE CHARGED

18 U.S.C. § 371 – Conspiracy
26 U.S.C. § 7206(2) – Aiding and Assisting the Filing of a
Materially False Income Tax Return

☐ Petty

☐ Minor

☐ Misde-
      meanor

☒ Felony

PENALTY:  18 U.S.C. § 371- 5 yrs prison, $250k fine, 3 yrs sup. rel., $100 special
assessment; 26 U.S.C. § 7206(2) - 3 yrs prison, $250k fine, 1 yr sup.
rel., $100 special assessment

### DEFENDANT - U.S

CARLOS E. KEPKE

DISTRICT COURT NUMBER
3:21-cr-00155 JD

**FILED**

Apr 15 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:

  ☐ U.S. ATTORNEY    ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form      STEPHANIE M. HINDS

  ☒ U.S. Attorney    ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)      Michael G. Pitman, AUSA

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
        summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

} ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer  ☐ Yes
been filed?   ☒ No

} If "Yes"
give date
filed

**DATE OF
ARREST**

Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED
TO U.S. CUSTODY**

Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

  ☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
  ☒ Arraignment  ☒ Initial Appearance

Defendant Address:

Bail Amount:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 4/22/21 at 10:30 am    Before Judge: Jacqueline Corley

Comments: