

**DEPARTMENT OF THE TREASURY**
Internal Revenue Service
Criminal Investigation

## Memorandum of Activity

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000283530 | **Location:** | In Office - Helena, MT |
| **Investigation Name:** | Carlos Kepke | | |
| **Date:** | April 5, 2022 | | |
| **Participant(s):** | Brian Anderson, Special Agent - IRSCI | | |

1. I, Brian Anderson, am a Special Agent with the U.S. Department of Treasury, IRS Criminal Investigation and have been employed as such since September of 2009. I am currently assigned to the Denver Field Office, Helena, Montana Post of Duty.

2. On August 15, 2018, I assisted with a search warrant operation and interview at the residence of Mr. Carlos Kepke ("Mr. Kepke") at 149 Sage Rd, Houston, TX 77056-1417. After refreshing my memory, by conducting a review of a Memorandum of Activity I authored on or about August 20, 2018, I state the following facts about events on August 15, 2018:

    a. At the onset of the day, Mr. Kepke was informed agents were there to serve a SEARCH AND SEIZURE WARRANT, issued on August 14, 2018, by U.S. Magistrate Judge Nancy K. Johnson. Sometime later, Mr. Kepke asked questions about why agents had a search warrant and asked why agents didn't just ask for the documents they desired in lieu of obtaining a Search Warrant. Mr. Kepke said he would have turned over whatever was requested. Mr. Kepke further said agents were welcome to anything (understood by me to mean any document or record pertaining to the investigation). Mr. Kepke said he would have turned over anything.

    b. I explained the scope of the Search Warrant to Mr. Kepke. I also explained it may be helpful if Mr. Kepke was willing to voluntarily consent to the seizure of documents and records not specifically identified in the warrant but related or relevant to the investigation such as other client files, asset protection files and tax planning files dealing with trusts or foreign countries and potentially others.

    c. It was at this time that Mr. Kepke said he would consent to the seizure of a broad range of documents and files subject to some conditions about receiving copies back. The oral consent provided by Mr. Kepke was memorialized in a handwritten document.

    d.  The oral and written consent obtained from Mr. Kepke was voluntarily given by Mr. Kepke.  No agent, including myself, ever threatened or made any statements to Mr. Kepke that would give him the impression this was something he was required to do.  Mr. Kepke appeared comfortable providing his consent.  During the entire interaction, Mr. Kepke knew he was not under arrest, knew he was free to leave at any time, and in fact, did leave to take his dog for a walk.  Mr. Kepke did not seem confused and appeared to understand the conversations regarding his consent.  At no point did I, or any agent, suggest to Mr. Kepke that we would obtain an additional search warrant to cover the records encompassed by his consent, if he did not provide it.

I prepared this memorandum on April 5, 2022.

Brian Anderson
Special Agent