STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:   (408) 535-5040
Facsimile:   (408) 535-5081
Email: michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
United States Department of Justice
Telephone:   (202)514-5230
Email: corey.smith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Criminal No. 3:21-CR-00155-JD<br><br>UNITED STATES' NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANT'S PROFFERED EXPERT WITNESS, RODNEY READ<br><br>Hearing.: September 12, 2022<br>Time: 10:30 a.m.<br>Place: Courtroom 11, 19th Floor |

**NOTICE**

PLEASE TAKE NOTICE that on September 12, 2022, at 10:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, United States District Court, San Francisco Courthouse, Courtroom 11 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California, the United States of America ("United States" or "government"), will and hereby does move the Court to exclude proposed expert testimony proffered by the defense, and states as follows in support:

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

1

## MOTION

The government hereby respectfully moves the Court for an order excluding Defendant's proffered expert witness, Rodney Read, because his proposed testimony was not adequately disclosed under Fed. R. Crim. P. 16, and because his proffered opinions are improper under Fed. R. Evid. 702, and unfairly prejudicial under Fed. R. Evid. 403.

## BACKGROUND

Beginning in 1999 and continuing until 2014, Defendant, an attorney, created and managed an offshore trust structure for Robert Smith, one of his clients. The offshore trust structure was designed to evade federal income taxes on approximately $225,000,000 of capital gain income Smith earned from his management of private equity funds at Vista Equity Partners ("Vista"). In October 2020, Smith signed a Non-Prosecution Agreement with the United States (available at https://www.justice.gov/opa/press-release/file/1327906/download). In connection with that Agreement, Smith signed a Statement of Facts (available at https://www.justice.gov/opa/press-release/file/1327911/download) in which he admitted that the offshore trust structure Defendant (referred to as Individual B in the Statement of Facts) created and maintained for Smith was designed and used to hide Smith's assets and tax liabilities from the IRS. As part of that conspiracy, Defendant created a false paper trail to conceal the fact that Smith controlled and used the assets and income deposited into the offshore trust structure (often with Defendant's assistance). The inconsistency between the fiction this false paper trail was designed to project and the reality of how the assets in the offshore trust structure were used reveals that the structure had no legitimate purpose other than tax evasion.

Vista is a San Francisco-based private equity partnership started in 2000 by Smith and his partners, and it is in the business of forming private equity fund partnerships that purchase companies and attempt to increase their value in order to sell them for a profit. In 1999, Smith hired Defendant to create and manage offshore entities to conceal income Smith expected to earn from his investments in Vista funds. Specifically, Smith assigned half of his eight percent general partnership interest in Vista's first fund, Vista Equity Fund II, to a limited liability company called Flash Holdings, which was created in Nevis by Defendant for Smith in March of 2000. Flash Holdings had no employees, no offices, and never provided any service to Vista or any Vista fund. It had no business purpose other than holding

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

2

assets for the benefit of Smith.  Subsequently, Smith assigned portions of his interests in several other Vista funds to Flash Holdings.  The gains generated by Flash Holdings' interests in various Vista funds were distributed by Vista to two offshore bank accounts.  One of these accounts was held at VP Bank in the British Virgin Islands in the name of Flash Holdings, and the other was held at Banque Bonhôte Switzerland in the name of "Vista Equity Fund II, LP FBO Flash Holdings."  Although these bank accounts were nominally held in Flash Holdings' name, they were actually entirely under Smith's dominion and control.[1]

From 2005 to 2014, Vista distributed approximately $225,000,000 to Flash Holdings.  As Defendant was aware, although Smith earned and retained full control over this income, he did not report or pay tax on it.

On paper, Flash Holdings was owned by the Excelsior Trust, which was created in Belize by Defendant for Smith in March of 2000.  Like Flash Holdings, Excelsior Trust had no business purpose other than holding assets for the benefit of Smith.  When Excelsior Trust was created, Defendant told Smith to recruit someone unlikely to ever visit the United States to designate as the nominal creator, or "Settlor," of Excelsior Trust.  Smith ultimately chose the elderly uncle of his spouse at the time, who was a citizen and resident of the United Kingdom.  Defendant created a false paper trail indicating that this elderly uncle was the true Settlor of Excelsior Trust.  In reality, the uncle had no genuine role in the formation, management, or maintenance of Excelsior Trust.  As Defendant knew, Smith was the true creator of Excelsior Trust.

Both Flash Holdings and Excelsior Trust were affiliated with offshore individuals and entities such as trustees and management companies hired and managed by Smith with Defendant's assistance.  The purpose of these offshore individuals and entities was to create the illusion that Flash Holdings and Excelsior Trust were controlled by independent professionals.  In fact, as Defendant knew, these

---

[1] For example, in 2011 Smith directed Banque Bonhôte to use funds from the Flash Holdings account to purchase two luxury apartments in the French Alps, and Smith ultimately used 13 million Euros in untaxed funds to purchase and furnish these apartments. Defendant advised Smith to title these properties in the names of foreign entities, and Smith retained Denis Berdoz, a Switzerland-based tax lawyer at Baker McKenzie LLP, to advise him in connection with that process. At the time, Rodney Read (Defendant's proffered expert) was also a Switzerland-based tax lawyer at Baker McKenzie. Indeed, Mr. Read's name appears on the letterhead of communications between Smith and Berdoz. *See, e.g.,* letter dated May 30, 2011, a copy of which, with highlighting added, is attached hereto as Exhibit 4.

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

3

offshore individuals and entities were not autonomous decision-makers, bur rather took direction from Smith, either directly or through Defendant.

Thus, the offshore trust structure Defendant created and maintained for Smith was designed, on the one hand, to hide Smith's income, assets, and tax liabilities from the IRS by creating the appearance that Flash Holdings and Excelsior Trust were independent foreign entities such that their assets were not attributable to Smith, while, on the other hand, ensuring that Smith maintained control over those assets.

### DEFENDANT'S PROFFERED EXPERT TESTIMONY

On June 3, 2022, Defendant disclosed Rodney Read – a partner in the "Global Wealth Management Group" at Baker & McKenzie LLP – as a potential defense expert in this case. *See* letter dated June 3, 2022, a copy of which is attached hereto as Exhibit 1 (the "June 3rd Disclosure"). On July 22, 2022 (several weeks after the due date for expert disclosures, *see* Doc. 34), Defendant provided a supplemental disclosure of Mr. Read's qualifications and anticipated testimony. *See* letter dated July 22, 2022, a copy of which is attached hereto as Exhibit 2 (the "July 22nd Supplemental Disclosure"). On the same date, Defendant provided notice that it may call Mr. Read as a rebuttal expert. *See* letter dated July 22, 2022, a copy of which is attached hereto as Exhibit 3 (the "July 22nd Rebuttal Disclosure").

### ARGUMENT

#### A.   *Defendant's Expert Disclosures Are Inadequate And Untimely*

Defendants are required to provide a "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705." Fed. Crim. P. 16(b)(1)(C). The summary "must describe the witness's opinions, the bases and reason for those opinions, and the witness's qualifications." *Id.* The purpose of this rule is "to allow counsel to frame a *Daubert* motion (or other motion in limine), to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cerna*, No. 08-CR-00730-WHA, 2010 WL 2347406, at *1 (N.D. Cal. June 8, 2010); *see also United States v. Baras*, No. 11-CR-00523-YGR, 2014 WL 129606, at *3 (N.D. Cal. Jan.14, 2014) ("The primary purpose of Rule 16(b)(1)(C) is to prevent unfair surprise at trial and to permit the government to prepare rebuttal reports and to prepare for cross-examination at trial.").

If a party fails to comply with Rule 16, the Court may, *inter alia*, "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). "Exclusion is an appropriate

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

4

remedy for a discovery rule violation only where 'the *omission* was willful and motivated by a desire to obtain a tactical advantage.'" *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)) (emphasis added by *Finley*).  Because "'[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense,' . . . courts should use particular caution in applying the drastic remedy of excluding a witness altogether." *Id.* (quoting *Taylor*, 484 U.S. at 408).  However, the Court has broad discretion to enforce its own scheduling orders, and arguably need not find willfulness before excluding expert witnesses based on the timeliness of disclosure, rather than as a sanction for a Rule 16 violation. *See United States v. Ornelas*, 906 F.3d 1138, 1150-51 & n.14 & 15 (9th Cir. 2018) (affirming exclusion of expert testimony in the absence of a "willful and blatant" discovery violation where the exclusion was not a sanction, but rather simply an enforcement of the court's pretrial order setting disclosure deadlines) (citing *United States v. W.R. Grace*, 526 F.3d 499, 514-15 (9th Cir. 2008) and distinguishing *Finley*); *Baras*, 2014 WL 129606, at *3 ("Because Dr. Victor did not timely provide the Government a proper summary of his expert opinion, including all the bases and reasons for his opinion, the Court finds that exclusion of this portion of his testimony is appropriate.").

Here, the government requested a written summary of any expert testimony Defendant intends to call at trial, which the government provided.  Accordingly, Defendant was required to provide a written summary of any anticipated expert testimony under Rule 16(b)(1)(C), and those summaries were due no later than July 5, 2022.  *See* Doc. # 34.  Defendant has provided three separate disclosures of Mr. Read's anticipated testimony, but none of them satisfy Rule 16(b)(1)(C) because none of them disclose Mr. Read's actual opinions, much less the bases and reason for those opinions.

The June 3rd Disclosure states that Mr. Read "will offer expert testimony concerning foreign asset protection trusts and foreign non-grantor trusts, including but not limited to" certain subtopics.  Taken literally, this disclosure suggests Mr. Read would like to deliver a lecture on the taxation of offshore assets to the jury.  The disclosure does not indicate whether Mr. Read will offer any opinions, identify or describe those opinions, or describe their basis.

The July 22nd Supplemental Disclosure is no better.  It states that Mr. Read may opine about industry practices regarding foreign trusts, and the rules and regulations surrounding such trusts,

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

5

including (without limitation) several opinions regarding whether certain practices are common or permissible. The July 22nd Supplemental Disclosure also: States that Mr. Read may explain the differences and similarities between different kinds of trusts, but it does not describe the differences and similarities at issue or the opinions Mr. Read proposes to offer about them; states that Mr. Read may opine on the regulations governing trusts, but it does not describe the regulations at issue or Mr. Read's opinions of them; and states that Mr. Read may opine on Defendant's own statements about foreign trusts,[2] but it does not describe the statements at issue or Mr. Read's opinions of them.

The July 22nd Rebuttal Disclosure is also inadequate. On June 3, 2022, the government disclosed a proposed expert witness, Bruce Dubinsky, to Defendant by way of a 136-page report. In response, the July 22nd Rebuttal Disclosure purports to identify topics upon which Mr. Read may offer opinions, including the purpose, operation, and validity of foreign trusts. Again however, Defendant makes no efforts to identify the actual opinions Mr. Read is expected to offer. It simply is not helpful to know that Mr. Read, for instance, "may opine on the validity of the foreign non-grantor trust structure established with the Excelsior Trust" without knowing what his opinion is, and what it is based on.

In sum, while the disclosures describe Mr. Read's experience as a tax attorney and indicate general subjects upon which he might offer opinions, they shed no genuine light on the actual substance of his anticipated testimony, much less the basis for that proposed testimony. This is simply inadequate. *See, e.g., United States v. Valdez*, 18-cr-00608-JD, 2019 WL 539074, at * 2-3 (N.D. Cal. Feb. 11, 2019) ("[The descriptions of proposed expert's expected testimony] are mere generalities. They do not state what the substance of [expert's] testimony will be. For example, the letter states that [expert] will 'explain the methods used,' but nowhere does the government actually inform the defendant what those

---

[2] This proposed topic is particularly troubling because, while experts may be permitted to rely on hearsay under Fed. R. Evid. 703, courts are properly reluctant to allow criminal defendants to put their own hearsay statements before the jury (without taking the stand themselves) through expert testimony. *See, e.g., United States v. Shafi*, 15-cr-00582-WHO, 2018 WL 3159769, at * 5 (N.D. Cal. June 28, 2018) ("My concern is that [expert] wants to tell the jury what [defendant] has told him about his motives and beliefs. An expert may not serve 'simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.' *Owens v. Republic of Sudan*, 864 F.3d 751, 789 (D.C. Cir. 2017) (internal quotations omitted); *see* Fed. R. Evid. 703. There would be no effective way to cross-examine [expert] on these conversations and his resulting opinion, and no way to rebut it if [defendant] invokes his constitutional right not to testify. For this reason, mental state testimony on [defendant's] actual opinions and conduct is inadmissible if it is based on conversations that [expert] had with [defendant].").

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

6

methods were."); *see also United States v. Duval*, 272 F.3d 825, 828 (7th Cir. 2001) (government's notice was inadequate because it "provided a list of the general subject matters to be covered, but did not identify what opinion the expert would offer on those subjects."); *Cerna*, 2010 WL 2347406, at *4 (finding expert disclosures inadequate where they "did not provide any indication of the [expert's] actual opinions regarding the[ ] subjects, much less any bases and reasons.").

Accordingly, since Defendant has failed to make a timely, adequate disclosure of Mr. Read's anticipated expert testimony in accordance with the Court's scheduling order and the Federal Rules of Criminal Procedure, the government respectfully moves the Court for an order excluding Mr. Read as an expert witness at trial.

### B.   *To The Extent Mr. Read's Opinions Are Discernable, They Are Improper*

To the extent the Court is inclined to evaluate the propriety of Mr. Read's opinions despite the inadequate disclosure thereof, those opinions should be excluded because they are improper. The Federal Rules of Evidence assign district courts the "gatekeeping" responsibility of deciding the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597-98 (1993). "The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Id*. at 589. Federal Rule of Evidence 702 delineates several admissibility requirements designed to ensure that proposed expert testimony is both relevant and reliable before it is presented to the jury. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 137 (1999). Reliability is safeguarded by Rule 702(a)'s "helpfulness standard," which requires expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591-92.

Expert witnesses are not permitted to offer opinions consisting of their interpretation of the law. *See Hangarter v. Provident Life and Acc. Ins. Co*., 373 F.3d 998, 1018 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002), *overruled on other grounds by Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014)); *see also Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996). "[I]instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. V. Cass Info. Sys., Inc*., 523, F.3d 1051, 1058-59 (9th Cir. 2008); *see also United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The only

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

7

legal expert in a federal courtroom is the judge."); *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993); *CZ Services, Inc. v. Express Scripts Holding Co.*, 3:18-cv-04217-JD, 2020 WL 4518978, at *2 (N.D. Cal. Aug. 5, 2020) ("[L]egal opinions are not the proper subject of expert testimony. *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017). An expert may not give opinions that are legal conclusions, *United States v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015), or attempt to advise the jury on the law, *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046-47 (9th Cir. 2013).").

In at least one criminal tax case, the Ninth Circuit approved expert testimony about the law where "the theory of the defense [was] that there [was] a good faith dispute as to the interpretation of the tax laws." *See United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980) (citing *United States v. Garber*, 607 F.2d 92 (5th Cir. 1979) (distinguished by *United States v. Burton*, 737 F.2d 439, 444 (5th Cir. 1984)). But that does not mean that legal evidence is automatically admissible in all criminal tax trials. To the contrary, courts regularly exclude legal experts in criminal tax cases. *See, e.g., United States v. Boulware*, 558 F.3d 971, 974-75 (9th Cir. 2009) (affirming exclusion of expert testimony that specific "corporate distributions were legally non-taxable" as an impermissible legal opinion); *see also United States v. Curtis*, 782 F.2d 593, 598-600 (6th Cir. 1996) (affirming exclusion of expert testimony and distinguishing *Garber*); *United States v. Harris,* 942 F.2d 1125, 1132 n.6 (7th Cir. 1991) (evidence "may include expert testimony about case law, to the extent that the defendant claims actual reliance on that case law. Case law on which the defendant did not in fact rely is irrelevant because only the defendant's subjective belief is at issue."); *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 96-97 (2d Cir. 1983) (affirming exclusion of expert testimony and distinguishing *Garber*); *United States v. Alessa*, 3:19-cr-00010, 2021 WL 4498638, at *4 (D. Nev. Sept. 30, 2021) (evidence of a conflict in the law is irrelevant if Defendant was not aware of the conflict).

Here, Mr. Read's proposed testimony must be excluded because, reading between the lines (as we must because the disclosures do not reveal Mr. Read's actual opinions), it seems likely that Mr. Read plans to testify about his understanding of the law. At best, Mr. Read's opinion that certain offshore structures are permissible or even common is tantamount to testimony that, in his opinion, Defendant's actions were legal. This is exactly the type of opinion that is prohibited under Ninth Circuit law because "'[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

8

1  decision, but rather attempts to substitute the expert's judgment for the jury's.'" *United States v. Diaz*,
2  876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).
3  And any minor probative value the proffered testimony might have would be substantially outweighed
4  by a danger of unfair prejudice, confusing the issues, and misleading the jury.

### CONCLUSION

Accordingly, the government respectfully requests that the Court exclude Mr. Read as an expert because his proposed testimony was not adequately disclosed under Fed. R. Crim. P. 16, and because his proffered opinions are improper under Fed. R. Evid. 702, and unfairly prejudicial under Fed. R. Evid. 403.

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

s/ Michael G. Pitman
COREY J. SMITH
Senior Litigation Counsel
MICHAEL G. PITMAN
Assistant United States Attorney

Attorneys for United States of America

UNITED STATES' NOTICE OF MOTION AND
MOTION TO EXCLUDE DEFENDANT'S PROFFERED
EXPERT WITNESS, RODNEY READ
Case No.: 3:21-CR-00155-JD

9