GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

Attorney for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Case No. 3:21-CR-00155-JD<br><br>**CARLOS KEPKE'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE, OR IN THE ALTERNATIVE, TO LIMIT CERTAIN OPINIONS AND TESTIMONY OF BRUCE G. DUBINSKY**<br><br>Date:       August 29, 2022<br>Time:      10:30 a.m.<br>Courtroom: 11<br>Judge:     Hon. James Donato |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**NOTICE OF MOTION**

Please take notice that on August 29, 2022, at 10:30 a.m., or as soon thereafter as the matter may be heard, Defendant Carlos E. Kepke ("Mr. Kepke") will and does hereby move to exclude certain opinions and testimony of the United States' expert, Bruce G. Dubinsky ("Mr. Dubinsky") on the grounds that portions of Mr. Dubinsky's opinion and proffered testimony are irrelevant and unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

This motion is supported by the attached Memorandum of Points and Authorities, the Declaration of Grant P. Fondo in Support of Mr. Kepke's Daubert Motion ("Fondo Decl.") and the exhibit attached thereto, all pleadings and papers which are of record and on file in this case, and such other oral and documentary evidence as may be presented at the hearing of this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On April 15, 2021, the government charged Carlos Kepke with one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371,[1] and three counts of Aiding and Assisting in the Preparation of a Materially False Income Tax Return in violation of 26 U.S.C. § 7206(2).[2] The government alleges that Mr. Kepke assisted Robert F. Smith, the founder, Chairman, and CEO of Vista Equity Partners, a private equity firm headquartered in San Francisco, in Mr. Smith's

---

[1] Conspiracy requires: (1) the existence of an agreement to either commit any offense against the United States, here tax evasion; and/or defraud the United States "by impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: to wit income taxes"; (2) a defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in the furtherance of the conspiracy. *See* 18 U.S.C. § 371.

Tax evasion requires: (1) the existence of a tax deficiency; (2) an affirmative act constituting evasion or attempted evasion of tax—"any conduct, the likely effect of which would be to mislead or to conceal"; and (3) willfulness in the attempted evasion of taxes. 26 U.S.C. § 7201.

[2] Aiding and abetting requires: (1) the defendant associated with the criminal venture; (2) the defendant knowingly participated in the venture; and (3) the defendant sought by his actions to make the venture succeed. 18 U.S.C. § 2.

efforts to evade paying his personal income taxes and in filing materially false income tax returns for the years 2012, 2013 and 2014.

In support of its claims, the government seeks to introduce the expert testimony of a forensic accounting, tax, and fraud investigations advisor, Bruce G. Dubinsky. The Court should exclude, or in the alternative significantly limit, substantial portions of the opinions and testimony offered in the Expert Report of Bruce G. Dubinsky, dated July 11, 2022 (the "Dubinsky Report").[3] Although Mr. Dubinsky may be qualified to provide expert testimony regarding forensic accounting, damages, or fraud topics, he is not qualified to opine on the proper role of individual and entities for foreign grantor and/or non-grantor trusts under U.S. law, as he has no formal legal training or experience establishing or maintaining these sorts of legal entities. Moreover, the Dubinsky Report is replete with purported expert opinions on legal conclusions and factual findings—all of which the Court must exclude.

## II.  FACTUAL BACKGROUND

Mr. Kepke is an 83-year old retired tax attorney who is a long-term resident of Houston, Texas. Prior to retirement, Mr. Kepke's law practice focused on the creation of and use of foreign asset protection and foreign non-grantor trusts ("offshore structures") for clients. In or around March 2000, Mr. Smith approached Mr. Kepke because of his expertise in creating and using offshore structures. Mr. Smith directed Mr. Kepke and specifically ███████████████ an offshore Belizean trust—the Excelsior Trust. ███████████████

On June 3, 2022, the government served and filed a "Notice of Intent to Offer Expert Testimony and Summaries of Voluminous Evidence" of Mr. Dubinsky. *See* ECF No. 45. The government also provided Mr. Kepke's counsel with a draft of the Dubinsky Report. Mr. Dubinsky intends to opine, *inter alia*: (1) that Mr. Smith caused the formation of, and controlled, an elaborately complex network of offshore entities in known tax havens and which engaged in a series of transactions that were designed to obfuscate their existence and, ultimately, defeat taxation of the gains of the Excelsior Trust; (2) Mr. Smith's transactions involving transfers of money and

---

[3] Attached hereto as Exhibit 1 to the Fondo Decl.

other property to his offshore-controlled entities lacked true economic substance; (3) Excelsior Trust, an offshore Belizean trust that Mr. Smith caused to be formed in March 2000, was purportedly established as a non-grantor trust, but in reality, was a grantor trust, controlled in all material respects by Mr. Smith; and (4) by excluding income from Excelsior Trust, Mr. Smith's original U.S. federal income tax filings from 2010-2014 were false and misleading.

Mr. Dubinsky is a senior advisor in the Governance and Risk Advisory business unit at Kroll, LLC. His practice "places special emphasis on providing forensic accounting, fraud investigations and dispute analysis" to a variety of clients, including governmental agencies, law enforcement bodies, and self-regulatory organizations. *See id*. Mr. Dubinsky has earned two accounting and tax degrees, including a Bachelor of Science degree in Accounting and Master's degree in Taxation. He also holds licenses and certifications in the accounting, forensics, and valuations fields. For example, he is a Certified Public Accountant ("CPA"), Certified Fraud Examiner ("CFE"), and Certified Valuation Analyst ("CVA"). *See* Dubinsky Report, Appendix A. Additionally, Mr. Dubinsky has been qualified and testified as an expert witness in numerous cases in federal and state courts and other tribunals in a variety of forensic accounting, fraud investigations, damages and valuations, taxation, and accounting areas. *Id.* According to Mr. Dubinsky's curriculum vitae, he has provided testimony as an expert witness over "100 times and has testified in over 70 trials." *Id.*

Mr. Dubinsky's expertise, in plain terms, is in "following the money." Notably absent from Mr. Dubinsky's lengthy resume, however, is any indication that he has special knowledge, experience, or expertise related to the operation or creation of offshore structures from a legal perspective, including any professional or personal experience establishing or maintaining these legal entities. *See id.* Mr. Dubinsky is not an attorney, nor has he ever attended law school, or received any formal legal training. Mr. Dubinsky's testimonial record is also devoid of any expertise or experience regarding the legality, operation, formation, or use of offshore structures, including trusts. *See id.*

### III. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence empowers district court judges to act as "gatekeep[ers]" of expert testimony to ensure that it is both relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993). The trial judge "may exclude testimony that falls short of achieving either end." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (internal quotes omitted). A court must first determine whether a witness is "qualified as an expert by [his] knowledge, skill, experience, training, or education." Fed. R. Evid. 702. If the expert is deemed qualified, that expert may only testify: (i) if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (ii) "the testimony is based on sufficient facts or data;" (iii) "the testimony is the product of reliable principles and methods;" and (iv) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* "Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002).

As the party offering the expert opinions, the government bears the burden of establishing its admissibility. *Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1154. (9th Cir. 2012). And it must establish the Rule 702 requirements by a preponderance of the evidence. *Daubert*, 509 U.S. at 601 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

### IV. ARGUMENT

#### A. Mr. Dubinsky is an Accounting and Tax Professional Who is Not Qualified to Opine on the Legality of Offshore Structures

As noted above, Mr. Dubinsky is a forensic accounting, fraud investigations, and damages advisor who could potentially provide expert testimony regarding those topics. But he is not, as proffered by the government, qualified to provide expert opinions on the legality, establishment, and operation of offshore structures, including on the roles of individuals and entities within these structures. To qualify as an expert, a witness must have "knowledge, skill, experience, training, or education" that is relevant to the subject matter of their proposed testimony. Fed. R. Evid. 702. As

1  explained by *Daubert,* the Rule "requires a valid . . . connection to the pertinent inquiry as a
2  precondition to admissibility." *Id.* at 592. In other words, the trial judge must determine whether
3  the expert testimony has "a reliable basis in the knowledge and experience of [the relevant]
4  discipline." *Id.*

5        Courts often exclude opinions from individuals who may have the proper qualifications and
6  experience to provide expert testimony on certain topics, but are unqualified to opine on areas
7  outside of their expertise. For example, in *Banga v. Kanios*, the court concluded that a medical
8  doctor was qualified to opine on plaintiff's mental health condition, but he was not allowed to
9  "opine on whether an accommodation is reasonable as a matter of law" because he had not
10 "provided any documentation suggesting that he has any special training in ADA law." No. 16-cv-
11 04270, 2020 WL 9037179, at *2 (N.D. Cal. Dec. 9, 2020); *see Lucido Grasshopper House, LLC v.*
12 *Clean and Sober Media LLC*, No. 2:18-cv-00923, 2019 WL 12074086, at *4 (C.D. Cal. July 1,
13 2019) (expert "highly qualified in the field of addiction medicine and clinical toxicology" not
14 qualified to opine on advertising campaigns and mental state of patients).

15       Similarly, in *Jinro Am., Inc. v. Secure Invs., Inc.* 266 F.3d 993, 1005 (9th Cir. 2001), the
16 Ninth Circuit excluded testimony from a purported expert on Korean business cultures and
17 practices because "his qualifications to render such opinion testimony were glaringly inadequate."
18 Specifically, "[h]e did not have the legal, business or financial expertise to evaluate the substance
19 of the [financial] transaction." *Id.* at 1006. While acknowledging that the purported expert might
20 have been qualified to testify on certain topics," *id.,* the *Jinro* court concluded that he "had no
21 education or training as a cultural expert generally, or as an expert on Korean culture specifically.
22 He was not a trained sociologist or anthropologist." *Id.*

23       Here, Mr. Dubinsky provides several opinions that lack any reliable foundation based on
24 his personal experience and expertise. For example, citing no factual or legal authority, Mr.
25 Dubinsky opines on what a trustee of a foreign non-grantor trust **should have been doing**. He states
26 that: ▮
27 ▮
28

1 ▓▓▓▓▓▓▓▓▓▓ He likewise offers his opinion on the proper structure for a foreign non-grantor
2 trust, stating that a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Citing only an online legal dictionary and marketing materials
6 posted by an attorney to the LexisNexis News Room, Mr. Dubinsky further opines on the "proper"
7 role of a trust protector within a foreign non-grantor trust: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[4] Mr. Dubinsky goes on to assert, again citing no
11 authority, that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Later in his Report, Mr. Dubinsky wades
13 into the realm of estate planning expertise, when he blithely opines that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17    None of these opinions derive from Mr. Dubinsky's stated expertise in "forensic accounting,
18 fraud investigations, and dispute analysis services." *See id.* at ¶ 2. Instead, he proffers expert
19 opinions on the "proper" legal role and authority of individuals and entities (*e.g.*, trustees and trust
20 protectors) for offshore structures or "legitimate" estate planning, citing nothing more than an
21 online dictionary and marketing materials (when he cites any authority at all). Nothing in his
22 professional background suggests that Mr. Dubinsky has the requisite "knowledge, skill,
23 experience, training, or education" to provide expert opinions on these topics. If simply spending
24 a few hours on the Internet looking into a topic transforms someone into an expert on that topic,

---

[4] Mr. Dubinsky also states that the trust protector of a foreign non-grantor trust cannot be the settlor, beneficiary, or trustee: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

then *Daubert* has no real gatekeeper function. As noted above, Mr. Dubinsky does not have a law degree. He has zero formal training, education, or experience related to the operation or maintenance of offshore structures, including an attorney's role in the creation, operation, or running of these trusts. *See id.* at ¶ 5 (stating qualifications in forensic accounting, fraud investigations, damages, valuations, investments, etc.). Simply put, Mr. Dubinsky is not qualified to offer expert opinions on estate planning, offshore trusts, or the legal roles of individuals and entities within the foreign non-grantor trust structure (*e.g.*, the role of a trustee vs. trust protector). Thus, the Court should exclude the opinions in Paragraphs 46, 55, 176, 178, 180, 190, and 191 of the Dubinsky Report.

### B. The Court Should Exclude Mr. Dubinsky's Legal Conclusions and Ultimate Findings of Fact that Improperly Invade the Province of the Jury

#### 1. Mr. Dubinsky Improperly Offers Legal Conclusions as Expert Opinions

The Court must also exclude Mr. Dubinsky's purported expert opinion on a legal conclusion central to the government's case, *i.e.*, whether the Excelsior Trust was a grantor or non-grantor trust. Not only is he not qualified to make such an assertion, the Ninth Circuit has made it clear that experts cannot "give an opinion as to [their] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original). "'When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Navarro et al. v. Hamilton et al.*, No. 5:16-CV-1856, 2019 WL 351873, at *2 (C.D. Cal. Jan. 28, 2019) (citation omitted).

For instance, in *United States v. Boulware*, the Ninth Circuit excluded testimony from an expert testimony who sought to "testify that the corporate distributions were legally non-taxable, either because they were loans, monies placed in trust, or returns of capital." 558 F.3d 971, 975 (9th Cir. 2009). Similarly, in *Risto v. Screen Actors Guild-Am. Fed. of Television and Radio Artists, et al.*, the court excluded proffered expert testimony that the relevant agreement "was not an arms-length transaction" and that a certain fee assessment appeared to contravene "normative law on tax-exempt entities." No. 2:18-cv-07241, 2021 WL 4143242, at *8 (C.D. Cal. July 19, 2021). There,

the court held that the expert's analysis improperly invaded "the province of the Court by drawing impermissible legal conclusions concerning the proper construction of laws and the appropriate application of the law to the facts of this case." *Id.*

Here, Mr. Dubinsky summarily concludes that the Excelsior Trust was a non-grantor trust, devoting his entire "Expert Opinion #3" to this conclusion. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In support of that opinion, he concludes that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ He repeats this legal conclusion elsewhere in the Report: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ While the government can certainly make arguments regarding Smith's level of control over certain entities, or the legal status of the Excelsior Trust at trial, it cannot proffer testimony by Mr. Dubinsky that "attempts to substitute [his] judgment for the jury's" on that ultimate issue of law. *See Navarro et al.*, 2019 WL 351873, at *2. Accordingly, the Court should exclude Expert Opinion #3 (and any related opinions) from the Dubinsky Report in its entirety.

### 2. Mr. Dubinsky Improperly Couches the Government's Factual Allegations As Expert Opinions

The Court should similarly exclude portions of the Dubinsky Report that improperly characterize factual "findings" as expert opinions. "Expert testimony should be excluded 'if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury.'" *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012). "Experts may not 'tell the jury what result to reach' and substitute their judgment for that of the jury." *Banga*, 2020 WL 9037179, at *3. In *Banga*, the court excluded expert testimony from a medical doctor that included "factual inferences presented as conclusions" because the expert "may not serve as a narrator and is prohibited from relaying Defendants' factual position as if it were his expert one." *Id.*

The Dubinsky Report is replete with factual characterizations or inferences that are couched as expert opinions. For example, Mr. Dubinsky proffers the highly prejudicial opinion that Mr. Kepke acted ███████████████████████████████ And he will purportedly "explain to the jury" how "evidence in the record shows" Mr. Kepke acted as Mr. Smith's "disguised alter ego."[5]  Such inflammatory language from a purported expert witness is plainly improper and "does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *See Banga*, 2020 WL 9037179, at *3.

Mr. Dubinsky likewise offers opinions characterizing and interpreting facts related to the intent of Mr. Smith's actions that improperly usurp the jury's fact-finding role. For instance, he opines that: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████, and that the offshore trust █████ ████████████████████████████████████████ In other words, Mr. Dubinsky proffers as "expert opinion" his belief that the facts conclusively establish that Mr. Smith intended to avoid taxes through his offshore structures.

There are several other examples of Mr. Dubinsky improperly presenting factual characterizations as expert opinions, including:

- That Mr. Kepke's papering of the Excelsior Trust's was ████████ Mr. Smith's actions: ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████

- That the Excelsior Trust was ████████████████ for Mr. Smith to exercise his ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████

---

[5] ECF No. 45 at 6 ("Mr. Dubinsky will also explain to the jury how evidence in the record shows Smith used Kepke as his disguised alter ego . . . .").

None of these opinions are permissible expert testimony as it is ultimately the province of the jury—not of Mr. Dubinsky— to interpret the evidence and decide whether to agree with the government's factual arguments regarding Mr. Smith's intent and Mr. Kepke's actions. Thus, the Court should exclude the opinions in Paragraphs 62, 178, 185, and 192 of the Dubinsky Report.

## V. CONCLUSION

For the foregoing reasons, Mr. Kepke respectfully requests that the Court exclude, or in the alternative significantly limit, Mr. Dubinsky's proffered expert testimony to the extent that it: (a) exceeds his professional training and expertise or (b) purports to offer impermissible legal conclusions or usurp the role of the jury as the ultimate finders of fact.

Respectfully submitted,

Dated: August 5, 2022

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
**GOODWIN PROCTER LLP**

Attorney for Defendant:
CARLOS E. KEPKE

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **August 5, 2022**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **August 5, 2022** in Los Altos, California.

                                             */s/ Grant P. Fondo*
                                             GRANT P. FONDO