STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone: (408) 535-5040
Facsimile: (408) 535-5081
Email: michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
United States Department of Justice
Telephone: (202)514-5230
Email: corey.smith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Criminal No. 3:21-CR-00155-JD<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT OPINIONS AND TESTIMONY OF BRUCE G. DUBINSKY<br><br>Hearing.: October 17, 2022<br>Time: 10:30 a.m.<br>Place: Courtroom 11, 19th Floor |

The Court should deny Defendant's Motion to Exclude or Limit Opinions and Testimony of Bruce G. Dubinsky ("Motion to Exclude"), ECF No. 63.

**I.   Mr. Dubinsky has testified as an expert in dozens of cases involving fraud and tax issues, including abusive tax shelters, and he is qualified to do so in this case.**

Mr. Dubinsky is a leading fraud, accounting, and tax expert who has testified in some of the largest and most complex white-collar cases in U.S. history. *See* Dubinsky CV, ECF No. 45 at 13-15. By his estimation, Mr. Dubinsky has testified as an expert over 70 times, including in 20 cases involving alleged fraudulent tax shelters. *Id.* at 12, 15. Mr. Dubinsky's report breaks down the formation of

1  Excelsior Trust, the offshore trust structure designed by Defendant for the benefit for his client, Robert
2  F. Smith. Mr. Dubinsky opines that while Excelsior Trust may have been a Belizean, non-grantor trust
3  on paper, Smith and Defendant disregarded its form. In practice, Smith had unfettered control of the
4  assets placed into the Trust, and any transfer of assets in or out of the Trust lacked economic substance.[1]

A transaction shall be treated as having economic substance when (1) the transaction changes the taxpayer's economic position in a meaningful way *and* (2) the taxpayer has a substantial purpose (other than federal income tax effects) for entering into the transaction. 26 U.S.C. § 7701(o)(1). Mr. Dubinsky's expected testimony regarding control of Excelsior Trust and its economic substance (or lack thereof) will assist the jury in applying the facts of this case to the applicable law. A transaction, or series of transactions, that lack economic substance is disregarded for federal income tax purposes, and the taxation of any resulting income follows the taxpayers who exercise actual control over the income in question. *See Gregory v. Helvering*, 293 U.S. 465, 469 (1935) (taxation follows substance of transaction, not its form); *United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007) (expert testimony that defendants' structures and transactions were "shams" did "not address a legal conclusion," and was properly admitted); *United States v. Wade*, 203 F. App'x 920, 930-31 (10th Cir. 2006) (expert testimony that defendant's trusts were "grantor trusts" and "shams" was properly admitted); *Maguire Partners-Master Ins., LLC v. United States*, No. CV-06-07371, 2009 WL 4907033, at *13 (C.D. Cal. Dec. 11, 2009) (relying on "persuasive" expert testimony that a set of options transaction were "economic shams[,] . . . should be disregarded under the prevailing economic substance doctrine, and are without effect for purposes of federal taxation").

Expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

---

[1] *See generally* Joseph Bankman, *The Economic Substance Doctrine*, 74 S. Cal. L. Rev. 5 (2000).

*City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014); Fed. R. Evid. 702. The Court "is not tasked with deciding whether [Mr. Dubinsky] is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

Defendant concedes that Mr. Dubinsky is "potentially" qualified to testify on matters involving "forensic accounting, fraud investigations, and damages," Motion to Exclude, ECF No. 63 at 4. But he is not, Defendant claims, qualified to testify about the formation or operation of offshore trusts, including the "legality" of such structures. First, Mr. Dubinsky has not offered to testify on the legality of anything. His analysis presumes that Excelsior Trust and Flash Holdings were created under the laws of Belize and Nevis, respectively. *See* ECF No. 45 at 4 n.3, 5 n.6. Second, Defendant misses the key point: the transactions and actions taken by Smith and Defendant reveal that, in practice, Excelsior was controlled in all materials respects by Smith. *Id.* at 5-6. In order words, Mr. Dubinsky will walk the jury through how Defendant and Smith exercised unfettered control over Excelsior Trust, in complete disregard of its form, in order to obscure a series of substantial financial transactions and shield Smith's assets and income from U.S. tax authorities.

Incredibly, Defendant argues that Mr. Dubinsky's opinions "lack any reliable foundation based on his personal expertise and experience." Motion to Exclude, ECF No. 63 at 5. This is meritless. To begin with, the standard for whether an expert is qualified by their knowledge, skill, experience, training, or education under Rule 702 is broad. *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) ("The inquiry is flexible and Rule 702 should be applied with a liberal thrust favoring admission." (cleaned up)); *Thomas v. Newton Intern. Enter.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (stating that "Rule 702 is broadly phrased and intended to embrace more than a narrow definition of a qualified expert" and that excluding testimony of a 29-year longshoreman to testify about the "working conditions of experienced longshore personnel" was an abuse of discretion.). The Ninth Circuit permits testimony from even those experts who have general knowledge of the subjects at issue in a case. *See United States v. Laurienti*, 611 F.3d 530, 548 (9th Cir. 2010) (district court erred in limiting testimony

of an expert in securities fraud case in which expert "had little experience with the types of stocks at issue in this case" stating that "those facts do not undermine his general knowledge . . . of the industry as a whole.").

Defendant claims that Mr. Dubinsky lacks sufficient expertise on the day-to-day responsibilities of various trust officers and challenges Mr. Dubinsky's explanation of the role of Trust Protector. Condescendingly, Defendant summarizes Mr. Dubinsky's expertise as "spending a few hours on the Internet." That remark notwithstanding, Mr. Dubinsky is expected to testify that Smith was both a beneficiary of Excelsior Trust and a "Trust Protector." ECF No. 45 at 8. Mr. Dubinsky "will opine that despite serving only as a trust protector of Excelsior Trust, and not as the Trustee empowered with such duties, it was Smith who made all material . . . decisions." ECF No. 45 at 8. In his report, Mr. Dubinsky cited an online version of Black's Law Dictionary *and the trust indenture for Excelsior Trust.*[2] *See* Dubinsky Rpt. at ¶ 46 n.89-90. Mr. Dubinsky explicitly relied on Excelsior Trust's formation documents to define the day-to-day roles of its officers.

Mr. Dubinsky's CV speaks for itself—he has far more than a passing, general familiarity with the issues in this case. He has been consistently qualified as an expert in some of the most complex white-collar matters in U.S. history. Notably, Mr. Dubinsky was qualified as a testifying expert by the Trustee of the Substantively Consolidated SIPA Liquidation of Bernard L. Madeoff Investment Securities LLC and Bernard L. Madeoff. Of course, Madeoff orchestrated one of the largest Ponzi schemes in U.S. history. Mr. Dubinsky was hired as an expert to aid those responsible for liquidating Madeoff's assets for the benefit of his victims. The court in that matter had no qualms about Mr. Dubinsky's qualification to testify regarding complex topics. *See Sec. Inv. Prot. Corp. v. Bernard L. Madeoff Inv. Sec. LLC*, 610 B.R. 197, 210-212 (Bankr. S.D.N.Y. 2019) (finding Dubinsky to be "an expert in the areas of forensic accounting, fraud examinations, computer forensics, solvency and business valuations, and investment theory and practices"). Mr. Dubinsky also testified in the complex, $1.5 billion

---

[2] Mr. Dubinsky's report was previously filed under seal by Defendant. *See* ECF No. 63-2.

bankruptcy of Samuel and Caroline Wyly, which involved allegations of an "elaborate off-shore trust and corporate structure utilized by [the Wylys]." ECF No. 45 at 14. Here, Mr. Dubinsky's unchallenged expertise in forensic accounting makes him more than qualified to testify about who, in his opinion, actually controlled the entities in this case and directed transactions that generated hundreds of millions in unreported taxable income.

The caselaw cited by Defendant is not helpful and deals with markedly different facts. In *Banga v. Kanios*, the district court determined that a medical doctor was not, by virtue of his role as a physician, qualified to provide an opinion on the ADA's reasonableness standard. No. 14-cv-04270-RS, 2020 WL 9037179 (N.D. Cal Dec. 9, 2020). Moreover, that witness went beyond the scope of his retainer—the offering party agreed that they "never intended to allow [the expert witness] to opine on [the ADA]." *Id.* at *2. Similarly, Defendant glossed over the facts of *Lucido Grasshopper House, LLC v. Clean and Sober Media LLC*, No. 2:18-cv-00923, 2019 WL 12074086 (C.D. Cal. July 1, 2019). In *Lucido*, a toxicology expert was qualified to testify about the various treatment options for addiction but was barred from opining on how advertisements of those treatments would affect the mental state of an addict. *See id.* at *4. Finally, Defendant cites a case involving a dubious witness who claimed to be an expert on Korean business practices based on "his 'hobby' of studying Korean business practices, unspecified input from his office staff and his marriage to a Korean woman." *Jinro Am. Inc. v. Sec. Invs., Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001). Not surprisingly, Defendant has cited no authority suggesting that a forensic accounting and fraud expert cannot testify about the purported roles and responsibilities of the individuals operating the entity perpetuating an alleged fraud.

Mr. Dubinsky is a leading expert forensic accountant and fraud examiner who has worked on at least 20 cases involving fraudulent tax shelters. He is more than qualified to testify regarding the issues in this case, including on the roles of the various officers of Excelsior Trust. Mr. Dubinsky arrived at his conclusions based on his experience and review of the evidence in this case, including Excelsior Trust's formation documents, Smith's financial records, bank records, and communications between Smitha and Defendant. Thus, his experience and

background satisfy the broad standard under Rule 702.

## II.  Mr. Dubinsky has not offered to testify as to any legal conclusion or the ultimate issues in this case.

Experts may not give opinions in the form of legal conclusions; interpret legal regulations, rules, or statutes; or otherwise instruct the jury on the law. *See, e.g.*, *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017); *United States v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015); *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046-47 (9th Cir. 2013); *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004). Mr. Dubinsky's report does no such thing—Defendant's argument is based on a complete misunderstanding of the testimony that Mr. Dubinsky would offer.

Mr. Dubinsky's report only offers factual opinions. *See generally*, Rule 16(b)(1)(C) Notice, ECF No. 45. He will not, as Defendant claims, tell the jury that Excelsior Trust was a grantor trust as a matter of law. Indeed, Mr. Dubinsky's analysis *presumes* that Excelsior Trust, Flash Holdings, and other entities formed by Defendant and Smith were properly established under the laws of their respective jurisdictions. The documents say one thing, but Defendant and Smith's actions tell a different story. Mr. Dubinsky's report reveals that while Excelsior Trust may have been established as a Belizean non-grantor trust, Smith held exclusive control over the trust assets and used them for personal benefits as he saw fit. Excelsior Trust was a non-grantor trust on paper but functioned as a grantor trust in practice.

Defendant's reliance on *Boulware* is wrong. In *Boulware*, the court excluded expert testimony on the ultimate issue in the case *i.e.*, whether the corporate distributions at issue were legally non-taxable. 558 F.3d 971, 975 (9th Cir. 2009). Mr. Dubinsky's report is not seeking to answer whether Excelsior Trust is a proper non-grantor trust under U.S. or Belizean law; his testimony will address the question of who controlled Excelsior Trust's and the substantive decisions related to the dispositions of its assets.[3] Expert testimony on the control of a nominee entity is proper. *See, e.g.*, *Moran*, 493 F.3d at 1009 (9th Cir. 2007) (expert witness calling an

---

[3] In contrast, Rodney Read, Defendant's proffered expert, seeks to opine "on the validity of the foreign non-grantor trust structure established with the Excelsior Trust." *See* ECF Nos. 61 at 6, 8; 61-2. The court in *Boulware* found this kind of testimony to be improper.

entity a "sham" was not an improper legal conclusion); *Leeds LP v. United States*, No. 08CV100 BTM, 2010 WL 3911429, at *1 (S.D. Cal. Oct. 5, 2010) (admitting expert testimony "on the formation, structure, and use of trusts and limited partnerships in business and family settings").

Mr. Dubinsky's report focuses on the control of the Excelsior Trust. His testimony will aid the jury to determine whether Smith, or an independent Trustee, maintained control of Excelsior. This is prototypical expert testimony, and it should not be excluded.

### III. Mr. Dubinsky makes appropriate factual characterizations that Defendant can scrutinize on cross-examination.

The jury must decide (1) whether Smith and Defendant entered into a conspiracy to defraud the IRS and (2) whether Defendant aided in preparing false tax returns on behalf of Smith. Mr. Dubinsky does not tell the jury how to answer either of those questions. His report distills complicated topics and voluminous factual information into digestible conclusions that the jury can contemplate and weigh against all other testimony and evidence presented at trial. *See United States v. Saini*, 23 F.4th 1155, 1166 (9th Cir. 2022) (testimony on how "thieves can easily obtain personal information on the dark web and how that information can be used to gain access to credit card accounts" was proper expert testimony); *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888-89 (9th Cir. 2014) (allowing testimony that a business was a pyramid scheme); *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1071-72 (9th Cir. 2011) (allowing expert testimony about behavior of drug couriers in other drug trafficking organization in other separate trafficking cases); *Maguire Partners-Master*, 2009 WL 4907033, at *13.

Again, the cases cited by Defendant are not helpful. Citing *Banga,* Defendant points out that the court excluded "factual inferences presented as conclusions." *Banga*, 2020 WL 9037179, at *3. But the four-page opinion in *Banga* does not explain what those conclusions are. The court ultimately excludes "three questions enumerated [in the expert report], which present inappropriate legal and factual findings." *Id.* Without knowing what was in the expert report, however, there is no way to apply the ruling in *Banga* to this case.

In any case, Mr. Dubinsky's report does what it should: explain a series of complex transactions run through a vast web of entities in a way that a jury can understand. In doing so,

he naturally analyzes and interprets certain facts. Mr. Dubinsky concludes that Smith caused the formation and then controlled a complex network of offshore entities in known tax havens. ECF No. 45 at 5-7. He points out that Defendant maintained this network at Smith's instruction; whether that makes Defendant a "shill" is fodder for cross-examination. *See Moran*, 493 F.3d at 1009 (expert calling an entity a "sham" was a fair characterization for the jury to weigh against other evidence). The jury will decide whether it agrees with Mr. Dubinsky's characterizations and conclusions.

## IV. Conclusion

For the reasons stated above, the Court should deny Defendant's motion to exclude or limit the testimony of Bruce Dubinsky. As a leading forensic accountant, Mr. Dubinsky is uniquely qualified to review and analyze complex sets of financial transactions, and, using his expertise, opine on who ultimately controlled and directed those transactions: Robert F. Smith (with Defendant's help) or a Trustee. This is not, as alleged, a legal opinion or conclusion—it is proper expert testimony presented to assist the jury.

Respectfully submitted on August 19, 2022,

        STEPHANIE M. HINDS
        United States Attorney

        *s/ Corey J. Smith*
        COREY J. SMITH
        Senior Litigation Counsel, Tax Division
        MICHAEL G. PITMAN
        Assistant United States Attorney
        BORIS BOURGET
        Trial Attorney, Tax Division

        Attorneys for United States of America