GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA  94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

Attorney for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>CARLOS E. KEPKE,<br><br>                    Defendant. | Case No. 3:21-CR-00155-JD<br><br>**OPPOSITION TO MOTION TO EXCLUDE DEFENDANT'S PROFFERED EXPERT WITNESS, RODNEY READ**<br><br>Date:         October 17, 2022<br>Time:        10:30 a.m.<br>Courtroom: 11, 19th Floor<br>Judge:       Hon. James Donato |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

III. LEGAL STANDARD ........................................................................................................... 4

IV. ARGUMENT ........................................................................................................................ 5

    A. The Defense Made Adequate, Timely Disclosures that Do Not Warrant Depriving Mr. Kepke of his Right to Present a Defense .......................................... 5

        1. The Defense's Expert Disclosures are Adequate. ....................................... 5

        2. The Defense's Expert Disclosures are Timely ............................................ 7

    B. Mr. Read's Anticipated Opinions are Proper. ........................................................... 9

V. CONCLUSION ................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................................................... 4

*Dorn v. Burlington N. Santa Fe R.R. Co.*,
397 F.3d 1183 (9th Cir. 2005) ................................................................................................ 4

*Hangarter v. Provident Life and Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ................................................................................................ 10

*Leeds LP v. United States*,
No. 08CV100 BTM (BLM), 2010 WL 3911429 (S.D. Cal. Oct. 5, 2010) ............................ 12

*Micron Chem. Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003) .............................................................................................. 4

*Taylor v. Illinois*,
484 U.S. 400 (1988) ............................................................................................................... 9

*United States v. Baras*,
No. CR 11-00523 YGR, 2014 WL 129606 (N.D. Cal. Jan. 14, 2014) .................................. 8

*United States v. Boulware*,
558 F.3d 971 (9th Cir. 2009) ................................................................................................ 11

*United States v. Cerna*,
No. 08-CR-00730-WHA, 2010 WL 2347406 (N.D. Cal. June 8, 2010) ............................ 5, 6

*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) ........................................................................................ 10, 11

*United States v. Duvall*,
272 F.3d 825 (7th Cir. 2001) ................................................................................................. 7

*United States v. Finley*,
301 F.3d 1000 (9th Cir. 2002) .......................................................................................... 9, 10

*United States v. Jackson*,
51 F.3d 646 (7th Cir. 1995) ................................................................................................... 7

*United States v. Lague*,
No. 17-cr-00150-HSG-1, 2018 WL 3429127 (N.D. Cal. July 16, 2018) ............................... 9

*United States v. Lankford*,
955 F.2d 1545 (11th Cir. 1992) ........................................................................................... 11

*United States v. Ornelas*,
  906 F.3d 1138 (9th Cir. 2018) .................................................................................................. 8

*United States v. Peters*,
  937 F.2d 1422 (9th Cir. 1991) .................................................................................................. 9

*United States v. Riddle*,
  103 F.3d 423 (5th Cir. 1997).............................................................................................. 11, 12

*United States v. Valdez*,
  18-cr-00608-JD, 2019 WL 539074 (N.D. Cal. Feb. 11, 2019)............................................. 6, 7

*United States v. W.R. Grace*,
  526 F.3d 499 (9th Cir. 2008).................................................................................................... 7

**Statutes**

18 U.S.C. § 371 ............................................................................................................................. 1

26 U.S.C. § 7206(2) ...................................................................................................................... 1

**Other Authorities**

Advisory Committee Notes to Fed. R. Evid. 702 .......................................................................... 5

David Cay Johnston, Perfectly Legal, (2005) ............................................................................... 1

Fed. R. Crim. P. 16............................................................................................................ 4, 5, 8, 9

Fed. R. Evid. 403 .......................................................................................................................... 7

Fed. R. Evid. 702 ...................................................................................................................... 4, 5

Fed. R. Evid. 703 .......................................................................................................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

The government has charged Carlos Kepke with one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 and three counts of Aiding and Assisting in the Preparation of a Material False Income Tax Return in violation of 26 U.S.C. § 7206(2).  For Mr. Kepke to be convicted, the jury must find beyond a reasonable doubt that he acted willfully.  The defense intends to call Rodney Read, an experienced tax practitioner at one of the largest and most respected law firms in the world, to testify that a reasonable practitioner in this highly complex area of law could have believed – emphasis on *could* – that the foreign non-grantor trust structure Mr. Kepke allegedly created for multi-billionaire Robert Smith (to whom the government in its unreviewable discretion, decided not to charge) was legally compliant.

Ultimately, it will be for the jurors to decide whether the government can prove willfulness beyond a reasonable doubt.  But for the government to seek to deprive Mr. Kepke of the opportunity to even present a defense would, assuming the jury were to find him guilty, be virtually guaranteed to result in an immediate reversal by the Ninth Circuit.  Indeed, it is curious, not to say ironic,[1] that the government would even bring this motion, as they cannot relish the prospect of having to try this case twice.

To present a defense on the key element the government must prove – willfulness – Mr. Kepke seeks to call an expert to explain to a jury that there is nothing unlawful *per se* about foreign non-grantor trusts.  Congress chose to allow them and, if properly set-up, they are "perfectly legal."[2] This testimony is necessary to combat the government's proffered testimony suggesting that there was something inherently nefarious about the structure that Mr. Kepke put in place for Mr. Smith—and that the government's own expert unequivocally alleges Mr. Smith abused. Without Mr. Read's testimony, the defense would have no way to explain to the jury that, among other things:

---

[1] The government's attacks on the defense disclosures regarding Mr. Read (ECF No. 64) apply with far greater force to the government's own anemic disclosures of proffered expert James Oertel.

[2] DAVID CAY JOHNSTON, PERFECTLY LEGAL, (2005).

1

OPPOSITION TO MOTION TO EXCLUDE                                                    CASE NO. 3:21-CR-00155-JD

- Foreign asset protection trusts and foreign non-grantor trusts are valid legal trust entities that reputable tax practitioners regularly establish for their clients;

- There is no legal prohibition against appointing a beneficiary to serve as the trust protector, even if that trust protector has the ability to remove and replace the trustee of a foreign trust;

- Foreign (and domestic) trustees owe a fiduciary duty to ensure that trust assets are being used exclusively for the benefit of the trust's beneficiaries and to act within the restrictions and limitations set forth in the trust instrument;

- It is not uncommon for the beneficiary of a foreign trust to request that a trustee take certain actions or execute certain transactions, and it is generally up to the trustee to review those requests and decide whether to honor or reject them;

- It is also not uncommon for an attorney to continue to use trustees with whom that attorney has established a relationship over time;

- When one of the goals of a foreign trust is to confer U.S. tax advantages, it is not uncommon for the trust to own one or more offshore corporations whose shares are held as trust assets; and

- It is not uncommon for a foreign trust to purchase an asset from a beneficiary, thereby converting that asset into an asset of the trust. Such a sale does not necessarily cause the beneficiary to become a "grantor" of the foreign trust.

Without this testimony, the jurors would have no way of knowing that every attorney who creates something called a "foreign non-grantor trust" is not, to quote Mr. Dubinsky, acting as a "shill" for his or her client. Again, defendants in criminal cases must be allowed to present a defense.

II.   **BACKGROUND**

The charges against Mr. Kepke arise from the alleged tax evasion committed by former co-defendant Robert Smith, the billionaire founder, Chairman, and CEO of private equity firm Vista Equity Partners. As described in excruciating detail in the 136-page report from the government's proffered expert Bruce Dubinsky, the allegations against Mr. Kepke stem from "a purported foreign tax avoidance scheme involving various foreign trust(s) and/or corporate

2

structures utilized by [Mr.] Smith . . . to avoid federal income taxes . . ." ECF No. 62-5, Dubinsky Report ¶ 1.  With Mr. Smith out of the case,[3] the government now seeks to assign full responsibility for his conduct to Mr. Smith's former tax attorney, Mr. Kepke.

To do that, the government proposes to call Bruce Dubinsky to testify, among other things, that "[i]n reality, Excelsior Trust was a <u>grantor</u> trust, controlled in all material respects by Robert F. Smith[,]" (ECF No. 62-5, Dubinsky Report, p. 115, § V (emphasis in original)), that Mr. Kepke acted "as a shill to do [Mr. Smith's] bidding", (*id.* at ¶ 62), and that the Excelsior Trust "served only as a means to an end—the avoidance of U.S. taxes . . . ." *Id.* at ¶ 178.  To rebut that and other testimony, Mr. Kepke seeks only to assert his fundamental right to present witnesses in his own defense, including Rodney Read, a partner in the Tax Practice Group of Baker & McKenzie LLP who regularly assists clients with the structuring and administration of trusts, the formation of tax efficient structures for investment in the United States, and the United States tax issues related to beneficiaries.[4]

Per the Court's March 3, 2022 Scheduling Order, the defense disclosed to the government Mr. Kepke's intent to call Mr. Read as an expert.  *See* Government's Daubert Motion ("Govt's Mot.", ECF No. 61), Ex. 1.  When the government raised concerns about the sufficiency of that disclosure a week later, on June 10, 2022, the defense quickly offered to set up a call to discuss the government's objections.  Declaration of Grant P. Fondo ("Fondo Decl."), ¶ 2.  During that call, which took place on June 22, 2022, Mr. Kepke's attorneys disagreed with the government's claim that its expert disclosure was insufficient and that an "expert report" was required, but nonetheless agreed to supplement its summary of Mr. Read's expected testimony.  Fondo Decl., ¶ 3.  Following that meeting, the parties agreed to re-engage at the end of July to discuss whether the government needed more time to file a *Daubert* motion.  Fondo Decl., ¶ 4.

---

[3] Press Release, The United States Department of Justice, Private Equity CEO Enters into Non-prosecution Agreement on International Tax Fraud Scheme and Agrees to Pay $139 Million, to Abandon $182 Million in Charitable Contribution Deductions, and to Cooperate with Government Investigations (Oct. 15, 2020), https://www.justice.gov/opa/pr/private-equity-ceo-enters-non-prosecution-agreement-international-tax-fraud-scheme-and-agrees.

[4] The government does not challenge Mr. Read's qualifications, so we will not belabor them here.

Without any further prompting by the government, the defense provided both a supplemental expert disclosure and rebuttal expert disclosure on July 22, 2022—a full four months before trial. *See* Govt's Mot., Exs. 2 & 3; Fondo Decl., ¶ 5. The government did not raise any further objection to those disclosures, nor did they request any additional time before filing the instant *Daubert* motion. Fondo Decl., ¶ 6.

### III. LEGAL STANDARD

The defense is required to provide the government "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial" which must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications[.]" Fed. R. Crim. P. 16(b)(1)(C).

The Court may properly admit testimony regarding "scientific, technical, or other specialized knowledge" if the testimony "will help the trier of fact to understand the evidence or to determine a fact at issue." *See* Fed. R. Evid. 702. The person providing expert testimony must possess "knowledge, skill, experience, training, or education" regarding the subject about which they propose to testify. *Id.* The expert's testimony must be (1) "based on sufficient facts or data," (2) "the product of reliable principles and methods," and (3) must demonstrate that the witness has "reliably applied the principles and methods to the facts of the case." *Id.* In short, the expert's testimony must be both "reliable" and "helpful." *Id.*; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).

While the trial court serves as a gatekeeper, its judgment is not intended to replace the adversary system. *See Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) (finding it error to bar testimony that would have discredited opposing expert's opinions concerning hedonic damages); *see also Micron Chem. Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("The Advisory Committee note further counsels that 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain the appropriate means of attacking challenged evidence. *Dorn*, 397 F.3d at 1196 (quoting

*Daubert*, 509 U.S. at 596). Accordingly, the rejection of expert testimony is the exception, not the rule. *See* Advisory Committee Notes to Fed. R. Evid. 702 (2000 Amendments).

IV. **ARGUMENT**

    A.    **The Defense Made Adequate, Timely Disclosures that Do Not Warrant Depriving Mr. Kepke of his Right to Present a Defense.**

        1.    **The Defense's Expert Disclosures are Adequate.**

The defense's expert disclosures are not only adequate, but they were also timely made. Moreover, the government cannot point to any bad faith on the part of the defense that would warrant the exclusion of Mr. Read. In fact, many of the cases cited by the government actually support the adequacy and timeliness of the defense's expert disclosures.

In *United States v. Cerna*, for example, the court found that a majority "of the 24 expert summaries disclosed" "adequately describe the expert's opinions, the bases and reasons for those opinions, and the witness's qualifications." No. 08-CR-00730-WHA, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010). The court stated: "Rule 16[] does not require recitation of the chapter and verse of the expert's opinions, bases and reasons. No rule, statute, or decision necessitates such comprehensive disclosure." *Id.* In other words, the defense is not required to provide a 136-page report, as the government did, to "describe the differences and similarities at issue," to "describe the regulations at issue," or to "describe the statutes at issue." Govt's Mot., at 6. That is not the standard. In fact, in *Cerna*, a summary provided by the government for one of its experts that the court found to be perfectly adequate was the following:

> Among other things, Abaun will testify about the analysis of gunshot residue swabs taken from Erick Lopez and Carlos Garrido . . . She will testify that both . . . had gunshot residue on at least one hand, which suggests that Lopez and Garrido either fired a gun, was in close proximity to a gun as it was discharged, and/or touched a gun or other object with gunshot residue on it.

2010 WL 2347406, at *2.

Similarly, the defense disclosed that "Mr. Read may offer expert opinions concerning foreign trust entities, including but not limited to, the following," and proceeded to lay out four bullet points and seven sub-points of summaries of Mr. Read's anticipated opinions such as that "[f]oreign asset protection trusts and foreign non-grantor trusts are valid and legal trust entities" and that "[i]t is not uncommon to establish a trust in a foreign jurisdiction that has a lower income

5

tax rate than the United States in contemplation of potential United States income tax reduction or deferral." Govt's Mot., Ex. 2. Such opinions are valid and relevant in light of the government's allegations that Mr. Kepke is guilty because of his role in creating an offshore structure that allegedly was designed from the outset to evade U.S. taxes.

As for Mr. Kepke's rebuttal disclosure of Mr. Read, the defense summarized the specific opinions from the government's proffered expert that Mr. Read would be asked to rebut, namely, "Bruce G. Dubinsky's testimony regarding offshore trust entities, opining on how they are created; for what purpose they are created, including for the legal purposes of avoiding taxes and protecting assets; and the various actors involved in the creation and operation of the entities." *Id.* at Ex. 3. The government is presumably well-aware of what testimony it hopes to elicit from its own expert. The defense's disclosure referred to specific targeted opinions—out of a 136-page report—that Mr. Read intends to rebut.

As for the bases and reasons for Mr. Read's expert opinion, the *Cerna* court found the following government summary to be adequate:

> Abaun's testimony will be based on her experience and training and her analysis of gunshot residue samples collected from Lopez and Garrido on or about January 8, 2006, which confirmed that gunshot residue particles—notably lead, barium, and antimony—were detected in samples taken from Lopez and Garrido.

2010 WL 2347406, at *2.

Mr. Kepke almost identically disclosed that "Mr. Read's expert testimony may be based on his education, his professional experience, and a review of the documents and information relating to this matter…". Govt's Mot., Ex. 2. As for Mr. Read's qualifications, the defense tendered Mr. Read's *curriculum vitae*, which included a thorough summary of his background and experience. *Id.*

The defense's disclosures are not at all like the ones this Court found to be both "a day late and a dollar short" in *United States v. Valdez*, 18-cr-00608-JD, 2019 WL 539074, at *2 (N.D. Cal. Feb. 11, 2019). In that case, this Court found that *the government's* proffered DNA evidence was insufficient because it consisted of "mere generalities" that "do not state what the substance

of [the witness's] testimony will be." *Id.* at *3.[5]

Perhaps the most important difference between our case and *Valdez* is who is proffering the testimony. The government does not have a constitutional right to present evidence, but the defense does. *See United States v. W.R. Grace*, 526 F.3d 499, 515 (9th Cir. 2008) (distinguishing cases that "involved a defendant's right to present evidence, not the government's, and [therefore have] no bearing here."). It is not reversible error to exclude cumulative evidence offered by the government, while it would be reversible error, Mr. Kepke respectfully submits, to deprive the defense of the testimony of its *only* proffered expert.

*United States v. Duvall*, a Seventh Circuit case cited by the government to support its position that the defense's disclosures were inadequate, is easily distinguished. Although the court found in that case that *the government's* expert disclosures were insufficient, it ultimately found that the trial court's refusal to exclude them was harmless. 272 F.3d 825, 829 (7th Cir. 2001) ("Duvall did not identify . . . any prejudice that could have been avoided by a more detailed notice . . . ."). In addition, the *Duvall* court discussed *United States v. Jackson*, 51 F.3d 646 (7th Cir. 1995), in which it had held that a similarly brief notice was adequate because it "at least identified the expert's actual opinion (that narcotics traffickers often secure locations such as houses or apartments to serve as a base for dealing narcotics)." *Id.* at 829. Here, the defense's disclosures provide such opinions as well. *See* Govt's Mot., Ex. 2. ("It is not uncommon for the beneficiary of a foreign trust to request that a trustee take certain actions or execute certain transactions, including investments or purchases" and "It is not uncommon that when an attorney identifies a trustee that is reliable and responsive, that the attorney continues to utilize the same trustee for other clients.").

### 2. The Defense's Expert Disclosures are Timely.

The government's assertion that the defense's disclosure of supplemental and rebuttal disclosures "several weeks after the due date for expert disclosures" (Govt's Mot., at 4) were untimely mischaracterizes the events leading up to those disclosures, as well as ignoring that Mr.

---

[5] As an alternative ground, this Court excluded the government's proffered evidence under Rule 403 of the Federal Rules of Evidence. *Valdez*, 2019 WL 539074, at *4.

Kepke's rebuttal disclosure was, in fact, provided on the date it was due. As noted above, Mr. Kepke timely made his initial disclosure regarding Mr. Read on June 3, 2022. *See* Govt's Mot., Ex. 1. After the government objected, Mr. Kepke supplemented his disclosure in a good faith effort to address the government's concerns. It is one thing for the government to argue that even the supplemental disclosure is insufficient – that is fair, even if it is wrong – but to complain about its *timing* is a low blow. As disclosures were provided four months before trial, the government's trial preparation has not been prejudiced in any way.

Moreover, Mr. Kepke's disclosures are not at all like the disclosures in *United States v. Baras*, cited by the government to support their assertion that Mr. Kepke's disclosures should be excluded as untimely. No. CR 11-00523 YGR, 2014 WL 129606 (N.D. Cal. Jan. 14, 2014). There, Judge Gonzalez Rogers excluded only a portion of the defense expert's proffered testimony, and that portion only because it was filed in a supplemental report prepared one week *after* the court had ruled on the parties' motions *in limine*. *Id.* at *3. Such timing, Judge Gonzalez Rogers found, "suggest[ed] that Defendant is attempting to find a back door through which otherwise inadmissible evidence could be proffered to the jury." *Id.*

Mr. Kepke's expert disclosures do no such thing. The government was timely notified of Mr. Read's anticipated testimony—well before trial and not as a means to admit otherwise inadmissible evidence—in keeping with Rule 16's "inten[t] to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *Id.*

Nor is the timing of the defense's disclosures even remotely close to the facts in *United States v. Ornelas*, cited by the government for the proposition that it is appropriate to exclude expert testimony, not as a sanction, but rather because of a disregard for the court's pretrial order setting disclosure deadlines. 906 F.3d 1138, 1150-51 n.14 & 15 (9th Cir. 2018); Govt's Mot. at 5. There, expert disclosures were produced months after they were due and a "mere five days before trial." *Id.*, 906 F.3d at 1150.

Moreover, the government has pointed to no omission by the defense "willfully done to

8

OPPOSITION TO MOTION TO EXCLUDE                                      CASE NO. 3:21-CR-00155-JD

gain a tactical advantage." *United States v. Finley*, 301 F.3d 1000, 1018-19 (9th Cir. 2002) (also citing *United States v. Peters*, 937 F.2d 1422, 1426 (9th Cir. 1991) in which the Ninth Circuit held that the district court erred in excluding expert testimony because no willful or blatant discovery violation occurred). In fact, *Finley*, cited by the government, actually supports the defense in that the Ninth Circuit found that although "[t]he disclosure may not have been as full and complete as it could have been or as the government would have liked," "the disclosure met the minimum requirements of Rule 16(b)(1)(C)" because the defendant provided "sufficient notice of the general nature of" the expert's testimony. *Id.* at 1017. Here, the government's objections are that the defense's expert disclosures are not as full and complete as the government would have liked. But that is not the test. Mr. Kepke's disclosures are more than adequate to meet at least the minimum requirements of Rule 16.

Furthermore, as recognized by the Supreme Court, "'[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense.'" *Id.* at 1018 (quoting *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)); *see also United States v. Lague*, No. 17-cr-00150-HSG-1, 2018 WL 3429127, at *1-2 (N.D. Cal. July 16, 2018) ("drastic remedy" of exclusion of defense expert would be "disproportionate to the alleged harm suffered by the government."). Mr. Read's testimony is essential to the defense because he will establish a factual predicate for the jury to conclude that Mr. Kepke did not act willfully.

Because the defense's expert disclosures are adequate and timely, the Court should not prevent Mr. Kepke from putting on his defense, in part, through the expert testimony of Mr. Read.

### B. Mr. Read's Anticipated Opinions are Proper.

The government argues that Mr. Read's opinions are improper legal conclusions and should be excluded because . . . well, because courts have excluded legal experts in some other criminal tax cases. Both assertions are wrong. First, Mr. Read is not being called upon to offer any improper legal opinions. Second, even if it is true that courts sometime exclude legal experts in criminal tax cases, the contrary is also true: such experts are frequently permitted to testify. The decision the Court must make comes down to what the legal expert is being asked to testify about. And where, as here, that expert is not telling the jury how to apply the law in regards to

9

OPPOSITION TO MOTION TO EXCLUDE                             CASE NO. 3:21-CR-00155-JD

1  the facts of this case, but rather simply to explain to them that foreign grantor trusts can, and very
2  often are, operated in a legal manner (to support a defense that Mr. Kepke's conduct was not
3  willful), such testimony is absolutely permissible and to exclude it would almost surely be
4  reversible error.

5    It is important to clarify what exactly qualifies as an improper legal conclusion. Simply
6  because an attorney is offered as an expert to provide certain opinions does not mean every
7  opinion he or she has is a "legal conclusion." In fact, the cases cited by the government actually
8  make clear that Mr. Read's proffered opinions are *not* legal conclusions. In *Hangarter v.*
9  *Provident Life and Acc. Ins. Co.*, the Ninth Circuit stated that a legal conclusion is "an opinion on
10 an ultimate issue of law." 373 F.3d 998, 1016 (9th Cir. 2004). In that case, the Ninth Circuit held
11 that plaintiff's expert testimony that defendants failed to comport with industry standards was not
12 a legal conclusion because the expert "never testified that he had reached a legal conclusion that
13 Defendants actually acted in bad faith (i.e., an ultimate issue of law)." *Id.* Such a testimony that
14 "relied in part on his understanding of the requirements of state law" is not improper because "a
15 witness may refer to the law in expressing an opinion" and the testimony was "ancillary to the
16 ultimate issue of bad faith." *Id.* at 1016-17.

17   Here, the ultimate issue is whether Mr. Kepke *willfully* assisted or conspired with Mr.
18 Smith to evade the income taxes Mr. Smith owed. Mr. Read's anticipated opinions that, for
19 example, "[t]here are no legal prohibitions against appointing a beneficiary as the trust protector,
20 which may include the power to remove and replace the trustee of a foreign trust," and that "[i]t is
21 not uncommon for a foreign trust to purchase an asset from a beneficiary, which then become an
22 asset of the trust[, and that such a] sale does not necessarily cause the beneficiary to become a
23 grantor of the foreign trust[,]" (Govt's Mot., Ex. 2), may properly rely on Mr. Read's
24 understanding of applicable tax and trust laws. Such opinions do not go so far as to assert that Mr.
25 Kepke is not guilty of willfully assisting or conspiring with Mr. Smith to evade income taxes—
26 again, that ultimate issue is for the jury to decide.

27   Additionally, Mr. Read's testimony does not "attempt to instruct the jury on the law, or
28 how to apply the law to the facts of the case," (*United States v. Diaz*, 876 F.3d 1194, 1198-99 (9th

10

Cir. 2017), all of which the Ninth Circuit has found constitute impermissible legal conclusions. As with Dr. Chavez's testimony in *Diaz,* Mr. Read's testimony would help a lay jury understand and evaluate whether the trust structures Mr. Kepke set up were inherently improper and designed to be operated in violation of U.S. tax law. *See Diaz,* 876 F.3d at 1999 (finding Dr. Chavez's testimony helpful to lay jury because "a lay jury would not have the requisite knowledge to evaluate whether the dosage, mix, and course of narcotics prescribed by Diaz were medically appropriate for the conditions being complained for by his patients.").

The government is therefore dead wrong in asserting that Mr. Read's opinions would be "tantamount to testimony that, in his opinion, Defendant's actions were legal." Govt's Mot., at 8. Mr. Read will not be asked whether he believes that, in designing Mr. Smith's trust the way he did, Mr. Kepke acted lawfully. That of course would be improper. But for Mr. Read to testify that a foreign non-grantor trust is not *inherently* designed to evade U.S. income tax is another thing entirely. To exclude such testimony would deprive Mr. Kepke of his constitutional right to present a defense.

Turning, finally, to the government's argument that Mr. Read's testimony should be excluded because, hey, everyone's doing it ("courts regularly exclude legal experts in criminal tax cases" -- Govt's Mot., at 8), that, too, is incorrect. In fact, only *one*[6] of the cases cited by the government is from the Ninth Circuit, and none are from this district or even from California. There are counter-examples in which testimony from legal experts was admitted in criminal tax or fraud cases. In *United States v. Lankford*, for example, the Court found that the trial court's exclusion of the defense's expert ("a certified public accountant, certified financial planner, and tax lawyer") was an abuse of discretion, and the expert should have been allowed to testify "that a legitimate and well-founded legal analysis would have supported the reasonableness" of the defendant's belief. 955 F.2d 1545, 1551 (11th Cir. 1992). And in *United States v. Riddle*, a bank fraud case, the court reversed the defendant's conviction in part based on the lower court's decision to exclude the defense's expert, "an expert in banking regulation who teaches law at the

---

[6] *United States v. Boulware*, 558 F.3d 971, 974-75 (9th Cir. 2009) (upholding exclusion of portions of expert's testimony that "corporate distributions were legally non-taxable, either because they were loans, monies placed in trust, or returns of capital").

University of Houston," because the exclusion "handicapped the ability of the defense to tell the jury its own version of how banks operate and what precautions bankers such as [defendant] know they should take." 103 F.3d 423, 427 (5th Cir. 1997).

Although not a criminal case, another example is *Leeds LP v. United States*, in which plaintiff offered the testimony of a licensed California attorney who "specialized in family estate planning, published seven books pertaining to trust administration and fiduciary responsibilities, and is a regulation lecturer on estate planning" to provide expert testimony. No. 08CV100 BTM (BLM), 2010 WL 3911429, at *2 (S.D. Cal. Oct. 5, 2010). The plaintiff retained the expert "'to provide expert witness testimony on the formation, structure, and use of trusts and limited partnerships in business and family settings.'" *Id.* at *1. "In his expert report, [plaintiff's expert] states that generally, use of limited partnerships and trusts 'represent [] good business practice' and 'are also legitimate and appropriate tools for estate planning purposes,'" and those opinions, along with others that are challenged by the government here as being impermissible legal conclusions, were found to be proper. *Id.*

## V. CONCLUSION

The right of a criminal defendant to present a defense is sacrosanct under our system of justice. The motion to exclude Mr. Kepke's *only* proffered expert witness must be denied. Once Mr. Read testifies, the government is certainly entitled to do everything it can to undermine his testimony through vigorous cross-examination. But to exclude his testimony out of the gate, while permitting government experts to testify that everything Messrs. Smith and Kepke did was improper, would be tantamount to a directed guilty verdict and would almost certainly result in our having to try this case again in a year or two. Accordingly, the government's request to prevent Mr. Read from testifying must be denied.

Respectfully submitted,

Dated: August 19, 2022

By: */s/ Grant P. Fondo*
GRANT P. FONDO
GFondo@goodwinlaw.com
**GOODWIN PROCTER LLP**

Attorney for Defendant:
CARLOS E. KEPKE

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **August 19, 2022**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **August 19, 2022**.

*/s/ Grant P. Fondo*
GRANT P. FONDO