STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:    (408) 535-5040
Facsimile:    (408) 535-5081
Email: michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
United States Department of Justice
Telephone:    (202)514-5230
Email: corey.smith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CARLOS E. KEPKE, <br><br> Defendant. | Criminal No. 3:21-CR-00155-JD <br><br> UNITED STATES' REPLY IN SUPPORT OF MOTION IN LIMINE TO ADMIT EVIDENCE OF UNDERCOVER CONTACTS <br><br> Hearing.:    October 17, 2022 <br> Time:       10:30 a.m. <br> Place:      Courtroom 11, 19th Floor |

The United States of America hereby respectfully responds to Defendant's "Opposition to Government's Motion to Admit Evidence of Undercover Contacts," filed on August 24, 2022 (ECF No. 72) ("Opposition"), as follows:

> **A.    The Undercover Evidence Is Admissible As Direct Evidence Of Defendant's Crimes**

In cases involving schemes to defraud, evidence establishing the existence of the underlying scheme is admissible as direct evidence. *See United States v. Loftis*, 843 F. 3d 1173, 1177 (9th Cir. 2016); *United States v. Kail*, 18-cr-00172-BLF, 2021 WL 3773613, at *4 (N.D. Cal. Aug. 25, 2021); *see, e.g., United States v. Whitfield*, 37 F.3d 1503, 1994 WL 543475, at * 1 (8th Cir. 1994)

(unpublished) ("At trial, several individuals testified that [Defendant] prepared their returns and, without their knowledge, made false entries – like those discussed with [the undercover agent] – to assure that they received a refund check. Thus, [evidence of undercover operation] was probative of the crimes charged, and was not 'other crimes' evidence."). Here, as discussed in the Government's Motion in Limine to Admit Evidence of Undercover Contacts, filed on August 10, 2022, ECF No. 66 ("Motion"), the Undercover Evidence includes Defendant's repeated invocation of the scheme alleged in the Indictment, including suggesting that one undercover agent name his trust something akin to "Excelsior," the exact name used by the Belizean trust Defendant created and maintained for Robert Smith (as alleged in the Indictment), boasting of his billionaire clients (including Smith), introducing one of the undercover agents to Emil Arguelles, a Belizean attorney whose company, Orion, actually served as trustee of Smith's Excelsior Trust for several years, and telling the undercover agents that the only work he did as an attorney was advising clients in creating offshore tax structures. Defendant's invocation of the charged scheme is direct evidence of existence of that scheme.

### B.     Alternatively, The Undercover Evidence Is Admissible Under Rule 404(b)

In the alternative, the Undercover Evidence is admissible under Rule 404(b). The Ninth Circuit applies a four-part test to determine whether evidence of other acts should be admitted. *See United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994).

First, the Undercover Evidence tends to prove a material point, namely Defendant's state of mind. In criminal tax cases, the government bears the burden of proving willfulness, and courts recognize that a broad range of evidence can be relevant to prove a defendant's subjective state of mind. *See United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989); *see also United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006). Courts have repeatedly held that evidence that tax return preparers created uncharged, false tax returns for undercover agents is admissible under Rule 404(b) in criminal tax cases. *See, e.g., United States v. Baker*, 522 Fed. App'x 244, 247-48 (5th Cir. 2013) (unpublished); *United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011); *Whitfield*, 1994 WL 543475, * 1; *United States v. Campbell*, 142 F. Supp. 3d 298, 301 (E.D.N.Y. 2015); *United States v. Oskowitz*, 294 F. Supp. 2d 379, 382 (E.D.N.Y. 2003); *see also United States v. Imariagbe*, 679 Fed. App'x 261, 262 (4th Cir. 2017) (unpublished) (admitting evidence under Rule 404(b), although not undercover evidence, in criminal tax

case); *United States v. Watson*, 433 Fed. App'x 284, at *2 (5th Cir. 2011) (unpublished) (same); *United States v. Ali*, 616 F.3d 745, 752-53 (8th Cir. 2010) (same); *United States v. Bok*, 156 F.3d. 157, 165 (2d Cir. 1998) (same).  The Opposition seeks to diminish these decisions on the grounds that they allowed evidence to show lack of mistake, which the Opposition claims will not be at issue here.  *See* Opposition at 15-16.  But this focus on lack of mistake, as opposed to intent more generally, is excessively narrow.  As anticipated in the Motion, and tacitly admitted by Defendant in another pleading,[1] Defendant's intent is likely to be disputed at trial.  And while many of the cited decisions may include lack of mistake as one of the grounds for admission, they are clearly focused on the broader issue of intent, which is a basis for admission under 404(b).  With respect to that issue, it is not a close call.  *See Cadet*, 664 F.3d at 33 ("[Defendant's uncharged] preparation of a false return for [an undercover IRS agent] was 'sufficiently similar' to the charged conduct to be relevant to – and indeed 'highly probative of' – knowledge and intent."); *Campbell*, 142 F. Supp. 3d at 301 ("It is hard to imagine a more clear-cut example of appropriate Rule 404(b) evidence than [evidence of undercover operation during which defendant falsified an undercover IRS agent's tax return]. . . .  That return and evidence of the undercover meeting are therefore highly probative of [defendant's] knowledge, intent, and lack of mistake in preparing similar false returns for his clients.").  Even if Defendant did not dispute his willfulness, that would not prevent the government from proving his intent at trial.  *See, e.g., Ali*, 616 F.3d at 753 ("Even if [Defendant] did not actively dispute intent for each count, it was permissible for the government to present evidence of willfulness.").

It is true that decisions exist which question the probative value of evidence of acts which occurred after the charged conduct, also known as subsequent acts.  *See United States v. Boyd*, 595 F.2d 120, 126 (3rd Cir. 1978); *United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir. 1985).  But more recent Ninth Circuit decisions make clear that subsequent acts are admissible under Rule 404(b), *see United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991), and the Ninth Circuit has explicitly rejected the reasoning of *Boyd*.  *See United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir 1991).  The

---

[1] Defendant previewed this defense in his response to the Government's motion to exclude his proffered expert witness, Rodney Read.  *See* ECF No. 71 at 13 ("Mr. Read's testimony is essential to the defense because he will establish a factual predicate for the jury to conclude that Mr. Kepke did not act willfully.").

relevant language from *Hodges* is dicta which is inconsistent with subsequent Ninth Circuit decisions and does not appear to have been cited or adopted by any subsequent decision. The Opposition also cites *United States v. Dowie*, 411 Fed. App'x 21 (9th Cir. 2010) (unpublished), but that opinion is unhelpful because it dealt with a defendant's efforts to admit evidence of his own post-offense cooperation in order to prove his lack of intent to engage in a conspiracy, clearly a dubious proposition. Given the strength of the logical connection between the Undercover Evidence and the charged conduct, the wealth of authority supporting the argument that subsequent undercover investigations are admissible in criminal tax cases, and the dearth of contrary authority, there is little doubt that the first *Mayans* element is satisfied – the Undercover Evidence tends to prove a material point.

Second, the Undercover Evidence is not too remote in time. The conspiracy alleged in Count One of the Indictment extended from 1999 until October 2015 (not December 31, 2014, as the Opposition suggests, *see* Opposition at 16) and the Undercover Evidence was collected in 2017 and 2018. This time gap is negligible given the 15-year duration of the alleged conspiracy, and Defendant's boast to an undercover agent that he had been engaged in similar schemes for 25 to 30 years. *Hodges* sheds no light on this issue, as the opinion does not turn on remoteness. Moreover, the facts of that case are easily distinguishable as the evidence erroneously admitted there (the defendant attempted to extort a coconspirator, threatened to have the coconspirator murdered, and "terrified" the coconspirator, *see Hodges*, 770 F.2d at 1478) was highly prejudicial, and nothing like the evidence the government offers here. The decision in *United States v. Jimenez*, 613 F.2d 1373 (5th Cir. 1980) is also unhelpful, as that drug case involved classic propensity evidence which was entirely unsubstantiated and offered with no limiting instruction. More helpful is *United States v. Iverson*, 162 F.3d 1015 (9th Cir. 1998) in which the Ninth Circuit noted that "this court repeatedly has upheld the admission of evidence of prior acts that are more than seven years old," and held that "[w]hether a prior act is too remote depends on the theory that makes it admissible and the similarity of the act to the current charge." *Id*. at 1027. Here, the theory that makes the Undercover Evidence admissible is that it demonstrates Defendant's willfulness (an element with respect to which "courts should follow a liberal policy in admitting evidence," *Collorafi*, 876 F.2d at 305), and the Undercover Evidence reveals that Defendant advised undercover agents to implement schemes virtually identical to the one charged in the Indictment. Thus, the second

*Mayans* element is satisfied – the Undercover Evidence is not too remote.

Third, the Opposition's argument with respect to the third *Mayans* element is puzzling. The Undercover Evidence is defined in the Motion, consists almost entirely of communications with Defendant (both written and recorded), and was produced to Defendant in connection with this prosecution months ago. To the extent the Opposition suggests that 404(b) does not cover communications, but rather only physical acts, that argument is unsupported and not well taken. The third *Mayans* element is satisfied – the Undercover Evidence is evidence of Defendant's conduct.

Fourth, the conduct documented in the Undercover Evidence is remarkably similar to the charged offense. The scheme Defendant tried to sell to two undercover agents is virtually identical to the scheme he is accused of establishing and maintaining for Smith. The Opposition seizes on a minor difference between the two schemes: the fact that Kepke instructed the undercover agents to manufacture sham transactions and structure cash withdrawals in order to funnel money to a nominee, while there is no evidence that he gave Smith similar advice. *See* Opposition at 19. In fact, the evidence at trial will show that Smith (and not his nominee Settlor) funded the Excelsior Trust. In any event, the differences between the two schemes is minor when compared to the similarities – even ignoring evidence that Defendant instructed the undercover agents to manufacture sham transactions and structure cash withdrawals, the scheme Defendant proposed to undercover agents, and the scheme he executed with Smith, both involved: using a relative as a nominee to establish a sham trust to create the illusion that the client was not the true creator; installing a nominee, offshore trustee to create the false appearance that the trust was under independent control; creating an offshore holding company and installing a nominee, offshore manager to create the false appearance that the company was under independent control; assigning assets and income which the client actually earned to the holding company; and allowing the client to control those assets by filtering instructions to the offshore nominees through Defendant. In addition, during the undercover operation, Defendant introduced one of the undercover agents to Emil Arguelles, a Belizean attorney who was involved in Smith's structure, and made multiple veiled references to Smith, including suggesting that an undercover agent give his offshore trust the same name as Smith's – the Excelsior Trust. Perhaps most importantly, as Defendant himself repeatedly advised the undercover agents, the goal of the structure Defendant pitched to the

undercover agents was defeating taxation on assets held within the offshore structure, which was also the purpose of Smith's offshore structure. These schemes are remarkably similar, and the Undercover Evidence is obviously relevant for purposes other than propensity. The fourth *Mayans* element is satisfied.

Finally, to the extent there is any doubt about the application of Rule 404(b), the fact that the Undercover Evidence would be highly corroborative of Smiths' anticipated testimony that Defendant gave Smith the same fraudulent advice he gave the undercover agents should resolve that doubt in favor of admission, and the Opposition makes no coherent argument to the contrary.

### C. The Undercover Evidence Should Not Be Excluded Under Rule 403

"Relevant evidence can be excluded under Rule 403 if the trial court finds that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987).[2] This rule reflects "a basic policy favoring admissibility of relevant evidence," *United States v. Hearst*, 563 F.2d 1331, 1348-49 (9th Cir. 1977), and exclusion under Rule 403 "has been characterized . . . 'as an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" *Patterson*, 819 F.2d at 1505 (quoting *United States v. Meester*, 762 F.2d 867, 874-75 (11th Cir. 1985)).

Far from having "minimal" probative value, Opposition at 22, the Undercover Evidence is highly probative circumstantial evidence of Defendant's intent. *See Cadet*, 664 F.3d at 33 (evidence of IRS undercover operation "highly probative" of Defendant's knowledge and intent); *Campbell*, 142 F. Supp. 3d at 301 (evidence of IRS undercover operation "highly probative" of Defendant's knowledge, intent, and lack of mistake); *Oskowitz*, 294 F. Supp. 2d at 383 ("I do not believe that there will be much prejudice to the defendant from the introduction of [evidence of IRS undercover operation], let alone prejudice that would substantially outweigh its probative value. However, to reduce any possible prejudice I will issue a limiting instruction to the jury."); *see also United States v. Stagg*, 136 Fed. App'x 63, 66 (9th Cir. 2005) (unpublished) (evidence of prior fraudulent investment schemes was highly

---

[2] The Opposition misstates the Rule 403 standard. *See* Opposition at 21 ("Other acts evidence that is found to meet the requirements of Rule 404(b) must nonetheless be excluded under Rule 403 unless the Government shows that its probative value is outweighed by its prejudicial impact…").

probative of defendant's knowledge and intent with regard to the wire fraud charges, and any prejudice was mitigated by the district court's limiting instructions); *United States v. Klock*, 8 Fed. App'x 620, 622 (9th Cir. 2001) (unpublished) (undercover agent's testimony about instruction he received at a "freemen seminar" was probative because it undercut an expert witness's opinion that some seminar attendees formed a good faith belief regarding fraudulent financial instruments, and was not unfairly prejudicial, although agent did mention firearms and a general militaristic atmosphere). *United States v. Espinoza-Baza*, 647 F.3d 1182 (9th Cir. 2011), cited by the Opposition, is not pertinent because the probative value of the evidence at issue there was "at best, marginal." *Id*. 1190.

    Because the Undercover Evidence at issue here is highly probative, any unfair prejudice would have to be enormous to substantially outweigh the evidence's probative value and trigger Rule 403, and it is not. The Opposition does not even argue that the Undercover Evidence, as a whole, is unfairly prejudicial. Rather, it focusses on a few differences between the Undercover Evidence and the charged scheme, including Defendant's advice that an undercover agent manufacture sham transactions and structure cash withdrawals to funnel money to a nominee. But this ignores the overwhelming similarities between the Undercover Evidence and the charged scheme. And even if the minor differences were problematic, the proper remedy would be to exclude only those specific statements that are unfairly prejudicial rather than all of the Undercover Evidence. The proper tool is a scalpel – not an axe. *See, e.g.*, *United States v. Keller*, No. 18-cr-00462-VC, 2021 WL 5150642, at *2 (N.D. Cal. Nov. 5, 2021) (excluding only those excerpts of certain medical board records that were inadmissible under Rules 402, 403, or 404(b)). The Opposition's suggestion that the Undercover Evidence should be replaced by third-party testimony or sanitized language from Defendant's website, Opposition at 21, is contrary to the cited authority, *United State v. Merino-Balderrama*, 146 F.3d 758 (9th Cir 1998), under which the Rule 403 analysis is adjusted only where the alternative evidence has "substantially the same or greater probative value" as the offered evidence. *Id.* at 761. Obviously, Defendant's website – which was prepared for public dissemination – is not nearly as probative of his true state of mind as a recording of advice he actually gave to clients in private. The jury is entitled to hear Defendant's own, unfiltered description of his law practice, and any prejudice is neither unfair nor substantially heavier than the Undercover Evidence's probative value. Moreover, any potential prejudice can be effectively mitigated

by a cautionary instruction limiting the jury's consideration of the Undercover Evidence to the Rule 404(b) purposes for which it is offered. Thus, the Undercover Evidence should not be excluded under Rule 403.

For the reasons stated above, the Court should grant the United States' Motion in Limine to Admit Evidence of Undercover Contacts in its entirety.

Respectfully submitted on August 31, 2022

STEPHANIE M. HINDS
United States Attorney

s/ Michael G. Pitman
COREY J. SMITH
Senior Litigation Counsel
MICHAEL G. PITMAN
Assistant United States Attorney

Attorneys for United States of America