GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800
Fax: +1 212 355 3333

Attorneys for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CARLOS E. KEPKE,<br><br>　　　　Defendant. | Case No. 3:21-CR-00155-JD<br><br>**CARLOS KEPKE'S NOTICE OF MOTION AND MOTION TO COMPEL PROFFER MATERIALS AND STATEMENTS**<br><br>Date:　　　　October 17, 2022<br>Time:　　　　10:30 a.m.<br>Courtroom: 11, 19th Floor<br>Judge:　　　Hon. James Donato |

# TABLE OF CONTENTS

| | Page |
|---|---|
| NOTICE OF MOTION | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| I. INTRODUCTION | 1 |
| II. FACTUAL BACKGROUND | 2 |
|     A. Mr. Smith Is the Government's Most Important Witness Against Mr. Kepke. | 2 |
|     B. The Government Has Refused to Produce Fulsome Discovery Regarding Mr. Smith's Statements. | 3 |
| III. LEGAL STANDARD | 6 |
| IV. ARGUMENT | 7 |
| V. CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Benn v. Lambert*,
 283 F.3d 1040 (9th Cir. 2002) ......................................................................................... 10

*Brady v. Maryland*,
 373 U.S. 83 (1963) ................................................................................................... *passim*

*Carriger v. Stewart*,
 132 F.3d 463 (9th Cir. 1997) ........................................................................................ 6, 7

*Giglio v. United States*,
 405 U.S. 150 (1972) .................................................................................................. 1, 2, 6

*Morris v. Ylst*,
 447 F.3d 735 (9th Cir. 2006) .......................................................................................... 12

*Spicer v. Roxbury Corr. Inst.*,
 194 F.3d 547 (4th Cir. 1999) ............................................................................................ 9

*United States v. Acosta*,
 357 F. Supp. 2d 1228 (D. Nev. 2005) ......................................................................... 9, 10

*United States v. AU Optronics*,
 No. 09-cr-110, 2011 WL 6778520 (N.D. Cal. Dec. 23, 2011) ......................................... 9

*United States v. Bagley*,
 473 U.S. 667 (1985) ........................................................................................................ 10

*United States v. Balwani*,
 No. 5:18-CR-00258-EJD-2, 2022 WL 1720081 (N.D. Cal. May 27, 2022) .................. 12

*United States v. Bernal-Obeso*,
 989 F.2d 331 (9th Cir. 1993) ........................................................................................ 6, 7

*United States v. Buske*,
 No. 09-cr-65, 2011 WL 2912707 (E.D. Wis. July 18, 2011) ........................................... 9

*United States v. DaVita,*
 No. 21-cr-229, 2022 WL 833368 (D. Col. Mar. 21, 2022) .............................................. 9

*United States v. Meek*,
 No. 19-cr-378, 2021 WL 1049773 (S.D. Ind. Mar. 19, 2021) ........................................ 12

*United States v. Olsen*,
 704 F.3d 1172 (9th Cir. 2013) .......................................................................................... 6

*United States v. Price*,
    566 F.3d 900 (9th Cir. 2009) .................................................................................. 6, 13

*United States v. Ruiz*,
    No. 11-cr-209, 2013 WL 12219379 (C.D. Cal. Jan. 8, 2013) ........................ 8, 9, 12

*United States v. Saffarinia*,
    424 F. Supp. 3d 46 (D.D.C. Jan. 15, 2020) ................................................................ 9

*United States v. Serv. Deli Inc.*,
    151 F.3d 938 (9th Cir. 1998) .................................................................................. 7, 10

*United States v. Sudikoff*,
    36 F. Supp. 2d 1196 (C.D. Cal. 1999) ............................................. 7, 8, 9, 10, 12

*United States v. Stein*,
    488 F. Supp. 2d 350 (S.D.N.Y. 2007) ............................................................ 8, 9, 12

*United States v. Weaver*,
    992 F. Supp. 2d 152 (E.D.N.Y. 2014) ........................................................................ 9

**Statutes**

18 U.S.C. § 371 ................................................................................................................ 3

26 U.S.C. § 7206(2) ......................................................................................................... 3

18 U.S.C. § 3500 .................................................................................................... 1, 2, 6

**Other Authorities**

Federal Rule of Criminal Procedure 16 ............................................................ 1, 2, 4, 6

Local Rule 16-1 ....................................................................................................... 1, 2, 6

**NOTICE OF MOTION**

Please take notice that on October 17, 2022, at 10:30 a.m., or as soon thereafter as the matter may be heard, Defendant Carlos E. Kepke ("Mr. Kepke") will and does hereby move to compel the government to produce exculpatory and impeachment information relating to Robert F. Smith ("Mr. Smith"), a cooperating witness, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, Federal Rule of Criminal Procedure 16, and Local Rule 16-1. In particular, Mr. Kepke seeks documents relating to Mr. Smith's and his lawyers' statements to and proffers with the government, both prior to and leading up to his non-prosecution agreement ("NPA"), including presentations, notes, memoranda, and communications ("Proffer Materials").

This motion is supported by the Memorandum of Points and Authorities included herein, all pleadings and papers which are of record and on file in this case, and such other oral and documentary evidence as may be presented at the hearing of this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Mr. Kepke is charged with conspiring with his former client, Robert F. Smith, to conceal Mr. Smith's income from the IRS and aiding and abetting him in the filing of three false tax returns. Mr. Smith is cooperating with the government and will be the government's most important witness against Mr. Kepke. In fact, they likely could not bring this case without him. Yet the government has refused to produce presentations, communications, documents, and notes regarding Mr. Smith's statements and proffers to the government (including regarding his innocence) leading up to the execution of Mr. Smith's NPA. The government's position is untenable and conflicts with its obligations to produce all evidence favorable to the defense.

This critical discovery goes to the core of Mr. Smith's credibility. It will show how Mr. Smith's statements changed during the three years of proffers and negotiations that lead to his NPA, as well as Mr. Smith's motives in agreeing to the NPA. Without this discovery, Mr. Kepke will be denied his right to fully and effectively cross-examine the government's most significant witness. The Proffer Materials also include statements that are exculpatory because they negate Mr. Kepke's

guilt. The Proffer Materials are accordingly highly exculpatory and must be produced pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, Federal Rule of Criminal Procedure 16, and Local Rule 16-1.

Furthermore, for reasons unknown, the government has provided a prosecutor's summary of Mr. Smith's attorney's proffers, which definitively demonstrates the government believes this information is discoverable. There is no rule that permits the government to choose to take discoverable evidence and, instead of producing it, summarize it. The government's method of complying with a significant discovery obligation should cause this Court significant concern. The government is asking this Court to override a defendant's constitutional rights based on the assumption that the prosecuting attorneys' summarizing skills are both flawless and 100% unbiased.

Mr. Kepke seeks an order from the Court directing the government to produce the requested documents.

## II. FACTUAL BACKGROUND

### A. Mr. Smith Is the Government's Most Important Witness Against Mr. Kepke.

The government began investigating Mr. Smith in October 2015, and a grand jury investigation was authorized in May 2016 for potential Title-26 and Title-26-related violations. More than four years later, on October 9, 2020, the government entered into a non-prosecution agreement with Mr. Smith. (Grant P. Fondo Declaration ("Fondo Decl."), ¶ 4, Ex. A ("NPA").) The government publicly announced the NPA, emphasizing Mr. Smith's commitment to cooperating with the government, in a press release a few days later. *Private Equity CEO Enters into Non-Prosecution Agreement on International Tax Fraud Scheme and Agrees to Pay $139 Million, to Abandon $182 Million in Charitable Contribution Deductions, and to Cooperate with Government Investigations*, Department of Justice (Oct. 15, 2020), https://www.justice.gov/usao-ndca/pr/private-equity-ceo-enters-non-prosecution-agreement-international-tax-fraud-scheme-and.

Pursuant to the terms of the NPA, Mr. Smith agreed to cooperate against other individuals involved in the alleged crime, including by testifying before the grand jury and at any trial. (NPA

at ¶¶ 2–3.) In exchange for Mr. Smith's cooperation, the government agreed not to criminally prosecute Mr. Smith for any federal crimes arising from the alleged fraud. (*Id.* at ¶ 7.) The NPA included a Statement of Facts that discussed an alleged fraud "to conceal income and evade taxes he owed by using an offshore trust structure," and Mr. Smith agreed that by way of the alleged fraud, he had willfully evaded more than $43,000,000 in income taxes from 2006 to 2015. (NPA Statement of Facts at ¶¶ 1, 20.) The statement said that a Houston lawyer specializing in foreign trusts, identified as Individual B, had provided Mr. Smith assistance in setting up his offshore trust structure. (*Id.* at ¶¶ 5–9, 13, 17.) Individual B is the defendant, Carlos Kepke.

On April 15, 2021, based in part on the testimony of Mr. Smith, a grand jury returned an indictment charging Mr. Kepke with one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371, and three counts of Aiding and Assisting in the Preparation of a Materially False Income Tax Return for the tax years 2012, 2013, and 2014, in violation of 26 U.S.C. § 7206(2). (ECF No. 1.) The government alleges that the object of the conspiracy was "to conceal a portion of ***Smith***'s income from the IRS, thus evading the statutory assessment of the appropriate tax due and owing on this income," *id.* at ¶ 15 (emphasis added)), and that Mr. Kepke "willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation" of ***Mr. Smith's*** income tax return forms from the years 2012 to 2014 (*id.* at ¶ 52 (emphasis added)).

### B. The Government Has Refused to Produce Fulsome Discovery Regarding Mr. Smith's Statements.

For more than a year, the defense has asked for discovery regarding presentations, memoranda, and communications relating to Mr. Smith's proffers—including his efforts to persuade the government that he did not violate U.S. tax laws at all, and his conversations with the government prior to his NPA. In June 2021, the defense first asked the government to produce several broad categories of discovery concerning Mr. Smith's statements to the government, including (1) any written or oral statements made by a potential prosecution witness which in any way are inconsistent with other oral or written statements he has made; (2) evidence of and communications regarding any promises or offers of anything of value to co-defendants or

unindicted co-conspirators that have been made by the government including but not limited to cooperation, plea, non-prosecution, deferred-prosecution, and/or immunity agreements; and (3) all submissions, presentations, and memoranda relating to Mr. Smith's NPA ("Proffer Materials"). (Fondo Decl., ¶ 5, Ex. B.) Mr. Kepke reiterated his requests on numerous occasions, including during a call on March 1, 2020, which was followed up with a letter on March 20, 2022, in which Mr. Kepke stated, "On our March 1 call, we again requested the government produce Mr. Smith's counsel's meetings with the government, including submissions, letters, PowerPoint decks, and anything related to their representations." (Fondo Decl., ¶ 6, Ex. C.)

Despite several deficiency letters and meetings over the past year, the Court's March 3, 2022 order requiring all Rule 16 discovery be produced by the government on or before April 25, 2022 (ECF No. 34), and the rapid approach of trial, the government has produced only a small portion of the requested Proffer Materials. To begin, while the government produced Memoranda of Interview for an attorney proffer on June 2, 2020 (though no materials that were forwarded or shared by Mr. Smith's attorneys), a direct proffer on August 13–14, 2020, and a meeting on March 17, 2021, there seem to be at least three more presentations for which the government has produced no Memoranda, notes, presentations, or communications. The Government recently produced files titled "Pages from Smith Presentation dated 4-12-17," "Pages from Smith Presentation dated 1-14-19," and exhibits to the "Smith Presentation dated 9-23-19." These files appear to consist of documents discussed during the referenced presentations, but do not include the presentations themselves. Nor did the government produce Memoranda of Interview or any notes from these three presentations. It is also unclear whether there were additional proffers between Mr. Smith and/or his attorneys and the government. Additionally, the government has not produced any communications regarding Mr. Smith's proffers.

In an apparent attempt to avoid the production of direct discovery regarding the proffers, on August 12, 2022 the government provided a 29-page summary letter signed by Senior Litigation Counsel Corey Smith ("Summary Letter"). (Fondo Decl., ¶ 7, Ex. D.) The Summary Letter is framed as a response "to your request for discovery," and purports to set out "representations [that] have been made to the government by counsel for Robert F. Smith" "over time." (*Id.*) The Summary

Letter does not provide any reason or legal basis for the summary. Similarly, it does not include any other contextual details, including the dates on which the representations were made, how representations regarding the same subject may have varied between representations or proffer dates, whether the representations were made via written or oral communications, exactly what the representation was, who made the representations, who witnessed the representations, or upon whose notes the letter is based. And there can be no doubt there are existing underlying documents upon which the government relied. For example, paragraph 169 reads as follows:

> "Over the course of late 2013 and into 2014, during and following a contentious divorce, Smith retained four law firms (**including both of our firms**) to conduct an extensive investigation of the facts, to review the law, and to advise him on tax issues."

(*Id.* at ¶ 169 (emphasis added).) The bolded reference demonstrates this is an excerpt from an email, document, or letter created by Mr. Smith's counsel and forwarded to the government.

The Summary Letter does not provide any evidentiary context or basis for these summary statements. Many of the representations summarized in the August 12, 2022, letter were made in the context of Mr. Smith's explanations as to why he did not commit tax fraud. For example, Mr. Smith said his understanding is that the use of offshore entities is common and well accepted in the private equity industry. (Summary Letter at ¶ 66.) Mr. Smith also said at some point, in relation to his filing of streamlined amended returns through the Off Shore Voluntary Disclosure Program, that he came forward with what he believed was a valid voluntary disclosure taking a reporting position that is entirely consistent with the law. (*Id.* at ¶ 153.) In another instance, Mr. Smith said he believed in good faith that it was correct for him not to include Flash's income on his Forms 1040. (*Id.* at ¶ 168.) Mr. Smith told the government that Mr. Kepke advised Mr. Smith that the trust must be settled by a foreign relative. (*Id.* at ¶ 172.) And Mr. Smith said he did not believe Flash and Excelsior were a fraud when created, and he believed the structure was legal based on a conversation he had with an attorney at another law firm. (*Id.* at ¶ 183.)

On August 29, 2022, the defense notified the government that it understood that the government did not plan to produce any further Proffer Materials and asked the government to respond by September 2, 2022 if the government planned to produce any additional discovery on

this point. (Fondo Decl., ¶ 8, Ex. E.) The government did not respond.

## III. LEGAL STANDARD

The Government must disclose evidence in its possession, custody, or control that is "favorable to an accused" and "material to either guilt or to punishment." *Brady*, 373 U.S. at 87. Evidence is considered reasonably favorable "either because it is exculpatory, or because it is impeaching," and includes inadmissible evidence that is reasonably likely to lead to admissible evidence. *United States v. Price*, 566 F.3d 900, 907, 913 n.14 (9th Cir. 2009) (internal quotation marks omitted). "A trial prosecutor's speculative prediction about the likely materiality of favorable evidence, however, should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013). Accordingly, in the pre-trial context, "the proper test" for materiality is "whether the evidence is favorable to the defense." *Price*, 566 F.3d at 913 n.14. "[I]f doubt exists, it should be resolved in favor of the defendant and **full disclosure made**." *Id.* (emphasis added, internal quotation marks and citation omitted). The government is also obligated to produce discovery under Federal Rule of Criminal Procedure 16(a)(1)(E), Local Rule 16-1, and 18 U.S.C. § 3500.

The Ninth Circuit emphasizes that the government's obligation to turn over exculpatory evidence is especially important when it comes to materials relevant to the credibility of a cooperating witness. "The need for disclosure is particularly acute where the government presents witnesses who have been granted immunity from prosecution in exchange for their testimony." *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997). This is because "criminals who are rewarded by the government for their testimony are inherently untrustworthy, and their use triggers an obligation to disclose material information to protect the defendant from being the victim of a perfidious bargain between the state and its witness." *Id.* Courts thus "expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery. This responsibility includes the duty as required by *Giglio* to turn over to the defense in discovery *all* material information casting a shadow on a government witness's credibility." *United States v. Bernal-Obeso*, 989 F.2d 331, 333–34 (9th Cir. 1993) (emphasis in original).

6

When the government fails to turn over all discovery that is relevant to a cooperating witness's credibility, the Ninth Circuit routinely reverses and orders a new trial. *E.g., Carriger*, 132 F.3d at 479; *United States v. Serv. Deli Inc.*, 151 F.3d 938, 944 (9th Cir. 1998); *Bernal-Obeso*, 989 F.2d at 334.

## IV.  ARGUMENT

The government is obligated to turn over to the defense *all* material information that is relevant to a government witness's credibility, and all evidence that is exculpatory. The Proffer Materials fall squarely within both categories. They are relevant to Mr. Smith's credibility for two overlapping reasons—they will reveal any changes in Mr. Smith's testimony during the lengthy negotiation of the NPA, and will show Mr. Smith's motives to agree to the NPA. Second, many of these summaries undermine the conclusion that Mr. Smith committed tax fraud—which is the predicate upon which the government's entire case is based. Third, this 29-page summary of facts was made by the very same government attorneys prosecuting Mr. Kepke. With no disrespect meant to the government's attorneys, Mr. Kepke's freedom and Constitutional rights should not be based upon their summarizing skills. Nor has the government provided any legal basis or explanation as to why it drafted and produced the 29-page summary rather than simply produce the underlying materials.

First, the materials are required to be produced because they undoubtedly will show variations in Mr. Smith's version of events over time. There is little question his narrative has changed from one in which he asserted no tax fraud, to one in which he now asserts he did commit tax fraud. More than four years passed between the opening of the government's grand jury investigation into Mr. Smith in May 2016 and the execution of his NPA in October 2020. The materials the government has produced show there have been at least five presentations or meetings in that four-year period, the first in 2017 and the most recent in August 2020. Mr. Smith's statements have evolved during this period. Any changes in his testimony, small or large, are critical to the defense's ability to effectively challenge the credibility of Mr. Smith. And given the centrality of Mr. Smith's testimony to the government's case, this evidence is essential to a fair trial.

*United States v. Sudikoff*, a persuasively reasoned opinion, is directly on point. 36 F. Supp.

7

2d 1196 (C.D. Cal. 1999). There the court held that the government must produce proffer materials leading up to a leniency agreement because they were likely to show variations in the witness's testimony. *Id.* at 1202. The court explained that the negotiation of a leniency agreement can be lengthy and involve give-and-take, and as a result "it is possible, maybe even likely, that the witness's proposed testimony that was proffered at the beginning of the process differed in some respects from the testimony proffered at the end of the process." *Id.* The court explained that even small, seemingly innocuous changes like increased detail might reasonably be considered favorable to the defense: "Neither the government nor the Court is aware of the details of the defense strategy and therefore neither the government nor the Court can accurately determine which variations are important." *Id.* The Court accordingly ordered the government to produce extensive discovery regarding the proffer process:

> The government must disclose to the defendants all proffers by any witnesses receiving any benefit, whether immunity or leniency, in return for testimony. **Included in this category are any proffers made by lawyers for such witnesses**. By "proffers" the Court refers to statements that reflect an indication of possible testimony, whether or not it seems likely that the witness would actually so testify. In addition, the government **must disclose any notes or documents created by the government that reflect this information**.

*Id.* at 1206 (emphasis added).

Other district courts hold similarly. In *United States v. Stein*, the court concluded that drafts of a statement of facts agreed to in a deferred prosecution agreement must be disclosed. 488 F. Supp. 2d 350, 359 (S.D.N.Y. 2007). The court reasoned that "the give and take as to what [the cooperator] was prepared to admit and what the government unsuccessfully sought is likely to shed light on matters at issue in this case" and would "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* It seem inconceivable given all of the attorneys involved in the proffer for Mr. Smith that there were no drafts or communications reflecting changes proposed by Mr. Smith, and that he simply accepted the government's first draft of the Statement of Facts. And in *United States v. Ruiz*, the court ordered the production of "any proffers by witnesses or potential witnesses, including proffers made by a witness's attorney, that received a benefit of leniency" and "any of [the

government's] own notes or documents that reflect such proffers." No. 11-cr-209, 2013 WL 12219379, at *3 (C.D. Cal. Jan. 8, 2013). The court noted that information relayed by a witness's counsel to the government can constitute *Brady/Giglio* material, and cited *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 557–58 (4th Cir. 1999) for the holding that a prosecutor's failure to turn over inconsistent versions of a cooperating witness's testimony violated *Brady*.

Just as in *Sudikoff*, *Stein*, and *Ruiz*, the Proffer Materials here would provide crucial information about the back and forth of the NPA negotiations. This would be favorable to the defense because it would almost certainly show changes in Mr. Smith's testimony that will be key to effective cross-examination. This is especially so because the negotiation involved at least five separate meetings spread out over more than three years, and Mr. Smith did not immediately concede guilt—quite the contrary.

During the meet and confer process, the government provided citations to a handful of cases that the government believes supports its resistance to producing the Proffer Materials. But those cases either support Mr. Kepke's position, are distinguishable, or are not persuasive. In *United States v. DaVita*, the court discussed how it would permit proffer materials to be used to impeach witnesses at trial, implying that the proffer materials had been produced in discovery. No. 21-cr-229, 2022 WL 833368 (D. Col. Mar. 21, 2022). In *United States v. Saffarinia*, the government had already produced attorney proffer materials, and the court ordered the government to point the defense to the proffer materials given the volume of the production. 424 F. Supp. 3d 46 (D.D.C. Jan. 15, 2020). And in other cases, the courts concluded only that proffer materials need not be produced in the absence of any indication that they were material. *United States v. Weaver*, 992 F. Supp. 2d 152 (E.D.N.Y. 2014); *United States v. AU Optronics*, No. 09-cr-110, 2011 WL 6778520 (N.D. Cal. Dec. 23, 2011); *United States v. Buske*, No. 09-cr-65, 2011 WL 2912707 (E.D. Wis. July 18, 2011); *United States v. Acosta*, 357 F. Supp. 2d 1228 (D. Nev. 2005). This stands in contrast to the circumstances here, where the requested documents are material in several respects.

The documents are also favorable because they will reveal Mr. Smith's motive in seeking leniency, which will likewise be important for the jury to consider in assessing Mr. Smith's credibility as a witness. The *Sudikoff* court concluded that the government must produce proffer

materials because, in addition to showing variations in the witness's testimony, they would reveal the witness's motive and desire to seek leniency. 36 F. Supp. 2d at 1202–03. The court began with the bedrock principle that the jury must be allowed to consider evidence going to a cooperating witness's incentives in order to guard against unreliable, untruthful testimony. *Id.* at 1203. The court then reasoned that "[t]he motive behind an accomplice witness's agreement to testify may range from a simple quid quo pro to an earnest desire to disclose the truth" and that "[t]he defense cannot distinguish between such motives unless the government reveals information about the negotiation leading to the agreement." *Id.* The court further explained that this is so even if there was only one proffer, because "such a proffer is the motivating force behind the leniency agreement and as such can reveal what the witness was willing to do in return for leniency." *Id.*

Ninth Circuit caselaw further demonstrates that evidence concerning a cooperating witness's motives, as discussed in *Sudikoff*, must be turned over. In *United States v. Service Deli Inc.*, the Ninth Circuit reversed and remanded for a new trial when it was discovered that undisclosed handwritten notes from a proffer included information regarding the witness's motives: "This undisclosed statement, indicating [the cooperator] may have changed his story to avoid jail, goes to [the cooperator's] motivation to testify and clearly could have been used by the defense at trial to impeach his credibility." 151 F.3d at 944; *see also United States v. Bagley*, 473 U.S. 667, 683 (1985) (evidence indicating that witness received inducement from prosecution to testify constituted evidence favorable to the accused); *Benn v. Lambert*, 283 F.3d 1040, 1057 (9th Cir. 2002) (explaining that prosecution-provided benefits are *Brady* material because they indicate that a witness may have reasons for testifying other than altruism). Here, like in *Service Deli Inc.*, the cooperator accepted a deal that kept him out of jail—the defense is entitled to fully explore Mr. Smith's motives in this case.

As was the case in *Sudikoff* and *Service Deli Inc.*, the Proffer Materials are favorable because they will provide important information about Mr. Smith's motive to agree to cooperate with the government. An inability to fully cross-examine Mr. Smith regarding his motive would leave the jury with a misleading impression of the government's most important witness.

In addition to being relevant to Mr. Smith's credibility, the Proffer Materials must be

disclosed because they are directly exculpatory. Mr. Smith's purported tax fraud is the foundation of the charges against Mr. Kepke—the government alleges that the object of the conspiracy was "to conceal a portion of ***Smith's*** income from the IRS, thus evading the statutory assessment of the appropriate tax due and owing on ***this*** income," (Indict. ¶ 15 (emphasis added)), and that Mr. Kepke "willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation" of ***Mr. Smith's*** income tax return forms (*id.* at ¶ 52). But the statements of Mr. Smith, the government's key witness, show that he himself believed he had not committed any fraud. For example, Mr. Smith said he believed the use of offshore entities is well accepted in the private equity industry, that he believed his reporting position to the IRS was consistent with the law, and that he had a good faith belief that the trust structure was proper. (Summary Letter at ¶¶ 66, 153, 168.) Mr. Smith's statements are thus directly exculpatory of Mr. Kepke, and the government must turn over the original sources of Mr. Smith's statements, and not just some summary written by the prosecution. Mr. Kepke anticipates that the government will argue that it has fulfilled its responsibilities by producing the Summary Letter dated August 12, 2022. But the Summary Letter cannot discharge the government's obligations, nor has the government even attempted to explain how it could. The letter summarizes representations made by Mr. Smith's attorneys "over time." (Fondo Decl., ¶ 7, Ex. D.) There is no way to discern from the letter what Mr. Smith's attorneys communicated on which dates, or how Mr. Smith's version of events may have changed over time. The government emphasizes the timing of Mr. Smith's statements where favorable to the government, but has refused to provide any information about that timing to Mr. Kepke. For example, in one paragraph of the Summary Letter, the government summarizes without any timing identified, "Smith believed ***[at the time this statement was made]*** in good faith that it was correct for him not to include Flash's income on his Forms 1040[.]" (*Id.* at ¶ 168.) Nor does the Summary Letter identify the evidence submitted or relied upon to make those statements. Instead, the letter presents one static narrative, even though it appears to encompass proffers and communications spanning several years. The letter also was drafted by a government attorney long after the communications on which it is based, and obviously is based on a significant amount of source materials that the government is withholding, introducing further risk that the letter fails to capture

11

all necessary and relevant details. The letter is simply inadequate to address the concerns raised in *Sudikoff*, *Stein*, *Ruiz*, and *Service Deli*. *See also United States v. Meek*, No. 19-cr-378, 2021 WL 1049773, at *6 (S.D. Ind. Mar. 19, 2021) (ordering the government to produce notes from defendant's proffer where defendant contended that the government's summary did not accurately reflect defendant's statements).

Equally important is the inherent unreliability of the Summary Letter. The summaries total over 29 pages, appear to span more than three years of statements made by or on behalf of Mr. Smith, and were drafted by government lawyers who are prosecuting this case and have an incentive, conscious or not, to summarize information in a way helpful to the government. In fact, it is more likely than not that the Summary Letter fails to accurately capture all of Mr. Smith's potentially exculpatory statements. There is no reason to introduce such a high risk of reversible error when the government clearly has and can produce the underlying materials themselves.

Mr. Kepke also believes the government will contend that disclosure via Summary Letter is acceptable because it is not required to disclose legal analyses as opposed to factual matter. The legal basis of this argument is unclear. To the extent the government relies upon cases protecting prosecutorial work product, *e.g., Morris v. Ylst*, 447 F.3d 735, 742–43 (9th Cir. 2006), this line of cases does not support the government's position. While a prosecutor's opinions and mental impressions may not be discoverable, this rule does not extend to the opinions and mental impressions of Mr. Smith's counsel. Additionally, the government's actions are facts that are not protected, and even a prosecutor's legal analysis must be shared if it is bound up with underlying exculpatory facts. *United States v. Balwani*, No. 5:18-CR-00258-EJD-2, 2022 WL 1720081, at *3 (N.D. Cal. May 27, 2022) (explaining that "the course(s) the Government pursued in the end are not themselves work product" and quoting the government's brief for the proposition that "in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady unless they contain underlying exculpatory facts*" (emphasis in original)). If any of the underlying materials reflect the government's legal analysis, the solution is not the Summary Letter, but providing the underlying materials with appropriate redactions alongside a privilege log. *Balwani*, 2022 WL 1720081 at *3 (ordering the government to produce materials underlying

12

summary and to provide a privilege log for any materials withheld as work product).

There can be little doubt that the Proffer Materials are favorable to the defense and discoverable—the government would not have provided a summary if that were not the case. The Proffer Materials should be produced because they include repeated statements of Mr. Smith's innocence and they are relevant to multiple aspects of Mr. Smith's credibility. To the extent there is any doubt about the importance of these materials, the Court must err on the side of ordering production. *Price*, 566 F.3d at 913 n.14 ("[I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made."). If the materials are not produced, Mr. Kepke's ability to defend himself and to effectively cross-examine the witness who is the centerpiece of the government's case will be compromised.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Kepke requests that the government be compelled to disclose all Proffer Materials.

Respectfully submitted,

Dated: September 9, 2022

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant:
CARLOS E. KEPKE

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **September 9, 2022**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **September 9, 2022**.

*/s/ Grant P. Fondo*
GRANT P. FONDO