STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:     (408) 535-5040
Facsimile:     (408) 535-5081
Email: michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
United States Department of Justice
Telephone:     (202)514-5230
Email: corey.smith@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARLOS E. KEPKE,<br><br>　　　　Defendant. | Criminal No. 3:21-CR-00155-JD<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT MOTION TO COMPEL<br><br>Hearing.:　October 17, 2022<br>Time:　　　10:30 am<br>Place:　　 Courtroom 11, 19th Floor |

The Court should deny Defendant's Motion to Compel Discovery ("Motion to Compel"), ECF No. 81. The legal analysis, litigation strategies, plea negotiations, and emails of Robert Smith's attorneys are not evidence, are not relevant to the charges in the Indictment, do not constitute *Brady* or *Giglio* evidence, and pursuant to Federal Rule of Evidence 408, are inadmissible. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Furthermore, Defendant has already been provided extensive discovery regarding Robert Smith including: Smith's Non-Prosecution Agreement ("NPA") and attached Statement of Facts; Smith's grand jury testimony; numerous Memoranda of Interview ("MOI"); voluminous transactional and financial records; and a

lengthy letter encapsulating relevant factual representations made to the government by Smith's attorneys. Defendant's due process rights are more than adequately protected by the discovery already provided. Defendant's instant discovery request constitutes nothing more than an attempt to obtain the content of plea negotiations between Smith's attorneys and the prosecution which are irrelevant to the charges in the Indictment.

### I. Defendant has Already been Given Voluminous *Brady* and *Giglio* Evidence Related to Robert Smith

On October 9, 2020, after a 4 year grand jury investigation, Robert Smith, Defendant's client, entered into an NPA with the government. The NPA included the agreement itself, a Statement of Facts signed by Smith and his attorneys, a selected waiver of Smith's attorney / client privilege, and an agreement to pay approximately $140 million in unpaid federal income tax and penalties (including a fraud penalty). The NPA and the Statement of Facts are publicly available and were provided to Defendant in discovery on April 22, 2022. The Motion to Compel attaches Smith's NPA as an exhibit, *see* Motion to Compel, at Exhibit A, ECF No. 81-2, but does not attach the associated Statement of Facts. The Statement of Facts is attached hereto as Exhibit 1, and provides a summary of Smith's involvement with Defendant. As part of the NPA, Smith began cooperating with the government in this investigation. This cooperation included a proffer by Smith's attorneys on June 2, 2020, three interviews of Smith by IRS CI Special Agents and prosecutors, and testimony before the grand jury. For each meeting between Smith and the government, and the June 2, 2020 attorney-proffer, an MOI was prepared. All of these MOIs and transcripts have been provided to Defendant as follows:

| | **Item or Interview Date** | **Date Provided to Defendant** |
|---|---|---|
| 1) | Vista Equity Partners Business Records | June 17, 2021 |
| 2) | Smith Divorce Records | July 19, 2021 |
| 3) | Smith's Tax Returns and IRS Evidence | July 19, 2021 |
| 4) | June 2, 2020 Smith Attorney-Proffer MOI | August 2, 2022; |
| 5) | August 13 & 14, 2020 Proffer by Smith MOI | February 11, 2022; |
| 6) | March 17, 2021 Interview of Smith MOI | November 11, 2021; |
| 7) | March 18, 2021 Grand Jury Testimony | May 31, 2022; |

| | | |
|---|---|---|
| 1 | 8)      July 26, 2022 Interview of Smith | September 16, 2022. |

The above list is by no means exhaustive. In addition, Defendant has been provided thousands of pages of additional Rule 16 discovery related to Smith, including emails, bank records, other financial records, and records from Smith's company Vista Equity Partners. In addition to these items, on August 12, 2022, the government provided to Defendant a 29-page letter summarizing *factual* representations made to the government by Smith's attorneys. This letter was provided in accordance with the government's discovery obligation under *Giglio* as a summary of discussions with Smith's counsel about tangible evidence that may have the potential to be inconsistent with evidence provided to Defendant in discovery. The government respectfully submits that the extensive discovery provided to Defendant in this case regarding Smith more than satisfies its obligations to Defendant under *Brady* and *Giglio* and ensures that Defendant's due process rights are protected.

## II.    The Requested Discovery Does Not Constitute Relevant Evidence and Is Excludable Under Rule 408

Defendants have the Constitutional right to discovery of evidence which might call into question the credibility of witness expected to testify against them. *Giglio v. United States*, 405 U.S. at 154 (citing *Brady v. Maryland*, 373 U.S. at 87). Such evidence, however, is material only if "there is a reasonable probability that had the evidence been disclosed to the defense the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985) (error where government failed to disclose contracts between witnesses and government). The government's obligation to provide exculpatory and impeachment evidence includes prior statements of witnesses which may reveal any potential inconsistencies, promises, or inducements to testify. *United States v. Acosta*, 357 F. Supp. 2d 1228, 1232, (D. Nev 2005). Impeachment, or *Giglio* evidence, does not however, include the opinions of witness' attorneys, their legal analyses, litigation strategies, or the communications between witness' attorneys and prosecutors during plea negotiations. Fed. R. Evid. 408, 410; see *also Acosta*, 357 F. Supp. 2d at 1244 (prior statements of witnesses constitute *Giglio* materials, but the "notes, memoranda and mental impressions" of counsel do not).

Communications during plea negotiations between the attorney of a codefendant or witness and the government are not evidence, but instead, constitute the mental impressions, legal analyses, and

opinions of the participating attorneys – not the witness. The opinions and legal strategies of witness' attorneys are not relevant to the credibility those witnesses. *See United States v. AU Optronics*, 09-cv-0110-SI, 2011 WL 6778520, p2 (N.D. Cal. Dec. 23, 2011) (internal communications relating to plea negotiations not discoverable). Discussions between attorneys are not the same as plea agreements, immunity agreements, inducements, or prior statements of fact witnesses unless they recount the expected testimony of prospective witnesses. *Id*. Counsels' discussions with prosecutors also constitute inadmissible hearsay. Fed. R. Evid. 801.

In addition to attorneys' plea negotiations for one co-defendant simply not being relevant to the prosecution of another co-defendant, the Federal Rules of Evidence, and applicable case law, reflect the systemic need for such negotiations to remain confidential. *See United States v. Roti*, 484 F.3d 934, 945-46 (7th Cir. 2007) (Rule 408 applies to criminal cases – evidence of settlement negotiations inadmissible); see *also United States v. Babajian*, 07-cr-00755-DDP, 2009 WL 412333, p3, n.2 (C.D. Cal. Feb. 17, 2009) (compromise offers and negotiations not admissible to impeach). Disclosure of plea negotiations, legal opinions and litigation strategies would have a "chilling" effect on the criminal legal process – particularly, candid negotiations between counsel and prosecutors. *United States v. Valencia*, 826, F.2d 169, 173 (2d Cir. 1987); *United States v. Weaver*, 992 F. Supp 2d. 152, 157 (E.D.N.Y. 2014) (discussion between counsel preliminary to plea agreement not discoverable). If communications, negotiations, exchange of legal theories, and opinions between a defense counsel and a prosecutor were subject to possible discovery, these very vital discussions will be much more guarded, and the subject negotiations likely less productive.

Plea negotiations, and communications between counsel and the government concerning legal impressions and opinions are distinguishable and distinct from "attorney-proffers" wherein a witness's attorney proffers what a witness's testimony is likely to include. *Acosta*, 357 F. Supp. 2d at 1232 (distinguishing *United States v. Sudikoff*, 36 F.Supp. 2d 1196 (C.D. Cal 1999). *Sudikoff*, and similar cases, are easily distinguishable from this case. In *Sudikoff* a witness's attorney's notes were held to be discoverable because those notes reflected an "attorney-proffer" of the witness's expected immunized testimony, which led to the witness in question being granted statutory immunity. *Sudikoff*, 36 F. Supp. 2d at 1201. The *Sudikoff* court held that these "proffer notes" were required to be disclosed under *Giglio*

because they contained the potential of revealing inconsistencies in the prospective witness's testimony. *Id*. The substance of plea negotiations, and the legal analysis and opinions of the attorneys themselves was not at issue in *Sudikoff*. *United States v. Triumph Capital Group, Inc*., 544 F.3d 149, 161-62 (2d Cir. 2008) is also distinguishable from this case because the discovery withheld in *Triumph Capital* also consisted of notes of a proffer given by a key witness that appeared to relay a version of events inconsistent with other discovery. *Id.* In the instant case, however, unlike the situations in *Sudikoff* and *Triumph Capital,* the government has already provided Defendant with the substance of Smith's expected testimony – multiple times. Unlike *Sudikoff* and *Triump Capital*, Defendant here has been provided with MOIs, transcripts, and Smith's NPA Statement of Facts which each represent a summary of Smith's expected testimony. The government has also provided Defendant with a memorandum summarizing an attorney-proffer of Smith's expected testimony – a proffer at which Smith was not even present. While the Motion to Compel claims to seek merely "proffer" statements by Smith, *see* Motion to Compel, page 10, that is not accurate. The Motion to Compel actually seeks details of plea negotiations, legal analysis, and communications between Smith's attorneys and the government*. See* Motion to Compel, page 12. This request is not at all similar to the discovery at issue in *Sudikoff* and *Triumph Capital* and does not constitute relevant evidence.

The Courts in *Acosta* and *AU Optronics* succinctly described the difference between discovery of notes of "attorney-proffers" and "plea negotiations." *Acosta*, 357, F. Supp. 2d. at1244-45; *AU Optronics Corp*, 2011 WL 6778520 at p2. Notes regarding an attorney-proffer, constructively representing a witness's likely testimony, may include representations inconsistent with how a witness may testify. Such possible inconsistencies may constitute *Giglio* material, or impeachment evidence, and may be useful to a defendant in challenging a witness's credibility*. Id.* On the other hand, communications between counsel and the government that do not purport to represent a witness's expected testimony, are nothing more than an attorney's opinion, conjecture, legal strategy, and analysis. They in no way impact the credibility of the actual testifying witness. These discussions, preliminary to a plea agreement or NPA, are inadmissible under Rule 408 for any purpose, and irrelevant to a witness's expected testimony. *Id.*

### III. Argument

Here Defendant makes a number of incorrect statements in his Motion to Compel, and conflates the difference between notes and memorandum of "attorney-proffers," and discussions between counsel preliminary to Smith's NPA. First and foremost, Defendant incorrectly states that the government has refused to provide notes or memoranda of discussions with Smith. *See* Motion to Compel, page 1. This is incorrect. In fact, the government has produced to Defendant MOIs for all of its meetings with Smith. The government has also provided a copy of Smith's grand jury transcript and a memorandum of the attorney-proffer made by Smith's attorneys to the government on June 2, 2020. These materials provided are in addition to the NPA Statement of Facts which also summarizes Smith's expected testimony. What Defendant's Motion to Compel actually seeks are the details of the negotiations between Smith's attorneys and the government which culminated in Smith's NPA executed on October 9, 2020. There is no scenario in which Smith's attorney's legal analysis, litigation strategies, and plea negotiations with the government have any probative value of Defendant's guilt or innocence, or bearing on Smith's credibility. It would be completely improper to attempt to impeach Smith on cross-examination with the statements made by his attorneys to the government during plea negotiations. Not only are statements made by Smith's attorneys during plea negotiations inadmissible under Rule 408, they are also hearsay under Rule 801, and constitute inadmissible extrinsic evidence Rule 608(b). Furthermore, since Smith's attorneys' statements and plea negotiations are inadmissible under several rules of evidence, they are highly unlikely to be "material" as that term is defined in the *Giglio* context by *Bagley*. *United States v. Bagley,* 473 U.S. at 682. In short, these plea negotiations constituted legal discussions by persons not directly involved in the allegations contained in the Indictment, not statements by fact witnesses. They do not impact Defendant's due process rights since they are simply not admissible during cross examination of Smith and do not represent the statements of a fact witness. Defendant's due process and confrontation clause rights are more than adequately protected by the volume of discovery provided by the government to Defendant regarding Smith. Defendant has ample discovery regarding Smith's prior statements and testimony to challenge Smith's credibility and veracity if Defendant's counsel chooses to do so.

In addition, prior to the initial proffer of Smith on August 13-14, 2021, on June 2, 2020, as part

of plea negotiations, Smith's attorneys met with the government and proffered what Smith could testify about if he were to cooperate in the government's ongoing investigation of Robert Brockman.[1]  As part of its ongoing discovery, as listed above, the government has provided to Defendant a copy of the MOI drafted by IRS Special Agents memorializing the June 2, 2020 attorney-proffer.  The government's provision of this memorandum, which is analogous to the discovery at issue in *Sudikoff* and *Triumph Capital*, make the holdings in these cases moot and inapplicable to this case.  The requests made by Defendant in his Motion to Compel, and prior discovery requests, go far beyond any discovery requested in *Sudikoff* and *Triumph Capital*.

Since Defendant has already been provided in discovery the substance of Smith's meetings with the government, his expected testimony, his prior grand jury testimony, and a memorandum summarizing the proffer by his attorneys, the subject of Defendant's Motion to Compel must pertain to material that Defendant has not been provided, i.e. emails, notes and materials relating to discussions between Smith's counsel and the government.  Defendant's claims to the contrary in the Motion to Compel are simply not accurate.  The meetings between Smith's counsel and the government were primarily concerned with counsels' legal analyses, opinions, litigation strategies, and plea negotiations on Smith's behalf.  To the extent Smith's attorneys gave to the government any tangible documentary evidence, i.e. emails, financial records etc., during these negotiations, those items already have been provided to Defendant in discovery.  In an abundance of caution, however, in the outside chance that any inconsistencies regarding this tangible evidence may be present, factual representations made by Smith's attorneys during these negotiations have been summarized in the government's August 12, 2022 letter to Defendant.  Given the plethora of evidence provided to Defendant regarding Smith, including his business records, income tax returns and records, divorce records, testimony transcripts, memorandum of interview, and his NPA and Statement of Facts, Defendant's attorneys have more than sufficient evidence, in accordance with *Giglio*, to adequately challenge Smith's credibility, and/or determine if Smith made any inconsistent statements to the government.

---

[1] *United States v. Brockman*, 4:21cr009 GCH (SDTX).  Brockman was indicted on October 1, 2020, but on August 5, 2022 Mr. Brockman passed away and the case has now been dismissed.

### IV. Conclusion

The legal opinions, analysis of evidence, and litigation strategy of Smith's attorneys are not at all relevant to the charges against Defendant, do not have any bearing on Smith's credibility, and as such, their disclosure is not mandated to protect the due process rights of Defendant under *Brady*, *Giglio* or *Bagley*. It is the actual documentary and testimonial evidence representing the financial relationship between Smith, Defendant, and the IRS that is the focus of the charges currently pending, not Smith's attorney's opinions and analysis of this evidence, or the substance of their plea negotiations with the government. These materials represent not only inadmissible plea discussions, but loosely defined, the attorney work product of Smith's attorneys, and as such should remain confidential for the reasons stated herein.

Respectfully submitted on September 16, 2022,

STEPHANIE M. HINDS
United States Attorney

s/ Corey J. Smith
COREY J. SMITH
Senior Litigation Counsel
Tax Division
MICHAEL G. PITMAN
Assistant United States Attorney
BORIS BOURGET
Trial Attorney
Tax Division

Attorneys for United States of America

# CERTIFICATE OF SERVICE

I the undersigned do hereby certify that on the 16th of September, 2022, I electronically filed the foregoing Government's Response to Defendant's Motion to Compel using the ECF electronic filing system, which will send notice of electronic filing to counsel of record.

*/s/Corey J. Smith*
Senior Litigation Counsel
Department of Justice
Tax Division
Corey.Smith@usdoj.gov
(202)514-5230