GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800
Fax: +1 212 355 3333

Attorneys for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>    Defendant. | Case No. 3:21-CR-00155-JD<br><br>**CARLOS KEPKE'S REPLY IN SUPPORT OF MOTION TO COMPEL PROFFER MATERIALS AND STATEMENTS**<br><br>Date:        October 17, 2022<br>Time:       10:30 a.m.<br>Courtroom: 11, 19th Floor<br>Judge:      Hon. James Donato |

I. **INTRODUCTION**

Mr. Kepke seeks documents relating to all meetings between the government and Mr. Robert Smith or his attorneys prior to Mr. Smith's execution of a non-prosecution agreement ("NPA"),[1] including presentations, notes, memoranda, and communications ("Proffer Materials"). The government concedes that it is withholding materials concerning plea negotiations between Mr. Smith's attorneys and the government that occurred prior to formal proffer meetings with Mr. Smith, yet attempts to distract from this by fixating on a supposed distinction between plea negotiations and proffers, contending that the former concerns undiscoverable legal analyses while the latter concerns discoverable facts. The government is wrong. The caselaw it cites does not support this distinction; in fact, it is flatly contradicted by the caselaw Mr. Kepke cites, which the government does not convincingly distinguish or does not bother trying to distinguish at all.

But more importantly, this purported distinction between "plea negotiations" and proffers is irrelevant because the government concedes it is withholding discovery regarding the *facts* discussed in communications between the government and lawyers for the government's most important witness. The government argues that its discovery obligations are satisfied by the August 12, 2022 letter it produced to Mr. Kepke ("Summary Letter" (ECF No. 81-5)). That Summary Letter, however, is woefully inadequate. It includes nearly 30 pages of summaries of facts that apparently were discussed during Mr. Smith's plea negotiations, including Mr. Smith's statements that he believed his actions were lawful. The Summary Letter, which was drafted by the prosecutors years after the underlying communications, omits precisely the sort of details that would be helpful to the defense during cross-examination—in particular, which statements were made when or how those statements may have changed over time. Aside from proclaiming that it produced the Summary Letter only in abundance of caution, the government has made no effort to justify the disclosure of critical information through an unreliable summary rather than by producing the underlying materials, including notes and memoranda of those early meetings, and any written

---

[1] The government asserts in its opposition that Mr. Kepke attached the Non-Prosecution Agreement to his opening papers, but not the Statement of Facts. The government seems to have overlooked the second half of Exhibit A to the Declaration of Grant P. Fondo (pages 9 through 15 of ECF No. 81-2).

1  presentations provided to the government by Mr. Smith's counsel. The Summary Letter is no substitute for the production of direct evidence of potentially exculpatory information.

The government also takes the curious position that since it has produced a lot of discovery relating to Mr. Smith, including the Summary Letter, that is sufficient. It is not enough for the government to turn over "extensive" evidence—the government must turn over *all* material evidence. The government has not done so. To the extent there is any doubt about whether the requested evidence is material, consistent with Ninth Circuit precedent, the Court should err on the side of ordering disclosure. Mr. Kepke's Motion to Compel (ECF No. 81) should be granted.

## II.     ARGUMENT

The government's argument artificially posits a supposedly bright line between plea negotiations and legal analysis on the one hand and factual proffers on the other, and contends that it is not required to provide any discovery at all regarding the former. (Opp'n at 3–4, 6–7 (ECF No. 83).) Neither caselaw, logic, nor the facts of this case support the government's position.

First, the government gets the materiality standard wrong. The government asserts that evidence is "material only if there is a reasonable probability that had the evidence been disclosed to the defense the result of the proceeding would have been different." (Opp'n at 3 (internal quotation marks omitted).) In the pre-trial context, however, "a trial prosecutor's speculative prediction about the likely materiality of favorable evidence . . . should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013). "[T]he proper test" for materiality in the pre-trial context is thus "whether the evidence is favorable to the defense." *United States v. Price*, 566 F.3d 900, 907, 913 n.14. Relatedly, the government argues at length that the evidence cannot be material because it would be inadmissible. (Opp'n at 3, 6.) Mr. Kepke cannot fully speak to the admissibility of evidence he has never seen, and to the extent he can he disagrees with the government's conclusory assertions. But in any event, admissibility is not the relevant question. Rather, the government must "disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to

admissible evidence." *Price*, 566 F.3d at 907, 913 n.14 (internal quotation marks omitted). Furthermore, while there may be policy reasons in favor of protecting plea negotiations in some circumstances, those cannot trump a criminal defendant's constitutional right to discovery to ensure a fair trial.

Second, the caselaw the government cites does not support the artificial distinction it is trying to make between "plea negotiations" and factual proffers.. The government cites two cases in support of its assertion that it need never produce plea negotiations and legal analysis, but neither supports the government's argument. *United States v. AU Optronics Corp.* included very little discussion at all, and certainly no conclusion that the government is never required to produce evidence regarding plea negotiations. No. 09-cr-110, 2011 WL 6778520 (N.D. Cal. Dec. 23, 2011). Rather, where the government refused to produce documentation related to plea negotiations or internal communications between government agencies, the court merely said that "the material the defendants seek is not relevant to the credibility of the government's witnesses." *Id.* at *2. The court did not discuss the difference between facts and legal analysis, nor did such a distinction form the basis of the court's decision. And, significantly, the court set out one major caveat: "Of course, if there is a separate basis for disclosure—for example, if the documents contain a material inconsistent statement of a witness—the government may have a separate obligation to disclose the materials the defendants seek." *Id.*

Similarly, in *United States v. Acosta*, the court did not hold that legal analyses made during plea negotiations were never discoverable, but reasoned that less detailed prior statements by the cooperator or counsel about the cooperator's proposed testimony are not *necessarily* prior inconsistent statements, because they may reflect preliminary outline questions. 357 F. Supp. 2d 1228, 1244–45 (D. Nev. 2005). And, like *AU Optronics*, the *Acosta* court expressly recognized that that any inconsistent statements, even if made during preliminary plea negotiations, must be turned over: "The court agrees that if the cooperator makes inconsistent statements during the proffer process, those inconsistent statements must be regarded as exculpatory *Brady* material[.]" *Id.* at 1244.

In addition to the fact that *AU Optronics* and *Acosta* do not support the government's

3

1  argument, they are also unpersuasive and distinguishable. In *AU Optronics*, the court did not set
2  out its reasoning for the conclusion that the government need not produce plea negotiations or
3  internal communications. 2011 WL 6778520 at *2. And in *Acosta*, the court did not address the
4  importance of plea negotiations in illuminating a witness's motive. 357 F. Supp. 2d at 1244–45.
5  There are also important factual differences between *Acosta* and the circumstances here. In *Acosta*,
6  the defendant was seeking materials not related to just one key witness, but to potentially dozens
7  of co-defendants who were likely to plead guilty and whose plea negotiations would largely occur
8  shortly before trial. *Id.* at 1237–38 (explaining there were 42 co-defendants as well as additional
9  people who may have reached pre-plea dispositions). Here, by contrast, the government's
10 investigation of Mr. Smith—its star witness—lasted for more than four years and it appears there
11 were at least five meetings with the government before Mr. Smith entered into the NPA.

12         Furthermore, even under *AU Optronics* and *Acosta*, the government should be ordered to
13 produce the discovery sought. In both cases, the courts acknowledged that materials related to pre-
14 proffer plea negotiations must be disclosed if they include statements inconsistent with later
15 proposed testimony. Here, Mr. Smith, through his lawyers, initially told the government he had
16 done nothing wrong and attempted to persuade the government of that view. Indeed, the August
17 12, 2022 Summary Letter includes summaries of several statements in which Mr. Smith disclaims
18 having broken the tax laws. (Fondo Decl., ¶ 7, Ex. D at *e.g.*, ¶¶ 51, 57, 66, 153.) This contradicts
19 Mr. Smith's NPA and the testimony Mr. Smith is expected to give at Mr. Kepke's trial. And since
20 Mr. Kepke's charges are based upon Mr. Smith's tax activity, Mr. Smith's statements about his
21 own guilt are highly material to Mr. Kepke's defense. Thus even under *AU Optronics* and *Acosta*,
22 the government is obligated to produce the requested materials.

23         Third, the government does not sufficiently distinguish the persuasive caselaw that Mr.
24 Kepke cited in his opening brief. The government unsuccessfully tries to distinguish *United States*
25 *v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999), asserting that it concerns only proffers and not
26 plea negotiations. (Opp'n at 4–5.) Not so. The *Sudikoff* opinion clearly contemplates plea
27 negotiations that predate any formal proffers. For example, the *Sudikoff* court concluded that early
28 negotiations were relevant to changes in the witness's versions of events, explaining that,

"[b]ecause this process can be lengthy and because it often carries some of the typical negotiating give-and-take, it is possible, maybe even likely, that the witness's proposed testimony that was proffered at the *beginning of the process* differed in some respects from the testimony proffered at the end of the process." *Id.* at 1202 (emphasis added). The *Sudikoff* court also concluded that statements made during plea negotiations were relevant to motive because "[t]he motive behind an accomplice witness's agreement to testify may range from a simple quid quo pro to an earnest desire to disclose the truth" and that "[t]he defense cannot distinguish between such motives unless the government reveals information about *the negotiation leading to the agreement*." *Id.* at 1203 (emphasis added). And the *Sudikoff* court clearly ordered the government to produce evidence of plea negotiations: "the government must disclose any material that indicates any variations in the witness's proffered testimony" and "[t]he government must also disclose to the defendants any information in its possession that reveals the negotiation process by which the immunity agreement was reached," including "material authored by a witness, a witness's lawyer, or the government." *Id.* at 1206.

The government does not mention, let alone try to distinguish, the other cases Mr. Kepke cites in his opening brief. *United States v. Service Deli Inc.*, 151 F.3d 938, 944 (9th Cir. 1998) (reversing and remanding because undisclosed handwritten notes from an interview with the government's key witness included information regarding the witness's motives in cooperating with the government); *United States v. Stein*, 488 F. Supp. 2d 350, 359 (S.D.N.Y. 2007) ("[T]he give and take as to what [the cooperator] was prepared to admit and what the government unsuccessfully sought is likely to shed light on matters at issue in this case" and would "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."); *United States v. Ruiz*, No. 11-cr-209, 2013 WL 12219379, at *3 (C.D. Cal. Jan. 8, 2013) (ordering production of "all communications between the government and any attorney for a potential witness that contain exculpatory or impeachment information").

Fourth, in addition to the lack of support in the caselaw for the government's position, logic also does not support the government's argument. The bright line the government attempts to draw

between legal analyses in plea negotiations and facts disclosed in proffers is inconsistent with reality. Plea negotiations do not consist of purely legal discussions that are completely divorced from the facts of a case. In any plea negotiation, the prospective defendant's version of events is necessarily at issue. There can be no informed discussion about whether a crime has been committed or the appropriate sentencing analysis unless plea negotiations are grounded in facts. Additionally, facts and law are even more intertwined here, where a person's knowledge of the law is relevant to whether that person committed tax fraud. The government acknowledges that willfulness, often an important issue in criminal tax cases, is the "voluntary, intentional violation of a known *legal duty*." (ECF No. 66 at 13 n.28 (emphasis added) (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991); *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1992).) Accordingly, in this case, the law and the facts are inextricably intertwined, with no clear demarcation between the two. Any attempt by the government to tease out independent "facts" from "legal analysis" would inevitably result in the withholding of material information.

And finally, the government's position that there is a clear line between plea negotiations and proffers is contradicted by its own Summary Letter. The government concedes that it has withheld materials from some unknown number of meetings on unknown dates between the government and Mr. Smith's attorneys. (Opp'n at 7.) It attempts to justify withholding this evidence by contending that these undisclosed meetings were "primarily concerned" with counsel's legal analyses, opinions, litigation strategies, and plea negotiations. (*Id.*) The Summary Letter, which supposedly distills a small amount of factual matter discussed in meetings that were "primarily concerned" with legal discussions, includes 184 paragraphs and runs 28 pages. It is thus clear that undisclosed materials concerning meetings between the government and Mr. Smith's counsel include a significant amount of factual discussion. And, as Mr. Kepke argued in his opening papers and the government did not refute, there is no legal support for the production of a summary of material information rather than production of the material information itself. (Mot. at 11–12.) The Summary Letter lacks detail, excludes important context, and fails to reflect any changes in Mr. Smith's version of events over time. It is also highly implausible that the prosecutors would have captured all relevant details and nuances in a summary drafted several years after the meetings and

communications took place. (*Id.*) These things would be concerning in any case, but are especially concerning here because Mr. Smith's attorneys apparently had numerous meetings with the government over a span of several years, introducing many opportunities for Mr. Smith's version of events to evolve.

It is clear from the Summary Letter that Mr. Smith's factual and legal position did in fact evolve over time, from "he did not intend to nor did he violate the law and should not be prosecuted," to his current posture of admitting having committed tax fraud and agreeing to be a cooperating witness against Mr. Kepke in return for a non-prosecution agreement. That is a significant evolution. The twists and turns Mr. Smith's factual and legal recitations may have taken along the way are clearly material to Mr. Kepke's constitutional right to defend himself at trial.

### III. CONCLUSION

For the foregoing reasons, the Court should order the government to produce any Proffer Materials, including not yet disclosed notes and memoranda regarding meetings, any presentations made by Smith's counsel to the government, and the materials on which the Summary Letter is based. "[I]f doubt exists, it should be resolved in favor of the defendant and *full disclosure made*." *Price*, 566 F.3d at 913 n.14 (emphasis added, internal quotation marks and citation omitted). The government's refusal to produce the Proffer Materials would hinder Mr. Kepke's ability to cross-examine the government's most important witness, potentially resulting in reversible error.

Respectfully submitted,

Dated: September 20, 2022     By: */s/ Grant P. Fondo*
　　　　　　　　　　　　　　　　GRANT P. FONDO (SBN 181530)
　　　　　　　　　　　　　　　　GFondo@goodwinlaw.com
　　　　　　　　　　　　　　　　DAVID R. CALLAWAY (SBN 121782)
　　　　　　　　　　　　　　　　DCallaway@goodwinlaw.com
　　　　　　　　　　　　　　　　RICHARD M. STRASSBERG (*pro hac vice*)
　　　　　　　　　　　　　　　　RStrassberg@goodwinlaw.com
　　　　　　　　　　　　　　　　**GOODWIN PROCTER LLP**

　　　　　　　　　　　　　　　　Attorneys for Defendant:
　　　　　　　　　　　　　　　　CARLOS E. KEPKE

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **September 20, 2022**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **September 20, 2022**.

*/s/ Grant P. Fondo*
GRANT P. FONDO