STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:     (408) 535-5040
Facsimile:     (408) 535-5081
Email: michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
United States Department of Justice
Telephone:     (202)514-5230
Email: corey.smith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 3:21-CR-00155-JD |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ROBERT BROCKMAN |
| v. | |
| CARLOS E. KEPKE, | Hearing.:        October 17, 2022 |
| Defendant. | Time:            10:30 a.m. |
| | Place:           Courtroom 11, 19th Floor |

In response to Defendant's *Motion in Limine* to Exclude Evidence Related to Robert Brockman, the government contends that the evidence that was noticed by the government to Defendant on August 15, 2022, related to Brockman, (the "Brockman Evidence") is: 1) directly relevant to the charges in the Indictment and Defendant's conduct described therein; 2) probative of Defendant's intent, willfulness, absence of good faith, and lack of inadvertence; and 3) otherwise admissible under Fed. R. Evid. 404(b).

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE RELATED
TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD

1

**BACKGROUND**

Beginning in 1999 and continuing until 2015, Defendant created and managed an offshore trust structure for Robert Smith, one of his clients.  The offshore trust structure was designed to conceal a portion of Smith's taxable income and evade federal income taxes on approximately $225 million of carried interest and capital gain income Smith earned from his management of private equity funds at Vista Equity Partners ("Vista").  On October 9, 2020, Smith signed a Non-Prosecution Agreement ("NPA") with the United States. *Exhibit 2*.  The terms of Smith's NPA required him to cooperate with the government in the ongoing investigation of Robert Brockman and Defendant.   In connection with the NPA, Smith also signed a Statement of Facts in which he admitted that the offshore trust structure Defendant (referred to as Individual B in the Statement of Facts) created and maintained for Smith was designed and used to hide Smith's assets and tax liabilities from the IRS.  *See Exhibit 3*, ¶¶ 6 to13.  Smith further stated that Individual A (Brockman) referred Smith to Defendant for the purpose of creating the foreign trust which is the subject of the Indictment in this case. *See Exhibit* 3, ¶ 5.  On October 1, 2020, Brockman was indicted ("Brockman Indictment") in the Norther District of California on charges of conspiracy, tax evasion, wire fraud and money laundering.[1]  *Exhibit 4*.  The Brockman Indictment alleged that in or about 1981 Brockman formed the A. Eugene Brockman Charitable Trust ("AEBCT") in Bermuda.  *Exhibit 4*, ¶6.  Witnesses and documents have established that Defendant assisted Brockman in forming the AEBCT in 1981.  The Brockman Indictment alleges that to manage the AEBCT Brockman employed "Individual 1," now identified at Evatt Tamine.  *Exhibit 4*, ¶¶36-42.  The Brockman Indictment also alleges that in or about 2000, Brockman was the primary investor in Vista, in the amount of $300 million.  *Exhibit 4*, ¶14.   The emails noticed in the governments August 15, 2022 letter to Defendant include emails between Tamine and Brockman, and between Tamine and Defendant, which corroborate these relationships.  It is expected that Smith and Tamine will testify that

---

[1] On January 4, 2021, on a motion by Brockman, venue of the Brockman case was transferred to the Southern District of Texas, *United States v. Brockman*, *3:20cr00371 (WHA) - ECF 76*, and on September 7, 2022, due to Brockman's passing on August 5, 2022, the case was dismissed. *United States v. Brockman*, *4:21cr 9 (GCH) – ECF 290*.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD

2

on occasion Tamine and Kepke worked together to manage the foreign trusts of Brockman and Smith, and since Brockman was Smith's primary investor, these interests often aligned.

## THE UNDERCOVER EVIDENCE

Beginning in 2017, as part of the IRS investigation of Defendant for marketing foreign trusts and tax shelters, the IRS initiated an undercover operation of Defendant. The undercover evidence consists of recordings of Defendant's contacts with undercover agents, transcripts of those contacts, and other communications exchanged between Defendant and undercover agents during the course of the undercover operation which have already been produced to Defendant in connection with this prosecution.

The undercover operation utilized multiple undercover agents. On December 4, 2017, a second undercover agent presented himself to Defendant as a bar owner from Pennsylvania interested in "asset protection."[2] Defendant discussed using a foreign trust with the undercover agent to make it appear as if the undercover agent did not "own" the assets placed into the trust, but that the undercover agent would keep control over those assets.[3] The conversations between Defendant and the undercover agent(s) are the subject of a motion by the government to admit these statements by Defendant as relevant and/or properly admissible under Fed. R. Evid. 404(b).[4] On February 7, 2018, during a meeting between Defendant and the undercover agent, the undercover agent asked Defendant about his other clients, and Defendant made veiled references to Smith and Brockman.[5] Later, on February 15, 2018, at

---

[2] *See Exhibit 5 - IRS-2018-0000341, pp5-7.*

[3] *See Exhibit 5 - IRS-2018-0000341, pp7-12.*

[4] *See ECF 66,* Government's Notice of Motion and *Motion in Limine* to Admit Evidence of Undercover Contacts, filed August 10, 2022.

[5] **UCA 2**: "What's your biggest client?"
 **Kepke**: "I have two (2) who are pretty close, three (3) ... If you're tryin' ... give you his name, I can't ...
**Undercover Agent:** No, no I know, no, I know you can't do that, but I meant, like- like, amount of money they dump into somethin' like this. What would be the amount, you think?
**Kepke**: Two (2) or three (3) Billion.
**Undercover Agent:** Billion, with a B? … You've got to be kidding me.
...
**Kepke**: One's a, uh, a, uh, ... private equity fund ... owner of a private [Robert Smith]... and one is a owner of a, uh ... what used to be a computer company that serviced all the automobile dealers in the world in the U.S., and the world." [Robert Brockman]. *See Exhibit 6 - IRS-Kepke-2019-000055, pp107-*

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE RELATED
TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD

3

Defendant's urging, the undercover agent contacted Brockman's employee and trustee, Tamine, as a personal reference.[6]  The conversation between the undercover agent and Tamine made it clear that Defendant and Tamine worked together and that Brockman/Tamine had Defendant on a retainer related to the management of Brockman's foreign trust.  On February 22, 2018, the undercover agent and Defendant discussed the conversation between the undercover agent and Tamine.[7]  Defendant confirmed for the undercover agent that although Defendant does not do as much work for Brockman as he once did, there was an ongoing working relationship between Tamine and himself.

## ARGUMENT

### A.    The Evidence Related to Brockman is Admissible as Direct Evidence of Defendant's Continued Pattern, Lack of Good Faith, Willfulness, and Lack of Inadvertence.

Defendant is charged with conspiracy to defraud the United States Department of the Treasury by aiding Robert Smith to conceal his income and assets from 2005 through 2014, in violation of Title

_____

*108.*

[6] **Undercover Agent**: that was the main point but it sounds like you guys really don't do business anymore together.

**Tamine**: we… not, not really, no. No.

**Undercover Agent**: Okay.

**Tamine**: I pay him.  I pay Carlos an annual retainer, but there really isn't a great deal.  In fact, it's next to nothing that I give him on an annual basis and in whole – in the whole of the time I've been in charge, uhm… which pretty much – is since two-thousand- August of two-thousand-ten, (2010), there's very little- there's very little, if anything, that-that I've done with Carlos – maybe before then, uhm . . . most, most of the work Gordon had done had already been well and truly established years and years ago and, uhm, I, you know, I don't, uh, we didn't do a lot with Carlos through, you know, my, my involvement got pretty, uhm. .. heavy in this in about – in what I'm doing now, in about two-thousand and two (2002).

**Undercover Agent**: Okay. *See Exhibit 7 - IRS-Kepke-00000635, pp18-19.*

[7] **Undercover agent**: So, you know, really knowledgeable, you know, worked with you for a while.  The other guy was a little – a little off.  Uhm…. How do you say his first name? Uhm, it's, uh…

**Kepke**: Evatt. Evatt.

**Undercover Agent**: Yes, that's it.  He, uhm….

**Kepke**: Yes.

**Undercover Agent:** he-he was uh ….. kinda ….. he seemed like – 'cause do you guys do work together or … the two (2) of you?

**Kepke:** Yes, we do. *See Exhibit 8 - IRS-Kepke-2018-0001057, p4.*

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE RELATED
TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD

4

1    18 U.S.C. § 371, and aiding and assisting the filing of false federal income tax returns for Robert Smith

2    for the tax years, 2012, 2013, and 2014, in violation of Title 26 U.S.C. §7206(2).  The elements of a

3    violation of § 7206(2) that the government must prove beyond a reasonable doubt are:

4            First: the income tax return described was fraudulent or false as to some material matter;

5            Second: that the defendant had aided or assisted in or procured or advised the preparation or

6    filing of that return: and

7            Third: that the defendant did so willfully.

8    *United States v. Crum*, 529 F.2d 1380, 1382, fn2 (9th Cir. 1976).   The "reach" of section 7206(2) is not

9    limited to only those who actually assist in the preparation of taxpayers' tax returns, but also

10   encompasses those who create, manage and market tax shelters designed to "induce" fraudulent income

11   tax deductions. *Id. at 1383.*  In *Crum*, the defendant sold a tax shelter based on contracts for the

12   purchase of domesticated beavers, which in turn were designed to generate fraudulent depreciation

13   deductions on purchasers' income tax returns. *Id. at 1381.*  In *Crum*, the defendant's conviction for

14   aiding and assisting the filing of materially false income tax returns, in violation of 26 U.S.C. § 7206(2),

15   was affirmed even though the defendant did not prepare or file the income tax returns in question.  *Id. at*

16   *1383.*

17           For the purposes of criminal offenses under Title 26, the element of "willfulness" is defined as

18   acting with a lack of good faith in violation a known legal duty.  *Cheek v. United States*, 498 U.S. 192,

19   202, 111 S.Ct. 604, 611 (1991).  In criminal tax cases the government carries the heavy burden of

20   establishing that a defendant acted willfully, which is often the primary contested issue.[8]  Given that

21   direct evidence of a defendant's intent is unusual, the government may (and invariably does) rely on

22   circumstantial evidence to prove the defendant's subjective state of mind.  *See United States v. Woodley*,

23   9 F.3d 774, 779 (9th Cir. 1993); *United States v. Conforte*, 624 F.2d 869, 875 (9th Cir. 1980) ("Direct

24   proof of a taxpayer's intent to evade taxes is rarely available. Willfulness may be inferred, however, by

25   the trier of fact from all the facts and circumstances of the attempted understatement of tax.") (*citing*

26

27   [8] *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1992).  "Bad purpose" or "evil motive" is not
     required. *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Kelley*, 539 F.2d 1199,

28   1204 (9th Cir. 1976).

*Spies v. United States*, 317 U.S. 492, 499 (1943)).  Accordingly, a very broad range of circumstantial evidence can be relevant to a defendant's state of mind (including motive, intent, preparation, plan, knowledge, or absence of mistake or accident) in criminal tax cases.  *See United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989) ("[P]roof of willfulness usually must be accomplished by means of circumstantial evidence.  This being so, trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind.  No evidence which bears on this issue should be excluded unless it interjects tangential and confusing elements which clearly outweigh its relevance.") (citations omitted).

Whether or not a defendant acted in "good faith" is evaluated "subjectively." In other words, the question for the jury is whether the defendant subjectively believed they acted in good faith, or misunderstood the law, regardless of the "objective" reasonableness of those beliefs. *Cheek v. United States,* 498 U.S. at 202.  "Of course, the more unreasonable the asserted beliefs, or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws." *Id. at 204*.  To prove a violation of section 7206(2), the government must prove that the defendant did not act through mistake, inadvertence, or neglect.  *United States v Klee*, 494 F.2d 394 n.1 (9th Cir. 1974).  One method the government may utilize to prove willfulness, and lack of inadvertence or mistake, is to present evidence of a defendant's tax return filing history and pattern of behavior regarding financial matters. *See United States v. Mitchelson*, 51 F.3d 283, 1995 WL 139227, at *2 (9th Cir. 1995) (defendant's spending habits and tax filing history admissible as evidence of willfulness) (unpublished).

Evidence probative of an element of a charged violation is generally relevant and admissible under Fed. R. Evid. 402, unless otherwise proscribed, even if the evidence in question is not specifically referenced in the Indictment.  *See United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016).  So-called "other acts" evidence that is "inextricably intertwined" with a charged offense is admissible notwithstanding Fed. R. Evid. 404(b).  *See United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).  There are two categories of "other acts" evidence which are inextricably intertwined with a charged crime: "First, evidence of prior acts may be admitted if the evidence 'constitutes a part of the

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE RELATED
TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD

6

transaction that serves as the basis for the criminal charge;'   Second, prior act evidence may be admitted 'when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"   *Id.* (quoting *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)) (citation omitted); *United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999). *See e.g., United States v. Whitfield*, 37 F.3d 1503 (8th Cir. 1994) (unpublished) (evidence of undercover operation during which defendant falsified an undercover IRS agent's tax return was not "other crimes" evidence, and thus admissible to prove defendant's method of operation with respect to preparing other false tax returns (evidence was also proper under Rule 404(b)).

Here, Smith and Tamine are expected to testify that in 2000 Brockman referred Smith to Defendant to create and manage a foreign trust/tax shelter.   Further, they will testify that it was their understanding that Brockman also had a foreign trust/tax shelter created by Defendant that was formed in 1981.   The relationship between Defendant, Smith, Brockman, and Tamine is corroborated by the emails between Tamine and Defendant that were identified in the government's August 15, 2022 notice. These emails include evidence that Defendant routinely "securitized" files for Brockman and Tamine.[9] The indictment charges Defendant with providing the same "securitization" service for Smith.   Smith is expected to testify that it was his understanding that "securitization" was a service Defendant provided to his clients, for a $5,000 fee, which consisted of Defendant purging and destroying files for his clients. The evidence noticed by the government in its August 15, 2022 letter to Defendant is directly relevant to this charge.   Defendant's relationship with Brockman and Tamine is further corroborated by his referral of the undercover agent to Tamine as a character reference. Defendant's creation and management of Smith's trust was not a 'one-time event' – but represents a pattern of professional behavior and method of operation.[10]

Brockman's referral of Smith to Defendant also raises a number of relevant questions: Why did Brockman refer Smith to Defendant? What was the purpose of this referral? and What was Defendant's

---

[9] ET_0000047609 – December 1, 2011 email from Defendant to Tamine.

[10] Defendant's own professional web site stated: "The Law Office of Carlos E. Kepke began operation in 1992.  It is a boutique law firm engaged in only one practice area- the use of foreign structures for United States tax savings and/or asset protection."

relationship to Brockman?  The answers to these questions will be relevant to Defendant's knowledge and intent and are important willfulness evidence the jury should be permitted to consider. This is exactly the type of "other acts" evidence the court was referring to in *DeGeorge*: Evidence not specifically referenced in a charging document that is necessary to give context and meaning to other presented facts.  *380 F.3d at 1220.*

The legality of Brockman's foreign trust/tax shelter will not be before the jury, and the government does not intend to raise those questions in this trial. But Defendant's working relationship with Brockman and Tamine are probative of Defendant's willfulness and lack of inadvertence or mistake.  As in *Crum* and *Mitchelson*, Defendant's long-standing pattern of selling, creating, managing and maintaining these foreign trusts, particularly for Brockman from 1982 to 2015, establishes that Defendant did not act through inadvertence or mistake in creating and managing Smith's foreign trust. Despite Defendant's protestations, this evidence can, and will, be presented without "putting Brockman's trust on trial."  Presentation of this evidence, i.e. putting Smith's relationship with Brockman and Defendant, and Defendant's relationship with Brockman, in context does not require consideration of the legality of Brockman's foreign trust.

### B.   In the Alternative, The Evidence Related to Brockman is Admissible under Rule 404(b)

In the alternative, the evidence related to Brockman and Tamie, and Smith and Defendant's relationship to them, is admissible under Rule 404(b).  Rule 404(b) provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith," but may be admitted for other purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b).  Rule 404(b) is a rule of inclusion, *see United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995), and evidence of other acts is admissible under Rule 404(b) unless it tends to prove only propensity.  *See United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991).

The Ninth Circuit applies a four-part test to determine whether evidence of other acts should be admitted:

Evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material

1   point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding

2   that defendant committed the other act; and (4) (in cases where knowledge and intent are at

    issue) the act is similar to the offense charged.

3   *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994). *See also United States v. Verduzco*, 373

4   F.2d 1022, 1027 (9th Cir. 2004).  Such evidence must also pass scrutiny under Rule 403.  *See Ayers*, 924

5   F.2d at 1473.  "So long as the evidence is offered for a proper purpose, such as to prove intent, the

6   district court is accorded wide discretion in deciding whether to admit the evidence, and the test for

7   admissibility is one of relevance."  *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997).

8       Other act evidence "may be critical to the establishment of the truth as to a disputed issue,

9   especially when that issue involves the actor's state of mind and the only means of ascertaining that

10  mental state is by drawing inferences from conduct."  *Huddleston v. United States*, 485 U.S. 681, 685

11  (1988). *See also United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) ("Inasmuch as it was

12  essential for the government to make a showing of intent or willfulness to meet its burden of proof in

13  this case, the district court properly admitted evidence of [defendant's] prior tax non-compliance under

14  Rule 404(b)."). S*ee, e.g.*,  *United States v. Imariagbe*, 679 Fed. App'x 261, 262 (4th Cir. 2017)

15  (unpublished) (evidence consisting of a chart of non-charged tax returns that defendant prepared that

16  contained Schedule C information similar to the false Schedule C information on the charged tax

17  returns, was properly admitted under Rule 404(b)); *United States v. Watson*, 433 F. App'x 284, at *2

18  (5th Cir. 2011) (unpublished) (evidence that defendant, a professional tax preparer charged with aiding

19  and assisting in preparing and presenting false and fraudulent tax returns, had filed false personal tax

20  returns was relevant to issues of his intent and the absence of mistake); *United States v. Ali*, 616 F.3d

21  745, 752-53 (8th Cir. 2010) (in prosecution of defendant who operated tax preparation business,

22  testimony of four taxpayers whose returns did not form the basis for any of the indicted counts was

23  properly admitted under Rule 404(b)).

24      Here, the evidence related to Brockman and Tamine is probative of Defendant's knowledge and

25  intent, and shows lack of inadvertence or mistake—setting up foreign trusts for wealthy clients was

26  Defendant's "professional methodology."  Thus, the "Brockman Evidence" satisfies the first *Mayans*

27  factor because it tends to prove a material point: Defendant's state of mind.

28

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE RELATED
TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD

1    Second, the Brockman Evidence is not too remote in time. Defendant's relationship with

2    Brockman and Tamine may pre-date his relationship with Smith, but it was also commensurate with that

3    relationship, directly led to it, and as the undercover operation reveals, continued through February

4    2018.

5    Third, Smith is expected to testify that the reason he sought out Defendant, at Brockman's

6    direction, was his understanding that Brockman and Defendant had a long-term professional

7    relationship.  Tamine is expected to testify that he worked directly with Defendant regarding Brockman,

8    which is corroborated by the emails between Tamine and Defendant, as well as the undercover

9    recordings.  The evidence is overwhelming that Defendant did in fact have a long-term professional

10   relationship with Brockman and Tamine.

11   Fourth, the government is presenting this evidence to establish Defendant's knowledge, intent

12   and willfulness.  The Brockman Evidence will establish that Defendant created and managed foreign

13   trusts for others and not just Smith.  The government does not intend to introduce Brockman's income

14   tax returns into evidence or evidence that establishes that the returns are false. But the evidence

15   regarding Defendant's participation in the creation of Brockman's trust, the AEBCT, and his ongoing

16   relationship with Brockman and Tamine constitutes circumstantial evidence of Defendant's knowledge

17   and professional conduct regarding similar foreign trusts.

18   Finally, the introduction of the Brockman Evidence satisfies Rule 403—its probative value is not

19   substantially outweighed by its potential to confuse the jury or be unfairly prejudicial.  The Brockman

20   Evidence will not accuse Defendant of being involved in uncharged criminal behavior or other "bad

21   acts."  It is offered to fully explain how Smith came to be associated with Defendant, and that Defendant

22   has a long-standing professional practice of creating and managing foreign trusts – something Defendant

23   advertised on his own website.

24                                    **CONCLUSION**

25   The government respectfully submits that the testimony of Smith and Tamine, together with the

26   emails identified are inextricably intertwined with the charges in the Indictment in that they establish

27   how the relationship between Defendant and Smith arose.  Further, this evidence is directly relevant to

28

1   Defendant's knowledge and intent regarding the creation and management of the foreign trust he

2   allegedly created and managed for Smith.  The Brockman Evidence is also probative of Defendant's

3   professional methodology, lack of good faith, and absence of inadvertence, or mistake.  In the

4   alternative, this evidence constitutes "other acts" evidence under Rule 404(b) and is admissible to

5   establish Defendant's knowledge and lack of mistake.

6

7

8

9   Respectfully submitted,                                STEPHANIE M. HINDS
                                                           United States Attorney
10

11                                                         *s/ Corey J. Smith*
                                                           COREY J. SMITH
12                                                         Senior Litigation Counsel
                                                           MICHAEL G. PITMAN
13                                                         Assistant United States Attorney

14                                                         Attorneys for United States of America

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4

**CERTIFICATE OF SERVICE**

5
6        I the undersigned do hereby certify that on the 7th of October 2022, I electronically filed the

7    foregoing Government's Response to Defendant's Motion *In Limine* to Exclude Evidence Related to

8    Robert Brockman's Alleged Tax Fraud (ECF 90) with the ECF electronic filing system, which will send

9    notice of electronic filing to counsel of record.

10
11                                                    */s/Corey J. Smith*
                                                     Senior Litigation Counsel
12                                                    Department of Justice
                                                     Tax Division
13                                                    Corey.Smith@usdoj.gov
                                                     (202)514-5230
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOVERNMENT'S RESPONSE TO                              12
DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE RELATED
TO ROBERT BROCKMAN
Case No.: 3:21-CR-00155-JD