Pages 1 - 68

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )        NO. CR 21-00155 JD
                               )        PAGES 38-68 SEALED
CARLOS E. KEPKE,               )
                               )
            Defendant.         )
_____)

                            San Francisco, California
                            Thursday, October 20, 2022

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    STEPHANIE M. HINDS
                    United States Attorney
                    150 Almaden Boulevard - Suite 900
                    San Jose, California  95113
              BY:   **MICHAEL G. PITMAN**
                    **ASSISTANT UNITED STATES ATTORNEY**

                    DEPARTMENT OF JUSTICE - TAX DIVISION
                    150 M Street NE - Suite 2.603
                    Washington, D.C.  20002
              BY:   **BORIS BOURGET, ATTORNEY AT LAW**

         **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

```
1    APPEARANCES:  (cont'd)

2    For Defendant:

3                         GOODWIN PROCTER LLP
                          601 Marshall Street
4                         Redwood City, California  94063
                     BY:  GRANT P. FONDO, ATTORNEY AT LAW
5                         DAVID R. CALLAWAY, ATTORNEY AT LAW

6                         GOODWIN PROCTER LLP
                          620 Eighth Avenue
7                         New York, New York  10018
                     BY:  RICHARD M. STRASSBERG, ATTORNEY AT LAW
8

9                         GOODWIN PROCTER LLP
                          601 South Figueroa Street - Suite 4100
10                        Los Angeles, California  90017
                     BY:  SYLVIA R. EWALD, ATTORNEY AT LAW
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

```
 1   Thursday - October 20, 2022                    2:16 p.m.

 2                    P R O C E E D I N G S

 3                        ---oOo---

 4        THE CLERK:  Calling criminal matter 21-155, United

 5   States versus Carlos E. Kepke.

 6        Counsel, if you would please, come forward and state your

 7   appearance.

 8        MR. PITMAN:  Good afternoon, Your Honor, Michael

 9   Pitman for the Government.  With me is Boris Bourget from the

10   Tax Division in Washington, D.C.  I'm an AUSA here in the

11   Northern District, Your Honor.

12        MR. BOURGET:  Good afternoon, Your Honor.

13        MR. FONDO:  Good afternoon, Your Honor, Grant Fondo

14   for the Defendant, Mr. Kepke.  He has been excused for the

15   appearance today.  Thank you, Your Honor, for that.

16        With me are my colleagues Rich Strassberg, David Callaway,

17   and Sylvia Ewald.

18        THE COURT:  Okay.  We have got a lot to do.  Let me

19   ask you a question.  So what is the status of Mr. Kepke's

20   health?

21        MR. FONDO:  It's as described.  He is 82 years old.

22   He has got significant heart conditions.  He is -- his wife

23   also has significant health issues as well, and so his health

24   is a significant concern.

25        THE COURT:  Well, I mean, the trial is in about a
```

PROCEEDINGS

```
 1    month.
 2            MR. FONDO:  Understand, Your Honor.
 3            THE COURT:  So, are there any restrictions on his
 4    being here?
 5            MR. FONDO:  Well, we think we will be able to get him
 6    here, yes, Your Honor.  We honestly -- you know, I don't know
 7    how he is going to hold up with a trial for a month long plus
 8    trial but right now he will be able to appear.
 9            THE COURT:  Okay.  I mean, it is going to be a
10    mountain of work to get all these jurors in.  I'm going to have
11    to pick a lot because it is going to be a long trial by local
12    standards and it's the holidays and it's flu time and, of
13    course, it is always COVID time.
14       So I'm probably going to have to bring in over a hundred
15    people.  I don't want to do this if you are going to tell me at
16    the end of week he can't take another day of trial for medical
17    reasons.
18            MR. FONDO:  Your Honor, I honestly don't know.  He
19    is -- you know, one of the reasons we have asked to excuse him
20    is the travel issue, not only COVID but also obviously if he
21    gets sick, it is a pretty significant issue for someone in his
22    condition.  And also being here for a month plus is a
23    significant issue while with staying in a hotel and taking
24    transportation back and forth to the courthouse and then
25    obviously the stress of a trial.
```

**PROCEEDINGS**

1     So I also know that there is stress leading up to a trial,

2  so we will not play games with Your Honor or the Court.  We

3  completely understand that.

4     But I can't guarantee --

5        **THE COURT:**  Well, I'm not worried about games.  I just

6  don't want to just sort of waltz into this without your getting

7  adequate assurances from physicians that we are not going to

8  have to pull the plug after --

9        **MR. FONDO:**  Yeah.

10       **THE COURT:**  -- two weeks or something.

11       **MR. FONDO:**  We will -- we will get the -- we will have

12  him see a doctor related to that.  We are also happy, you know,

13  to continue the trial, Your Honor, if you want to.  I'm not

14  sure --

15       **THE COURT:**  I would prefer not to.  I have this

16  slot -- we have this whole complicated thing for getting

17  trials.  This other one was a little bit different because it

18  is going to be super short.  And we just don't have many

19  blocks.  I won't bore you with the reasons why, but we just

20  don't at the moment.  So, I mean, Government, you don't want to

21  continue it or do you want to continue it?

22       **MR. PITMAN:**  We don't want to continue it, Your Honor.

23       **THE COURT:**  Yeah, and, you know, time is kind of the

24  essence given the age of the case and the age of the Defendant

25  and so on so...

PROCEEDINGS

1        Okay.  Let's start with -- we have a lot to get through.

2   Let's start with the experts.

3                    (Pause in the proceedings.)

4        **THE COURT:**  Let me get to my notes one second.

5                    (Pause in proceedings.)

6        **THE COURT:**  All right.  So let's start with docket 61,

7   which is a motion to exclude the Defendant's expert Rodney

8   Read.  I just -- I'm having trouble, Mr. Fondo, understanding

9   why the disclosures for Read were -- it is not Mr. Fondo.  It

10  is --

11       **MR. CALLAWAY:**  Sorry, Your Honor, David Callaway also

12  from Goodwin Procter.

13       **THE COURT:**  Okay, David Callaway, all right.  I'm

14  having trouble understanding, Mr. Callaway, why your

15  disclosures for Mr. Read as an expert were so untimely.

16       **MR. CALLAWAY:**  Well, Your Honor, the initial

17  disclosure was, in fact, timely, the June 3rd disclosure.  The

18  Government objected to it as being insufficient so --

19       **THE COURT:**  Let me just tell you, that was correct.

20  That was a completely deficient disclosure under Rule 16.  It

21  didn't --

22       **MR. CALLAWAY:**  Fair enough, Your Honor.

23       **THE COURT:**  It didn't say anything to anybody that

24  would give the Government an adequate basis for

25  cross-examination.  So you were late.  I mean, you sailed in,

**PROCEEDINGS**

1  you know, a little placeholder on July 5th; but, I mean, then

2  you didn't do anything until July 22nd.  It is late.  I'm just

3  trying to figure out why.

4         **MR. CALLAWAY:**  Your Honor, we believed that the

5  initial disclosure for a defense expert in a case where we

6  really don't know what the Government's case is going to be and

7  where anything the Defense expert is going to say is

8  necessarily somewhat contingent was sufficient; but after we

9  met and conferred with the Government and heard their concerns

10  about their inability to bring a Daubert, which discussion

11  occurred in good faith very promptly after we filed our initial

12  on June 3rd, we then supplemented on July 22nd, at the same

13  time that we timely submitted our expert rebuttal expert

14  disclosure.

15         So we believe that that second disclosure meets the

16  requirement and it was -- it was tendered in good faith, and we

17  did meet and confer with the Government and in good faith tried

18  to address their concerns and give them what they would need to

19  be able to bring a proper Daubert motion, which we would submit

20  their motion to exclude filed on August 5th was, in fact, a

21  Daubert motion.

22         **THE COURT:**  I'm not sure about that.  I mean, looking

23  at that July 22nd letter you sent, which is docket number 61-2,

24  I mean, I just -- I mean, you outline Mr. Read's opinions; but

25  you don't give any reasons or bases for them which the rule,

**PROCEEDINGS**

1    Rule 16, requires you to do.

2         I don't -- I mean, there is nothing in here.  These are

3    all just punchlines.  There is no explanation of how he reached

4    these conclusions.  And that, of course, is the main point of

5    the disclosure so that the Government has a fair opportunity to

6    be prepared for cross-examination and not got waylaid at trial

7    by Mr. Read suddenly saying:  "Oh, why do I think this opinion

8    is true?  Well, here are a hundred documents I reviewed" and

9    the Government is left trying to figure out on the fly in front

10   of a jury what to do.

11        So, where is the explanation of the bases and the reasons

12   for the opinions in this July 22nd letter?

13             MR. CALLAWAY:  We would submit, Your Honor, that they

14   are included in the CV that was provided.  Essentially --

15             THE COURT:  The what?

16             MR. CALLAWAY:  -- Mr. Read would be testifying.

17             THE COURT:  Wait.  Where are you saying they are?

18             MR. CALLAWAY:  In the CV that was provided along

19   with --

20             THE COURT:  His resume?

21             MR. CALLAWAY:  Yes, and --

22             THE COURT:  That doesn't cite any evidence -- bases

23   and reasons are evidence in the record that he is relying on or

24   other evidence outside of the record that he is relying on for

25   these opinions and you want to present to the jury.  His CV

**PROCEEDINGS**

1    doesn't say a word about that.

2            **MR. CALLAWAY:**  Your Honor --

3            **THE COURT:**  His CV says "I work at Baker McKenzie."

4    It doesn't --

5            **MR. CALLAWAY:**  Your Honor, what I would submit that

6    the CV says is "I'm a trust and estate lawyer.  This is what I

7    do all day every day.  I have been one since 2009."

8        So he would be testifying as an industry expert of the

9    sort of things one -- general information about the foreign

10   non-grant or trust and specifically the bullet points that we

11   provided in our disclosure but that those are general --

12           **THE COURT:**  Okay, this is -- you are just telling me

13   "Take my word for it.  I'm an expert."

14       That doesn't fly.  It doesn't fly under 702, the evidence

15   code, or Daubert or Rule 16.  You can't just say "take my word

16   for it.  I know what I'm talking about."

17       How is the Government supposed to cross-examine him about

18   that?  What you need to say is, for example, in this July 22nd

19   letter, you know, you want Mr. Read to give the opinion, you

20   know, about something to the effect of -- I'm just picking one

21   out here -- it's not uncommon for a foreign trust to purchase

22   an asset from a beneficiary which then becomes an asset of the

23   trust.

24       There is no explanation about how he reached that

25   conclusion and just saying "I work at Baker McKenzie as a tax

**PROCEEDINGS**

1    lawyer" isn't enough.

2          **MR. CALLAWAY:**  Your Honor, I would submit that that

3    disclosure is analogous, indeed, to -- I didn't look at the

4    disclosure that was made in the court -- in the case we just

5    heard -- but the Government routinely calls narcotics experts

6    to say in drug cases people will often engage in

7    counter-surveillance driving to avoid detection and by training

8    and experience they will use code words.  When they are

9    referring to kilos of heroin, they might refer to "horses" or

10   "windows" or some other thing.  And it is always very general

11   like just like the bullet points --

12         **THE COURT:**  This is beyond general.  This has nothing

13   in it in terms of support.  This says literally nothing but

14   "trust me, I'm an expert," which is patently not acceptable.

15   Let me pause for a minute and hear from, is it Mr. Pitman?

16         **MR. PITMAN:**  Yes, Your Honor, thank you.  I think the

17   Court has sort of put its finger obviously on an issue.  We did

18   our best to do our best to analyze the potential testimony; but

19   given the absence of any real substance in disclosures, it was

20   difficult to formulate a Daubert motion.

21        The reality is that the Court should allow pretty broad

22   expert testimony on the subjects at issue in this case.

23        And I have, you know, no doubt that it would be possible

24   for the Defense to put together an adequate disclosure that

25   would provide the actual opinions and the actual bases for

**PROCEEDINGS**

1   those opinions that would describe admissible testimony.

2        And it's just -- the fact is we are six weeks from trial

3   now.  These disclosures were due in the summer, and we are

4   getting -- now, I think the Court is faced with the option of

5   either giving the Defense an opportunity to supplement their

6   disclosures or to just strike the expert, neither of which are

7   great options at this point.  So...

8        **THE COURT:**  Well, let me -- I mean, there is a little

9   bit more than that.  I mean, your reply brief, which is docket

10  number 73, you indicate that you are actually okay, given this

11  record as it is, with Mr. Read looking at the first letter --

12  first portion -- looking at the July 22nd letter, you are okay

13  with him saying the first -- testifying to his opinions about

14  the first sentence in number 1; right?

15       **MR. PITMAN:**  So there is a bullet point list.  Are you

16  looking at docket 73, Your Honor?

17       **THE COURT:**  No.  I'm looking at docket 61-2.

18       **MR. PITMAN:**  Oh, yes, Your Honor.

19       **THE COURT:**  So you are okay with Mr. Read, even though

20  he didn't give you any evidence for it, you are okay with him

21  testifying to the opinion in the first sentence of line 1;

22  right?

23       **MR. PITMAN:**  So the -- our position is that that

24  opinion is an opinion that was disclosed.  I don't think that

25  the bases for that opinion were disclosed, so maybe that is a

1    nuanced point.  And we would -- to the extent the Court is

2    inclined to allow him to testify as to that opinion, I still

3    think it would be appropriate to order -- sorry -- to order --

4          THE COURT:  Okay, I read this as saying you are not

5    going to live or die -- you are going to let him -- you are

6    okay with him saying that at trial; is that right?

7          MR. PITMAN:  Not exactly, Your Honor.  And I will

8    explain if you like.

9          THE COURT:  Okay.

10         MR. PITMAN:  Okay.  So these are -- so his opinions

11   appear reasonable.  I don't see how helpful they will be to the

12   jury; but without knowing what the bases are -- and I'm not --

13   I don't need -- you know, this is the Government's disclosure,

14   by the way -- it is over 130 pages long.

15         THE COURT:  I looked at it.

16         MR. PITMAN:  I just need a paragraph or two just to

17   make sure that the bases for the opinions that the Court is

18   about to cite that we have identified as having been disclosed

19   properly are not whacky.

20         THE COURT:  All right.  Well, you are throwing your

21   opponent -- your colleagues here a lifeline.  I was going to

22   exclude them.  If you are willing to do that -- you will be

23   happy if they just give you a short and sweet statement for

24   each one of these bullet points and docket number 61-2?

25         MR. PITMAN:  So, my position, Your Honor, is that

**PROCEEDINGS**

 1   there are some opinions that were revealed in these

 2   disclosures -- I have listed those opinions in our reply brief,

 3   which is docket number 73.  There is a bullet point starting on

 4   page 3 -- I would say that those -- one, two, three, four,

 5   five, six, seven, eight -- opinions, so long as there are

 6   supplement about the bases for those opinions to make sure he

 7   is not a tax protestor or something, we would be okay with

 8   those coming in.

 9          **THE COURT:**  All right.  Well, you can thank Mr. Pitman

10   for his generosity because I was going to say no.  I don't

11   think you subscribed to the letter of Rule 16, but can you do

12   that?  How long do you need?  We have trial starting

13   November 28th; right?  So how about the end of next week, a

14   week from today?

15          **MR. CALLAWAY:**  We will make every effort.  I don't

16   know what our expert's schedule is.  And for all I know, he is

17   on an African safari.

18          **THE COURT:**  No.  Counsel, let me be crystal clear.

19   That's on you.  You have got a golden opportunity here.  If

20   your man cannot make it happen, then he is not going to

21   testify.  That's your choice; okay.  So I'm sorry.  It is late

22   in the day.  I think Mr. Pitman has done you a tremendous favor

23   here by letting you do this.

24       I think it is well within my discretion to exclude

25   Mr. Read for having utterly failed to disclose any bases for

1    his opinion as he was required to do; however, I'm willing to

2    let you go forward with this agreement.

3         If you can't make it work, that's your issue, not mine;

4    okay.  So I will do a week from tomorrow you can get it to

5    Mr. Pitman and the Government.  Okay.  That's the disposition

6    for that motion.

7         Now, let's look at, oh, yes, okay, the Defendant's motion

8    to preclude the prosecution's expert, Mr. Dubinsky.  Okay, go

9    ahead.

10        **MR. CALLAWAY:**  Your Honor, based on the Government's

11   opposition, it is not entirely clear how much disagreement we

12   actually --

13        **THE COURT:**  Well, I was wondering about that.  Can I

14   just jump in?  No one -- we all know this, but I will just be

15   clear.  No one is going to give any legal opinion testimony.

16        Now, having said that, it's a tax case.  There are tax

17   statutes.  There are tax regulations.  You can certainly talk

18   about that.

19        Talking about the law is not giving a legal opinion.  I

20   think we all appreciate that.  Giving a legal opinion is he is

21   guilty or this was patently a fraudulent offshore structure or

22   something like that.  Okay.

23        So, tell me more about why you think maybe there is

24   nothing to see here if you were going that way.

25        **MR. CALLAWAY:**  And that is where I was going,

**PROCEEDINGS**

1  Your Honor.  In the 136-page report that we received, which

2  admittedly was not exactly on point because it was clearly done

3  for Mr. Smith and it was re-purposed as an expert report for

4  Mr. Kepke, and that's fine; but there are some opinions in

5  there that are clearly legal opinions.

6      This was a grantor trust, not a foreign non-grantor trust.

7  There are a number of opinions that are objectionable in there

8  that we -- that we believe.  And Mr. Pitman will certainly

9  clarify that the Government is now saying:  Fine, that may have

10  been in his report but that's not something we are going to --

11      **THE COURT:**  Well, the only legal conclusion I'm

12  worried about is somebody saying that, you know, the Defendant

13  conspired with Smith to evade taxes.

14      Anything short of that -- I don't necessarily think it is

15  a legal opinion to say this is or is not a grantor trust.  I

16  mean, that's just sort of based on the expert's opinion.  But,

17  you know, as I understand the practices and the regulations, I

18  would not say this is a grantor trust.

19      I don't think -- that's not a legal opinion in the sense

20  that it is going to go to the guilt or innocence of the

21  Defendant.  That you can't do.

22      So, I mean, if you are going to say that, then I don't

23  know what these experts are going to talk about because it is

24  all about the tax laws.

25      **MR. CALLAWAY:**  Well, Your Honor, Mr. Dubinsky is

**PROCEEDINGS**

1    definitely, you know, a highly reputable forensic accountant.

2    His expertise is in following the money.

3          To the extent he is going to testify about the

4    transactions that Mr. Smith engaged in and essentially testify

5    that Mr. Smith controlled the trust, that's all fine and well

6    within his expertise.

7          Where we would ask the Court to draw the line is on

8    whether he is allowed to say and "that's improper."

9          I think the "that's improper" part is the question for the

10   jury to answer.  And it seems, based on the experts that they

11   have proffered, that the Government expects the jury

12   instructions and only the jury instructions to tell the jury

13   what the law is.

14         And so that if Mr. Dubinsky says:  "And Mr. Smith took

15   over the trust and did this, this, and this transaction without

16   meaningfully consulting with the trustee," fine.  He can say

17   that.  There is no evidence that he consulted with a trustee.

18   He ordered this transaction.  He bought that piece of property.

19   All fine.

20         But if he says:  "And that's improper.  That makes this a

21   grantor trust instead of a foreign non-grantor trust, so the

22   whole thing is out the window."  We would submit that goes too

23   far.  That's for the jury to decide based on the jury

24   instructions this Court will give.

25         And that's where I think that we get -- this gets fuzzy,

PROCEEDINGS

1    Your Honor, frankly.

2              **THE COURT:**  Mr. Pitman.

3              **MR. PITMAN:**  So I disagree with Counsel and I agree,

4    frankly, with the Court.  If the jury didn't receive that kind

5    of testimony from an expert, they would have a very hard time

6    understanding this case.

7         The Ninth Circuit in criminal tax cases allows the parties

8    to present right up to the line in a case like this -- the most

9    important cases are the cases that I found most significant on

10   this issue were *Moran*, which is a Ninth Circuit case from 2007,

11   and *Clardy*, which is a Ninth Circuit case from 1980.

12             **THE COURT:**  By the way, is *Moran* a sham?

13             **MR. PITMAN:**  Yes, Your Honor.

14             **THE COURT:**  I have to say, I do want to avoid words

15   like that.  I disagree that -- I just -- I think that is

16   inflammatory and unnecessary; but anyway, I'm glad you

17   mentioned *Moran* because I wanted to bring that up at some

18   point, but I understand what you are -- okay, go ahead.  Finish

19   your point.

20             **MR. PITMAN:**  Well, I mean, and the Court does raise a

21   good point and this was raised in the Defense's papers as well

22   that, you know, language matters.

23             **THE COURT:**  Language does matter, yes.

24             **MR. PITMAN:**  And I think the more technical terms that

25   we will probably be using during trial are "substance over

1    form" or "grantor, non-grantor."

2           **THE COURT:**  I think that's just fine.  So, look, I

3    need to hear the details.  I'm just going to have to hear -- I

4    will be vigilant -- and, of course, you will be vigilant on the

5    Defense side too to make objections.

6           As it stands, I'm not going to rule out Dubinsky or any of

7    his proposed opinions at this time.  I will tell you I don't

8    think the grantor issue is an ultimate legal conclusion that

9    the jury is going to be called on to decide with respect to the

10   evasion of taxes such that it would be improper for either

11   side.

12          I mean, you are going to have the same opportunity on the

13   Defense side to say:  No, this is perfectly fine trust.  And I

14   think the jury -- that's the whole point of the trial is to --

15   you know, one of you is going to have to -- well, it is the

16   Government's burden to show that it wasn't a perfectly fine

17   trust; and they are going to have to get some guidance on that.

18          I'm not going to exclude it for now, but I will be

19   listening carefully to make sure it doesn't cross the line into

20   an impermissible instruction on the law by an expert.

21          Okay.  So that takes care of that set.  Now, let's do --

22   oh, yes, Mr. Brockman.

23          **MR. CALLAWAY:**  Your Honor, we have one more expert,

24   Mr. Oertel, that I don't know if you wanted to do at the same

25   time.

**PROCEEDINGS**

1          THE COURT:  Is that the tax person, the IRS?

2          MR. CALLAWAY:  Kind of an expert.

3          THE COURT:  I was under the impression that you-all

4    had worked that out and there was no issue left.

5          MR. PITMAN:  I don't think the motion was technically

6    withdrawn, but my reading of the reply was the Defendant wasn't

7    seeking --

8          THE COURT:  That was my reading as well.

9          MR. CALLAWAY:  I think that's right.  The only thing I

10   wanted to say about it is, the Government agreed to provide

11   draft Rule 1006 disclosures by October 24th.  I just wanted to

12   confirm -- that was part of what was in the opposition and

13   caused us to back down.

14         THE COURT:  Let's see.  Today is the 20th, yeah.

15         MR. PITMAN:  I believe the 24th is Monday, Your Honor,

16   and we will be getting --

17         THE COURT:  You are on track?

18         MR. PITMAN:  Yeah.

19         MR. CALLAWAY:  Great.  That's all I wanted to say on

20   that.  Thank you.

21         THE COURT:  Okay.  Now, let's turn to the discussion

22   of docket number 90, Defendant's motion to exclude evidence

23   related to Robert Brockman's tax fraud.  Mr. Pitman.

24         MR. PITMAN:  Mr. Bourget is going to handle this one.

25         THE COURT:  Okay.  Sure.  Go ahead.

**PROCEEDINGS**

1           MR. BOURGET:  I think this was the Defense's motion to

2    exclude.

3           THE COURT:  Tell me -- I mean --

4           MR. BOURGET:  Sure.

5           THE COURT:  I'm sorry.  It has been a long day

6    already.  I had a long morning session too.

7           Why do you want to -- I mean, look, this is a little bit

8    of a sideshow.  I don't know what -- I don't mind some table

9    setting.  You know, I guess the idea is that Mr. Brockman

10   introduced Smith -- Mr. Smith to Mr. Kepke, something like that

11   or there is some aspect of interaction.

12          That's fine.  But I just can't -- you can't just come in

13   and say:  Well, let's talk about this fellow's tax fraud

14   because I just don't think -- it's going to be confusing.  It

15   is going to take up a huge amount of time.  It's your view

16   versus the Defendant's view.

17          And why am I going to ask the jury to adjudicate a case

18   within a case?  In other words, I think this is all just going

19   to be too much of a distraction except for a little table

20   setting.  You can certainly use his name, you know, background,

21   whatever, but anything more than that seems too much for me.

22          MR. BOURGET:  Sure.  I mean, our intention is not to

23   have a mini trial.  And in our response we state very plainly

24   that we don't plan to bring in evidence that Mr. Brockman was

25   indicted or committed tax fraud or anything related to that.

**PROCEEDINGS**

1    I mean, the way you put it, table setting, that's what we

2    are doing.  Mr. Brockman and Mr. Smith met in the '90s, and

3    Mr. Brockman referred Mr. Smith to Carlos Kepke because

4    Mr. Kepke in the early '80s had established a foreign trust for

5    Mr. Brockman.

6        So the -- I mean, there is sort of two points for why we

7    are trying to bring in some of this evidence, and the first is

8    to just add some context to the story.

9        **THE COURT:**  Well, that's fine.  If that's all you are

10   going to do, I think that's okay.  I had a sense that you

11   wanted to do a lot more about this, what is it, the AEBCT trust

12   and how that was illegal; and we are not going to do that.

13       If you are just talking about here is how everybody got to

14   know each other, Defendant, I don't see any problem with that.

15       **MS. EWALD:**  Yes, Your Honor --

16       **THE COURT:**  Sorry.  You are Ms.?

17       **MS. EWALD:**  I'm Ms. Ewald for Mr. Kepke.  Yes,

18   Your Honor.  Our reading of the Government's papers is that it

19   will not be going into -- has agreed not to go into the

20   extensive fraud, and we do believe a little bit of table

21   sitting would be helpful for the jury.

22       We want to be sure that we really stick with the line and

23   make sure we are not going into what we view as prejudicial

24   evidence about a completely separate event.

25       **THE COURT:**  Okay, I think we are all in agreement.

**PROCEEDINGS**

1          **MR. BOURGET:**  Can I just add something just so

2    everything is abundantly clear?

3          So the second reason we want to bring this in is because

4    we do think it is somewhat probative of the element and to

5    prove our element of willfulness, that this was -- the fact

6    that Mr. Kepke for several decades was establishing these types

7    of trusts; advertised it on his website, that that's all he did

8    and that comes up in the undercover evidence that we will be

9    addressing today -- there is some probativeness.

10          It is table setting, but there is also -- you know, we are

11   hoping that it will help show that what Mr. Kepke did for

12   Mr. Smith and the type of trust that he set up is not a

13   one-off.

14          That's not to say that we are going to say that the trust

15   that he set up for Mr. Brockman in the early '80s was a sham,

16   but we are effectively saying that this was not Mr. Kepke's

17   first time setting up one of these.

18          **THE COURT:**  Well, there is nothing illegal about

19   setting up trusts.  So, I don't see how mentioning Brockman

20   necessarily goes to his willfulness in violating -- willfulness

21   and using offshore structures to evade federal income tax.

22          **MR. BOURGET:**  I think it would be to essentially

23   pre-empt any potential defense where Mr. Kepke, you know,

24   claims that this was, you know, a mistake or a misreading of

25   the law regarding foreign trusts.

**PROCEEDINGS**

1          **THE COURT:**  Well, this is the problem I'm having.   In

2     order for you to do that, you are necessarily going to have to

3     show that the Brockman trusts were illegal and we are not going

4     to do that.

5          You can't -- the fact that Kepke and Brockman had a trust,

6     that doesn't mean anything unless you show that that trust was

7     illegal.  We are not going to do that.  I'm not going to have a

8     trial about whether a dead Defendant's trust was illegal or

9     not.  That's not going to happen.

10          **MR. BOURGET:**  Again, that is not our --

11          **THE COURT:**  I think that defeats everything you are

12     saying.  It doesn't go to willfulness at all because in order

13     for it to be willfulness, it has to be a knowing violation or

14     knowing effort to avoid federal or evade federal tax liability.

15          So I'm not going to let you stand up and say:  Oh,

16     Mr. Brockman had a trust that shows you that Mr. Kepke knew

17     what he was doing is illegal.  Absolutely not.

18          **MR. BOURGET:**  For example, so the Defense's proposed

19     expert -- and what we can glean from the disclosures -- you

20     know, seems to suggest that, you know, there could be a

21     good-faith misunderstanding of where the line is in terms of

22     these trusts.  And by bringing in evidence that Mr. Kepke has

23     established these trusts in the past as far back as the early

24     '80s, this was not a -- you know, he where the line was.  He

25     knew what the laws were.

1        **THE COURT:**  You can't show that without showing that

2    the Brockman trust was -- was it Brockman?  Brockman.  You

3    can't show that without showing the Brockman trust was illegal,

4    and we are not doing that.

5        So you can do the table setting and the relationships and

6    so on, but -- I mean, I will listen to the evidence; but I just

7    want to tell you now, you will not be allowed to say the

8    Brockman trust, you should treat that, ladies and gentlemen of

9    the jury, as evidence of willfulness because it's not; and we

10   are not going to get to the point that it ever will be.

11       In order for you to establish that point, you would have

12   to put the Brockman trust on trial.  We are just not going to

13   do that.  It is a 403 exclusion.  It is of minimal relevance

14   and it is maximally confusing and it's going to eat up a ton of

15   time and it's going to confuse the jury.  So that's the

16   disposition for that.  Are you okay with that, Defendant?

17            **MS. EWALD:**  Yes, Your Honor, thank you.

18            **THE COURT:**  All right.  Let's move onto undercover.  I

19   have doubts about this, Government.  I just -- first of all, I

20   don't know.  I mean, it looks like you got just tons of

21   materials, and I can't really tell what it is specifically you

22   want to get in.

23       I will just tell you I'm -- I'm probably okay if you have

24   statements by Kepke that would be probative of his knowing that

25   these offshore trusts or offshore structures were intended to

**PROCEEDINGS**

1    evade federal income tax laws.

2         So if he said something to one of these undercover agents

3    to the effect of, you know -- I'm just making this up -- "I can

4    cover this money up for you" or "I do this all the time so you

5    don't have to pay taxes," that I think is probably within the

6    ballpark of consideration; but, you know, the rest of this just

7    seems like it's not -- not admissible.  Anyway, that's what --

8    that's what I'm leaning towards.

9         **MR. PITMAN:**  So I think the fundamental issue really

10   at this point is that we haven't done a good enough job

11   identifying this precise evidence that we are interested in

12   using at trial.

13        So what I would propose to Your Honor is that on the same

14   schedule that you have given to the Defense to supplement their

15   expert disclosures, that the Government make a complete and

16   fulsome disclosure to the Defense by next Friday of exactly

17   what evidence from the undercover we expect to use.

18        Hopefully, given the guidance the Court has just provided,

19   we are able to reach stipulations with respect to some of it.

20   And if any of it is disputed, maybe it is something we can

21   bring to the Court at the pretrial conference.

22        **THE COURT:**  I think that's fair.  Are you okay with

23   that, Mr. Fondo?

24        **MR. FONDO:**  Your Honor, the only thing I would say is

25   we would like to try to get these issues resolved.  There is a

**PROCEEDINGS**

1    ton of information that the Government is talking about.

2        And so we appreciate the clarification.  We think that's

3    helpful, but we also obviously have very significant concerns

4    about this; and this is significant evidence and we believe

5    significantly prejudicial.  And so we would like to tee that

6    issue up before if possible.

7        **THE COURT:**  Before what?

8        **MR. FONDO:**  Before the pretrial conference,

9    Your Honor.

10       **THE COURT:**  Oh, I think we will have to do that then.

11   You are not going to get this for a week.  That's already

12   October 30th, 28th, something like that.  I'm -- you are coming

13   in again on the 17th?

14       **MR. FONDO:**  Twenty-first, I believe, 21st, yeah.

15       **THE COURT:**  Twenty-first, that's as fast as I can do.

16       **MR. FONDO:**  All right, Your Honor.

17       **THE COURT:**  But I really -- I mean, I -- my tentative

18   is I don't think anything is going to come in unless it is

19   indicative of Mr. Kepke indicating through a statement or

20   something some communicative act that he knew that these

21   offshore trusts were intended to evade federal income tax;

22   okay.

23       You can shelter money.  You know, you understand the

24   difference.  You-all know this better than I do.  It's fine to

25   shelter money.  There is nothing illegal about it.  It has to

**PROCEEDINGS**

 1    be to evade.  That's why I keep using that word.

 2         So anything short of that, I don't think you are going to

 3    be able to get in, Government.  Just think it over.  I don't

 4    know what the specifics are obviously, but that's how I'm

 5    leaning.

 6         You are going to give that to the Defendants by the same

 7    date as they give you the expert, Mr. Read, things.

 8         Okay.  Motion to compel proffer materials and statements

 9    and I -- Defendants, I don't really know -- what is it that you

10    think you didn't get?  It looks like you got a lot of stuff.

11    So, what is it you did not get in your view?

12         **MR. STRASSBERG:**  Thank you, Your Honor, Rich

13    Strassberg for Goodwin.  I know we are changing our speaker on

14    you.

15         We didn't get, what I would submit to Your Honor, are the

16    core materials that are exculpatory that are what is necessary.

17         So specifically we didn't get the presentation materials

18    that were provided by Smith's counsel during the time when they

19    were claiming and Smith was claiming "I did not commit tax

20    fraud."

21         And that's why all of this is exculpatory.  So we didn't

22    get the materials they provided to the Government.  We are

23    aware they provided materials to the Government because in the

24    summary letter the Government provided to us, it quotes from --

25    at different times, it quotes from passages of materials that

**PROCEEDINGS**

1    must have been given by the attorneys since it talks about the

2    attorneys in the first person.

3        In addition, they have shown us exhibits that were

4    attached to presentations that were provided and, you know,

5    selected ones but not the presentations themselves.

6        Similarly, they would have to be Government notes of the

7    actual words that were said at these presentations when Smith

8    was making the exculpatory statements through his lawyers where

9    he said "I didn't commit tax fraud and not only did I not" --

10   within that "I didn't do that with Carlos Kepke" and that's --

11   the charges are:  Did Carlos Kepke aid him in committing tax

12   fraud?

13       So this one is --

14       **THE COURT:**  Well, what dates are these?

15       **MR. STRASSBERG:**  Well, it is a good question,

16   Your Honor.  We don't know that we know all of them.  What we

17   have seen from the discovery that there were at least three

18   presentations that Smith's lawyers made; April 12th of 2017,

19   January 14th of 2019, and September 13th of 2019.

20       Now, there may be others but those are the ones where we

21   see --

22       **THE COURT:**  So you think you didn't get everything for

23   those three.  Is that what you are saying?

24       **MR. STRASSBERG:**  That's right.  And if there were

25   others -- the focus is on the times when he is saying "I did

1    not do it," so it is exculpatory.

2          What the Government has given us -- and we don't take

3    qualms with them having given us a lot of stuff.  In fact,

4    there is mountains of discovery in the case -- but it is very

5    interesting.  They gave us their memoranda about the times when

6    Smith's lawyers come in and say "He wants to cooperate.  He is

7    going to tell you now he did do it."

8          And they have given us the memoranda of when he does say

9    "I did it;" right.  But those things are the inculpatory pieces

10   that the Government likes.

11         Under *Brady* and its progeny, you have to give us the

12   exculpatory material, and that's when he was saying he didn't

13   do it, and those are what we are after.

14         So, both the presentations, Your Honor, but also their

15   notes of those presentations.  And we submit that really there

16   is not -- everyone points to the law -- the same law, and they

17   all say you have to turn this over.

18         The Government says:  Well, no, this is really plea

19   negotiations.  And we submit that that's -- that the record

20   doesn't support that characterization.

21         They have given us a 29-page letter, single spaced, 184

22   paragraphs, of what they admit are factual statements that were

23   made in these meetings; but they have done it in a way that

24   really makes it very challenging to do -- to use it in

25   cross-examination.  There is no dates.

**PROCEEDINGS**

1    They combine -- it appears they combine the meetings when

2    they were saying "we didn't do it" with the one meeting where

3    they said:  "Okay, now he is willing to cooperate.  He will

4    tell you what he did do."

5    It is very confusing.  Within that you see many

6    exculpatory statements.

7         THE COURT:  Mr. Bourget?

8         MR. BOURGET:  Your Honor, so like Defense said, we

9    provided MOIs, memorandum of interview, from every time that

10   the Government spoke with Mr. Smith.

11   So, the meetings that the Defense is referring to,

12   Mr. Smith was not at these meetings.  They were not even

13   attorney proffers where an attorney --

14        THE COURT:  I just want to make sure I understand.

15   So, on the April 2017 and January and September 2019

16   meetings that your colleague here mentioned, Mr. Smith was not

17   present?

18        MR. BOURGET:  No, I was not -- at those meetings it is

19   my understanding that he was not.

20        THE COURT:  Okay.  And what did you provide to the

21   Defendant for those three meetings?

22        MR. BOURGET:  So those were plea negotiation meetings.

23   That's the distinction that we are drawing is that there is a

24   difference from when a defense attorney sits down with the

25   Government and talks to the Government about what their client

**PROCEEDINGS**

1   is most likely to testify about, what the statements they are

2   likely to say.  Those are the proffers that -- where there is

3   memorandums of interview including ones for one meeting

4   where -- on June 2nd, 2020, where Mr. Smith was not present at

5   the meeting.  That was an attorney proffer with the Government.

6        **THE COURT:**  Well, I think we are only talking about

7   one meeting in 2017 and two in 2019 right now.

8        So, okay, Mr. Smith wasn't present at those meetings; and

9   those meetings were officially denominated plea discussions

10   between Mr. Smith's lawyers and the Government?

11        **MR. BOURGET:**  Yes.  And so what we did provide from

12   those meetings is that out of the materials that were presented

13   from Mr. Smith's attorneys, we went through and pulled out all

14   of the factual characterizations, all of the facts that were

15   presented to us.  And we put that in the letter.  There is a

16   significant overlap between what is in that letter and what is

17   in --

18        **THE COURT:**  Why not just -- okay, so why not just

19   produce redacted versions of those documents?  And let them see

20   if for themselves.

21        **MR. BOURGET:**  Well, at the time we figured putting it

22   into a letter made the most sense.

23        **THE COURT:**  Well --

24        **MR. BOURGET:**  What we are protecting here is --

25   obviously we have defense attorneys that come in and proffer

**PROCEEDINGS**

1  regularly that come and negotiate with the Government.  And

2  part of the interest that we are trying to protect is being

3  able to encourage defense attorneys to come in and be candid

4  and not worry about their legal theories, their opinions about

5  the case being turned over in discovery in another case.

6      **THE COURT:**  I appreciate all of that.  You did give a

7  letter describing the facts, which you thought -- just give

8  them the documents that you base the letter on that you already

9  disclosed.  Just redact the -- if you want to make redactions,

10  redact it and then do a privilege log.

11      **MR. BOURGET:**  Well, one thing that the Defense

12  mentions in their brief is more information about the dates.

13  If that's the information that they are really after is to get

14  a sense of the dates --

15      **THE COURT:**  Well, no.  They want to hear why Robert

16  Smith -- I'm just assuming.  I don't know.  I'm just

17  channeling -- Robert Smith at some point, the first thing he

18  said out of the gate was "You got the wrong man.  I'm innocent

19  and here is why."

20      They want to know that, I guess, so they can cross-examine

21  him; and you said you have the proffer facts for that you have

22  already summarized in the letter.

23      What is the problem with just redacting -- you know, cite

24  the letter.  Just give them the document the letter is based

25  on.  You can redact it if you want, and you can tell me why and

**PROCEEDINGS**

 1   tell the other side why you redacted it in a log.

 2        **MR. BOURGET:**  Sure.  Candidly, Your Honor, I think our

 3   position at the time was that it would be less cumbersome to

 4   pull out those factual representations in the materials than to

 5   have somebody go through and redact --

 6        **THE COURT:**  Cumbersome is not a concept for

 7   withholding materials.

 8        **MR. BOURGET:**  I understand, but if --

 9        **THE COURT:**  How much time do you need to do this?

10        **MR. BOURGET:**  A couple weeks, Your Honor.

11        **THE COURT:**  That can't be right.  I mean, the letter

12   isn't that long.  You are just going to pull out -- it should

13   be easy as pie.  Someone wrote the summary.  It is only 29

14   pages long.  How can it take a couple weeks to get the

15   underlying documents redacted?

16        **MR. BOURGET:**  Well, I think what would be difficult in

17   this case too is trying to -- it is not as if these

18   presentations are:  Here is our legal theory and opinion and

19   here is the factual representation.  I think it would take

20   quite a bit of review to --

21        **THE COURT:**  Well, trial starts in a month.  So, what

22   are you going to do about it?  I mean, you probably should have

23   produced these already, so --

24        **MR. STRASSBERG:**  Your Honor, it might be helpful

25   because what I'm hearing Counsel say, suggest, that we are

**PROCEEDINGS**

1    going to have a problem if they are trying to just -- the

2    lawyers come in as Mr. Smith's authorized representatives

3    making admissions on his behalf and say not "let's talk about

4    the guideline range" or "let's talk about plea negotiations; if

5    you give us -- we will do a conspiracy but not a substantive

6    count."

7         They come in and say:  You have it wrong.  He didn't do

8    this.  And let's tell you why.  And then they tell them why and

9    they go through:  Well, he didn't believe it is a tax case.  If

10   he doesn't believe, he hasn't committed the crime.  He didn't

11   believe it was this type of tax thing, and he didn't believe it

12   was that type of tax thing.

13        If they are going to say -- they are going to redact he

14   didn't believe and then redact it all out because they say it's

15   legal, that gets us nowhere.

16        **THE COURT:**  No.  Whatever fact is in the letter, you

17   have to produce the underlying document.  You know it is

18   possible -- I'm just guessing -- but it is possible he came in

19   and said:  "Look, I was relying on this Kepke lawyer and he led

20   me down the garden path."

21        Are you sure -- you are prepared for that?

22        **MR. STRASSBERG:**  Yeah, the summary letter indicates

23   that's not the nature of it.

24        **THE COURT:**  All right.

25        **MR. STRASSBERG:**  It indicates there is a lot of fact.

**PROCEEDINGS**

 1   My only point is that in a case where they are claiming

 2   about -- a tax case there is willfulness and they are saying he

 3   didn't do it and let us explain why, there isn't a distinction

 4   between law and facts.

 5        And I would submit that doesn't matter under the law

 6   anyway.  There isn't one.  I don't think there is anything they

 7   can redact in the presentations that would be appropriate.

 8   There is no privilege.  The lawyers were making it to the

 9   Government.  I mean, you know, on --

10        **THE COURT:**  That may be.  Let's just do it that way.

11   You have got a week.  It shouldn't be that hard to do.  Let's

12   all -- what did I say, a week from Friday for all this stuff?

13        **MR. STRASSBERG:**  Yes, Your Honor.

14        **THE COURT:**  Let's do that too.  Okay.  Does that take

15   care of the motion --

16        **MR. STRASSBERG:**  I think the only other part of that

17   but maybe -- you know, because Your Honor has been right on, on

18   this issue -- we had also requested their notes of the meeting,

19   and we have cited to the Ninth Circuit law that says if you

20   give a summary but that summary is -- it leaves out some

21   exculpatory parts of what the notes show, then you risk

22   reversal.  I don't think anyone wants reversal in this case.

23   And we've said:  Give us the underlying presentations, as we've

24   been talking about; give us --

25        **THE COURT:**  Are you talking about the Justice

**PROCEEDINGS**

1  Department lawyers' notes?  What are you talking about, what

2  notes?

3          **MR. STRASSBERG:**  Well, I don't know if there would be

4  an agent.  Typically there is either a memorandum created and

5  so there may be the memorandum -- I refer to it as notes -- it

6  could be a memorandum of these meetings.  It is very typical or

7  it could be notes if there was no memorandum created.

8          **THE COURT:**  Here is the thing:  Look, I really prefer

9  to know exactly what we are talking about so I would like a

10  log; okay.  Whatever your grounds for withholding it, just put

11  it in a log and we will do a stage 2.  I just can't do it --

12          **MR. STRASSBERG:**  That makes sense, Your Honor.

13          **THE COURT:**  It is too amorphous.  You know what to do

14  with the disclosures.  If you are going to hold anything back,

15  put it on a log.  You know, make it like a privilege log.  All

16  right.  Only you don't have to say "attorney-client."  You can

17  just put an explanation.

18          **MR. BOURGET:**  Understood.

19          **THE COURT:**  All right.  Now, okay.  Last one, last

20  binder.  Okay, Classified Information Procedures Act.

21      I spent a lot of time thinking about this because I was a

22  little mystified about why we are even looking at it.  As far

23  as I can tell, there is no classified information in the case.

24          My reading of the CIPA, Classified Information Procedures

25  Act, is it's procedural for one thing.  It doesn't grant any

**PROCEEDINGS**

1    substantive rights, one way or the other.  It certainly is not

2    a discovery statute.  It is not a Rule 16.  It is not a *Brady*,

3    you know, disclosure statute.

4        It just says:  Once the Government has determined -- the

5    Government has determined that there is classified information

6    and provided it to Defendant and the Defendant wants to use it

7    in court, what do you do to protect the information.

8        I mean, that's not all the statute but that's basically

9    the heart of it.  I don't -- I mean, is there any -- did I miss

10   something?  Is there some classified information in the case?

11           **MR. PITMAN:**  I have nothing to add to the Court's

12   analysis.

13           **MR. FONDO:**  Your Honor, may I?

14           **THE COURT:**  I don't know what it is.  Why are we even

15   looking at this?

16           **MR. PITMAN:**  Sorry, if we are going to discuss the

17   substance of the motion, I think we probably have to clear the

18   courtroom because the pleadings are under seal and I think they

19   should be.

20           **THE COURT:**  Oh, okay.  Sorry, everyone.  There is no

21   classified information; but just to be safe, I'm going to have

22   to ask everybody to leave.  I apologize.

23                        (Pause in proceedings.)

24       (The following pages 38 through 68 were placed under

25        seal by Order of the Court:)

**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



SEALED PROCEEDINGS



SEALED PROCEEDINGS



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



SEALED PROCEEDINGS



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**



**SEALED PROCEEDINGS**





1

2

3

4

5

6

7

8

9

10

11

12

13

14          (Proceedings adjourned at 3:38 p.m.)

15                      ---oOo---

16

17

18

19

20

21

22

23

24

25

1
2
3                      **CERTIFICATE OF REPORTER**
4          I certify that the foregoing is a correct transcript
5    from the record of proceedings in the above-entitled matter.
6
7    DATE:    Sunday, October 23, 2022
8
9
10
11   _____
12        Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25