GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800
Fax: +1 212 355 3333

SYLVIA R. EWALD (SBN 300267)
*SEwald@goodwinlaw.com*
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA 90401
Tel: +1 424 436 3051
Fax: +1 213 947 1746

Attorneys for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Case No. 3:21-CR-00155-JD<br><br>**CARLOS KEPKE'S OPPOSITION TO GOVERNMENT'S SUPPLEMENTAL MOTION TO ADMIT EVIDENCE OF UNDERCOVER CONTACTS**<br><br>Date:      November 21, 2022<br>Time:      1:30 p.m.<br>Courtroom: 11, 19th Floor<br>Judge:     Hon. James Donato |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Rather than complying with this Court's tentative order and direction to the government as to its motion to admit evidence of undercover contacts, the government is attempting to relitigate that October 24, 2022 order. The government once again seeks to admit extensive undercover contacts that significantly postdate the conspiracy, this time doubling down on the most irrelevant and unfairly prejudicial of those excerpts. This Court should again deny the government's motion and exclude extrinsic evidence that would in all likelihood cause reversible error if it were admitted.

In addition to not complying with the Court's direction, the government seeks the admission of these "subsequent" acts, from December 2017 through August 2018, all of which significantly postdate the alleged conspiracy. Specifically, these statements are more than 17 years after the creation of Mr. Smith's trust at issue in this case (2000), more than three years after Mr. Kepke ceased working for Mr. Smith (December 2014), and more than two years after the alleged conspiracy ended (October 2015). No court identified by either side has admitted statements made so many years later. Further, a significant number of the statements at issue pertain to suggestions on ways the undercover agent ("UC") can transfer funds to his U.S.-based settlor to fund the trust. These "funneling" suggestions are completely irrelevant, given the undisputed facts that (1) Mr. Kepke never advised Mr. Smith about "funneling," (2) to the contrary, Mr. Kepke advised Mr. Smith that his non-U.S. relative had to pay the funds to settle the trust, and (3) Mr. Smith told Mr. Kepke that is in fact how it was funded.

This Court should again reject the government's motion to tar Mr. Kepke with improper character evidence obtained almost two decades after the Excelsior Trust was created.

**A.  The Prior Motion And Hearing**

During the hearing regarding the government's first motion to admit evidence of undercover contacts, the Court rejected the government's motion, but permitted the government a limited window to resubmit, provided it could show that Mr. Kepke was telling the UC how to "evade" paying taxes. Specifically, the court said: "I'm probably okay if you have statements by Kepke that would be probative of his knowing that these offshore trusts or offshore structures

1

were intended to evade federal income tax laws." (Tr. at 24:23–25:1.) The court went on to explain, "So if he said something to one of these undercover agents to the effect of, you know – I'm just making this up – 'I can cover this money up for you' or 'I do this all the time so you don't have to pay taxes,' that I think is probably within the ballpark of consideration; but, you know, the rest of this just seems like it's not – not admissible." (Tr. at 25:2–7.) The Court added, "I don't think anything is going to come in unless it is indicative of Mr. Kepke indicating through a statement or something some communicative act that he knew that these offshore trusts were intended to evade federal income tax[.]" (Tr. at 26:18–21.) The Court then put an even finer point on the issue: "It's fine to shelter money. There is nothing illegal about it. It has to be to evade. That's why I keep using that word./So anything short of that, I don't think you are going to be able to get in, Government." (Tr. at 26:24–27:3.)

Subsequently, on October 28, 2022, the government provided the defense with a list of 27 excerpts. (Decl. of Grant P. Fondo ("Fondo Decl."), ¶ 2, Ex. A.) This list removed some excerpts, but added others, and none of the excerpts were consistent with the Court's order that it would only consider the admission of statements that specifically showed that Mr. Kepke intended to help his purported prospective client evade, not just avoid, federal income tax. During a meet and confer on November 3, 2022, the defense again raised concerns about the evidence and the government admitted that its set of excerpts was overly broad and that it would be narrowing the set down. (Fondo Decl., ¶ 3.)

Without giving Mr. Kepke an opportunity to review the narrower set of excerpts identified in its motion, the government filed this motion on November 7, 2022. (ECF No. 125 ("Mot.").)

### B.     Statements At Issue

The government's current set of excerpts consist of 12 designations, which fall into two general categories. Seven excerpts concern what the government describes as the "funneling" of money to the trust creator. (*See* Designations 1–3, 9–12.) The remaining five concern the role of the trustee in considering input from the trust beneficiary, trust protector, or Mr. Kepke. (*See* Designations 4–8.)

### C. Argument

Even on this, its third try, the government has not complied with the Court's order. The Court repeatedly emphasized that it would consider the admission only of evidence showing that Mr. Kepke knew the trust would be used to *evade* rather than avoid taxes, such as statements like "'I can cover this money up for you' or 'I do this all the time so you don't have to pay taxes.'" (Tr. at 25:2–7, 26:24–27:3.) The seven excerpts that concern "funneling" do not show that Mr. Kepke knew that the trust would be used to *evade* taxes. Instead, they show Mr. Kepke advising someone he believed to be a prospective client about how the trust can and cannot be funded, and Mr. Kepke's later pulling back on that guidance. Similarly, the five excerpts that concern the role of the trustee do not show that Mr. Kepke intended that the trust structure would be used to *evade* taxes. These excerpts show Mr. Kepke and Mr. Emil Arguelles[1] discussing the role of the trustee, communicating through Mr. Kepke to guard against concerns with the unlicensed practice of law, and assuring the purported prospective client that he would not lose control of his money.[2] Again, there is no indication in any of these conversations that Mr. Kepke believed that his advice was inconsistent with the law or that he knew that the trust would be used to evade taxes. The excerpts include no statements that are comparable to "I can cover this money up for you" or that "these offshore trusts were intended to evade federal income tax." (Tr. at 25:3–5.)

Indeed, the government itself describes the proposed excerpts as being about efforts to "avoid tax" and "tax-avoidance." (Mot. at 4.) But as the Court explained, unlike tax evasion, tax avoidance is legal and evidence of it is not relevant here. The government's failure to comply with the Court's order requires each of these designations, and this undercover witness, be excluded.

Similarly, these excepts fail to come close to meeting the standards for letting in

---

[1] The government has identified Mr. Arguelles as a witness for trial, a witness they have met with on multiple occasions. Mr. Arguelles should similarly be precluded from testifying as to the excerpted conversation that took place in 2018. In addition, the government certainly will ask Mr. Arguelles about the trustee's role and Mr. Smith's control of the Excelsior Trust, as Mr. Arguelles worked for both of the trustees and with the Excelsior Trust during the alleged 15-year conspiracy.

[2] Two of these designations consist of Mr. Arguelles's statements. (*See* Designations 7 & 8.) These should be excluded on the additional ground of hearsay. Fed. R. Evid. 801 & 802.

subsequent extrinsic evidence. The excerpts concerning the "funneling" of money are particularly egregious; they must be excluded because they are the most irrelevant, unfairly prejudicial, and confusing of any of the excerpts the government identified in its initial motion. (*See also* Mr. Kepke's Opp'n to Motion to Admit Evidence of Undercover Contacts (ECF No. 72), incorporated herein by reference.) These conversations cannot logically demonstrate Mr. Kepke's intent regarding the charged conduct because they are inconsistent with the charged conduct, which did not involve "funneling" money. As the government's cooperator told the government, "Smith was asked if he told Kepke that Waddington did not provide enough money to settle [the] trust. Smith stated that he did not tell Kepke that. Smith was further asked about what specific rules Kepke said Smith had to follow in relation to the trust. Kepke told Smith that Waddington had to provide the money to settle the trust. Smith did not tell Kepke that Waddington did not send him enough money." (ECF No. 72-1.)

Where, as here, the extrinsic evidence is dissimilar to the charged conduct, it is not relevant to proving intent as to the charged conduct and must be excluded. *United States v. Alfonso*, 759 F.2d 728, 740 (9th Cir. 1985) (in rejecting admission of a prior act, explaining that "[p]roof of an intent to do one thing on an earlier occasion proves little about an intent to execute a dissimilar act at a later time"). Admission of the government's proposed dissimilar extrinsic evidence would not tell the jury anything about Mr. Kepke's intent as to the charged conduct. Admitting it would be reversible error. *Id.* at 740 (reversing conviction where district court admitted dissimilar evidence as proof of intent).

In addition to being irrelevant, the "funneling" evidence is also unfairly prejudicial and confusing. This case will be complex and long enough for the jurors, covering 15 years of alleged conduct already—there is no need to make it more complex and confusing by admitting new subsequent acts for conduct that simply is not at issue. This evidence would only serve to "'lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Here the evidence could actually lure the jury into finding guilt on a ground that is different *and inconsistent* with the offense charged. The

4

government has suggested it agrees that this evidence is prejudicial, and argued in its last set of briefing that "[t]he proper tool is a scalpel—not an axe." (ECF No. 78 at 7.) In other words, while the government previously indicated that the court should admit other undercover excerpts and exclude the evidence of purported "funneling" transactions, the government now advocates, in a remarkable bait-and-switch, for admission of precisely the evidence it earlier conceded was the most prejudicial. Such gamesmanship should not be countenanced.

Admitting this evidence would also consume unnecessary time. Though the government has reduced the number of excerpts it seeks to admit, they would nonetheless require an additional witness—the undercover agent—and that agent's testimony and the audio evidence would require significant court time, not to mention potential additional testimony from Mr. Arguelles. In response, Mr. Kepke would be required to elicit other portions of the conversation to dispute this agent's testimony. The same is true as to Mr. Arguelles's testimony. This would be a waste of time. *See, e.g., Holmes v. Miller*, 768 F. App'x 781, 784 (9th Cir 2019) (excluding extrinsic evidence as requiring a mini trial).

Last, the extrinsic evidence as a whole does not prove a material point and is far too remote. Despite having now filed three briefs on this subject, the government has not once explained how Mr. Kepke's conduct in December 2017 through August 2018 can shed light on Mr. Kepke's intent when he last represented Mr. Smith in December 2014, let alone the more relevant time period in the spring of 2000 when the Excelsior Trust was created and funded by the settlor (insofar as Mr. Kepke knew, *with the settlor's own money*). The longest period of time between a subsequent act and prior intent permitted in any case cited by either party is less than two years, and that was in a case in which the extrinsic conduct *was not actually extrinsic* because it concealed the charged conduct. *See United States v. Ayers*, 924 F.2d 1468, 1473–74 (9th Cir. 1991).

The circumstances here are much more similar to *United States v. Hodges*, 770 F.2d 1475 (9th Cir. 1985), in which the Ninth Circuit reversed a defendant's conviction because the district court admitted extrinsic evidence that post-dated a conspiracy by five months. *See also, e.g., Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994) (citation and internal quotations

5

omitted) (reversing where district court admitted extrinsic evidence that followed charged conduct by four months, reasoning that "[t]he temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof."); *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980) (reversing where the district court had admitted evidence of uncharged cocaine possession that followed the charged heroin trafficking by a year). The government is asking this Court to go out on a limb and admit unduly prejudicial extrinsic evidence that postdates the charged conduct by up to 18 years—far beyond anything the Ninth Circuit (or any Circuit) has ever upheld, and actually comparable to circumstances in which the Ninth Circuit has reversed.

The proposed extrinsic evidence is inconsistent with this Court's tentative order, has little to no relevance, and is unfairly prejudicial. The primary import of this evidence would be for an impermissible propensity inference. The evidence should be excluded in its entirety.

Respectfully submitted,

Dated: November 14, 2022

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
DCallaway@goodwinlaw.com
RICHARD M. STRASSBERG (*pro hac vice*)
RStrassberg@goodwinlaw.com
SYLVIA R. EWALD (SBN 300267)
SEwald@goodwinlaw.com
**GOODWIN PROCTER LLP**

Attorneys for Defendant:
CARLOS E. KEPKE

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **November 14, 2022**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **November 14, 2022**.

*/s/ Grant P. Fondo*
GRANT P. FONDO

ACTIVE/119849645.7