GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800
Fax: +1 212 355 3333

SYLVIA R. EWALD (SBN 300267)
*SEwald@goodwinlaw.com*
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA 90401
Tel: +1 424 436 3051
Fax: +1 213 947 1746

Attorneys for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Case No. 3:21-CR-00155-JD<br><br>**CARLOS KEPKE'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF COMPROMISE NEGOTIATIONS BETWEEN THE UNITED STATES AND ROBERT SMITH**<br><br>Date:       November 21, 2022<br>Time:       1:30 p.m.<br>Courtroom: 11, 19th Floor<br>Judge:      Hon. James Donato |

## MEMORANDUM OF POINTS AND AUTHORITIES

The government's frantic attempt to shield its key cooperator, Robert Smith, from fairly basic cross examination regarding statements of innocence he authorized his lawyers to make on his behalf, may shed light on how the government has mischarged this case, but is not supported in law or logic. The government urges this Court to adopt the extreme position that Mr. Kepke should not be allowed to ask Mr. Smith—the government's most important witness—about factual statements his lawyers made during plea negotiations proclaiming his innocence and lack of intent to commit tax fraud. These statements are centrally relevant to Mr. Smith's bias, prejudice, and interest, as he is a witness testifying pursuant to an agreement under which the government has agreed not to prosecute him at all, now that he has changed his story and admitted to committing tax fraud. Cross examination on statements he authorized his lawyer-agents to make for him claiming that he did not have criminal intent and did not commit tax fraud goes directly to the heart of his credibility.

The government's arguments are misguided and should be readily rejected. The government first contends that the statements should be excluded under Federal Rule of Evidence 408, but by its terms Rule 408 does not apply to criminal plea negotiations, and in any event, Rule 408(b) specifically carves out an exception to allow such evidence, even from civil compromise negotiations, when they are relevant to a witness's bias or prejudice. The government next simplistically argues that the statements are inadmissible because they were made by Mr. Smith's lawyers. Courts, however, recognize that statements that attorneys are authorized to make on behalf of their clients, including in communications with the government in criminal proceedings, are admissible against their clients, consistent with the most basic principles of agency relationships. And last, the government asserts that the statements are hearsay. But hearsay is inapplicable to this analysis, as the statements are classic impeachment that will be offered not for their truth, but to show Mr. Smith's bias, prejudice, and interest in the matter, as evidenced by his changing stories after he was offered a non-prosecution agreement.

The government's efforts to prevent Mr. Kepke from thoroughly cross-examining Mr. Smith, if successful, would raise grave constitutional concerns.  The government's motion is of a

1  piece with its refusal to provide Mr. Kepke discovery about statements made during the plea
2  negotiations that this Court ordered the government to produce and that is required under *Brady*.
3  These materials are not legal discussions about the details of a plea agreement, divorced from the
4  facts of the case, but Mr. Smith's *factual statements* that he believed the trust structure was legal
5  and therefore that he had not committed tax fraud. This is classic *Brady* material that must be
6  turned over immediately.

7  The government's motion should be denied in full, and this Court should direct the
8  government immediately to comply with the Court's prior order.

9  **A.   The Government is Violating the Court's Order Regarding Proffer Materials.**

10  Mr. Kepke previously moved to compel the government to produce materials related to
11  meetings between the government and Mr. Smith or his attorneys that predated Mr. Smith's non-
12  prosecution agreement. (ECF Nos. 81 & 84.) The government had provided a summary letter on
13  August 12, 2022, that purported to summarize statements Mr. Smith's attorneys made to the
14  government over time. (ECF No. 81-5.) But, as Mr. Kepke argued, summaries cannot replace the
15  production of the underlying materials, and the letter confusingly included statements both before
16  and after Mr. Smith changed his story from being innocent to having committed tax fraud, and
17  did not specify which statements were made on which dates. At the hearing, the Court
18  painstakingly explained to the government why the underlying materials might be relevant: "They
19  want to hear why Robert Smith – I'm just assuming. I don't know. I'm just channeling – Robert
20  Smith at some point, the first thing he said out of the gate was 'You got the wrong man. I'm
21  innocent and here's why.'/They want to know that, I guess, so they can cross-examine him[.]"
22  (Tr. at 32:15–21.)

23  The Court ordered the government to "give them the documents that you base the letter on
24  that you already disclosed. Just redact the – if you want to make redactions, redact it and then do
25  a privilege log." (Tr. at 32:7–10.) When the defense made clear that they had requested not just
26  the written defense presentations on which the letter was based, but also any notes taken during
27  those presentations that reflected any oral comments made while the lawyers were professing Mr.
28  Smith's innocence, the Court told the government, "Look, I really would prefer to know exactly

what we are talking about so I would like a log; okay. Whatever your grounds for withholding it, just put it in a log and we will do a stage 2. I just can't do it . . . It is too amorphous. You know what to do with the disclosures. If you are going to hold anything back, put in on a log. You know, make it like a privilege log. All right. Only you don't have to say 'attorney-client.' You can just put an explanation." (Tr. at 36:8–17.)

When the government asked for a couple of weeks to complete the redactions, the Court said, "That can't be right," adding, "trial starts in a month. So, what are you going to do about it? I mean, you probably should have produced these already[.]" (Tr. at 33:11, 21–23.) The Court ultimately ordered the government to produce the materials and log by the following Friday, October 28, 2022. (ECF No. 104 at 2.)

The government produced some materials and an incomplete log on October 28, 2022. The materials consist of a presentation by Mr. Smith's lawyers dated November 28, 2016; a presentation dated January 14, 2019; and a letter dated September 23, 2019. (Decl. of Grant P. Fondo ("Fondo Decl.") ¶ 2–4, Exs. A–C.) All of the materials are heavily redacted. In some instances, entire paragraphs or even pages have been redacted. (*Id.*) Nonetheless, these three presentations all repeat the same theme—Smith believed his actions were innocent and he did not commit tax fraud. There is also information found in the summary letter that cannot be found in the presentations or letter, demonstrating that the redactions are overly broad. For example, the summary letter provides that "Smith did not believe that Flash and Excelsior were a fraud when created" and "Smith thought that the structure was legal based off a conversation he had with attorney Brook Voght at Miller Chevalier." (ECF No. 81-5 at ¶ 183.) But keyword searches of the presentations and letter provided by the government for "fraud" and "Miller" do not turn up these sentences.

The government's extensive redactions are improper. The government has made no effort to show that the redactions concern purely legal discussions about, for example, whether a statute is unconstitutional or how to calculate the appropriate sentencing guidelines. As best as can be gleaned from the presentations, the redactions all relate to a core factual issue in this case: whether Smith willfully committed tax fraud. The government has repeatedly acknowledged the

3

centrality of willfulness in tax prosecutions in general and in this case in particular. (*E.g.*, ECF No. 66 at 13.) The government cannot on the one hand argue that willfulness is the key issue in this case when favorable, and then on the other hand withhold discovery about this issue relating to their key cooperator when his authorized agents represented that he did not have the intent necessary to commit any tax offense. The government must produce the presentations and letter immediately, without any redactions.

Additionally, the government has not even attempted to comply with the Court's directive to log all the material upon which the August 2022 letter was based. The log includes one page for each of the three documents produced. (Fondo Decl. ¶ 5, Ex. D.) It lists 55 separate redactions for the November 28, 2016 presentation; 63 separate redactions for the January 14, 2019 presentation; and 34 separate redactions for the September 23, 2019 letter. (*Id.*) To explain the basis of each redaction, the government merely included a brief phrase, such as, "Non-factual, attorney argument," or "Non-factual, reflects prior plea negotiations." (*Id.*) The government did not include in the log any memoranda, agent notes, or attorney notes of the oral statements made at the meeting by Smith's attorneys while they were claiming he had no intent to commit tax fraud. (*Id.*) Because of the government's superficial and incomplete log, the Court and Mr. Kepke still have a limited picture of the full extent of the documents being withheld by the government, exactly the situation the Court sought to prevent with its order to log all material "that you base the [August -12, 2022] letter on." (Tr. at 32:8.).

On October 31, 2022, the next business day after receiving the inadequate log, the defense emailed the government, noting that the defense believed that the government had not complied with the Court's order and asking if the government planned to produce memoranda and notes. (Fondo Decl. ¶ 6, Ex. E.) The parties met and conferred on November 3, 2022. The government said that it had asked its agents for notes, and would add any such notes to the log, but would not produce them. (Fondo Decl. ¶ 7.) The government also said it would not log its own attorney notes. (*Id.*) And as for the redactions, the government refused to withdraw them. (*Id.*) The government has not provided any further updates about the status of the agent notes since November 3, 2022. (Fondo Decl. ¶ 8.) The government then filed this motion on November 7,

4

2022. (ECF No. 122 ("Mot.").)

The government should be directed immediately to produce complete copies of the three presentations by Mr. Smith's attorneys with no redactions. The government should also be directed to immediately comply with the Court's prior order and submit a full log, noting all agent notes, agent memoranda, or attorney notes taken in connection with the meetings with Mr. Smith's lawyers before he began cooperating with the government. Finally, the government should be ordered to add to each paragraph in the August 12, 2022 summary letter the date the factual statement in that paragraph was made, so that Mr. Kepke can track when Mr. Smith made which statements and how his version of events evolved. Given the upcoming trial, the government's delayed compliance with the Court's prior order should not be permitted, and these disclosures must be made forthwith.

**B.   The Government's Extreme Motion to Exclude Statements Attributable to its Most Important Witness Should Be Rejected.**

The government's effort to shield their main cooperator from basic cross-examination should be swiftly rejected. The government's first argument, that the statements attributable to Mr. Smith must be excluded under Federal Rule of Evidence 408 (Mot. at 2–3), is patently wrong. In fact, the plain language of Rule 408 makes clear that it bars evidence of statements made only "during compromise negotiations" relating to the settlement as to "the validity or amount of a disputed claim." Fed. R. Evid. 408(a). Rule 408 thus applies to civil settlement discussions, not criminal plea agreements. *See, e.g., United States v. Graham*, 91 F.3d 213, 218 (D.C. Cir. 1996) ("The subject of this rule is the admissibility of evidence (in a civil or criminal case) of negotiations undertaken to 'compromise a claim' in a civil action; it does not address the admissibility of evidence concerning negotiations to 'compromise' a criminal case."); *United States v. Baker*, 926 F.2d 179, 180 (2d Cir. 1991) ("Negotiations over immunity from criminal charges or a plea bargain do not in ordinary parlance constitute discussions of a 'claim' over which there is a dispute as to 'validity' or 'amount.'"); *United States v. Peed*, 714 F.2d 7, 10 (4th Cir. 1983) ("These were not negotiations aimed at settling a civil claim, negotiations that the policy behind Rule 408 seeks to encourage.").

Moreover, Rule 408(b) specifically allows for the admission of such evidence even from a civil case when it is admitted to prove "a witness's bias or prejudice," as is clearly the case with a government cooperator who initially proclaims his innocence and later changes his story and enters into a non-prosecution agreement.

Statements made during plea negotiations in criminal matters are instead governed by Federal Rule of Evidence 410. Federal Rule of Criminal Procedure 11(f) specifically provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f). Federal Rule of Evidence 410, in turn, provides that evidence regarding plea negotiations "is not admissible *against the defendant* who made the plea or participated in the plea discussions" if no agreement was reached or the plea agreement was withdrawn. Fed. R. Evid. 410(a) (emphasis added). Here, the statements will be offered not against a defendant, but against the government's cooperator, who is not a defendant in any action. Accordingly, under the applicable rule of evidence, these statements attributable to Mr. Smith are admissible.

The government cites only two cases, and neither applies to this circumstance. *United States v. Roti*, 484 F.3d 934, 935–37 (7th Cir. 2007) upheld the exclusion under Rule 408 of compromise negotiations made in the settlement of a *civil* case. And *United States v. Mezzanatto*, 998 F.2d 1452, 1456 (9th Cir. 1993) upheld the exclusion under Rule 410 of statements made by a defendant during failed plea negotiations in a criminal prosecution *against that same defendant*. Neither case involved statements attributable to a cooperator made during criminal plea negotiations where the cooperator later changed his story and was rewarded with a non-prosecution agreement.

Nor does policy support the government's position—quite the contrary, in fact. The government suggests that criminal defendants will not be candid during plea negotiations unless their statements are protected from disclosure under Rule 408. (Mot. at 2–3.) This argument is baseless. There are already very strong incentives for criminal defendants to participate in candid plea negotiations with the government, including the dismissal of charges, a lower sentence, or in the appropriate circumstances, even the possibility of no charges being brought at all. But there is

6

no basis for the government to refuse to provide a full accounting of obvious *Brady* material—here, the alleged co-conspirator's authorized statements asserting his innocence and lack of intent—when the government has charged Mr. Kepke with that same conspiracy. The government's argument as to candor also makes little sense. They seem to be arguing for the right to protect and shield a putative defendant's lies to them in case discussions, as the issue about *Brady* disclosure here arises because the cooperator has changed his story from one of innocence (which the government did not believe) to one of guilt (which the government embraces).

Even if the government's argument made sense, it would be outweighed by Mr. Kepke's right to confront the witnesses against him. The Ninth Circuit "has repeatedly expressed its concern that defense counsel be given maximum opportunity to impeach the credibility of key government witnesses. . . . Testing a witness' credibility is especially important when he is an accomplice of the accused." *United States v. Williams*, 668 F.2d 1064, 1070 (9th Cir. 1981). Mr. Smith is the government's most important witness. The inconsistent statements that are attributable to him from his attorney's meetings go to the heart of his credibility as a witness. Additionally, statements that Mr. Smith believed at various points that the foreign trust structure was legal (*see* ECF No. 81 at 5) concern what the government has identified as a key issue in this case: willfulness. Mr. Kepke's Confrontation Clause rights will be violated if he is not able to cross-examine Mr. Smith about these matters that are core to the case, which would require reversal on appeal. *E.g., Davis v. Alaska*, 415 U.S. 308, 315–18 (1974) (reversing conviction where defense counsel had been limited in cross-examining a prosecution witness regarding being on probation); *Williams*, 668 F.2d at 1070 (reversing conviction where trial court did not allow the defense to fully impeach a cooperating witness); *Patterson v. McCarthy*, 581 F.2d 220, 221 (9th Cir. 1978) (reversing conviction where the defense was not allowed to question prosecutor's key witness about prior inconsistent statements).

Next the government argues that Mr. Smith cannot testify about statements made during plea negotiations because his lawyers made the statements and Mr. Smith was not present. The statements, however, are attributable to Mr. Smith and considered within his knowledge because

he authorized his attorneys to speak with the government on his behalf.[1] *United States v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980) (explaining that a written claim drafted by an attorney with authorization from his client is an admission of the client); *see also Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) ("It is the general rule that 'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'"); *United States v. Margiotta*, 662 F.2d 131, 142–43 (2d Cir. 1981) (explaining that written statements by defendant's attorney to persuade the Department of Justice not to indict defendant are admissible against the defendant). *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 162–63 (2d Cir. 2008) involves nearly identical factual circumstances. There the Second Circuit held that an FBI agent's notes "taken at a meeting where [a cooperator's] attorney approached the government on [the cooperator's] behalf to relate [his client's] account of his criminal activity in an attempt to convince the government to offer him a cooperation agreement" should have been produced under *Brady*. *Id.* at 161–63. The court explained that the defendant could have "attributed" the statements of the cooperator's attorney to the cooperator through testimony showing that the attorney was authorized to relay the cooperator's statements to the government. *Id.* at 162–63. Furthermore, there is no basis in law or logic to insulate cooperating witnesses who have the most extreme bias and interest in the proceedings—that is, the ones who persuaded the government to give them the best plea offers (or, as in this case, a complete pass)—from cross-examination about statements they authorized to be made on their behalf.

     Last, the government argues that statements made during settlement negotiations are inadmissible hearsay. Again, the government is incorrect. These statements are not hearsay because they are being offered to show Mr. Smith's bias, prejudice, and interest in the matter, not to prove the truth of the prior assertions. Mr. Smith has agreed, pursuant to his non-prosecution agreement, to testify that he willfully engaged in tax fraud. But he previously stated, through his attorneys, that he did *not* engage in tax fraud, willfully or otherwise. It is frankly difficult to imagine how federal prosecutors familiar with the Sixth Amendment to the United States

---

[1] The September 23, 2019 letter from Mr. Smith's lawyers to the government actually says that it is a "Letter on Behalf of Robert F. Smith." (Fondo Decl. ¶ 4, Ex. C.)

Constitution could possibly argue that the jury should hear only the post-non-prosecution agreement admissions of guilt and not the pre-agreement protestations of innocence, as the latter are absolutely central to the jury's evaluation of Mr. Smith's credibility.

### C. The Government's Motion Should Be Denied and It Should Be Directed to Comply with this Court's Order Regarding Proffer Materials.

For the foregoing reasons, Mr. Kepke respectfully requests that the government's motion be denied. Mr. Kepke further requests that this Court direct the government immediately to comply with this Court's prior Order by (1) producing complete and unredacted versions of the two presentations and one letter previously produced; (2) specifically describing all memoranda, agent notes, or attorney notes that are being withheld in a log that also provides a proper basis for any redactions; and (3) supplement its August 12, 2022 summary letter to add to each paragraph in the summary letter the date the factual statement in that paragraph was made, so that it is clear how Mr. Smith's story changed over time.

Respectfully submitted,

Dated: November 14, 2022

By: /s/ Grant P. Fondo
GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
DCallaway@goodwinlaw.com
RICHARD M. STRASSBERG (*pro hac vice*)
RStrassberg@goodwinlaw.com
SYLVIA R. EWALD (SBN 300267)
SEwald@goodwinlaw.com
**GOODWIN PROCTER LLP**

Attorneys for Defendant:
CARLOS E. KEPKE

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **November 14, 2022**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **November 14, 2022**.

*/s/ Grant P. Fondo*
GRANT P. FONDO