GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
DAVID R. CALLAWAY (SBN 121782)
DCallaway@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

RICHARD M. STRASSBERG (*pro hac vice*)
RStrassberg@goodwinlaw.com
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Tel: +1 212 813 8800
Fax: +1 212 355 3333

SYLVIA R. EWALD (SBN 300267)
SEwald@goodwinlaw.com
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA 90401
Tel: +1 424 436 3051
Fax: +1 213 947 1746

Attorneys for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>    v.<br><br>CARLOS E. KEPKE,<br><br>              Defendant. | Case No. 3:21-CR-00155-JD<br><br>**DECLARATION OF GRANT P. FONDO IN SUPPORT OF CARLOS KEPKE'S OPPOSITION TO MOTION *IN LIMINE* REGARDING MR. KEPKE's STATEMENTS**<br><br>Date:         November 21, 2022<br>Time:        1:30 p.m.<br>Courtroom: 11, 19th Floor<br>Judge:       Hon. James Donato |

# DECLARATION OF GRANT P. FONDO

I, Grant P. Fondo, declare as follows:

1. I am a partner with the law firm Goodwin Procter LLP and a member of good standing of the bar of this Court. I represent Defendant Carlos E. Kepke ("Mr. Kepke") in the above-captioned matter. I submit this Declaration in support of Mr. Kepke's Opposition to Motion *In Limine* Regarding Mr. Kepke's Statements. Unless stated otherwise, this declaration is based on my personal knowledge, and if called as a witness I could and would testify as follows:

2. Attached hereto as **Exhibit A** is a true and correct copy of a document posted on kepkelaw.com titled "Offshore Trust Planning," produced by the government in discovery

3. Attached hereto as **Exhibit B** is a true and correct copy of a document posted on kepkelaw.com titled "Use of Offshore Structures for Asset Protection and U.S. Income Tax and Estate Planning," produced by the government in discovery.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 14, 2022 in Los Altos, California.

Dated: November 14, 2022

GOODWIN PROCTER LLP

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
**GOODWIN PROCTER** LLP

Attorneys for Defendant:
CARLOS E. KEPKE

1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **November 14, 2022**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **November 14, 2022** in Los Altos, California.

        */s/ Grant P. Fondo*
        GRANT P. FONDO

# EXHIBIT A

OFFSHORE TRUST PLANNING

Some fundamentals–in most respects, an offshore trust or a foreign trust ("FT"), <u>i.e.</u>, a non-United States ("U. S.") trust, is the same as a domestic (U. S.) Trust. That is, it has a "trustee" who holds legal title to assets transferred to the FT by the "settlor" or "grantor" (the person who set up the FT), and the trustee manages the assets for the benefit of, and makes distributions to, the "beneficiaries". All of this is governed by a legal instrument called a "trust deed" or "trust indenture". What makes the FT a "foreign" trust is mainly that the trustee is a foreign entity (usually a foreign trust company affiliated with a foreign bank) and, by the terms of the trust indenture, it is governed by the laws of a country other than the U. S. (usually a common law country that does not impose income taxes on its local trusts, such as Bermuda and most Caribbean island nations). This "foreign" status invokes special rules under the U. S. income and estate tax laws, as discussed next.

A FT will generally be either a "grantor trust" or a "non-grantor trust" (or "perfected trust") for U. S. income tax purposes. A "grantor trust" is one that, by virtue of special provisions of the U. S. Internal Revenue Code (Sections 671 through 679), is essentially treated as though it does not exist, and so all of the income of the FT is attributed to the "grantor" (the person who set up the trust) or to other persons who may have transferred property to the FT. Usually, a FT is a grantor trust because the grantor retained certain powers over the FT such as the power to revoke or to substantially change the trust indenture. Also, there is a special rule that says that any time that a U. S. person sets up a FT that has U. S. beneficiaries, the FT will be a grantor trust as to that U. S. person, regardless of whether he has retained any powers over the FT.

1

A "non-grantor trust" is one that has escaped grantor trust status because the grantor did not retain any powers over the FT and because the U. S. grantor has died and so there is no one left to whom the FT's income can be attributed, or because the grantor was a non-U. S. citizen/resident.  Thus, for example, if one's elderly relative were to set up a FT for one's benefit, the FT would be a grantor trust as to that relative until he or she died, but upon his or her death, the FT would "perfect" and become a non-grantor FT.  Similarly, if one were to set up a FT for the benefit of one's children, the FT would be a grantor trust as to the creator for his or her life, but upon the creator's death, the Ft would "perfect" and become a non-grantor FT.  The U. S. income tax benefits of a non-grantor FT are discussed next.

A non-grantor FT is essentially treated like a foreign individual for U. S. income tax purposes.  As a foreign person, the FT would generally not be subject to U. S. income tax on its non-U.S. source income (income earned outside of the U. S.), and there are many kinds of <u>U. S.-source income</u> that the FT could earn without paying U. S. income taxes, such as interest on bank deposits and certificates of deposit, interest on many kinds of bonds and other debt instruments, and capital gains from the sale of stock and securities.  However, the FT, like all foreign persons, would still be taxable on gains from the sale of U. S. real property, rent from U.S. real property, and dividends from U. S. corporations.  Rent, dividends, and other types of passive income are generally subject to a U. S. withholding tax of thirty percent (30%) of the gross amount of the payment but, with proper planning, this rate can sometimes be reduced substantially.  Thus, a perfected (non-grantor) FT can accumulate investment earnings tax free if its investments are properly monitored to avoid taxable U. S. income.  This applies even though the FT has U. S.

CTRL000088867

beneficiaries, although when earnings are distributed to the U. S. beneficiaries, the U. S. beneficiaries must then pay U. S. income tax on the earnings, plus an interest charge on the amount of U. S. income tax that was deferred by not distributing earnings in the same years that they were earned. To a significant degree, this interest charge can be minimized by arranging investments through underlying entities that will not distribute their earnings to the FT until the same year that distributions are ready to be made. As you might expect, all of this involves considerable and sophisticated planning, but will usually result in the total avoidance of the interest charge.

As can be discerned from the above discussion, a FT is an excellent U. S. income tax deferral device if the grantor trust rules can be avoided. As mentioned above, these rules can be avoided (that is, the FT will be a non-grantor FT) only if either the FT was established by a (i) foreign person or (ii) U. S. person who has died.

Again, if one's elderly relative were to establish a FT, either by setting one up now (an "inter vivos" FT) or by providing in his or her will that the FT will be established upon his or her death (a "testamentary" FT), a perfected (non-grantor) FT would be in place upon the death of that elderly relative. Until that person's death, however, any income earned by the FT that is otherwise subject to U. S. income tax (in other words, other than tax-exempt interest income) would be taxable to that elderly relative. Certain stop-gap measures however can be taken to insure that the elderly relative will not incur any "surprise" U. S. income taxes. The main benefits of the FT will come after the grantor's death and when the FT has acquired significant assets, possibly from sources other than the grantor, as discussed next.

CTRL000088868

Assuming that one's elderly relative had set up a FT for the benefit of his or her family and has since died, thereby perfecting the FT. Also assume that this relative could only afford to fund the FT with US$10,000.00, so that the FT had only minimal assets at the time of his or her death. In order to get any benefit from the fact that the FT is now a non-grantor FT, significant assets would have to be transferred to the FT. However, if any U. S. person were to <u>gift</u> property to the FT, the U. S. income tax rules would cause that U. S. person to be treated as a "grantor" of the FT, thereby causing such U. S. person to be subject to U. S. income tax on any income traceable (which is not always easy) to the property that the U. S. person had gifted to the FT. However, if one were to <u>sell</u> property to the FT, receiving payment that is equal in value to the assets transferred to the FT, this negative result would not obtain. Assets may be sold to the FT in return for a note from the FT. There are express provisions in the tax law governing the terms of such sales which, of course, must be scrupulously followed.

There are a number of U. S. income tax aspects to take into consideration upon such a sale to a perfected FT:

1. any gain inherent in the property that was transferred to the FT must be recognized at the time of the transfer. Thus, such transfers are generally limited to assets that have minimal inherent gain.

2. Payments have to be made on the note from the FT to the transferor (one's self), and, of course, each payment is comprised partly of an interest element which would be taxable income to the recipient for U. S. income tax purposes. Thus, to make the U. S. income tax deferral benefit of the FT worthwhile, the FT would

4

CTRL000088869

have to earn a significantly higher return on its investments than the rate of interest being paid on the note or the annuity.  Of course, the FT is assisted by the fact that it does not have to pay U. S. income tax on its earnings.  This benefit is enhanced if the note provides that payments will not begin until some time in the future (a "deferred" note).

3. The Internal Revenue Service has clearly outlined the terms of the note to be given by the FT.  Among other things, those terms require a maturity date of no longer than five (5) years with no renewals and an interest rate of between one hundred percent (100%)) and one hundred and thirty percent (130%) of the applicable federal rate.

In sum, planning for U. S. income tax purposes involving FTs depends upon there being a perfected (non-grantor) FT, and the extent of the U. S. income tax deferral depends upon whether the FT is obligated under a note, or other such instrument to make payments to the U. S. transferor.  Also, any such U. S. income tax planning must be coordinated with U. S. estate and gift tax planning.  For example, with respect to a grantor FT, the grantor of the FT is paying the U. S. income tax on the FT's earnings, allowing the FT to retain 100% of its earnings.
This means that the grantor is effectively transferring the amount of U. S. income tax that he is having to pay to the FT and its beneficiaries without having to pay a U. S. gift or estate tax and without having to use up his lifetime "unified credit".

There are of course long term U. S. income tax benefits in setting up a FT now and transferring assets to it.  For example, if an elderly relative set up a FT for the benefit of you and

5

your family now, and if you were to sell slightly appreciated assets to the FT in return for a note, and if the FT were to limit its investments to capital appreciation securities, the U. S. income tax results would be as follows:

1. while the income of the FT would be attributable to the elderly relative for as long as he/she were alive, there should be little or no income attributed to him/her as long as the FT did not realize any income (capital appreciation is not realized income until the asset is sold);

2. Upon the elderly relative's death, the FT would perfect into a non-grantor FT and it could thereafter realize income, such as gain on the sale of capital appreciation securities, without paying U. S. income tax. It could thereafter reinvest its earnings free of U. S. income tax.

3. At the time that you transferred the assets to the FT in return for the note, you would recognize and pay U. S. income tax on gain inherent in those assets, but again, we are presuming that the amount of gain inherent in these assets is minimal.

4. When payments begin on the note that you had received for the assets, you would realize and pay U. S. income tax on the interest elements of each payment. Because the payments were deferred over a significant period of time, the interest element of each payment could be substantial.

6

CTRL000088871

The preceding is, of course, only a thumbnail sketch of FT planning, but it should be sufficient to afford a fundamental grounding in how this type of planning works and the circumstances in which it is appropriate.

Carlos E. Kepke
149 Sage Road
Houston, Texas   77056-1417
Telephone: 713-626-0612
Fax: 713-626-0613
E-mail: cek4334@sbcglobal.net

CTRL000088872

# EXHIBIT B

Use of Offshore Structures for Asset Protection
and U. S. Income Tax and Estate Tax Planning

The primary tool utilized throughout the world for asset protection is the foreign trust (sometimes referred to as an offshore trust). Although there are many commonly used names throughout the world, there are (from a United States ("U. S.") point of view) only two (2) types of offshore trusts. One, by design, gives asset protection <u>and</u> the availability (if appropriate) of U. S. income tax and U. S. estate tax benefits, and is known as a <u>Non-Grantor Trust</u>. The other, designed solely for asset protection, is a tax neutral document in that there are no U. S. tax advantages or disadvantages. This type of foreign trust is known as a <u>Grantor Trust</u>.

The type of foreign Non-Grantor Trust that gives asset protection and the possibility of U. S. tax benefits is designed so that the foreign trust's assets, upon one's death (and/or one's spouse's death), go to one's intended heirs in much the same way as a typical revocable trust. The primary differences are that the:

(a)   foreign trust should be irrevocable (although there are occasions where it can be revocable); and

(b)   trustees of the foreign trust must not be U. S. citizens or U. S. residents.

The fact that the foreign trust is irrevocable should not give concern, as in all foreign trusts one will have the power to replace the trustee if its decisions are not within one's desires or if its activities with the funds and assets of the foreign trust are not in accordance with one's wishes. One's powers in fact are such that in all of my years of practice I have <u>never</u> replaced a trustee for not abiding by the wishes of the client.

The obvious first two (2) questions regarding setting up an offshore trust that has the advantages of asset protection and U. S. tax benefits are who will be the trustee and what jurisdiction will be used?

Concerning the trustee, as in any decision where independent trustees are utilized, the variations are numerous. Depending on the flexibility and work required, the trustee can be as small as a one man firm or as large as a multinational firm or bank with offices in literally every available jurisdiction. This decision is generally made after a review of the types of activities that are anticipated to be handled by the foreign trust.

1

Concerning the jurisdiction, one will probably want a jurisdiction that has a lower income

tax rate than the U. S., especially if one is looking for an avenue whereby U. S. income tax reduction or avoidance is contemplated. There are currently approximately forty (40) acceptable jurisdictions in the world that have a lower income tax rate (generally 0% to 2%) than the U. S.. The jurisdictions that are most commonly used by U. S. residents and U. S. citizens are Bahamas, Belize, British Virgin Islands, Cook Islands, Isle of Man, Jersey, Guernsey, Nevis, Cayman Islands, Panama, Barbados, Bermuda, and Turks and Caicos. These jurisdictions represent approximately eight-five percent (85%) of those used by U. S. individuals. The decision as to which jurisdiction to use will depend on many factors including a review of the types of activities in which the foreign trust will be involved.

When U. S. tax advantages and asset protection are the goals, the offshore trust generally capitalizes and owns one or more offshore corporations whereby the shares of stock (often bearer shares) in the offshore corporations are held as assets of the foreign trust. There are many technical reasons for utilizing foreign corporations, but suffice it to say that they are the most efficient vehicles for obtaining both U. S. tax benefits and asset protection. As with the decision of choosing the trustee and the jurisdiction of the foreign trust, similar decisions will be made as to the directors and the jurisdictions of the foreign corporations.

Once the offshore trust and the foreign corporation(s) are set up, there are innumerable activities that can be undertaken to aid further in asset protection and to confer U. S. tax benefits. For example, one can:

1. transfer one's interest in a family limited partnership to an offshore trust and/or foreign corporation (referred to hereafter collectively as the foreign structure). This may be done either by gift or by sale, with the net result that all or a portion of the family limited partnership interests will be owned by the foreign structure totally outside of the reach of creditors. In some cases this can be more beneficial then transferring a family limited partnership interest directly to one's children because it avoids any conflict should the children have creditor problems.

2. The foreign structure can loan one money, and in order to secure the promise to repay one can encumber one's assets (including one's family limited partnership interest).

3. If one's business has receivables, one can sell the receivables to the foreign structure on a discounted basis (known as factoring) with a number of advantages too complex to discuss here. Suffice it to say that the U. S. tax benefits can be extraordinary.

4. If one is involved in a business activity with any foreign nexus whatsoever, the use of a foreign structure is an ideal tool. Under certain circumstances the coordination of such a business or investment within a foreign structure can have as its goal the reduction or elimination of U. S. income taxes. The alternatives in this area are as broad as the different types of businesses or investments available, subject only to one's imagination.

2

This area can become extremely complicated and may involve such technical entities as Controlled Foreign Corporations, Foreign Personal Holding Companies, Foreign Sales

Corporations, Foreign Personal Holding Companies, Foreign Sales Corporations, Passive Foreign Investment Companies, and a host of others. Each business and investment must be reviewed on a case-by-case basis, but the advantages in asset protection and U. S. taxation can be staggering if it can be made to fit within the mold of a foreign structure.

Concerning foreign Grantor Trusts, they secure asset protection but by design are U. S. tax neutral and thus have no U. S. tax advantages or disadvantages. The use of this form of foreign trust however has the same effect as a foreign Non-Grantor Trust insofar as the protection of one's assets from creditors. Depending on one's situation, this may be exactly what is needed. Again, choices such as the foreign trustee, the jurisdiction, and the types of assets to be put into the foreign trust are reviewed after a determination of one's goals, objectives, and activities.

Reporting Requirements

Probably one of the most important aspects of dealing in the international arena is compliance with any and all applicable reporting requirements of the U. S. Internal Revenue Service or other state and federal agencies. There is nothing wrong with analyzing a transaction and taking the position that one does not owe U. S. tax or that U. S. tax can be deferred until a future date. What is wrong is one's failure to disclose or report a transaction when the law requires disclosure or reporting. Remember that reporting or disclosing a transaction does not necessarily beget paying taxes on such transaction. It is not unusual to see one decide not to report a transaction based on the common knowledge that it is just too hard for the U. S. Internal Revenue Service or any other agency to discover the transaction. This is not wise and can lead to both civil and criminal penalties.

One's offshore planning should be so secure that one should be willing to give creditors (including the U. S. Internal Revenue Service) a copy of every document and details of every entry and transaction that one has used for asset protection and U. S. tax benefits. It is not that one should provide creditors with such information, it is just that the planning should be so sound that creditors simply do not have the legal ability to get at one's assets.

There are a number of reporting forms that may be involved in a foreign structure. The following briefly explains some of the major forms and their purpose.

<u>Form 3520 - Annual Return To Report Transactions With Foreign Trusts And Receipt Of Certain Foreign Gifts</u>.

Form 3520 currently consists of six (6) pages and the instructions for completing that form consists of eleven (11) pages. The form is the principal reporting document for foreign trusts. It deals with the creation of a foreign trust, transfers to a foreign trust, and

3

certain other transactions with a foreign trust. It also deals with reporting with respect to the receipt of certain foreign gifts and, needless to say, the form is quite inclusive. The

form must be filed in all cases where there is a U. S. Grantor though it may not be necessary to file a form where there is a foreign Grantor.

Form 3520 -A - Annual Return of Foreign Trust with U. S. Beneficiaries

If a foreign trust has U. S. beneficiaries, the U. S. Grantor thereof must file Form 3520-A by the fifteenth (15th) day of the third (3rd) month following the end of the foreign trust's taxable year. This form is not nearly as comprehensive as Form 3520.

Form 709 - U. S. Gift (and Generation Skipping Transfer ) Tax Return.

Form 709 must be filed by U. S. transferors to report donative transfers to foreign trusts (even though the donative transfers may not be completed gifts). The U. S. Internal Revenue Service takes the position that even an incomplete gift of a future interest, regardless of value, should be timely reported on Form 709. The form is filed on April 15th of the year following the year in which the donative transfer is made.

Form 1040 - U. S. Individual Income Tax Return.

Each year all income earned by a foreign Grantor trust must be reported on the U. S. Grantor's individual Form 1040, and also on any applicable state forms.

Form TD F 90-22.1 - Report of Foreign Bank and Financial Account.

Any U. S. citizen or U. S. resident who, among other things, has custody, control, or signature power over certain foreign bank accounts must disclose the accounts to the U. S. government on this Treasury form.

Form 105 - Report of International Transportation of Currency or Monetary Instruments

U. S. Customs Form 105 must be filed with respect to transfers (including by mail) of

4

cash or bearer securities into or out of the U. S. in the aggregate amount of $10,000.00 or more on any one occasion. If the transfer is done through normal banking operations this form is not required to be filed.

Form 104 - Currency Transaction Report.

Any bank that transfers assets internationally in the aggregate amount of $10,000.00 or more must report such transfer to the U. S. Department of Treasury. The financial institution must file this form by the fifteenth (15th) day after the date of the transaction. This bank is subject to civil and criminal penalties for failure to file.

Form 5471 - Information Return of U. S. Persons With Respect to Certain Foreign Corporations.

Generally, any U. S. citizen or U. S. resident who owns a ten percent (10%) or greater interest in a foreign corporation must disclose such ownership interest on this form which is to be filed with the U. S. citizen's or U. S. resident's U. S. income tax return. Ownership may be attributed for purposes of this form. Civil and criminal penalties may be assessed for failure to file.

Mr. Kepke is located at 149 Sage Road, Houston, Texas 77056-1417. Telephone: 713-626-0612; Fax: 713-626-0613; E-mail: CEK4334@sbcglobal.net