STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:    (408) 535-5040
Facsimile:    (408) 535-5081
Email: michael.pitman@usdoj.gov

COREY J. SMITH (MABN 553615)
Senior Litigation Counsel
United States Department of Justice
Telephone:    (202)514-5230
Email: corey.smith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Criminal No. 3:21-CR-00155-JD<br><br>GOVERNMENT'S TRIAL MEMORANDUM |

The United States of America respectfully submits the following Trial Memorandum. Defendant Carlos E. Kepke is charged with one count of conspiracy to defraud the United States under 18 U.S.C. § 371 (Count 1) and three counts of aiding and assisting in the preparation of materially false tax returns under 26 U.S.C. § 7206(2) (Counts 2 – 4). Trial on all counts is scheduled to begin with jury selection on November 28, 2022. A final pretrial conference is scheduled on November 21, 2022, at 1:30 p.m. *See* ECF No. 91.

# TABLE OF CONTENTS

SUMMARY OF THE EVIDENCE ......................................................................................................4

APPLICABLE LAW ............................................................................................................................7

I.    Economic Substance Doctrine ....................................................................................................7

    A.    The Doctrine ...........................................................................................................7

    B.    Use of Expert Testimony to Discuss Economic Substance ..................................9

II.    Grantor and Non-Grantor Trusts.............................................................................................10

THE CHARGES .................................................................................................................................11

I.    Count 1: 18 U.S.C. § 371 – Conspiracy to Defraud the United States ..........................................11

    A.    Defendant and Smith agreed to defraud the United States by obstructing the lawful functions of the Internal Revenue Service by deceitful and dishonest means ...............................................................................................................11

    B.    Defendant knowingly and voluntarily participated in the conspiracy and was aware of its objectives ............................................................................................12

    C.    Defendant and Smith committed overt acts in furtherance of the conspiracy ..................14

II.    Counts 2 to 4: 26 U.S.C. § 7206(2) – Aiding in the Preparation of False Tax Returns.................14

    A.    Defendant aided, procured, counseled, and advised the preparation of Smith's income tax returns for the 2012-2014 tax years..............................................................14

    B.    Smith's individual tax returns for tax years 2012-2014 were false as to a material matter ...............................................................................................................15

    C.    Defendant acted willfully............................................................................................16

EVIDENTIARY ISSUES ...................................................................................................................17

I.    Co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) .......................................................17

II.    Admission of undercover recordings and transcripts..................................................................17

III.    Statements of Defendant under Fed. R. Evid. 801(d)(2)(A) .........................................................18

IV.    Outstanding Stipulations Sent to Defendant ...............................................................................18

    A.    Stipulation Regarding Redactions............................................................................18

    B.    Stipulation regarding authenticity of tax returns ............................................................18

    C.    Domestic records of regularly conducted activity under Fed. R. Evid. 902(11) and 803(6) ...............................................................................................................18

    D.    Foreign records of regularly conducted activity under 18 U.S.C. § 3505 and Fed. R. Evid. 902(12)..............................................................................................19

  **E.** Stipulation regarding the authenticity of evidence obtained via search warrant ...............19

V. Summary evidence under Fed. R. Evid. 1006 ................................................................................19

## SUMMARY OF THE EVIDENCE

The Government anticipates that the admissible evidence at trial will show the following:

Beginning in 1999 and continuing through 2014, Defendant, an attorney, created and managed an offshore trust structure primarily designed for the purpose of tax evasion. Defendant created this structure for Robert Smith, one of his clients. The purpose of this structure was to allow Smith to evade federal income taxes on approximately $225,000,000 of capital gains income Smith earned from various private equity funds managed by Vista Equity Partners ("Vista"). Vista was founded by Smith in San Francisco and is now based in Austin, Texas. On October 9, 2020, Smith entered into a Non-Prosecution Agreement with the United States. *See* https://www.justice.gov/opa/press-release/file/1327906/download. As part of that agreement, Smith admitted that Defendant (referred to as Individual B in the Statement of Facts) created and maintained an offshore trust structure for the purpose of hiding Smith's assets, income, and tax liabilities from the IRS. *See* https://www.justice.gov/opa/press-release/file/1327911/download. To further this conspiracy, Defendant created and maintained a false paper trail to conceal the fact that Smith controlled and used the assets and income deposited into the offshore trust structure (often with Defendant's assistance). Smith retained Defendant to create this structure at the behest of Robert Brockman, the primary investor in Vista. One of Smith's goals in creating the offshore trust structure was to use untaxed money to backstop his personal obligations to Brockman. Although he was aware of the structure's true purpose, Defendant designed it to create the illusion that it was intended for estate planning and charitable purposes and managed by independent foreign trustees. In practice, however, Defendant's design allowed Smith to have uninhibited control over the structure, its assets, and income. With Defendant's assistance, Smith concealed his control over the structure, and used its assets to purchase and renovate real estate in France; Sonoma, California; and Colorado.

The offshore trust structure Defendant created for Smith (hereinafter, the "Excelsior/Flash Structure") consisted of two foreign entities created in 2000: Excelsior Trust ("Excelsior") in Belize, and Flash Holdings LLC ("Flash") in Nevis. On paper, Excelsior was a charitable, non-grantor trust for the benefit of Smith, his family members, and unnamed charities in the United States. According to the Excelsior trust indenture, which was drafted by Defendant, Smith was Excelsior's "Trust Protector"

which gave him the authority to remove the trustee at will. The only other official authority Smith had with respect to Excelsior was a testamentary power of appointment. The Excelsior trust indenture did not give Smith any authority over the management of Excelsior or its assets. Flash was a holding company with no employees, business situs, or independent business purpose. Flash did nothing more than hold investments for Smith. Flash was transferred to Excelsior shortly after its inception and became Excelsior's wholly owned subsidiary. Excelsior held no assets other than Flash.

At the outset, Defendant counseled Smith that the settlor of Excelsior should be someone unlikely to ever visit the United States—Smith chose Headley Waddington, the uncle of Smith's then-wife, and a UK citizen.[1] The named trustee of Excelsior was Cititrust International, Inc. ("Cititrust"), a corporate services company in Belize managed by Glenn and Joy Godfrey. Defendant handpicked Cititrust, having worked with the Godfreys previously. On paper, Excelsior was a charitable, non-grantor trust for the benefit of Smith, his family members, and unnamed charities in the United States. In 2004, Emil Arguelles, an employee of Cititrust, left to form his own corporate services company, Orion Corporate & Trust Services Ltd. ("Orion"). Like Cititrust, Orion served as a trust provider in Belize. And like the Godfreys, Defendant had a close professional relationship with Arguelles and regularly communicated with him regarding the operation of Excelsior. As Excelsior's so-called "Trust Protector," Smith had the sole authority to remove the Trustee at his discretion. Eventually, based on advice from Defendant, Smith directed the removal of Cititrust as trustee, and the appointment of Orion as the new trustee of Excelsior.

The appointments of Waddington, Cititrust, and Orion were intended to give the impression that Excelsior and Flash were controlled by a detached fiduciary. In reality, Smith made all substantive decisions regarding the distribution and disbursement of the trust assets either directly or through Defendant. Smith also unilaterally made all investment decisions regarding income distributed to Flash. Smith made these decisions without oversight or approval from any of the so-called trustees. Smith used bank accounts held by Flash as personal bank accounts, financing the purchase of various personal expenses including investments, art, and luxury real estate.

---

[1] Mr. Waddington passed away in March 2020.

Flash was designated by Smith as general or limited partner in several of Vista's private equity funds, including Vista Equity Fund II, LP ("VEF II"). As a named general partner, Flash held half of Smith's eight-percent interest in VEF II. From 2000 to 2014, Smith designated Flash as a general or limited partner in nine additional Vista funds, which in turn made distributions of capital gains to Flash.[2] With Defendant's assistance, Smith opened several foreign bank accounts in Flash's name at Banque Bonhôte in Switzerland and VP Bank (BVI Limited) in the British Virgin Islands. Smith was the sole signatory on all but one of these accounts, and regularly directed the transfer and distribution of funds from these accounts for personal expenses. Smith directed more than $12 million from Flash accounts to purchase and improve his personal residence in Sonoma, California. The purchase agreement for that transaction lists Smith and his then-wife as the buyers of the property. Some years later, he used these funds to buy two luxury ski condos in Megève, France. He also used Flash accounts to finance the purchase of high-priced art for himself or as gifts to others.

The Government plans to call Bruce G. Dubinsky, a forensic accounting, fraud, and tax expert to explain the specifics of the Excelsior/Flash Structure to the Jury. After reviewing the voluminous evidence in this case, Mr. Dubinsky formed four opinions: (1) that Smith, along with Defendant, formed a network of offshore entities that engaged in transactions intended to conceal the true ownership of those assets and help Smith evade taxes; (2) these transactions lacked economic substance as defined by 26 U.S.C. § 7701(o) and should be disregarded for federal income tax purposes; (3) that Excelsior trust was a grantor trust in all material respects; and (4) that Smith's income tax filings from 2010 to 2014 were false because they failed to report the income distributed to Flash and concealed Smith's control of the Excelsior/Flash Structure.

In addition to Smith and Dubinsky, the Government plans to call several other witnesses involved with the Excelsior/Flash Structure, including current and former employees of Vista, Orion, Cititrust, and Banque Bonhôte. The Government will also call Robert Mah, Brian Mah, and Roger Humphreys, who all prepared various partnership income tax returns (Form 1065) for Vista and its related funds as well as Smith's personal income tax returns (Form 1040); these

---

[2] Private equity funds are usually term-limited partnerships. Since its formation, Vista Equity Partners has overseen several private equity funds.

three individuals are expected to testify that they were not aware of the Excelsior/Flash Structure when they prepared Smith's income tax returns).

## APPLICABLE LAW

### I. Economic Substance Doctrine

#### A. The Doctrine

A transaction lacking "economic substance" is one in which a taxpayer has created the appearance of an economic sale or exchange using a false paper trail, thereby attempting to shift the incidence of taxation to an apparently independent entity. In reality, however, the income in question remains under the dominion and control of the original taxpayer.[3] It is settled law that the obligation to pay federal income tax falls on the individual or entity that earns, or otherwise owns, the income in question, and that liability cannot be "escaped by anticipatory assignment" to another individual or entity. *Lucas v. Earl*, 281 U.S. 111, 115 (1930). For the last eight decades, courts have held that the "objective economic reality" of a transaction dictates proper tax treatment. *Gregory v. Helvering*, 293 U.S. 465, 469 (1935) (taxation follows the substance of a transaction rather than its form); *United States v. Boulware*, 552 U.S. 421, 429 (2008) ("objective economic reality" controls taxation) *quoting Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978).

In 2010, the economic substance doctrine was codified at 26 U.S.C. § 7701(o).[4] Section 7701(o) states:

> In the case of any transaction to which the economic substance doctrine is relevant, such transaction shall be treated as having economic substance only if - -
>
> (A) The transaction changes in a ***meaningful way*** (apart from Federal tax effects) the taxpayer's economic position, and
>
> (B) The taxpayer has a ***substantial*** purpose (apart from Federal Income tax effects) for entering into such a transaction.

(emphasis added)

---

[3] *See* Joseph Bankman, The Economic Substance Doctrine, *74 S.Cal L. Rev 5, 9 (2000)*.

[4] *The Health Care and Education Reconciliation Act of 2010*, § 1409, P.L. 111-152, 124 Stat. 1029 (March 30, 2010).

Section 7701(o) codified the objective (Section 7701(o)(A)) and subjective (Section 7701(o)(B)) prongs of the economic substance doctrine.[5] Section 7701(o) did not alter the economic substance doctrine developed through prior court decisions.[6] The economic substance of a series of transactions is determined by the totality of the facts and circumstances surrounding those transactions, rather than through analysis of each component part. *See, e.g.*, *Comm'r v. Court Holding Co.*, 324 U.S. 331, 332 (1945) (analyzing the "whole" transaction at issue); *see also True v. United States,* 190 F.3d 1165, 1173-75 (10th Cir. 1999) (discussing the "step transaction" doctrine and treating separate "steps" as a single transaction). For income tax purposes, illusory transactions are ignored. *See Court Holding Co.*, 324 U.S. at 334. A false paper trail suggests an effort to present an illusory purpose and effect on the taxpayer's economic position.[7] If a series of transactions lacks economic substance, they are to be disregarded for income tax purposes, and the income in question becomes taxable to the taxpayer who in reality owned and controlled that income. *See Gregory*, 293 U.S. at 469.

In criminal tax cases, the application of the economic substance doctrine does not alter the Government's obligation to prove the defendant acted willfully. *See Cheek v. United States*, 498 U.S. 192, 202 (1991). To meet its burden, the Government must present evidence of defendants' actions. *See United States v. Barker*, 556 F.3d 682, 688 (8th Cir. 2009); *see also Staples v. United States*, 511 U.S. 600, 616 n. 11 (1994); *United States v. Pierre*, 599 F.3d 19, 23 (1st Cir. 2010) (evidence of falsifying records proves intent and negates feigning reliance on accountant); *United States v. Santos*, 553 U.S. 507, 521 (2008).[8]

Evidence of willfulness in criminal tax cases, where the economic substance is implicated, is often derived from defendants' use of shell corporations and trusts to create false paper trails designed to fraudulently suggest that someone other than the taxpayer earned the taxable income in question, and to

---

[5] Charlene D. Luke, *What Would Henry Simons Do?: Using an Ideal to Shape and Explain the Economic Substance Doctrine*, 10 Houston Bus. & Tax L. J. 108 (2010).

[6] Title 26 U.S.C. § 7701(o)(5)(C) states: "The determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection has never been enacted."

[7] Bankman *supra* note 3, at 26- 27.

[8] Bankman *supra* note 3, at 28- 29 (corporate officers that cross the line and falsify implementing tax shelter documents knowingly risk criminal sanction).

make it appear as if that income is attributable to independent non-taxable (or foreign) entities. *See United States v. Moran*, 493 F.3d 1002, 1008-9 (9th Cir. 2007) (offshore corporations used to create fraudulent business deductions for taxpayers); *see also United States v. Wade,* 203 F. App'x 920 (10th Cir. 2006) (unpublished) (business trusts used to fraudulently conceal taxable income)*; United States v. Mikutowicz*, 365 F.3d 65 (1st Cir. 2004) (domestic and foreign entities used to create false business deductions); *United States v. Noske*, 117 F.3d 1053, 1059-60 (8th Cir. 1997) (domestic business trusts used to fraudulently conceal taxpayers' business income); *United States v. Klaphake*, 64 F.3d 435 (8th Cir. 1995) (domestic trust used to conceal taxpayer's farm income). In these cases, the taxpayers did not report all of their income or claimed a false tax deduction, making the returns at issue materially false. The determinative factor in each of these cases was the inconsistencies between the documents created by the defendants, which created one image, and the economic reality of these taxpayers' actions, which revealed a reality contradictory to the image. The true economic reality of these transactions was established using evidence of the defendants' own conduct. These factual comparisons can be technical and are greatly aided by the testimony of expert witnesses, like a forensic accountant or economist, who can unravel these facts for a jury.

### B.  Use of Expert Testimony to Discuss Economic Substance

Expert testimony in a criminal tax case regarding a particular series of transactions, or a how a structure of entities was used, does not usurp the function of the jury and is consistent with application of *Daubert* and Rule 702. *See Moran*, 493 F.3d at 1008; *see also United States v. Pree*, 408 F.3d 855, 870 (7th Cir. 2005); *Mikutowicz*, 365 F.3d at 72; *United States v. Mohney*, 949, F.2d 1397 (6th Cir. 1992). Such expert testimony constitutes a factual analysis which may assist the jury understanding a complex series of financial transactions, and the Courts of Appeals have repeatedly held that expert testimony in a criminal tax case concerning the "proper" tax treatment of a transactions allegedly lacking "economic substance" is appropriate. *See Moran*, 493 F.3d at 1008-9; *see also, e.g.*, *Wade,* 203 F. App'x at 929-931; *United States v. Turner*, 400 F.3d 491, 499 (7th Cir. 2005) (expert witness testimony that certain transactions appeared "structured" was not error); *Pree*, 408 F.3d at 870 (IRS agent may explain analysis of facts in case based on special expertise); *Mikutowicz*, 365 F.3d at 71

(testimony by IRS agent which offers an opinion on tax consequences of defendant's transactions admissible).

In *Moran* the Ninth Circuit held that it is entirely appropriate for a retired law school professor to provide expert testimony concerning the "economic substance" of a series of transactions designed and implemented by the defendants. *See Moran*, 493 F.3d at 1008-9. The Ninth Circuit also held that an expert witness may testify about the taxation of a transaction, but not about the mental state of the defendant, credibility of witnesses, or "legal conclusion[s], i.e., an opinion on an ultimate issue of law." *Id.* at 1008. Expert testimony helps the jury unwind a complicated economic transaction and better consider whether it lacked economic substances. In *Moran*, the Government's expert witness testified that although certain entities were validly formed under Costa Rican law, the form of those entities was not respected. In other words, certain purported loans and derivative transactions were illusory and lacked economic reality. *Id.* at 1008-9.

## II.     Grantor and Non-Grantor Trusts

The Internal Revenue Code distinguishes between grantor and non-grantor trusts for income tax purposes. Under 26 U.S.C. § 674, the grantor—*i.e.,* trustor, settlor, or creator—of a trust "shall be treated as the owner of any portion of a trust of which the *beneficial enjoyment of the corpus or the income therefrom* is subject to a power of disposition, exercisable by the grantor or a non-adverse part, or both, without the approval or consent of any adverse party." (emphasis added). In contrast, a trust where the initial settlor or creator relinquishes all control of the trust assets is a non-grantor trust. The initial settlor or creator of a non-grantor trust is not treated as the owner of the trust assets for tax purposes. But any U.S. person who transfers assets to a foreign trust with U.S. beneficiaries is "treated as the owner for his taxable year of the portion of such trust attributable to such property." 26 U.S.C. § 679. Excelsior was a grantor trust. The evidence will establish that Smith was the actual creator of Excelsior/Flash Structure; contributed all income producing assets to the Excelsior/Flash Structure (the Vista partnership interests given to Flash); with Defendant's assistance, unilaterally managed the Excelsior/Flash Structure; and with Defendant's assistance, unilaterally expended income from the Excelsior/Flash Structure for his personal benefit. Yet Defendant counseled Smith to use a foreigner with no apparent connection to the Excelsior/Flash Structure or its assets as the nominee settlor of

Excelsior, and he did so in order to create the false appearance that Excelsior was a non-grantor trust, and to conceal the fact that Excelsior was actually a grantor trust, and the Smith was the true settlor or creator.

## THE CHARGES

### I. Count 1: 18 U.S.C. § 371 – Conspiracy to Defraud the United States

The elements for Count 1 are:

1. The existence of an agreement by two or more persons to commit an offense against the United States or to defraud the United States;

2. Defendant's knowing and voluntary participation in the conspiracy; and

3. The commission of an overt act in furtherance of the conspiracy

**A. Defendant and Smith agreed to defraud the United States by obstructing the lawful functions of the Internal Revenue Service by deceitful and dishonest means**

At Brockman's direction, Smith retained the services of Defendant specifically to establish an offshore structure for the purposes of receiving carried interest income from various private equity funds formed by Vista. The deceptive nature of the Excelsior/Flash Structure was intended by Brockman, Smith, and Defendant to mislead and obstruct the Internal Revenue Service. On paper, the Excelsior/Flash Structure appeared to have been created for estate planning and charitable purposes, and to be managed by foreigners exercising independent judgment. The economic reality, however, was very different. With Defendant's assistance, Smith created the Excelsior/Flash Structure as a repository for his capital gain income, which he initially planned to use to fund potential personal obligations to Brockman, his primary investor, and made all substantive decisions regarding the income and assets placed in the Excelsior/Flash Structure.

Defendant caused Cititrust to form Excelsior in Belize. After the establishment of Excelsior and Flash, Defendant regularly communicated with Cititrust regarding the day-to-day operation of Excelsior and arranged payment of recurring fees to various service providers and corporate managers. Defendant often communicated with Smith to keep him apprised of the administration of Excelsior and Flash. Through Defendant, Smith directed the actions of Cititrust and other administrators. Glenn Godfrey, one of the Cititrust managers working with Defendant, is expected to testify that they regularly took

instructions from Smith, through Defendant, regarding the substantive operation of Excelsior. When Orion took over as Trustee, those instructions were sent by Defendant to Emil Arguelles. Godfrey and Arguelles are expected to testify that they understood Smith to be the de facto owner of Excelsior assets, including Flash and its assets. Indeed, they never took substantive actions without Smith's blessing, communicated through Defendant.

### B.  Defendant knowingly and voluntarily participated in the conspiracy and was aware of its objectives

As an attorney, Defendant advertised himself as an expert in offshore structures used for the purpose of tax avoidance. Brockman, Defendant's client and Smith's business partner, referred Smith to Defendant. Smith is expected to testify that Defendant told him that he could form a foreign trust to hold a portion of Smith's partnership interest in various Vista funds. Defendant would create a paper trail to falsely suggest that the trust was managed by an independent trustee. In reality, both Defendant and Smith knew that this was a mirage—Smith would maintain control of these assets without disclosing them to the IRS.

For the 2012-2014 tax years, Smith filed false federal income tax returns that understated the amount of carried interest and capital gain income Smith received during those years. Communications between Defendant and third parties reflect Defendant's understanding that Smith had ultimate control over the Excelsior/Flash Structure. On multiple occasions, Defendant directed third parties, including Cititrust and corporate managers of Flash in the British Virgin Islands, to avoid using Smith's name on correspondence or other documents. In at least one instance, Defendant explicitly warned that doing so would cause adverse tax consequences to Smith. Defendant and Smith also worked to conceal the true value of various Flash accounts from its corporate managers and so-called fiduciaries because Smith was concerned that these individuals would take control of the funds that Smith understood to be his.

Defendant's modus operandi, knowledge, and intent are revealed by evidence collected by the IRS during an undercover operation targeting Defendant in 2017 and 2018. During the undercover operation, undercover agents posing as prospective clients seeking to protect their assets engaged with Defendant. The scheme Defendant tried to sell the undercover agents was nearly identical to the scheme he sold to Smith. Both involved: using a family member as a nominee to establish a sham trust using

funds surreptitiously provided by the client; installing a nominee, offshore trustee to create the false appearance that the trust was under independent control; creating an offshore holding company; installing a nominee, offshore manager to create the false appearance that the company was under independent control; assigning assets to the holding company; and then allowing the client to control those assets by filtering instructions to the offshore nominees through Defendant. Defendant introduced one of the undercover agents to Emil Arguelles, whose company, Orion, served as trustee of Excelsior for several years. Defendant's advice to the undercover agents was obviously corrupt — as Defendant himself repeatedly advised the undercover agents — specifically designed to defeat taxation on assets held within the offshore structure.

Most significantly, Defendant explained to one undercover agent that there could be no legitimate tax benefits if the undercover agent created and funded an offshore trust himself. This is a clear manifestation of Defendant's knowledge of the grantor trust rules described above. Despite his knowledge of the law, however, Defendant advised the undercover agent to create and fund a trust using a nominee so that the IRS would never know that the undercover agent was the true creator and funder. This was not an effort to create a legitimate, non-grantor trust. Rather, it was an effort to create a grantor trust disguised as a non-grantor trust.

Similarly, Defendant advised an undercover agent to employ an offshore trustee but made clear that the trustee would be a nominee. He explained that the undercover agent would retain the ability to control assets held in the trust because the trustee would always follow the undercover agent's instructions. This is a clear manifestation of Defendant's knowledge of economic substance doctrine described above. Despite this knowledge of the law, however, Defendant advised the undercover agent to employ a nominee trustee. There is no legitimate reason for installing a nominee trustee. The only purpose a nominee trustee serves is to create the false appearance that a trust is under independent control, and that the act of assigning assets to the trust has some economic substance. When a taxpayer assigns assets to a trust which the taxpayer actually controls, the transaction has no economic substance and is ignored for purposes of federal income tax. Thus, Defendant's advice was not designed to create a genuine transaction which could have some legitimate tax consequences. Rather, it was an effort to create a transaction which appeared to have economic substance but had none.

### C. Defendant and Smith committed overt acts in furtherance of the conspiracy

The Government must prove that Defendant or Smith committed "any act to effect the object of the conspiracy." 18 U.S.C. § 371. The Government is only required to show a single act in furtherance of the conspiracy. *See United States v. Turchin*, 21 F. 4th 1192, 1203 (9th Cir. 2022) (conviction under Section 371 requires only "*an* overt act in furtherance of the agreement" (emphasis added)). Nevertheless, the acts committed by Defendant and Smith were numerous, and the indictment lists many overt acts committed over approximately 15 years. *See* Indictment ¶¶ 29 – 50. Defendant spearheaded the establishment of the Excelsior/Flash Structure in Belize and Nevis. He drafted the Excelsior trust indenture, caused Excelsior to be created in Belize, and caused Flash to be created in Nevis. Defendant worked with Smith to open bank accounts in the British Virgin Islands and Switzerland nominally held by Flash, but ultimately controlled by Smith. Defendant helped Smith spend money held in Flash's name for his own personal benefit, including to purchase real estate in France, Sonoma, California, and Colorado. For the years 2012 through 2013, Smith caused his personal income tax returns to be prepared in San Francisco, and those returns were false because they did not accurately report carried interest and capital gain income distributed by Vista to Flash. All of these acts are overt acts in furtherance of the conspiracy.

## II. Counts 2 to 4: 26 U.S.C. § 7206(2) – Aiding in the Preparation of False Tax Returns

The elements for Counts 2 through 4 are:

1. Defendant aided or assisted in, procured, counseled, or advised the preparation or presentation of a document in connection with a matter arising under the internal revenue laws;

2. the document was false as a to a material matters; and

3. Defendant acted willfully.

### A. Defendant aided, procured, counseled, and advised the preparation of Smith's income tax returns for the 2012-2014 tax years

There is no requirement that Defendant participated in the actual preparation of the false tax returns in order to be convicted under Section 7206(2). *See United States v. Smith*, 424 F.3d 992, 1009 (9th Cir. 2005) ("[T]he plain language of § 7206(2) is satisfied by aid, assistance, procurement, counsel, or advice in the preparation or presentation of a false or fraudulent return—there need not be actually

preparation of the return at issue."). As described above, Defendant aided Smith in creating and maintaining an offshore trust structure designed to hide Smith's income and assets from the IRS. Flash was listed as a general partner of various Vista funds, and from 2005 to 2014 over $225 million of carried interest and capital gain income was distributed by Vista to Flash. Since the independent character of the Excelsior/Flash Structure was an illusion, and the structure lacked economic substance, Smith was the de facto grantor of that Trust. As a result, Smith was taxable on income paid into the structure. Defendant devised this scheme knowing that the principal objective of setting up the structure was to allow Smith to evade his tax obligations. So, while Defendant may not have put pen to paper, he willingly participated in the scheme, and acted to fulfill its objectives.

The returns at issue were prepared by Robert Mah, Brian Mah, and Roger Humphries from Mah & Associates, an accounting firm in San Francisco. All three are expected to testify that they were not aware of the Excelsior/Flash Structure when they prepared Smith's income tax returns, they were not retained to audit or look behind any of the information provided to them by Smith and his representatives, and that they presumed that information was complete and accurate.

Defendant aided and advised Smith in the preparation of his tax returns by acting as his intermediary to various banks, trust companies, and corporate managers. Denise Davis, the then-Director of Finance at Vista, is expected to testify that Vista employees were instructed to communicate with Defendant regarding Flash rather than with Smith directly. Aside from setting up the Excelsior/Flash Structure on Smith's behalf, Defendant opened bank accounts for the various entities within the structure and advised Smith how to purchase real property through nominees.

### B. Smith's individual tax returns for tax years 2012-2014 were false as to a material matter

The Ninth Circuit has held that "any failure to report income is material." *United States v. Holland*, 880 F.2d 1091, 1096 (9th Cir. 1989). Here, the Government's forensic accounting and tax expert, Bruce G. Dubinsky, calculated that Smith's federal income tax returns for 2012-2014 omitted approximately $195 million in taxable income received by the various Excelsior/Flash entities. The income should have been reported by Smith on his tax returns because Smith was the primary contributor of assets to the Excelsior/Flash Structure and maintained complete dominion and control

over the structure. Applying the economic substance doctrine, the Excelsior/Flash Structure is disregarded for income tax purpose, and the distributions to Flash are treated as distributions directly to Smith. Accordingly, under 26 U.S.C. § 674, Smith is treated as the owner of the income directed into the Excelsior/Flash Structure, requiring him to report it on his federal income tax returns. As a result, Smith's income tax returns for the years 2012-2014 were false because they failed to report millions of dollars' worth of income on Line 13, which is used, along with Schedule D, to report sales of capital assets such as stocks or bonds.

### C. Defendant acted willfully

Willfulness under Section 7206(2) requires "that the accused must know or believe that his actions will likely lead to the filing of a false return." *United States v. Greer*, 607 F.2d 1251, 1252 (9th Cir. 1979). As discussed above, Smith used Defendant as a buffer between him and the Excelsior/Flash Structure. For nearly 15 years, Defendant communicated Smith's instructions to various bankers and corporate managers. Defendant created a false paper trail to give the impression that Excelsior was controlled by a neutral trustee and that Smith had relinquished control of any trust assets. This was a complete ruse. Smith specifically retained Defendant to create a structure that would aid Smith evade taxes he earned from various Vista funds. The Government expects to present evidence that Defendant counseled others on how to create distance between Excelsior and Smith to maintain the appearance that someone other than Smith was in control. Otherwise, Defendant would say, Smith would face tax consequences.

The fact that Defendant understood that federal tax law imposes a duty on taxpayers to report income generated by offshore trusts they create and fund, and also income they assign to offshore trust they completely control, is well-illustrated by the undercover evidence. During the undercover operation, Defendant was recorded explaining the law to prospective clients, and then advising that those prospective clients violate the law by engaging in transactions with no legitimate purpose other than obscuring reality and confusing the IRS.

//
//
//

# EVIDENTIARY ISSUES

## I. Co-conspirator statements under Fed. R. Evid. 801(d)(2)(E)

Evidence of a co-conspirator's statements during and in furtherance of the conspiracy are not hearsay. *See* Fed. R. Evid. 801(d)(2)(E); *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000). Such statements do not create a *Crawford* issue because they are non-testimonial. *Crawford v. Washington*, 541 U.S. 36, 55 (2004); *see also Giles v. California*, 554 U.S. 353, 375 n.6 (2008); *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005). On August 15, 2022, the Government notified Defendant of its intent to produce evidence of statements made by the following individuals pursuant to Rule 801(d)(2)(E):

- Robert Smith
- John Warnken-Brill
- Glenn Godfrey
- Joy Godfrey
- Emil Arguelles
- Evatt Tamine
- Robyn Neal
- Michele Frutiger

On November 7, 2022, the Government provided Defendant with notice that is also considers Robert Brockman an unindicted co-conspirator and intends to introduce statements Brockman made to Smith about Defendant and creating the Excelsior/Flash Structure. See ECF 121. Smith, a co-conspirator named in the indictment, will be testifying at trial. The Government does not plan to call John Warken-Brill (CFO of Vista) or Evatt Tamine as witnesses at trial. At the October 20 status hearing, the Government stated that a James hearing is not necessary, and the Court appeared to agree. See ECF 110, Transcript of 10/20/22 Status Conference at 66:1-67:23.

## II. Admission of undercover recordings and transcripts

On August 10, 2022, the Government filed a motion in limine to admit evidence consisting of audio records and transcripts collected by the IRS undercover agents in this case. At the October 20 hearing, the Court reserved ruling on this motion and provided the Government with an opportunity to

narrow the body of this evidence and encouraged the Parties to stipulate to some of this evidence, where possible. *See* ECF 110, Transcript of 10/20/22 Status Conference at 25:9-27:5. While the parties were not able to stipulate to the admission of any portion of the undercover recordings and transcripts, the Government filed a supplemental motion in limine to admit a reduced set of this evidence. ECF 125. Defendant filed a response on November 14. ECF 147. That motion is pending.

### III.   Statements of Defendant under Fed. R. Evid. 801(d)(2)(A)

To the extent that the Defendant objects on hearsay grounds to the admission of his statements, the Government intends to argue that such statements are non-hearsay under Fed. R. Evid. 801(d)(2)(A) and admissible. *See* ECF 123 (Government's Motion in Limine); ECF 152 (Defendant's response).

### IV.   Outstanding Stipulations Sent to Defendant

The Government has proposed a total of five stipulations to Defendant. On November 15, the parties conferred telephonically regrading these stipulations.

#### A.   Stipulation Regarding Redactions

On October 11th, the Government sent Defendant a stipulation proposing modifications to the redaction procedures for trial exhibits set forth in Rule 49.1(a). The Government filed an agreed stipulation on November 3rd, and it remains pending. *See* ECF 113.

#### B.   Stipulation regarding authenticity of tax returns

On October 19th, the Government sent Defendant a proposed stipulation regarding the admissibility of tax returns the Government intends to introduce as exhibits at trial which were identified by Bates number in the stipulation. Defendant has represented that he will stipulate to the admissibility of the tax returns at issue in this case, and the parties anticipate filing a stipulation ahead of the final pretrial conference.

#### C.   Domestic records of regularly conducted activity under Fed. R. Evid. 902(11) and 803(6)

On October 19th, the Government sent Defendant a proposed stipulation regarding the admissibility of certain business records the Government intends to introduce as exhibits at trial under Rules 803(6) and 902(11). These records were identified by Bates number in the stipulation. Discussions

regarding this stipulation are ongoing. If the parties can come to an agreement, the Government expects that a stipulation will be filed prior to the final pretrial conference.

### D. Foreign records of regularly conducted activity under 18 U.S.C. § 3505 and Fed. R. Evid. 902(12)

On November 8th, the Government sent Defendant notice of its intent to seek admission of foreign records of regularly conducted activity under 18 U.S.C. § 3505 and Fed. R. Evid. 902(12). This evidence consists of: (1) business records of Orion and Cititrust in Belize; (2) business records of Banque Bonhôte in Switzerland; and (3) business records of First Caribbean International Bank in the Cayman Islands. The Government also sent Defendant a proposed stipulation regarding the authenticity of this evidence, identified by exhibit and Bates number, allowing Defendant to make other objections on relevance, hearsay, or other non-authenticity grounds. Discussions regarding this stipulation are ongoing. If the parties can come to an agreement, the Government expects that a stipulation will be filed prior to the final pretrial conference.

### E. Stipulation regarding the authenticity of evidence obtained via search warrant

On November 8th, the Government sent Defendant a proposed stipulation as to the authenticity of evidence obtained via search warrant. During its investigation, the Government obtained evidence via multiple search warrants executed at the homes of Defendant and Evatt Tamine, as well as electronic search warrants executed on Defendant's email account. The Government has asked Defendant to stipulate to the authenticity of the evidence, identified by exhibit and Bates number, allowing Defendant to make other objections on relevance, hearsay, or other non-authenticity grounds. Discussions regarding this stipulation are ongoing. If the parties can come to an agreement, the Government expects that a stipulation will be filed prior to the final pretrial conference.

## V. Summary evidence under Fed. R. Evid. 1006

On November 3rd, the Government sent Defendant two Rule 1006 summaries of voluminous Vista financial records prepared by Denise Davis, identified as Exhibits 240 and 241 on the Exhibit List filed by the Government on November 9, 2022. *See* ECF 138 at 21. In addition, the Government previously gave notice of its intent to use Rule 1006 evidence, and why such evidence is appropriate. *See* Not. Of Intent to Offer Expert Testimony and Summaries of Voluminous Evid. at 9-11, ECF No. 45.

GOVERNMENT'S TRIAL MEMORANDUM
Case No.: 3:21-CR-00155-JD                                    19

These exhibits summarize the flow of distributions from Vista and its various funds to its limited partners, including Flash. The underlying evidence was previously produced to the Defense, and the Government is prepared to produce them in court if requested by the Court.

Dated: November 15, 2022

STEPHANIE M. HINDS
United States Attorney

*/s Corey J. Smith*
COREY J. SMITH
Senior Litigation Counsel, Tax Division
MICHAEL G. PITMAN
Assistant United States Attorney
BORIS BOURGET
Trial Attorney, Tax Division

Attorneys for United States of America