

David R. Callaway
+1 650 752 3261
DCallaway@goodwinlaw.com

Goodwin Procter LLP
601 Marshall Street
Redwood City, CA  94063

goodwinlaw.com
+1 650 752 3100

October 26, 2022

**VIA E-MAIL (MICHAEL.PITMAN@USDOJ.GOV; COREY.SMITH@USDOJ.GOV; CHRISTOPHER.MAGNANI@USDOJ.GOV; LEE.F.LANGSTON@USDOJ.GOV; BORIS.BOURGET@USDOJ.GOV)**

Michael G. Pitman
Assistant United States Attorney
United States Attorney's Office for the Northern District of California
150 Almaden Blvd., Suite 900
San Jose, CA 95113

Re:   *USA v. Kepke,* U.S. District Court - Northern District of California
         Case No. 3:21-CR-00155-JD

Dear Mr. Pitman:

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), and to supplement the disclosures Mr. Kepke has previously tendered so as to comply with Judge Donato's order following the hearing on October 20, 2022, this letter provides a summary of the "bases and reasons" for the anticipated expert testimony of Rodney Read, whom the defense may call as an expert witness in the above-captioned matter.  Mr. Kepke continues to reserve the right for Mr. Read to review additional materials provided by the government, as well as to consider testimony and other evidence that may be offered at trial and to further supplement this disclosure and the scope of Mr. Read's anticipated testimony up to the point of his appearance at trial.

As we have previously disclosed, and as his CV, previously provided, elaborates on more fully, Mr. Read is a partner in the Tax Practice Group of Baker & McKenzie LLP.  Mr. Read's practice focuses on wealth management, pre-immigration planning, international estate planning, and international tax.  He regularly assists clients with the structuring and administration of trusts, the formation of tax efficient structures for investment in the United States, and United States tax issues related to beneficiaries.  He also guides clients through the United States Offshore Voluntary Disclosure Programs, assists with regularizing United States tax and reporting obligations, and advises financial institutions, trust companies, multi-national companies and insurance companies with compliance issues related to the Foreign Account Tax Compliance Act.  Mr. Read earned a Bachelor of Business Administration in Accounting from Lamar University, a Juris Doctor from the University of Houston Law Center, and a Master of Laws in Taxation from New York University's School of Law.  As we previously disclosed, Mr. Read's expert testimony would be based on his education; his professional experience; and a review of the documents and information relating to this matter.  Those documents include, but are not limited to, the following: the Indictment; the materials relied upon by Dr. Bruce Dubinsky and Revenue Agent James Oertel; and various rules, regulations, and statutes, including those cited in this letter.

ACTIVE/117682276.3



Michael G. Pitman
October 26, 2022
Page 2

As directed by Judge Donato, however, and while continuing to reserve all rights with respect to *all* of Mr. Read's previously disclosed proposed testimony, Mr. Kepke provides the following additional disclosures in support of the areas identified in our prior submissions and listed again below, consistent with Judge Donato's Order of October 20, 2022, namely, that:

- Foreign asset protection trusts and foreign non-grantor trusts are valid and legal trust entities.

- It is not uncommon to establish a trust in a foreign jurisdiction that has a lower income tax rate than the United States in contemplation of potential United States income tax reduction or deferral.

- There are no legal prohibitions against appointing a beneficiary as the trust protector, which may include the power to remove and replace the trustee of a foreign trust.  This arrangement does not necessarily affect the non-grantor status of the foreign trust.

- Foreign and domestic trustees alike owe a fiduciary responsibility to beneficiaries to ensure trust assets are being used exclusively for the benefit of a trust's beneficiaries and acting within the restrictions and limitations set forth in the trust documents.

- It is not uncommon for the beneficiary of a foreign trust to request that a trustee take certain actions or execute certain transactions, including investments or purchases.  Generally, it is up to the trustee to review these requests and decide whether to accept or reject them.

- It is not uncommon that when an attorney identifies a trustee that is reliable and responsive, that the attorney continues to utilize the same trustee for other clients.

- When United States tax advantages and asset protection are the goals of the foreign trust, it is not uncommon for the foreign trust to own one or more offshore corporations whereby shares of stock in the offshore corporations are held as assets of the trust.

- It is not uncommon for a foreign trust to purchase an asset from a beneficiary, which then becomes an asset of the trust.  The sale does not necessarily cause the beneficiary to become a grantor of the foreign trust.

The bases and reasons for Mr. Read's proposed testimony in those areas to which the Court has ruled that Mr. Read will be permitted to testify are as follows:

1. <u>Foreign asset protection trusts and foreign non-grantor trusts are valid and legal trust entities</u>.

In support of this proposition, we tender the following: as part of his practice, Mr. Read has worked on and reviewed trusts from numerous foreign and domestic jurisdictions, including trusts established under the laws of Belize, the Isle of Man, British Virgin Islands, Bahamas, Cayman Islands, Brazil, the



Michael G. Pitman
October 26, 2022
Page 3

Maldives, New Zealand, and Mexico, and also including companies and trusts established under the laws of Nevis. In addition to trusts that Mr. Read has personally assisted in establishing, or that he has assisted others in establishing, he spent considerable time earlier in his career reviewing trust documents from those various jurisdictions on behalf of large financial institution clients with institutional trust departments, including UBS and Credit Suisse.  The purpose of Mr. Read's review was to determine the U.S. tax consequences of those trusts and whether they were operating in compliance with United States tax law.  Mr. Read's duties included classifying trusts as either grantor or non-grantor trusts, which included analyzing the permissible roles of the various participants in those trusts, including attorneys, settlors, grantors, beneficiaries, and trust protectors, to evaluate their potential impact on U.S. federal and state tax treatment.

Among the statutes and regulations with which Mr. Read is readily familiar, and which he consults regularly to carry out his day-to-day duties as a federal tax, wealth management, and estate planning practitioner, and which provide the bases and reasons for his opinion that foreign asset protection and foreign non-grantor trusts are valid and legal trust entities (as well as providing support for the other opinions for which this response will later be incorporated by reference), are the following:

Title 26, United States Code, Sections 671 through 679, and corresponding provisions in Title 26, Code of Federal Regulations, particularly:

- 26 CFR §§ 1.671-1 through 1.671-5
- 26 CFR § 1.672(a)-1
- 26 CFR §§ 1.673 through 677
- 26 CFR §§ 1.678(a)-1 and 678(b)-1
- 26 CFR §§ 1.679-1 through 1.679-7

Mr. Read is also readily familiar with, and bases his opinions on, the following provisions in the United States Code of Federal Regulations:

- 26 CFR § 301.7701-1 (Classification of organizations for federal tax purposes)
- 26 CFR § 301.7701-2 (Business entities; definitions)
- 26 CFR § 301.7701-3 (Classification of certain business entities)
- 26 CFR § 301.7701-4 (Trusts)
- 26 CFR § 301.7701-5 (Domestic and foreign business entities)



Michael G. Pitman
October 26, 2022
Page 4

- 26 CFR § 301.7701-6 (Definitions; person, fiduciary)

- 26 CFR § 301.7701-7 (Trusts – domestic and foreign)

Mr. Read is also familiar with, and bases his opinions on, the provisions in the Foreign Account Tax Compliance Act passed in 2010, codified at Title 26, United States Code, Sections 1471-1474, as well as corresponding provisions in the Code of Federal Regulations, to wit: 26 CFR §§ 1.1471-1 through 1.1474-7.

As a further basis for his opinions, Mr. Read will explain that trusts are products of local jurisdictions and of the specific statutes of the jurisdiction in which the trust is established. The validity or invalidity of the trust will depend on its compliance with local law, although the tax consequences under United States law are a function of United States statutes and regulations, including those cited above. The legal purposes of trusts are not only tax reduction and tax deferral, but also include asset protection and estate planning. While tax planning and deferral depend on United States law, asset protection is largely a function of the local law in the jurisdiction where the trust is established.

2. <u>It is not uncommon to establish a trust in a foreign jurisdiction that has a lower income tax rate than the United States in contemplation of potential United States income tax reduction or deferral</u>.

The bases and reasons provided in support of the previous response are incorporated by reference as if fully set forth here.

Mr. Read's bases and reasons for rendering this opinion are that this kind of work – namely, establishing trusts in foreign jurisdictions that have lower tax rates than the United States in an effort to reduce or defer U.S. income and estate taxes – represents the heartland of his legal practice. He has personally drafted, or participated in drafting, dozens of trusts that have had these goals in mind, and he has reviewed countless others. Mr. Read also attends multiple conferences each year devoted to this topic. He is familiar with, and regularly reviews, treatises on federal taxation and estate planning, including, but not limited to, the following ones of which he either maintains copies in his professional library (first three) or accesses through an online subscription:

(1) J. Peschel & E. Spurgeon, <u>Federal Taxation of Trusts, Grantors and Beneficiaries</u> (Thomson Reuters/Tax & Accounting, 3d ed. 1997 & 2022 Cumulative Supplement);

(2) H. Zaritsky, N. Lane, & Danforth <u>Federal Income Taxation of Estates and Trusts</u> (Thomson Reuters/WG&L, 3d ed. 2001 & Supp. 2022 No. 1);

(3) J. Manning, et al., <u>Manning on Estate Planning</u> (7th ed., last updated 2017);

(4) Henkel & Tobey, <u>Estate Planning and Wealth Preservation: Strategies and Solutions</u> (Thomson Reuters/Tax & Accounting 1997, with updates through May 2022); and



Michael G. Pitman
October 26, 2022
Page 5

      (5) Marnin J. Michaels, <u>U.S. International Estate Planning</u> (Thomson Reuters/Tax & Accounting, May 2022 Supplement).

3. <u>There are no legal prohibitions against appointing a beneficiary as the trust protector, which may include the power to remove and replace the trustee of a foreign trust.  This arrangement does not necessarily affect the non-grantor status of the foreign trust.</u>

The bases and reasons provided in support of the first and second responses above are incorporated by reference as if fully set forth here.

Mr. Read's bases and reasons for rendering this opinion are, once again, that this kind of work – namely, establishing trusts in foreign jurisdictions in an effort to reduce or defer U.S. income and estate taxes – is the heartland of his legal practice. Having drafted or reviewed hundreds of foreign trust documents during the course of his career, including trusts in each of the foreign jurisdictions listed in response to the first bullet above, he is not aware of any jurisdiction in which having a beneficiary also serve as trust protector is prohibited—nor is it prohibited anywhere in the Internal Revenue Code.

That said, Mr. Read is aware that there is no "federal trust law" in the United States; all such statutes are creatures of state law. The Uniform Trust Code is a model statute that has been widely adopted; at least 35 states have adopted some version of the UTC, others are considering it, and states that have not adopted the UTC nonetheless mirror many, if not most, of its provisions. And the UTC does not prohibit a beneficiary from serving as trust protector, including having the power to remove and replace the trustee of a foreign (or domestic) trust. Based on his experience, as well as the statutes, regulations, and treatises cited above, Mr. Read understands that while the grantor or beneficiary of a trust may have such powers to control the operation of the trust that it renders the trust in question a "grantor trust" for U.S. income tax purposes or an "includable trust" for U.S. estate tax purposes, the power to remove and replace the trustee does not, standing alone, confer such power.

4. <u>Foreign and domestic trustees alike owe a fiduciary responsibility to beneficiaries to ensure trust assets are being used exclusively for the benefit of a trust's beneficiaries and acting within the restrictions and limitations set forth in the trust documents</u>.

The bases and reasons provided in support of the first and second responses above, as well as the discussion of the Uniform Trust Code provided in the third response, are incorporated by reference as if fully set forth here.

In addition to those bases and reasons, Mr. Read also knows about the fiduciary duties applicable to foreign (and domestic) trustees because, as part of his professional practice and development, he follows court cases brought in foreign jurisdictions in which beneficiaries have sued trustees for allegedly mismanaging trust assets. Mr. Read is specifically aware of such cases having been brought in the jurisdiction at issue here, namely, Belize. Such lawsuits, including the allegations made, the progress of the litigation, and rulings  by foreign courts, are topics regularly covered in the conferences Mr. Read attends annually as part of his professional education and development. Mr. Read has



Michael G. Pitman
October 26, 2022
Page 6

attended conferences in Switzerland, London, Lichtenstein, and the Cayman Islands, at which trustees' fiduciary obligations, including the potential consequences of failing to abide by them, have been addressed, including at the annual "Tax and Trusts" conference put on by his own law firm, Baker & McKenzie, in Miami and New York.[1]

5. <u>It is not uncommon for the beneficiary of a foreign trust to request that a trustee take certain actions or execute certain transactions, including investments or purchases. Generally, it is up to the trustee to review these requests and decide whether to accept or reject them.</u>

The bases and reasons provided in support of the first and second responses above, as well as the discussion of the Uniform Trust Code provided in the third response, are incorporated by reference as if fully set forth here, as is the fourth response, dealing with the fiduciary obligations of trustees to their beneficiaries, in its entirety.

Based on his extensive experience, Mr. Read is aware that it is common for beneficiaries to make their wishes known to the trustee. A formal way for trust beneficiaries to communicate their wishes to the trustee is through a non-binding "Letter of Wishes." Beneficiaries also regularly communicate their preferences to trustees in less formal ways, such as via telephone call, email, or during meetings. Mr. Read is aware that it would not be possible for trustees to exercise their fiduciary obligations to the beneficiaries without knowing specific information about those beneficiaries, including their backgrounds, financial situation, risk tolerance, and wishes. In a discretionary trust, the trustee has discretion (as the name suggests) to accept or reject recommendations or requests made by a beneficiary.[2] It is also not uncommon, in Mr. Read's experience, for a beneficiary's role in assisting the trustee to be formalized, for example, by having the beneficiary serve as an investment advisor to the trust. This often occurs, for example, when the beneficiary has had a role in founding or managing a business that the trust now owns and the trustee wishes for that beneficiary to continue assisting in the management of that business, so as to maximize its value to the trust.

6. <u>It is not uncommon that when an attorney identifies a trustee that is reliable and responsive, that the attorney continues to utilize the same trustee for other clients.</u>

The bases and reasons provided in support of the first and second responses above, as well as the discussion of the Uniform Trust Code provided in the third response, are incorporated by reference as if fully set forth here, as is the fourth response, dealing with the fiduciary obligations of trustees to their beneficiaries, in its entirety.

Based on his experience, as well as basic common-sense, Mr. Read is aware that it is not only "not uncommon," but quite typical, for attorneys, including himself, to continue to utilize a trustee who has

---

[1] For this year, the conference, which is only being held in New York, has been renamed the "Global Wealth Management and Family Office Conference."

[2] In a non-discretionary trust, the trustee may be required by the terms of the trust to invest only in specifically named assets and have no personal decision-making authority.

ACTIVE/117682276.3



Michael G. Pitman
October 26, 2022
Page 7

proven to be knowledgeable and trustworthy, when setting up a trust in a jurisdiction where that trustee operates.

7. <u>When United States tax advantages and asset protection are the goals of the foreign trust, it is not uncommon for the foreign trust to own one or more offshore corporations whereby shares of stock in the offshore corporations are held as assets of the trust.</u>

The bases and reasons provided in support of the first and second responses above, as well as the discussion of the Uniform Trust Code provided in the third response, are incorporated by reference as if fully set forth here.

In Mr. Read's experience, foreign trust companies often require, for their own liability protection, that the assets under trust management be held within an offshore company. The reasons for doing so are similar to the reasons the corporate form is used here in the United States—among them, to protect the shareholders, or, in this case, the trustees who are managing the trust, from being sued. The extent of protection provided by such an arrangement is a creature of local law.  An additional reason why a foreign trustee will often insist that the assets in trust be held by a foreign company, rather than one in the United States, is that the U.S. is considered a more litigious jurisdiction; foreign corporations offer greater protections for that reason alone. Finally, as a matter of tax and estate planning, it may be preferable for a foreign trust to hold assets in offshore companies, rather than ones based in the United States. Thus, Mr. Read is able to confirm that the arrangement that existed for Mr. Smith, in which a Belizean trust held assets in a Nevis company, is somewhat typical of what he has seen for years in his practice involving foreign trust structures.

8. <u>It is not uncommon for a foreign trust to purchase an asset from a beneficiary, which then becomes an asset of the trust.  The sale does not necessarily cause the beneficiary to become a grantor of the foreign trust.</u>

The bases and reasons provided in support of the first and second responses above, as well as the discussion of the Uniform Trust Code provided in the third response, are incorporated by reference as if fully set forth here, as is the fourth response, dealing with the fiduciary obligations of trustees to their beneficiaries, in its entirety.

In addition, Mr. Read is aware, based on his training and experience – which includes legal work involving the purchase and sale of assets to and from foreign and domestic trusts – that because the trustee has a fiduciary obligation to try to manage the trust for the benefit of its beneficiaries, it is not uncommon for a trustee to choose to acquire assets from those beneficiaries, if the asset in question represents a good investment for the trust, relative to other potential assets under consideration. Mr. Read has personally worked on dozens of transactions involving the sale of assets from a beneficiary to a trust. The key, according to Mr. Read, as it pertains to tax and estate planning, is that the acquisition must be arms-length: if the trustee pays too much for the asset, then he is not honoring his fiduciary obligation to the beneficiaries, and he exposes himself to potential litigation for breaching his fiduciary duty.  If the trustee pays too little, then there is a risk the acquisition will not be deemed a



Michael G. Pitman
October 26, 2022
Page 8

"purchase" by the trust, but rather a "contribution" by the beneficiary to the trust, which could cause the beneficiary to become a grantor, with adverse tax consequences to the trust beneficiary or beneficiaries. Independent outside valuation companies are generally used to provide arms-length valuations.

\* \* \*

Before closing, we note that by providing these supplemental "bases and reasons" for certain of the opinions Mr. Kepke anticipates eliciting from his *only* designated expert, Rodney Read, the defense is not conceding – indeed, we vigorously contest – the limits the court has placed on Mr. Read's testimony. Had the court not granted, in part, the government's motion to exclude Mr. Read's testimony, Mr. Kepke would, at a minimum, also have asked Mr. Read to testify regarding the additional areas listed in our July 22, 2022 Supplemental Disclosure.  Moreover, had the court permitted us to do so, we would have provided similar "bases and reasons" for Mr. Read's anticipated testimony in those additional areas as well. Should Mr. Kepke be convicted after trial, we believe the court's October 20, 2022 ruling limiting Mr. Read's testimony may be found to be reversible error. We therefore preserve all objections as to that ruling, and waive none.

One last thing: Judge Donato ordered us to provide you the information contained in this letter by Friday, October 28, 2022. We are sending it to you two days early to provide an opportunity to meet and confer should you still find this disclosure inadequate, so that we can make an effort to further supplement our disclosures by the court's deadline. Although we cannot imagine that the government would continue to take issue with these disclosures, please let me know as soon as possible if that assumption is incorrect.

Thank you very much.

Sincerely,

# DRAFT

David R. Callaway

DRC


cc:     Richard M. Strassberg
        Grant Fondo
        Sylvia Ewald
        Nicole Kim


ACTIVE/117682276.3