GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA  94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

SYLVIA R. EWALD (SBN 300267)
*SEwald@goodwinlaw.com*
**GOODWIN PROCTER LLP**
520 Broadway, Suite 500
Santa Monica, CA 90401
Tel: +1 424 436 3051
Fax: +1 213 623 1673

Attorneys for Defendant:
CARLOS E. KEPKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS E. KEPKE,<br><br>Defendant. | Case No. 3:21-CR-00155-JD<br><br>**OPPOSITION TO SECOND MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS**<br><br>Date:  Mondays<br>Time:  10:30 a.m.<br>Courtroom: 11<br>Judge:  Hon. James Donato |

## I. INTRODUCTION

The government's eleventh-hour Second Motion to Exclude Testimony of Defendant's Expert Rodney Read is meritless and, frankly, smacks of gamesmanship. It should be quickly rejected by this Court. Mr. Kepke has a constitutional right to present a defense. In a case like this, where the element of willfulness will be so crucial, the jury must be able to hear from an expert who is qualified to testify regarding industry standards. As the defense disclosures have made clear, Mr. Kepke's proffered expert, Rodney Read, is eminently qualified to do just that. Depriving the defense of his testimony would be reversible error.

## II. BACKGROUND

On October, 20, 2022, this Court heard argument on the government's first motion to exclude Mr. Read's testimony. At that hearing, the government took a very different tack from the one it is taking now. At that hearing, AUSA Pitman stated: "The reality is that the Court should allow pretty broad expert testimony on the subjects at issue in this case. And I have, you know, no doubt that it would be possible for the Defense to put together an adequate disclosure that would provide the actual opinions and the actual bases for those opinions that would describe admissible testimony."[1]

The Court then pointed out that, in its Reply brief in support of the government's initial motion to exclude Mr. Read's testimony, the government appeared to concede that Mr. Read should be allowed to testify about certain of its disclosures. Hrng. Tr. 11:8–22. AUSA Pitman responded that this was not exactly correct; that what he was saying, in essence, was that although the opinions had been disclosed, "I just need a paragraph or two just to make sure that the bases for the opinions that the Court is about to cite that we have identified as having been disclosed properly are not whacky." Hrng. Tr. 12:16–19.

The Court then suggested that this amounted to the government "throwing your opponent – your colleagues here – a lifeline," Hrng. Tr. 12:20-21, to which AUSA Pitman responded:

> So, my position, Your Honor, is that there are there are some
> opinions that were revealed in these disclosures -- I have listed those
> opinions in our reply brief, which is docket number 73. There is a

---

[1] Reporter's Transcript of October 20, 2022 Hearing ("Hrng. Tr.") at 10:21–11:1.

> bullet point starting on page 3 -- I would say that those -- one, two, three, four, five, six, seven, eight -- opinions, *so long as there are supplement [sic] about the bases for those opinions to make sure he is not a tax protester or something, we would be okay with those coming in.*

Hrng. Tr. 12:25–13:8 (emphasis added). The Court then advised the defense that "you can thank Mr. Pitman for his generosity because I was going to say no," and gave the defense until Friday, October 28, 2022, to provide additional support for its expert disclosures as to the eight described bullet points. Hrng. Tr. 13:9–14:6.

So the remit to the defense was to provide, by October 28, 2022, the "bases and reasons" for the eight opinions the government had previously conceded were "arguably disclosed (although their basis and reasons were not)."[2] And as the Court can see in Exhibits 1 and 2 to the government's motion, we did just that. In fact, we provided our disclosures two days early "to give us time to meet and confer in the unlikely event you should find any of these disclosures insufficient."[3] On October 29, 2022, the undersigned sent a follow-up email to the prosecutors to confirm that, having heard no objections from them, they should consider the draft supplemental disclosure sent on October 27 to be final. *Id.* The government finally responded on Tuesday, November 1, 2022, to state that it still did not believe the defense disclosures were sufficient, but waited another three weeks to file the instant motion. *Id.*

### III.   LEGAL STANDARD

The defense is required to provide the government "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial" which must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications[.]" Fed. R. Crim. P. 16(b)(l)(C).

While the trial court serves as a gatekeeper under *Daubert*, its judgment is not intended to replace the adversary system. *See Dorn v. Burlington N Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) (finding it error to bar testimony that would have discredited opposing expert's

---

[2] Govt. Reply brief at 3.

[3] Email from David Callaway to AUSA Michael Pitman, et al., sent on Wednesday, October 26, 2022 (attached as Exhibit 2 to Government's Motion, Dkt. 161-2).

opinions concerning hedonic damages); *see also Micron Chem. Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("The Advisory Committee note further counsels that 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain the appropriate means of attacking challenged evidence. *Dorn*, 397 F.3d at 1196 (quoting *Daubert*, 509 U.S. at 596). Accordingly, the rejection of expert testimony is the exception, not the rule. See Advisory Committee Notes to Fed. R. Evid. 702 (2000 Amendments).

## IV. THE SUPPLEMENTAL DISCLOSURES ARE SUFFICIENT

Before turning to the merits, it perhaps bears highlighting the extent to which the government is attempting to move the goalposts: our assignment on October 20th was, in the government's words, to provide some support for Mr. Read's opinions to show that they were not "whacky," and "to make sure he [Mr. Read] is not a tax protestor or something."[4]

Of course, the defense supplemental disclosures did far more than that: in an eight-page letter provided to the government two days before it was due, we provided detailed "bases and reasons" for the eight "bullet point" opinions the government and the Court had identified.[5] To appreciate how much of a pivot the government has made, and the seeming disingenuousness of its present objections, the eight bullets bear repeating. They are that:

- Foreign asset protection trusts and foreign non-grantor trusts are valid legal trust entities that reputable tax practitioners regularly establish for their clients;
- It is not uncommon to establish a trust in a foreign jurisdiction that has a lower income tax rate than the United States in contemplation of potential United States income tax reduction or deferral.
- There are no legal prohibitions against appointing a beneficiary to serve as the trust protector, which may include the power to remove and replace the trustee of a foreign trust. This arrangement does not necessarily affect the non-grantor status of the foreign

---

[4] We do not mean to suggest that *the Court* was setting the bar this low, only that the government was (or at least said it was).

[5] The defense supplemental disclosure ("Def. Supp. Disclosure") is attached as Exhibit 1 to the Government's Motion, Dkt. 161-1.

trust;

- Foreign (and domestic) trustees owe a fiduciary duty to ensure that trust assets are being used exclusively for the benefit of the trust's beneficiaries and to act within the restrictions and limitations set forth in the trust instrument;

- It is not uncommon for the beneficiary of a foreign trust to request that a trustee take certain actions or execute certain transactions, and it is generally up to the trustee to review those requests and decide whether to honor or reject them;

- It is also not uncommon that when an attorney identifies a trustee that is reliable and responsive, that the attorney continues to utilize the same trustee for other clients;

- When United States tax advantages and asset protection are the goals of the foreign trust, it is not uncommon for the trust to own one or more offshore corporations whereby shares of stock in the offshore corporations are held as assets of the trust; and

- It is not uncommon for a foreign trust to purchase an asset from a beneficiary, which then becomes an asset of the trust. Such sale does not necessarily cause the beneficiary to become a "grantor" of the foreign trust.

The government is apparently seeking to renege on its earlier agreement that these disclosures were permissible, so long as the "bases and reasons" for them were not "whacky" or the crazed rantings of a "tax protestor," as it now complains that the problem with the defense's supplemental disclosure is that it "does not contain cites to any of the facts or evidence in this case, or explain how Mr. Read's proposed testimony will assist the jury [to] 'determine a fact in issue.'"[6]

But those eight bullet points are meant to describe industry practice, based on Mr. Read's experience as a trust attorney, and the supplemental disclosure explains his bases and reasons for holding those opinions.  This testimony is highly relevant to a good faith defense. The government states, for example, in its recently filed Trial Memorandum, that Mr. Kepke "created and maintained an offshore trust structure for the purpose of hiding Smith's assets, income, and tax liabilities from the IRS." It is important, in responding to that charge, that Mr. Kepke be permitted

---

[6] Govt. Second Mot. to Exclude Defense Expert Rodney Read ("Mot."), at 3.

to introduce evidence of industry practice to rebut any inference that there is something inherently nefarious about foreign trusts in general, and foreign non-grantor trusts in particular. And Mr. Kepke's supplemental disclosure provides ample bases for that opinion, including that

> Mr. Read has worked on and reviewed trusts from numerous foreign and domestic jurisdictions, including trusts established under the laws of Belize, the Isle of Man, British Virgin Islands, Bahamas, Cayman Islands, Brazil, the Maldives, New Zealand, and Mexico, and also including companies and trusts established under the laws of Nevis. In addition to trusts that Mr. Read has personally assisted in establishing, or that he has assisted others in establishing, he spent considerable time earlier in his career reviewing trust documents from those various jurisdictions on behalf of large financial institution clients with institutional trust departments, including UBS and Credit Suisse. The purpose of Mr. Read's review was to determine the U.S. tax consequences of those trusts and whether they were operating in compliance with United States tax law. Mr. Read's duties included classifying trusts as either grantor or non-grantor trusts, which included analyzing the permissible roles of the various participants in those trusts, including attorneys, settlors, grantors, beneficiaries, and trust protectors, to evaluate their potential impact on U.S. federal and state tax treatment.

Def. Supp. Disclosure 2-3. The support for this opinion goes on to recite the

> statutes and regulations with which Mr. Read is readily familiar, and which he consults regularly to carry out his day-to-day duties as a federal tax, wealth management, and estate planning practitioner, and which provide the bases and reasons for his opinion that foreign asset protection and foreign non-grantor trusts are valid and legal trust entities (as well as providing support for the other opinions for which this response will later be incorporated by reference) . . .

*Id.* at 3–4.

The remaining disclosures are similarly robust. In support of the second bullet point, for example, Mr. Kepke explains that the bases and reasons for Mr. Read's opinion include that "this kind of work – namely, establishing trusts in foreign jurisdictions that have lower tax rates than the United States in an effort to reduce or defer U.S. income and estate taxes – represents the heartland of his legal practice." *Id.* at 4. This disclosure also names specific treatises on which Mr. Read regularly relies. If one of the reasons for requiring such disclosures is to permit the government to conduct an effective cross-examination, Mr. Kepke just handed them the names of five treatises they can plumb for material.

Courts within the Ninth Circuit commonly allow "industry standards" testimony when

supported by relevant experience. *See, e.g., Martin ex rel. Heckman v. Midwest Exp. Holdings,* 555 F.3d 806, 815–16 (9th Cir. 2009) (holding that "expert testimony of common industry practices . . . should be admitted so a factfinder might determine what reasonable care means" in a particular case).

**V.    MR. READ WILL NOT "LECTURE" OR INSTRUCT THE JURY ON THE LAW**

The government argues that, by providing the statutory and regulatory bases in support of Mr. Read's opinions, it somehow suggests "that Defendant proposes to have Mr. Read lecture the jury on his legal opinions regarding Title 26 of the United States Code, and the regulations promulgated thereunder[,]" thereby violating the "well-settled" rule that it is the province of the court, not an expert, to instruct the jury as to the law. Mot. at 3.

But all it takes is to scroll back up to the bullet points to see that Mr. Kepke does not intend for Mr. Read to do any such thing. Instead, he will explain to the jury what trust practitioners generally do. This will assist the jurors in determining "a fact in issue," namely, Mr. Kepke's good faith. Of course, Mr. Read cannot and will not opine *directly* on Mr. Kepke's good faith; that would not be permissible. But to provide the jury with industry background that would permit Mr. Kepke to argue reasonable doubt is a well-recognized use of expert testimony in a criminal case.

Judge Davila recently ruled on a similar argument in the Elizabeth Holmes Theranos case, in which (ironically) the government argued that its expert "is not prohibited from testifying about industry standards, of which he has extensive knowledge, merely because federal regulations form part of those standards" *United States v. Holmes,* No. 18-cr-258-EJD, 2021 WL 2035177, at *4 (N.D. Cal. May 21, 2021).  "The Ninth Circuit has permitted experts to testify about industry standards," Judge Davila held, even where the testimony "relie[s] in part on [the expert's] understanding of the requirements of . . . law." *Id.* (citing *Hangarter v. Provident Life & Accidnt Ins. Co.,* 373 F.3d 998, 1017 (9th Cir. 2004). As the Ninth Circuit stated in *Hangarter*, "[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Hangarter*, 373 F.3d 1017 (citations omitted); *see also King v. GEICO Indem. Co.,* 712 Fed.

Appx. 649 (9th Cir. 2017) ("Although it is well established that experts may not give opinions as to legal conclusions, experts may testify about industry standards.").

In sum, just because federal statutes and regulations form part of the bases and reasons for Mr. Read's proffered testimony does not mean that he is going to "lecture" the jury on the law or usurp the Court's function. This point should not only be obvious, but it is also one that the government has readily supported in other cases.

## VI.   CONCLUSION

Courts are rightly loath to deprive a defendant of an opportunity to present a defense; Mr. Kepke respectfully submits that this salutary inclination should prevail here, *especially* when the government has previously conceded that Mr. Read's opinions are not inherently improper. Ultimately, of course, it will be for the jurors to decide whether the government can prove willfulness beyond a reasonable doubt, but Mr. Kepke should be permitted to provide them with industry context to help them in doing so.

Respectfully submitted,

Dated: November 22, 2022

By: */s/ David R. Callaway*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
RICHARD M. STRASSBERG (*pro hac vice*)
*RStrassberg@goodwinlaw.com*
DAVID R. CALLAWAY (SBN 121782)
*DCallaway@goodwinlaw.com*
SYLVIA R. EWALD (SBN 300267)
*SEwald@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant:
CARLOS E. KEPKE

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **November 22, 2022**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **November 22, 2022**.

                                            */s/ David R. Callaway*
                                            GRANT P. FONDO
                                            RICHARD M. STRASSBERG
                                            DAVID R. CALLAWAY