Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
  vs.                          )  No. CR 21-0155 JD
                               )
CARLOS KEPKE,                  )
                               )  San Francisco, California
            Defendant.         )  Monday
                               )  November 21, 2022
_____)  1:30 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Government:          DEPARTMENT OF JUSTICE
                         Tax Division
                         150 M Street NW
                         Room 2.208
                         Washington, DC 20004
                  BY:    **COREY J. SMITH, ESQ.**
                         **BORIS BOURGET, ESQ.**


                         STEPHANIE M. HINDS
                         United States Attorney
                         Northern District of California
                         150 Almaden Boulevard.
                         Suite 900
                         San Jose, California 95113
                  BY:    **MICHAEL J. PITMAN**
                         **ASSISTANT UNITED STATES ATTORNEY**


                (APPEARANCES CONTINUED ON FOLLOWING PAGE)


*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
              *Official Reporter - US District Court*
              *Computerized Transcription By Eclipse*

**APPEARANCES:    (CONTINUED)**

**For Defendant:**                  GOODWIN PROCTER LLP
                                    601 Marshall Street
                                    Redwood City, California 94063
                            BY:  **GRANT P. FONDO, ESQ.**
                                 **DAVID R. CALLAWAY, ESQ.**


                                    GOODWIN PROCTER LLP
                                    The New York Times Building
                                    620 Eighth Avenue
                                    New York, New York 10018
                            BY:  **RICHARD M. STRASSBERG, ESQ.**


                                    GOODWIN PROCTER LLP
                                    520 Broadway
                                    Suite 500
                                    Santa Monica, California 90401
                            BY:  **SYLVIA R. EWALD, ESQ.**

                                        ----

<u>**Monday - November 21, 2022**</u>                    <u>**10:37 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---oOo---**

**THE CLERK:**  Calling Criminal 21-155, United States of America versus Carlos E. Kepke.

Counsel, state your appearances for the record.

**MR. SMITH:**  Good afternoon, Your Honor.  Cory Smith on behalf of the United States.  With me is Michael Pitman and Boris Bourget.

**MR. FONDO:**  Good afternoon, Your Honor.  Grant Fondo for Mr. Kepke.  Mr. Kepke is here appearing out of custody.

With me are my colleagues Rich Strassberg, Dave Callaway and Sylvia Ewald.

**THE COURT:**  Okay.  If you're fully immunized, you can take your masks off.  It's up to you, but you're certainly welcome to take them off.  You know, when you talk, you have to be up at the podium with the microphone or we will not have a clear record.

Okay.  Let's begin.  Here's what we're going to do.  I'm going to go through all the pretrial things first.  Then we'll take a little break.  And we will talk off the record about the jury questionnaires.  Just go through them.  We'll just have a little chat.  And then we will do the hearing that I set for today.  Okay?

By the way, I understand things happen, but don't -- get

```
 1  out of the practice of dribbling things in.  Okay?  There was a
 2  deadline for all the Motions in Limine.  I got another one
 3  yesterday very late.  So don't -- just meet the deadlines.
 4  It's too hard for me to be useful to you when things come out
 5  of the transom that are out of order.  Okay?
 6       All right.  So now, here are the remaining -- we did some
 7  Motions in Limine last time.  Let's go through the current
 8  ones.
 9       So for the Government's Motion in Limine No. 121, I gave a
10  preliminary ruling on statements with respect to Brockman
11  earlier.  The United States has now specified which statements
12  it intends or would like to introduce.
13       I am fine with this statement.
14            "Smith will testify that it was his understanding
15            that defendant had previously created an offshore
16            trust for Brockman, which was managed by Brockman for
17            Tamine."
18       That's fine.  Okay.  That's table setting.  I don't have a
19  problem with that.  That's consistent with my prior ruling.
20       I'm also fine with this statement.
21            "In or about December 1999 when Smith and
22            Brockman created Vista, Brockman instructed Smith to
23            retain defendant's services to create an offshore
24            structure."
25       Not similar.  Okay?  "An offshore structure."  That's
```

```
 1    fine.  I don't want analogies, similarities or anything else.
 2         Government, you may say "an offshore structure."
 3         The next sentence:
 4              "According to Smith, Brockman not only wanted
 5         Smith and defendant to create the Excelsior/Flash
 6         offshore structure, Brockman wanted the
 7         Excelsior/Flash structure created in a jurisdiction
 8         that would avoid scrutiny by the IRS."
 9         That's fine, too.
10         Okay?  So that's granted basically in totality except for
11    the deletion of the word "similar."
12         Okay.  Government's Motion in Limine, this is Docket
13    No. 122.  With respect to the -- okay.  This is really Kepke's
14    request for additional documents; isn't that right, Mr. Fondo?
15              MR. FONDO:  Sorry, Your Honor.
16              THE COURT:  This is the Motion in Limine with respect
17    to witness Robert Smith's NPA.  You didn't get what you wanted
18    to get?
19              MR. STRASSBERG:  Yes, Your Honor.  This is Richard
20    Strassberg for the defense to address that one.
21         Once again, Your Honor, yes.
22              THE COURT:  Okay.  So I'm looking at what's been
23    marked as Exhibit D.  It's Docket No. 150-5.  This is the --
24    well, it's titled "The Privilege Log."  I'll just call it the
25    log.
```

```
 1        You want these materials; is that right?

 2            MR. STRASSBERG:  Well, Your Honor, Your Honor had

 3   ordered the Government to provide on a log the materials they

 4   used to create that August letter.  And what we have asked, and

 5   what we ask for in the supplemental filing, is that they

 6   provide those materials fully.  They provided them in heavily

 7   redacted form.

 8        These are two presentations from Smith's lawyers as well

 9   as a letter from Smith's lawyers explaining why he's innocent.

10   So we asked that they provide them in full unredacted form.

11        The redactions on the privilege log just say, you know, "a

12   legal discussion" or "plea negotiations" or something like.

13            THE COURT:  But this is what you want.  You wanted

14   the materials --

15            MR. STRASSBERG:  Well, we want -- on the letter that

16   they wrote they combined the instances when he was, through his

17   lawyers, saying "I'm innocent" from when the lawyers came in

18   and said, "Okay.  If we can get a deal, we'll tell you how we

19   can cooperate."

20        So we just want them --

21            THE COURT:  Let me just jump in.  All right.  We have

22   a lot to work with.  You know this a lot better than I do.  I'm

23   still catching up.

24            MR. STRASSBERG:  Yeah.

25            THE COURT:  I have a very simple question.  You just
```

1  want the materials in 150-5, Exhibit D; right?

2          **MR. STRASSBERG:**  I would say, Judge, there are three

3  things we want.

4          One is those materials unredacted.

5          The second is for them to follow Your Honor's instructions

6  and do a proper privilege log to list all the documents upon

7  which they relied to do the August letter, including any notes

8  or memos that reflect the oral statements the lawyers made.

9  The lawyers come with a PowerPoint.  They have the PowerPoint.

10  Yes, we want that.

11          But also the lawyers talk about the PowerPoint.  And it

12  appears from the letter summarizing what was said that they

13  said things that are not in the presentation, in the

14  PowerPoint, so we're asking for them consistent with Your

15  Honor's order.

16          We really want the notes, but we're only asking for them

17  to log the notes so we know -- as Your Honor said, let's all

18  know what exists so then we can decide if it's appropriate to

19  turn over.  We submit it is appropriate, but, frankly, at this

20  point we're just saying follow the Court's instructions from a

21  month ago.

22          **THE COURT:**  Okay.  Government.

23          **MR. STRASSBERG:**  And the third, Your Honor, just so

24  you know, is just that part about the dates for the letter.

25          **THE COURT:**  The dates I'm denying.  They don't --

1    that's too much detail.  So that one is out.  Okay.  So I'm not

2    going to do that.

3         This privilege log, I'm putting "privilege" in air quotes

4    because it's not a privilege log.  There are no privileges

5    asserted.  Why aren't you just turning all this over in

6    unredacted form?

7              **MR. SMITH:**  Well, consistent with the Court's prior

8    ruling, we were ordered to redact these three presentations,

9    which we did.  What we redacted were --

10             **THE COURT:**  No, no, no.  Let me just step in.  I

11   didn't order you to do anything other than produce materials

12   and if you wanted to redact something, tell me why.  I didn't

13   order you to do any redactions.

14        So these are all on you.  And looking at your log,

15   these -- none of these look to me like any grounds for doing a

16   redaction.  All right?  Just saying non-factual attorney

17   argument, fine.  That's not a basis for a redaction.

18        So tell -- look, I got your papers.  Just tell me -- use

19   your last -- last call.  Why should you not have to provide

20   this redacted material?

21             **MR. SMITH:**  Because these are plea negotiations

22   between the Government and Mr. Smith's attorneys.  And these --

23   the redacted portions include legal conclusions, legal opinions

24   and back-and-forth between the --

25             **THE COURT:**  There is no privilege because these are,

 1    by definition, third parties having a discussion.

 2         Look, all things being equal, the defendant gets to see

 3    things that may be potentially exculpatory.  You know that.

 4         So I'm not going to -- I just don't see any basis for

 5    doing this.  You want to do it on a *attorneys' eyes only* basis,

 6    that's -- we could start with that and then if there's

 7    something you want to get in at trial, you could make a proffer

 8    and I'll take a look at.  But these are not a basis for

 9    withholding that information.  So you need to produce

10    everything in Exhibit D unredacted and produce that.

11         Now, I don't understand, what is this other stuff that

12    your colleague would like?

13              **MR. SMITH:**  I'm not sure what we're referring to.

14    What other stuff?

15              **THE COURT:**  What's No. 2 on your list?

16              **MR. STRASSBERG:**  No. 2 is just to the extent they

17    have notes of oral statements that were made, in addition to

18    the written ones, that we just want them to identify those

19    documents and then --

20              **THE COURT:**  You --

21              **MR. STRASSBERG:**  -- we want them to produce them.

22              **THE COURT:**  You don't know if they have any notes.

23    You're just guessing.

24              **MR. STRASSBERG:**  Well, they have told us that they

25    will not log any notes they have.  They have not told us they

1   have notes, though, to be fair.  They have been very careful.

2   But they've told us they won't log them when we asked them to

3   log them.

4          THE COURT:  Okay.  No. 1 is granted.

5      No. 2 is denied.

6      No. 3 is denied.

7      Now, you need to get them soon because, you know, Monday

8   is a week from today.

9          MR. SMITH:  Yes, Your Honor we can.  We have these

10  materials.

11         THE COURT:  All right.  Now, let's go to Motion in

12  Limine number 123 on the docket, and this is about the

13  statements attributable to the defendant.

14     Okay.  Well, these are all written in these curious double

15  negative ways.  But you on the -- on the prosecution side are

16  perfectly free to use the defendant's statements.  Okay?  They

17  are party admissions, so you don't have any restraints.

18     I gather you on the defense side may have an email or

19  something written by the defendant and you want to get that in.

20  You don't have the same party admission vehicle because he's on

21  your team.

22         And the answer is, I'm going to provisionally deny that.

23  However, if there's some special reason that you want to bring

24  to my attention during trial, I will look at it.  But as a rule

25  of course you don't get to do that.

1          **MR. STRASSBERG:**  And, Your Honor, Your Honor, of

2    course, is correct in your ruling on the law.

3          And all our point was is that there are many exceptions to

4    hearsay in a case like this.  For example, like, going to his

5    state of mind; not being offered for the truth, but for the

6    state of mind, as well as verbal acts in a conspiracy case.

7    That is, often the evidence of agreement or lack of agreement

8    will be played out in the emails, how people communicated.

9          So those are the points we were making in the application

10   that some blanket prohibition we would submit to Your Honor,

11   and we did submit in our papers, is inappropriate.  But, of

12   course, we understand the Rules of Evidence and we understand

13   Your Honor is going to apply them.

14         **THE COURT:**  So the door is not closed, but you

15   have -- it's going to be an uphill battle.  So you're just

16   going to have to tell me advance.  And, please, tell me in

17   advance.  Okay?  Don't do it on the stand.

18         As a general rule, it is in all my complex civil cases, if

19   there's something controversial, make a proffer at least one

20   court day before.  So your colleagues, your opponents, know

21   what you're talking about and, more importantly, I know what

22   you're talking about.  All right?  So don't -- please don't

23   wait while you're just about to hand an exhibit in front of the

24   jury to a witness and then say, you know:  This is Mr. Kepke,

25   but it's admissible because...  I need more time to think about

1   it.  Okay?

2       So if you plan to try to work your way through that door,

3   let me have some advance notice.

4           **MR. STRASSBERG:**  Understood, Your Honor.

5       Your Honor, just so that we don't burden you with things

6   you don't want to be burdened with, to make sure I fully

7   understand.  If there is a witness on the stand who has emails

8   with Mr. Kepke and that witness, for example Mr. Smith, for

9   example, I do anticipate there would be emails.  I don't know

10  fully what the Government is going to do, but I imagine there

11  would be emails with Mr. Smith that would be going to

12  Mr. Smith's bias, would be going to Mr. Kepke's intent, but not

13  for the truth of the matters being asserted.

14      There may be more than a few of those, Your Honor.  And

15  I'm just -- but the excepts are all similar, and I don't want

16  to burden Your Honor with a whole -- you know, a whole slew of

17  particular emails which might take a lot of time, unless Your

18  Honor wants us to.  So I'm just trying to imagine how to go

19  about presenting that to you.

20          **THE COURT:**  I can't help you because I don't know

21  what it's going to look like.  All right?

22      So here's the rule.  Government can go to town on anything

23  your client has said.  You can't, unless you tell me in advance

24  there's some good reason for it.

25          **MR. STRASSBERG:**  Understood, Your Honor.  We will

 1  work around it.  Thank you, Your Honor.

 2          **MR. SMITH:**  If I may, Your Honor.

 3          **THE COURT:**  Yes.

 4          **MR. SMITH:**  122, there is a Motion in Limine by the

 5  Government regarding those materials that you've ordered us to

 6  provide to the defense.  We've moved in limine to exclude them.

 7      The defense apparently wants to use the statements of

 8  Smith's attorneys to cross examine Smith, and we have filed a

 9  motion to exclude that.  That's 122.

10          **THE COURT:**  Okay.

11          **MR. SMITH:**  Sorry -- yeah, 122.

12          **THE COURT:**  A portion of 122.

13      Yes.

14          **MR. STRASSBERG:**  Yes, Your Honor.

15      As we've indicated in our reply, statements that Smith

16  authorizes his attorneys to make are proper material for cross

17  examination.

18          **THE COURT:**  Here is what we are going to have to do.

19  There's got to be a foundation laid.  I can't do that in

20  advance.  Okay?

21      So if you want to -- if you want to try to get something

22  in on the grounds that a speaker has adopted it or authorized

23  it, you have to lay a foundation first.

24          **MR. STRASSBERG:**  Understood, Your Honor.

25          **THE COURT:**  This will have to be case by case.  Now,

```
 1    if you're planning to do a slew of these, tell me in advance in
 2    a proffer, okay, so I can -- I have a chance to work through
 3    it.  Okay.
 4         All right.  Government's Motion in Limine number -- it's
 5    Docket No. 125.  We're back to the undercover agents again.  I
 6    gave a -- a guideline at the last go-around about what would
 7    come in and now there are, it looks like, a dozen statements.
 8    Let's just go through them.
 9         Government wants to admit -- these are recordings; right?
10    Audio recordings?
11              MR. PITMAN:  They are recorded, Your Honor, yes.
12              THE COURT:  Okay.  So your plan would be to play
13    these; is that right?
14              MR. PITMAN:  Correct.  Play the audio for the jury.
15              THE COURT:  With the agent on the stand or how is
16    that going to work?
17              MR. PITTMAN:  That was our expectation, was that we
18    would call the witness just to lay the foundation, to describe
19    the speakers.
20              THE COURT:  Okay.
21              MR. PITMAN:  Then play the tapes and probably have a
22    transcript (indicating).
23              THE COURT:  Okay.  But that person would be there,
24    you know, for cross examination about the recording; right?
25              MR. PITTMAN:  Exactly.
```

1     **THE COURT:**  Okay.  Good.

2         Okay.  So looking at the statements in Docket No. 123, the

3     first one, designation number one, is denied.

4         Designation number two is admitted.

5         Designation number three is admitted.

6         Designation number four, I mean, the trustee just says do

7     what they are told to do.  I mean, what does that -- I don't

8     know what that goes to.

9     **MR. PITTMAN:**  Thanks, Your Honor.

10        Yeah.  So we tried to focus in on particular interactions

11    that are going to illuminate the facts being presented to the

12    undercover or, I guess I should say, the advice being presented

13    to the undercover that go to, you know, particular aspects of

14    the structure that Mr. Kepke recommended.

15        One of those particular aspects is the fact that there is

16    a trustee assigned to work on the trust, and that that trustee

17    is a nominee.  So that trustee, to the outside world, looks

18    like what we think of as a trustee, someone who eventually

19    takes control of an asset and makes determinations about

20    whether or not things are going to be purchased.

21    **THE COURT:**  Okay.  But for that particular statement

22    though, number three, I just -- what's deceptive about it?

23        Are you saying this goes to the defendant's state of mind?

24    I mean, what is it going to?

25    **MR. PITTMAN:**  Right.  So it's going to the fact

1    that -- and there are several along the same lines, Your Honor,

2    that just go to the fact -- go to demonstrate the fact that the

3    defendant is aware that the trustee has no actual function.

4    That's the purpose of designation number four.

5            THE COURT:  Here is what I'm going to do.  I'm going

6    do provisionally deny designations four, five and six.  It may

7    be, as I listen to the evidence, they make more sense to me,

8    but right now I'm just not seeing it.

9        Number seven, eight and nine are denied.

10       Number ten is admitted.

11       Number 11 and 12 are also admitted.

12       So you can do those.

13       I just want to make sure though that the ones that are

14   admitted, you will have an agent here who can answer questions

15   on cross examination; is that right?

16           MR. PITTMAN:  We're totally prepared to do that, Your

17   Honor.

18           THE COURT:  All right.  Okay.  That takes care of the

19   Government's Motions in Limine.

20       Now --

21           MR. FONDO:  Your Honor, may I be heard on those,

22   please?

23           THE COURT:  I'm not going to backtrack.  I got your

24   briefs.  Everything was very well laid out.  So if you're just

25   going to argue with my tentatives, the answer is no.  Okay?

1          **MR. FONDO:**  Well, that is what I was going to argue,

2     Your Honor.

3          **THE COURT:**  All right.  Well, we don't need to do

4     that.  Everything was very thoroughly briefed.  This is our

5     second visit.  I'm getting much more in command of what's

6     happening, and I'm comfortable with where we are.

7          Now, if things change at trial, you can certainly point

8     that out to me, all right, if there are developments at trial.

9     These are Motions in Limine.  So once the live show starts,

10    things can change and you're certainly free to ask me to take

11    another look.  I don't have any problem with that.

12         Now, that is not a blanket invitation to pop up constantly

13    and challenge my Motions in Limine rulings, but if there's good

14    reasons, use your discretion in that.  If there's good reason,

15    then I'm happy to hear it.

16         Okay.  Kepke Motion in Limine number -- it's Docket

17    No. 141 to exclude -- I'm going to get the pronunciation wrong,

18    but it looks like Evatt Tamine.

19         And I understand the Government has no interest in doing

20    anything with Evatt Tamine; is that right?

21         **MR. SMITH:**  That's correct, Your Honor.  We don't

22    plan on calling this person.

23         **THE COURT:**  Okay.  Does that take care of it, Mr.

24    Fondo?

25         **MR. FONDO:**  Your Honor, partially.  So the Government

1    has identified in their Exhibit List three exhibits that relate

2    to Mr. Tamine.  We believe that those should be excluded.

3         Likewise, they have -- they continue to revise their

4    co-conspirator list relating to statements.  And so on

5    November 5th they supplemented it and added a bunch more since

6    our last hearing about who is going to be a co-conspirator, but

7    they have never identified under local Rule 16-1(c)(4), they

8    have never identified those statements.

9         And so, Your Honor, we would seek a ruling that they are

10   not allowed to use the 801(d)(2)(E) exception to admit any

11   co-conspirator statements except for Brockman, which you

12   previously identified.

13             **MR. SMITH:**  That's not a problem, Your Honor.

14             **THE COURT:**  Okay.  See that?  We've got it worked

15   out.  Great, done.  All right.  Granted by agreement.

16        All right.  And then -- oh, this is the thing filed last

17   night for Rodney -- is it Rodney, Rodney Read?

18             **MR. SMITH:**  Yes, Your Honor.

19             **THE COURT:**  You all filed that.

20        All right.  I don't think Kepke team has had a chance to

21   respond to that yet.  Have you?  You have not.

22             **MR. CALLAWAY:**  We have not, Your Honor.  We did -- it

23   was filed, like, 6:30 last night.

24             **THE COURT:**  All right.  Well, how do you want to

25   handle that?

```
 1              MR. CALLAWAY:  Your Honor, I would like to handle it
 2   by initially protesting that it is improper.  It was brought in
 3   violation of the local rules.  It does not give us -- it's set
 4   for the morning --
 5              THE COURT:  I already reprimanded everybody on that.
 6   It's here and let's just deal with it.
 7         Do you want to answer by tomorrow morning, or what do you
 8   want to do?
 9              MR. CALLAWAY:  Well, Your Honor, we would -- I can
10   argue it to some degree now just because it's a bit of a
11   rehash.
12              THE COURT:  I don't want to do a piecemeal thing.  Do
13   you want to wait and file something or do you -- look, here's
14   your choice.  You can do it all now or you can file something
15   tomorrow and I'll just do it on the papers.
16              MR. CALLAWAY:  Your Honor, I don't -- so we would
17   have until tomorrow to file a response?
18              THE COURT:  Well, it's Thanksgiving weekend and the
19   trial starts a week from Monday.  Time is short.
20         You want to do Wednesday morning?  I mean, it's not that
21   complicated.  We talked about it earlier.  So do you want to do
22   it Wednesday morning?
23         I mean, I've already given you -- I already did something
24   with this person earlier.  Isn't this the person that you all
25   on the defense side were too late in tendering the opinions?
```

1    That's the person; right?

2            **MR. SMITH:**  That's correct, Your Honor.

3            **MR. CALLAWAY:**  This is the person --

4            **THE COURT:**  And the Government, in my view, very

5    graciously said -- even though it was untimely and I would have

6    excluded him, they give you six topic areas to go on.

7        So what's the hold-up?  You should be able to fire

8    something out pretty quickly.

9            **MR. CALLAWAY:**  Well, Your Honor, I would submit

10   that's where the grace stopped.  The Court identified eight

11   areas that the Government had conceded in their argument that

12   if we properly substantiated Mr. Read should be allowed to

13   testify on.  The Court ordered us to come back by October --

14           **THE COURT:**  I don't agree with that premise.  I don't

15   agree that they agreed they had been properly -- they weren't.

16   I ruled that they weren't.  The Government very kindly said:

17   It's okay.  You can go ahead anyway.

18       So don't -- please don't put things in the record that are

19   not true.  Nobody ever said that those opinions were adequately

20   disclosed.  I certainly didn't.

21       Just tell me --

22           **MR. CALLAWAY:**  Your Honor, I think the Court misheard

23   me --

24           **THE COURT:**  One at a time.

25           **MR. CALLAWAY:**  I didn't say that --

```
 1              THE COURT:  Let me go first.  Please.  We have a lot
 2    to do.
 3         What do you want to do?  Do you want to argue it now and
 4    submit it or do you want to file the brief sometime tomorrow?
 5         (Brief pause.)
 6              MR. CALLAWAY:  Your Honor, I think we need to file a
 7    brief.  I think we need -- the Court needs to see the papers
 8    that were submitted and hear from us on the timing.  And we
 9    would ask that it be due Wednesday and not tomorrow.
10              THE COURT:  Make sure whatever you file is consistent
11    with what I announced in my minute order at Docket No. 104.
12    Just get it in by 3:00 o'clock tomorrow.  Okay?  It shouldn't
13    be that hard.
14         Okay.  I think that's it for Motions in Limine.
15              MR. SMITH:  If your Honor, please.
16              THE COURT:  Yes.
17              MR. SMITH:  If I could just go back just to the
18    defense Motion in Limine regarding the co-conspirators and
19    Evatt Tamine.
20              THE COURT:  Which one is that?  What's the number,
21    docket number?
22              MR. SMITH:  141.
23              THE COURT:  Evatt Tamine.
24              MR. SMITH:  Right.  Nothing about Evatt Tamine, but
25    counsel referenced our earlier filing where we had listed a
```

1  whole bunch of co-conspirators, and then we superseded that

2  with another list of what we believe to be co-conspirators,

3  which narrowed it.

4      So I just want to make sure the record is clear that in

5  that earlier August 15th list we don't consider all those

6  people co-conspirators.

7      The co-conspirators we considered -- the people we

8  considered to be co-conspirators would be obviously Robert

9  Smith, Evatt Tamine and Robert Brockman.  There are other

10  people on that list that we don't consider co-conspirators.

11  That was an earlier list that's been superseded by later

12  filings.  I just don't want to bring any confusion.

13      **MR. FONDO:**  Your Honor, I believe in the Government's

14  trial memorandum you identified those additional people as

15  co-conspirators.

16      **THE COURT:**  Let me -- first of all, just talk to me.

17  And, two, you two work this out.  I don't really know what

18  you're talking about.  Okay?

19      **MR. SMITH:**  Okay.

20      **THE COURT:**  So you two work it out.  If there is some

21  problem, then you can come to me.  Okay?

22      All right.

23      **MR. FONDO:**  So if the representation is that those

24  are the three co-conspirators, then we're fine.

25      **THE COURT:**  I'm not taking any representations.  I

1  don't know what you're talking about.  So you two work it out.

2  If there's a problem, I'm happy to help you out with it later.

3       Okay.  Now, that's it for the Motions in Limine.

4       All right.  So I'll do the other one tomorrow or

5  Wednesday.

6       All right.  I will -- let's talk about our -- just a

7  couple of sort of global things.  Rather surprisingly, there is

8  a dispute about whether Mr. Kepke will be called "the

9  defendant" or "Mr. Kepke."  You choose.  Okay?  Both are fine.

10  I don't have a problem with it.  It's very typical in a

11  criminal case.

12       Oh, the preliminary Jury Instructions you filed are fine.

13  I'm going to do a little bit of fiddling, like, put some

14  numbers in and, you know, one or two other things.  But those

15  are adapted from my prior cases and I will give those.

16       I'm not ready to do the final Jury Instructions.  I have

17  to say, Government, I don't really understand the aiding and

18  abetting theory.  It doesn't make any sense to me.  Are you

19  really planning to -- do you want to argue that?  I think it's

20  in the -- here, let me just make sure we're on the same page

21  here.

22       It is -- Adam?

23       (Brief pause.)

24       **THE COURT:**  Okay, okay.  Just for convenience, I'm

25  going to look at Docket No. 127.  That's your joint final set.

1          Government, the ones I -- I'm not seeing how your proposed

2     instruction No. 20, 21 and 25 -- I think it's 25.  Yes, 25 --

3     for aiding and abetting, I don't see how they fit the case.

4     Mr. Kepke is a tax preparer or a counselor.  So how can he be

5     aiding and abetting Robert Smith?

6          **MR. PITMAN:**  So I think with respect to -- I agree

7     with the Court that 20, the aiding and abetting under 18 U.S.C.

8     Section 2(a) is -- is not probably a great fit for the case.

9          But I do think that instruction No. 21, which is aiding

10    and abetting under 18 United States Code Section 2(b) is a good

11    fit.  And the reason --

12         **THE COURT:**  Let's just -- one step at a time.

13         So you're going to withdraw 20 then, proposed instruction

14    with respect to aiding and abetting under 18 U.S.C. Section

15    2(a).

16         **MR. PITTMAN:**  Well, the problem -- so there is an

17    interplay here that depending on how -- so it's hard for me to

18    say without knowing how the Court is going to rule on other

19    instructions.

20         **THE COURT:**  How about this?  Let's make sure we're on

21    the same page.

22         Who's aiding and abetting whom?  What is the theory on

23    aiding and abetting?

24         **MR. PITTMAN:**  So there's -- the nature of the statute

25    itself by the crime that he's charged with, it incorporates

1  some aiding and abetting concepts.

2      But what -- the overall picture that the jury needs to

3  understand is that Mr. Kepke --

4          **THE COURT:**  Let's just answer my question.

5          **MR. PITTMAN:**  Yes, Your Honor.

6          **THE COURT:**  We're going back to -- this is like

7  blocks when you're a kid.  Okay?  I want the foundational

8  block.

9      Who is aiding and abetting whom in this, for purposes of

10  these Jury Instructions?

11         **MR. PITTMAN:**  Mr. Kepke is aiding and abetting

12  Mr. Smith.

13         **THE COURT:**  Now, how is that possible?  Now, he's --

14  I'm not saying it's not, but you just need to tell me.

15     So he's charged under 26 U.S.C. 7206 Section 2; right?

16  That's the main charge against the defendant, in the conspiracy

17  charge.

18     And Section 2 says:

19         "Someone who willfully aids or assists in the

20         preparation or presentation of" -- I'm just going to

21         shorthand it here -- "false or fraudulent tax

22         returns."

23     All right?  So now you just said -- so Mr. Kepke was -- in

24  the aiding and abetting instructions that we're talking about,

25  it's Mr. Kepke providing aiding and abetting to Mr. Smith, but

 1    that -- if you -- so he's aiding and abetting someone whose

 2    aiding and assisting.  That's the problem I'm having.

 3        It just does not work analytically for me.  And I don't

 4    see any way that it can work analytically, so.

 5            MR. PITTMAN:  The problem is that there's going to

 6    be -- at trial there's not going to be any evidence that

 7    Mr. Kepke was involved in preparing or providing information to

 8    the preparers of Mr. Smith's tax returns.

 9        So Mr. Smith's tax returns were prepared by a firm in

10    San Francisco.  Those tax returns were false.  But Mr. Kepke

11    was not involved in preparing those returns or in providing

12    information to the people who prepared those returns.

13            THE COURT:  That may be, but this is how you charged

14    him under Section 2.  And I don't see how aiding and abetting

15    the person who actually paid the taxes works with that language

16    I just read under Section 2.  That's all I'm saying.

17            MR. PITTMAN:  So there's an attenuation here because

18    there is an intermediary essentially.

19        So Mr. Kepke is not providing information to the return

20    preparers and he's not preparing the returns himself.

21    Mr. Smith is doing those things.

22        But Mr. Smith is -- so in a way you could say Mr. Smith is

23    violating the statute because he's providing information to the

24    return preparer.  So he's aiding and assisting in the

25    preparation of his own false returns.  And that's absolutely a

1    valid theory.

2          THE COURT:  That's -- it's becoming this infinite

3    loop where Mr. Kepke is assisting Mr. Smith who is assisting

4    Mr. Kepke.  I don't -- it's not working for me.

5          MR. PITTMAN:  For instance, if Mr. Kepke was aware,

6    right, that he had provided certain information to Mr. Smith

7    and then Mr. Smith gave that information to the return

8    preparers and they prepared false returns, has Mr. Kepke

9    violated the statute?  And the answer is yes, he has.

10         And it doesn't even matter if Mr. Smith knew that what he

11   was doing was a crime.  So that's -- that's the underlying

12   theory for these interlocking --

13         THE COURT:  I just don't know how that makes

14   Mr. Kepke an aider and abettor.  I just don't see that.

15         MR. PITTMAN:  So if he calls Mr. Smith, for instance,

16   to do something that Mr. Kepke knew was wrong, but Mr. Smith

17   did not, then Mr. Kepke has violated the statute.

18         THE COURT:  Defendant?

19         MR. STRASSBERG:  Your Honor, that's a great -- you

20   know, all of this is mind scratching.

21         As Your Honor has pointed out, I think very well, you

22   can't aid and abet an aiding and abetting charge.  It's just --

23   logically it can't be done.

24         But his last point is exactly why it's inappropriate in

25   this case.  Their whole theory is that Smith, who by the way

1   signed the tax returns, knew he was committing tax fraud.

2       So what they are saying is a scenario where maybe he

3   didn't know could conceivably have some bearing on this

4   situation.  I still think logically it wouldn't.  But that's

5   not our case.  It's not even close.

6       So as Your Honor -- as we've highlighted in our draft Jury

7   Instruction, we think for the reasons you've articulated very

8   well, that it would be inappropriate to have multiple

9   instructions.  The Nature of the Charge is the appropriate

10  instruction on this point.

11          **THE COURT:**  All right.  I'm going to exclude them.

12  Now, if something happens at trial -- you were speaking,

13  Mr. Pitman, in hypotheticals.  I understand that.  I'm not

14  faulting you for it.  But if something happens at trial that

15  puts a finer point on this, we can revisit the issue.

16      But I think at this point, I think analytically and as a

17  matter of statutory interpretation, it's just -- they are not

18  harmonious.  Aiding and abetting is not harmonious with the

19  charge against the defendant.

20      So I'm going to exclude it; but if something dramatic

21  happens, you can certainly revisit it at trial.

22      So I'll post the final preliminary Jury Instructions

23  Wednesday, hopefully before noon, but we'll see.

24      I will go through the voir dire and put that up on

25  Wednesday, too.

1    I think that's it for the preliminary Jury Instructions

2    and the voir dire, voir dire.

3    We're just going to have a charging conference a couple

4    days in when we -- it would actually be nicer to see some of

5    the evidence anyway, so we'll do a charging -- I don't like

6    doing that.  I prefer doing it before, but in this case I think

7    we'll just have to do it a little bit later.  Okay.  And that

8    will include the verdict form as well.

9    All right.  Let's go into our nuts and bolts on how the

10   trial is going to happen.

11   Starting Monday, as you know, I've asked the jury to

12   budget about 14 court days for that.  We have a 120 people.  We

13   have a couple more responses.  I'll pass them out to you when

14   we get to that portion of the program.

15   I'm going to seat 16 jurors.  They are going to use

16   Courtroom 10 for extra space.  It's an unused courtroom

17   currently so we'll put them in there.  You will never go in or

18   out of there for any reason at any time, but that's where they

19   will be so they can have some sense of spaciousness, and that's

20   mainly for COVID.

21   Let's talk about COVID protocols.  I am fine as we're

22   doing today.  If you are fully vaccinated, you do not have to

23   wear -- and you're not ill, you're not symptomatic in any way,

24   you're perfectly free to not wear a mask while you're here.

25   Witnesses will never wear a mask.  It's important for the jury

1    to see facial expressions.

2         If you have a witness who is not vaccinated, tell me in

3    advance.  I can put up some plastic things that we do on those

4    rare occasions when that's case.

5         Now, both sides -- who is in charge on the Government's

6    side?  Mr. Pitman?

7              **MR. SMITH:**  That would be me, Your Honor.

8              **THE COURT:**  Okay.  Mr. Smith.

9              **MR. SMITH:**  That's right.

10             **THE COURT:**  And who's in charge on the defense side?

11             **MR. FONDO:**  I am, Your Honor.

12             **THE COURT:**  All right.  Mr. Smith and Mr. Fondo, you

13   both are responsible to me for ensuring that anybody on your

14   side of the case who comes into the courtroom, I don't care who

15   they are, lawyer, non-lawyer, witness, expert, anybody that you

16   are tied to meets what I just said.  They must be fully

17   vaccinated or they must wear a mask, fully vaccinated and

18   asymptomatic or they must wear a mask.

19        If they are unvaccinated, you must tell me before anybody

20   has a speaking role.  Okay?  If it's someone who doesn't have a

21   speaking role and they wear a mask, I don't need to know about

22   it.  But anybody who is up on the stand, I need to know.

23        Now, we're still trying to make people feel comfortable

24   about COVID.  We haven't changed our protocols yet, so this is

25   a little out-of-date, but we're still probably going to stagger

1   people.  That means that first row back there will have jurors

2   sitting there in a gallery.  I've got to try to put some tables

3   up, right there on the first bench.

4       So you on the Government's side, you need to make sure

5   they cannot see any screens or anything else.  Okay?  And I

6   will walk down there and take a look with you before we start,

7   but they cannot have any access to screens, notes, documents,

8   anything else that, you know, would be inappropriate for them

9   to see.  So that's -- that is our COVID protocol.

10      I am still going to have trial from 9:00 to 4:00 so we can

11  get this thing done before the end of the year.  And we'll take

12  a lunch break.

13          **MR. FONDO:**  Your Honor --

14          **THE COURT:**  Typically -- yeah.

15          **MR. FONDO:**  Sorry.  Mr. Kepke has a pretty

16  significant back issue, Your Honor, and going 9:00 to 4:00 and

17  sitting like that, even with breaks, would be pretty

18  challenging for him, Your Honor.

19      We had originally spoken about a 9:00 to 2:00 schedule,

20  and I think --

21          **THE COURT:**  Did I say 9:00 to 2:00 last time?

22          **MR. FONDO:**  Yes, you did, Your Honor.  And it's in

23  the calendar as 9:00 to 2:00.

24          **THE COURT:**  I thought I said 9:00 to 2:00.

25      Okay.  I was advised I said 9:00 to 4:00, but I did say

1   9:00 to 2:00.

2            **MR. FONDO:**  You did.

3            **THE COURT:**  All right.  That's fine.

4            **MR. FONDO:**  Thank you.

5            **THE COURT:**  So 9:00 to 2:00 with no lunch.

6            **MR. FONDO:**  Fair enough.

7            **THE COURT:**  By the way, you can stand up and stretch.

8   Just don't make it a dramatic gesture, but you can stand up and

9   stretch.  I do stretch breaks, too.  Okay?

10      All right.  So we'll do 9:00 to 2:00, 2:00-ish.  You know,

11  if we have to get to 2:30 to finish somebody, we'll definitely

12  do that.  But there will be no lunch break.  It will just two

13  15 -- roughly 15-minute breaks that I police carefully because

14  I don't want 15 minutes to become 30.  All right?

15      Friday will be dark until we get to the point of closing

16  or deliberating.  If we end on a Thursday with evidence, you

17  will close on that Friday.  You're not going to close the

18  following Monday, so be ready for that.  All right?  Jury time

19  is like gold.  And we're not going to have people sit around

20  when we should be facilitating the efficient use of their time.

21      Did we talk about witness disclosures last time, doing it

22  before the -- 5:00 o'clock the court day before?  Did we talk

23  about that?

24            **MR. SMITH:**  I don't think we did, Your Honor.

25            **THE COURT:**  Typically I would like the witnesses to

 1    be disclosed at least 5:00 p.m., one full court day before they

 2    are called.

 3         So if you're going to have a witness Wednesday morning,

 4    you disclose them Monday at 5:00 p.m.  All right?  For Monday

 5    witnesses, you disclose them Friday at 5:00 p.m.  Okay?  That

 6    way we can make sure that we have smooth sailing.

 7         If there's any problem, you can take it up with me before

 8    the jury comes in.

 9         I do not do sidebars.  Don't ask for them.  If I -- we'll

10    talk on a break.  We can talk.  There will be plenty of

11    opportunities to talk.  Don't ask for a sidebar.

12         When you make an objection, just stand up and say the rule

13    number.  That's it.  Don't say anything else.

14         And please don't stand up and say:  Oh, Your Honor.  We've

15    heard this already.  That's not an objection.  State the rule.

16    If I need more, we'll take a break and I'll talk with you.  But

17    just no speaking objections, all right?

18         Are you planning on using demonstratives in your opening,

19    Government?

20         **MR. BOURGET:**  Possibly, Your Honor.

21         **THE COURT:**  Okay.  Well, I'd like to have

22    demonstratives worked out ahead of time, so if you all are

23    going to do demonstratives.

24         I don't like to disrupt openings.  I think it's important

25    for everybody to have a chance to talk to the jury at the

1  beginning of the case without me getting involved or without,

2  you know, you two getting in each other's way.  So work it out.

3  Just do what you can do to make any objections go away before

4  you start to open.  Okay?

5          **MR. STRASSBERG:**  Your Honor, 100 percent happy to do

6  that.

7          Just a procedural question to make that happen smoothly.

8  Does Your Honor envision that there would be something of a

9  break between the openings?  Because what I've done in the past

10 is before their openings we would review, and hopefully agree

11 or tell whatever the objections were, so everything is clear

12 when they actually speak.

13         And then after they go, but before we go, we would show

14 them our slides.  Similarly, if they have objections, we would

15 either resolve them or raise it with Your Honor.  But that way

16 they're not seeing what we're going to say before they go

17 since --

18         **THE COURT:**  That's fine.  In a typical civil case you

19 do it a couple days before.

20         The complication here, of course, is a two-day holiday, or

21 for federal employees a one-day holiday coming up.  We don't

22 get Fridays off.  Thanksgiving weekend typically.

23         But you understand what I'm saying.  So just -- you all

24 work it out.

25         **MR. STRASSBERG:**  We will, Your Honor.  Thank you.

1          **THE COURT:**  I'm not sure waiting til the break is a

2     great idea, but if that's what you need to do, I'm fine with

3     it.  But I don't want to have, you know, an hour's worth of

4     discussion between openings.  I mean, it shouldn't be

5     too controversial.

6          **MR. STRASSBERG:**  From our side I don't think it's

7     going to be particularly complicated.

8          **THE COURT:**  Now, have your next in order witnesses

9     ready to go.  All right?  Now, if that means that one person

10    has to wait a day because we're -- that's fine.  It's -- I put

11    a priority on the jury's time.  Witnesses and you and me come

12    second.  Okay?  So just have your witnesses ready to go.

13         I do not want to hear at 11:00 a.m. on a Tuesday:  Oh, we

14    don't have X.  Because we're not going to go home.  We're going

15    to use every minute of this precious jury time efficiently and

16    wisely.  So make sure they are there.  There's going to be a

17    problem if they are not.

18         Did we talk about jury selection, how I do that?  We

19    didn't talk about that, did we?  I'm sorry.  I've had so many

20    pretrial conferences recently.  I know you came in, but I guess

21    that was sort of a pre-pretrial conference.

22         All right.  Here is how I select a jury.  I do something

23    that, for reasons lost in the midst of time, is called a

24    modified six pack.  This is what this means.  We're going to

25    have 120 people come in.  All right?  We're going to reduce

1    that probably a little bit when we go through the
2    questionnaires for COVID reasons.  Let's say, we have at the
3    end of that 80.  So an enormous number of people.

4         They are going to be spaced out.  So while they are here,
5    I will probably have to use both sides of the gallery.  There
6    will be no lawyers from any team sitting next to a prospective
7    juror.  They will either be out in the hallway or be sitting
8    here at the counsel table.  We're not mixing.  We're not
9    putting lawyers next to prospective jurors at any way -- at any
10   time during voir dire.

11        We will randomly call 16 into the box, figuratively,
12   because it only seats 14.  It's going to seat even less with
13   the staggered seating.  But it will be 16 under immediate
14   consideration.

15        In the gallery everybody is going to get a notepad and a
16   pen, and this is what we're going to do.  I will go through the
17   voir dire.  You will hear each of the 16 speak at some point.
18   But I will go through the voir dire, ask the questions.  And
19   we'll be focusing on the 16 here, but everybody in the gallery
20   will be listening to the questions and writing down the
21   question number so that if they have a response and we need to
22   call them up, they will just be able to say:  I have a response
23   to question No. 12, or whatever it might be, without my having
24   to keep reading the same list of questions over and over and
25   over again.  So everybody is going to play along in the gallery

 1   while we're doing the 16.

 2        After we go through the voir dire, you'll have a little

 3   chance for follow-up.  You're not going to go nuts, but I'll

 4   give you a little chance for follow-up.  We'll have a sidebar.

 5   You will exercise your peremptories and challenges for cause.

 6   That will just be over here.

 7        And this is the important part.  When I excuse a juror for

 8   whatever reason, we will fill that one seat.  Any juror after

 9   the first round who has not been excused is seated.  You cannot

10   go back later and say -- for example, if in the first round

11   jurors one through five are not challenged by either one of

12   you, you cannot in the second round go back and say:  I want to

13   replace Juror No. 2.  They are seated.  Okay?  So once you both

14   pass, that juror is locked in and I fill only the empty seats.

15        Government, you good with that?  You understand?

16             MR. SMITH:  Yes.

17             THE COURT:  Defendants, you got it?

18             MR. FONDO:  Yes, Your Honor.

19             THE COURT:  Okay.  So that makes jury selection fair

20   and very efficient.  Okay.

21             MR. STRASSBERG:  Can I just ask a clarifying

22   question?

23             THE COURT:  Of course.  Of course.

24             MR. STRASSBERG:  So as you do the -- I imagine we do

25   the cause strikes first.  Then when we do the peremptories, is

1   it round by round so the Government does one, we do two,

2   Government does one, we do two; or do you do it differently

3   until we start passing?

4           THE COURT:  Whatever you want to do is fine with me.

5   I mean, someone has to start.  I'll randomly pick someone if we

6   have to, but just, you know, work it out.  You all get so many

7   more, so I'll leave it up to you how to decide to do it.

8       I don't do -- just make your challenge, peremptory or for

9   cause.  It's all at the same time.  Okay?

10          MR. FONDO:  I see.  So we're not going back and forth

11  like.

12          THE COURT:  No, no.  There's one rule in this

13  courtroom.  It's one and done for everything; witnesses,

14  challenges, arguments.  That's it.  All right?

15      We just -- we'll go over here and you'll tell me:  For

16  cause, I'm exercising a peremptory, or nothing.

17      Now, the point is if you both say nothing, that juror is

18  seated.  You cannot go back later and say:  Well, we've changed

19  our mind.  We don't want No. 2.  Okay?

20      All right.

21          MR. STRASSBERG:  Thank you, Judge.  It's very helpful

22  to understand the logistics.

23          THE COURT:  Now, I love questions.  I encourage them

24  in my civil cases.  I see that juries are about 50/50;

25  sometimes you get a lively one, sometimes you don't.  I don't

1    do them in criminal cases unless you both have agreed.

2         Have you both agreed on that, jury questions?  My baseline

3    is they are excluded.  So if you both agree, I would consider

4    it, but...

5         I mean, it is a tax case and it might be useful, but I

6    leave it up to you.

7              **MR. PITTMAN:**  Thank you, Your Honor.

8         We have not discussed it, but the Government would not

9    agree.

10             **THE COURT:**  Okay.  Well, that's the end of it then.

11             **MR. PITMAN:**  Okay.

12             **THE COURT:**  All right.  There will be no questions

13   from the jury.  They are helpful, but I understand.

14        Okay.  Oh, let me just tell you, we'll get into this a

15   little bit later today in more detail for one thing that we're

16   going to do, but sealing -- now, the rules are the same in this

17   case as they are in civil cases.  All right?  You have to have

18   a good reason.

19        Now, I have a number of orders where I have talked

20   about -- I have expressed my views on sealing.  They are

21   harmonious with every other federal judge I know, which is it's

22   going to take a lot for the people of the United States not to

23   have visibility into what's going on in this courtroom.

24        Now, there will be occasions when something is so

25   sensitive or there's some other good reason for it that I will

 1    seal it, but that's going to be a rare day.  So don't file a

 2    ton of motions saying these are sealed and we have to clear the

 3    courtroom.  They are not going to be granted.  Use your

 4    discretion.

 5         Read my prior orders.  A good one to start with is my

 6    order in the *Google* MDL case, the *Google* Multi District

 7    Litigation case, where I talk about Google's effort to seal the

 8    Complaint.  You can find that on Westlaw.  And just look at the

 9    prevailing law in the Ninth Circuit generally.

10         But I will not accept blunderbuss sealing requests, just

11    because something might be a little uncomfortable.  It might

12    put someone in the negative view, might do something that

13    somebody would find unpleasant are typically not grounds for

14    sealing.  The grounds for sealing have to be sufficient to

15    overcome the strong public right, and it is a right, public

16    right of access to courtroom proceedings.

17         So in your position you should assume -- I should say not

18    assume, you should presume that sealing will be the exception,

19    not the rule.

20         Are we clear on that, Government?

21              **MR. SMITH:**  Yes, Your Honor.

22              **THE COURT:**  Defendants?

23              **MR. FONDO:**  Yes, Your Honor.

24              **THE COURT:**  Okay.  Okay.  Let me check my notes here.

25         (Brief pause.)

1          **THE COURT:**  In civil cases I often have people bring

2    in headshots of witnesses and let jurors have notebooks.  How

3    do you all feel about that?  It just helps the jury keep

4    testimony straight.

5          Government, what do you think?

6          **MR. SMITH:**  We don't have any objection to that, Your

7    Honor.

8          **THE COURT:**  Defendants?

9          **MR. FONDO:**  No objection, Your Honor.

10         **THE COURT:**  Okay.  So here is what you should do.  I

11   like the sort of one-and-a-half inch size.  So get those

12   binders.  Don't put anything on them.  It's just a neutral

13   binder.  And why don't you bring in 20.  You two can work this

14   out.  Bring in 20 just in case something happens to the 16.

15   And put in -- I'd put in about 50 sheets of lined paper.  You

16   know, the old college rule three-hole punch lined paper.  Put

17   about 50 sheets in there so they can take notes.  Put in a

18   couple of tabs.  Don't say anything on them, just like

19   dividers.

20         They get to read the preliminary instructions with me, so

21   I'm going to give them a copy of that.  They will get a hard

22   copy of the final instructions too.  One tab might be used for

23   that.

24         But then give a headshot, 8 by 11, 8-1/2 by 11 headshot of

25   the witness with the witness's name at the bottom.  That's it.

1    Just the headshot and witness's name.  And make them look like

2    they are going to look on the stand.  Okay?  So don't have a

3    vacation shot while they are in here in a suit.  They have got

4    to be able to remember who is doing what.  Okay?

5         So then you just -- at the beginning of the trial you give

6    it to Ms. Clark.  Ms. Clark passes out the jury -- it's a very

7    effective way for jurors to keep straight testimony, who said

8    what.  You all know these people.

9         Remember, jurors are going to be dropping everything to

10   come in here and don't know the first thing about this case.

11   So it's really quite useful to have those memory reminders, you

12   know, because we're visual people.  So when you see a face, you

13   can put a name on it.  It helps them remember that.

14        Okay.  We'll do that.  You two work out the logistics of

15   bringing the -- the binders in.

16        Also, I do not accept motions during trial unless I

17   approve it first.  So don't go home and between the hours of

18   7:00 p.m. and midnight file motions.  You have to ask me first.

19   All right?  And then I'll either grant it or deny it, but

20   anything that is filed without my prior consent will be

21   summarily stricken.

22        Okay.  I think that's it so far.  We're going to have to

23   go into some other proceedings in a minute, but any -- any

24   questions up to this point?

25        Government?  You all good?

1          **MR. SMITH:**  No.  We're good, Your Honor.  Thank you.

2          **THE COURT:**  Defendants?

3          **MR. CALLAWAY:**  Your Honor, just one question --

4          **THE COURT:**  You have to get up to the thing there.

5          **MR. CALLAWAY:**  The Court had previously invited what

6   sounded to me like a bench brief on admissibility of things we

7   expect to come up the next day.  I think -- I would assume that

8   does not fall in the "don't file a motion," to give the Court a

9   bench brief?

10         **THE COURT:**  No, no.  I said "proffer."  You make a

11  proffer.  Here is what you would like to do.  And just tell me

12  ahead of time:  Your Honor, we anticipate this will be coming

13  up and we'll be filing a proffer.

14         **MR. CALLAWAY:**  Okay.

15         **THE COURT:**  Okay.  So let us take about a five-minute

16  break.  I need to get organized for round two.  Okay?  So don't

17  go too far.  About five minutes.

18         **THE CLERK:**  All rise.

19      (Whereupon there was a recess in the proceedings

20       from 2:29 p.m. until 2:42 p.m.)

21      (Further sealed proceedings were held herein, reported

22       but not transcribed.)

23          *          *          *          *          *

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, November 22, 2022